# United States District Court
## Southern District of New York

---

**ANTRON McCRAY, et al.,**        *Plaintiffs,*

    *- against -*                       **02 Civ. 9685(DAB)**

**THE CITY OF NEW YORK, et al.,**     *Defendants.*

---

**KHAREY WISE, et al.,**        *Plaintiffs,*

    *- against -*                       **02 Civ. 9974(DAB)**

**THE CITY OF NEW YORK, et al.,**     *Defendants.*

---

**YUSEF SALAAM, et al.,**        *Plaintiffs,*

    *- against -*                       **02 Civ. 9685 (DAB)**

**THE CITY OF NEW YORK, et al.,**     *Defendants.*

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS AS TO DEFENDANTS ROBERT M. MORGENTHAU, ELIZABETH LEDERER, AND ARTHUR "TIM" CLEMENTS

---

**ROBERT M. MORGENTHAU**
**District Attorney, New York County**
**as Special Assistant Corporation Counsel**
**One Hogan Place**
**New York, New York 10013**
**(212) 335-9000**

**By: MICHAEL S. MORGAN (MM-9360)**
     **Assistant District Attorney**
     **Attorney of Record**

**MARK DWYER (MD-7035)**
**Assistant District Attorney**
**of counsel**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT.............................................................................................2

FACTUAL BACKGROUND AND THE PERTINENT ALLEGATIONS OF
    PLAINTIFFS' COMPLAINTS .......................................................................................2

ARGUMENT

    THE COMPLAINTS SHOULD BE DISMISSED AS TO DA
    MORGENTHAU, ADA LEDERER, FORMER ADA CLEMENTS AND
    THE "NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE" FOR
    FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE
    GRANTED........................................................................................................................ 15

    I.   PLAINTIFFS' FEDERAL AND STATE LAW CLAIMS AGAINST THE DA
       DEFENDANTS FOR FALSE ARREST AND IMPRISONMENT AND
       MALICIOUS PROSECUTION ......................................................................................17

    II.  PLAINTIFFS' FEDERAL CIVIL RIGHTS CONSPIRACY CLAIMS AGAINST
       THE DA DEFENDANTS .............................................................................................32

    III.  THE LOSS OF FAMILIAL RELATIONS CLAIMS AGAINST THE DA
       DEFENDANTS...............................................................................................................48

    IV.  PLAINTIFFS' FEDERAL CLAIM AGAINST "THE NEW YORK COUNTY
       DISTRICT ATTORNEY'S OFFICE"............................................................................51

    V.  PLAINTIFFS' REMAINING STATE LAW CLAIMS AGAINST THE DA
       DEFENDANTS...............................................................................................................69

CONCLUSION ....................................................................................................................... 80

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aiello v. Wilmington, 470 F. Supp. 414 (D. Del. 1979),
    aff'd 623 F.2d 845 (3d Cir. 1980) .......................................................................58

Aiken v. Nixon, 236 F. Supp. 2d 211 (N.D.N.Y. 2002),
    aff'd, 80 Fed. Appx. 146 (2d Cir. 2003) ............................................................78

Alexander v. City of New York, 2004 U.S. Dist. LEXIS 17042 (S.D.N.Y. Aug. 24,
    2004) ....................................................................................................................72

Allen v. McCurry, 449 U.S. 90 (1980) ........................................................... 35, 41

Anderson v. Creighton, 483 U.S. 635 (1987) ......................................................47

Arizonans for Official English v. Arizona, 520 U.S. 43 (1997)..................................19

Babi-Ali v. City of New York, 979 F. Supp. 268 (S.D.N.Y. 1997) ....................... 40, 64

Baez v. Hennessey, 853 F.2d 73 (2d Cir. 1988) .................................................18

Banks v. Dretke, 540 U.S. 668, 124 S. Ct. 1256 (2004) .................................................59

Batista v. Rodriguez, 702 F.2d 393 (2d Cir. 1983).................................................55

Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984) .................................................48

Bender v. City of New York, 78 F.3d 787 (2d Cir. 1996) .................................................18

Bernard v. County of Suffolk, 356 F.3d 495 (2d Cir. 2004)................................... 21, 23

Bernard v. United States, 25 F.3d 98 (2d Cir. 1994) ........................................... 23, 75

Black v. Town of Harrison, 2002 U.S. Dist. LEXIS 16597 (S.D.N.Y. Sept. 5, 2002) ...........74

Blyden v. Mancusi, 186 F.3d 252 (2d Cir. 1999).................................................19

Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397 (1997)..........................61

Bologna v. Allstate Insurance Co., 138 F. Supp. 2d 310 (E.D.N.Y. 2001)................................50

Bray v. Alexandria Women's Health Clinic, 506 U.S. 263 (1993) ................................38

Brogdon v. City Of New Rochelle, 200 F. Supp. 2d 411
    (S.D.N.Y. 2002) ....................................................................................36, 48, 72, 73

Brown v. City of Oneonta, 221 F.3d 329 (2d Cir. 2000) ...............................................17

Brown v. De Fillipis, 717 F. Supp. 172 (S.D.N.Y.1989) ...............................................35

Buchanan v. City of Kenosha, 57 F. Supp. 2d 675 (E.D. Wis. 1999) ...........................52

Buckley v. Fitzsimmons, 20 F.3d 789 (7th Cir. 1994) ...................................................46

Buckley v. Fitzsimmons, 509 U.S. 259 (1993) ...............................................20, 46, 67

Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533
    (1991) ...............................................................................................................62

California v. Beheler, 463 U.S. 1121 (1983) ...............................................................29

Camarano v. New York, 577 F. Supp. 18 (S.D.N.Y. 1984) ...........................................43

Cameron v. Church, 253 F. Supp. 2d 611 (S.D.N.Y. 2003) .........................................39

Cameron v. Fogarty, 806 F.2d 380 (2d Cir. 1986) .......................................................35

Carnegie v. Miller, 811 F. Supp. 907 (S.D.N.Y. 1992) ...............................................64

Carrasquillo v. City of New York, 324 F. Supp. 2d 428 (S.D.N.Y. 2004) ...................39

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ...............................3, 16

Chavez v. Martinez, 538 U.S. 760 (2003) ...............................................................41, 42

Christopher v. Harbury, 536 U.S. 403 (2002) .............................................................16

City of Canton v. Harris, 489 U.S. 378 (1989) .......................................................55, 63

City of Los Angeles v. Heller, 475 U.S. 796 (1986) .................................................55, 59

City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985) ...............................................61

City of St. Louis v. Praprotnik, 485 U.S. 112 (1988) ...................................................55

Coakley v. Jaffee, 49 F. Supp. 2d 615 (S.D.N.Y. 1999),
    aff'd, 234 F.3d 1261 (2d Cir. 2000) .............................................................37

Collard v. Flower Hill, 759 F.2d 205 (2d Cir. 1985) ...................................................45

Conley v. Gibson, 355 U.S. 41 (1957) .........................................................................16

Connecticut ex rel. Blumenthal v. Cahill, 217 F.3d 93 (2d Cir. 2000) .......................19

Conopco, Inc. v. Roll International, 231 F.3d 82 (2d Cir. 2000) ............................................7, 33

Cooper v. Masiello, 2000 U.S. Dist. LEXIS 5146 (W.D.N.Y. Apr. 13, 2000) ..........................65

Cousin v. Small, 325 F.3d 627 (5th Cir. 2003) .........................................................................65

Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999) ....................................................31

Covington v. City of New York, 916 F. Supp. 282
    (S.D.N.Y. 1995) .........................................................................................40, 62, 65, 68

Crot v. Byrne, 646 F. Supp. 1245 (N.D. Ill. 1986),
    aff'd, 957 F.2d 394 (7th Cir. 1992) .............................................................................58

Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001) ..............................................38, 55, 59

Curry v. City of Syracuse, 316 F.3d 324 (2d Cir. 2003) ..........................................................34, 42

Dallas v. Goldberg, 143 F. Supp. 2d 312 (S.D.N.Y. 2001) ......................................................18

Daloia v. Rose, 849 F.2d 74 (2d  Cir. 1988) .............................................................................21

Datz v. Kilgore, 51 F.3d 252 (11th Cir. 1995) .........................................................................30

Day v. Morgenthau, 909 F.2d 75 (2d Cir. 1990)...........................................20, 31, 36, 40, 46, 49

Day v. Moscow, 955 F.2d 807 (2d Cir. 1992) ...........................................................................33

DeCarlo v. Fry, 141 F.3d 56 (2d Cir. 1998).............................................................................61

Deshawn E. ex rel. Charlotte E. v. Safir, 156 F.3d 340 (2d Cir. 1998)....................................42

DiBlasio v. City of New York, 102 F.3d 654 (2d Cir. 1996)......................................................28

DiBlasio v. Novello, 344 F.3d 292 (2d Cir. 2003) ...................................................................56

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)................................29

Doctor's Associates v. Distajo, 107 F.3d 126 (2d Cir. 1997) ...................................................45

Doe v. Phillips, 81 F.3d 1204 (2d Cir. 1996).............................................................................40

Dorman v. Higgins, 821 F.2d 133 (2d Cir. 1987) .....................................................................21

Dory v. Ryan, 25 F.3d 81 (2d Cir. 1994)...............................................................................21, 40

Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1977) ..............................................................48

Dunaway v. New York, 442 U.S. 200 (1979) ................................................................29

Durante Brothers & Sons, Inc. v. Flushing National Bank, 755 F.2d 239 (2d Cir. 1985) ................................................................................................................76

Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993) ........................60, 61, 62, 64

East Coast Novelty Co. v. City of New York, 809 F. Supp. 285 (S.D.N.Y. 1992) ........... 54, 65

Eisenberg v. District Attorney of County of Kings, 1994 U.S. Dist. LEXIS 21535 (E.D.N.Y. June 3, 1994) ................................................................................66

Eisenberg v. District Attorney of Kings County, 847 F. Supp. 1029 (E.D.N.Y. 1994) ..........54

Escalera v. Lunn, 361 F.3d 737 (2d Cir. 2004) ........................................................32

Fay v. South Colonie Central Sch. District, 802 F.2d 21 (2d Cir. 1986) ...................50

Ferreira v. Westchester County, 917 F. Supp. 209 (S.D.N.Y. 1996) ...........36, 48, 65

Ferris v. Cuevas, 118 F.3d 122 (2d Cir. 1997) ................................................44, 45, 50

Fields v. Soloff, 920 F.2d 1114 (2d Cir. 1990) ........................................................23

Fincher v. County of Westchester, 979 F. Supp. 989 (S.D.N.Y. 1997) .....................73

Fodelmesi v. Schepperly, 1991 U.S. Dist. LEXIS 8517 (S.D.N.Y. June 24, 1991) ..................49

Ford v. Reynolds, 316 F.3d 351 (2d Cir. 2003) ........................................................19

Frank v. Relin, 1 F.3d 1317 (2d Cir. 1993) ..............................................................54

Gan v. City of New York, 996 F.2d 522 (2d Cir. 1993) ................................18, 19, 20, 21, 23, 60, 62, 65, 68

Gauger v. Hendle, 349 F.3d 354 (7th Cir. 2003) ......................................................44

Gelb v. Royal Globe Insurance Co., 798 F.2d 38 (2d Cir. 1986) ..............................34

Gentile v. County of Suffolk, 926 F.2d at 152-53 ....................................................68

Gentner v. Shulman, 55 F.3d 87 (2d Cir. 1995) ......................................................45

Gonzalez v. City of New York, 1999 U.S. Dist. LEXIS 11413 (S.D.N.Y. July 27, 1999), aff'd, 69 Fed. Appx. 7 (2d Cir. 2003) ..........................................51

Gray v. Bell, 712 F.2d 490 (D.C. Cir. 1983) ............................................................67

Green v. Mansour, 474 U.S. 64 (1985) ................................................................. 19

Greene v. City of New York, 675 F. Supp. 110 (S.D.N.Y. 1987) ........................... 49

Hafer v. Melo, 502 U.S. 21 (1991) ...................................................................... 54

Hall v. City of White Plains, 185 F. Supp. 2d 293 (S.D.N.Y. 2002) ....................... 77

Hamilton v. Daley, 777 F.2d 1207 (7th Cir. 1985) ................................................ 67

Hardy v. New York City Health & Hospitals Corp., 164 F.3d 789 (2d Cir. 1999) ................. 72

Hartford Courant Co. v. Pellegrino, 371 F.3d 49 (2d Cir. 2004) ................................ 50

Hason v. Office of Prof'l Med. Conduct, 314 F. Supp. 2d 241 (S.D.N.Y. 2004) ................... 29

Hathaway v. County of Essex, 995 F. Supp. 62 (N.D.N.Y. 1998),
    aff'd, 172 F.3d 37 (2d Cir. 1999) ...................................................................... 27

Haygood v. City of New York, 64 F. Supp. 2d 275 (S.D.N.Y. 1999) ........................ 20

Haynesworth v. Miller, 820 F.2d 1245 (D.C. Cir. 1987) ....................................... 67

Heck v. Humphrey, 512 U.S. 477 (1994) ....................................................... 17, 31

Heimbach v. Chu, 744 F.2d 11 (2d Cir. 1984) .............................................. 44, 45

Hernandez v. Goord, 312 F. Supp. 2d 537 (S.D.N.Y. 2004) ................................. 37

Herrmann v. Moore, 576 F.2d 453 (2d Cir. 1978) ............................................. 39

Hill v. City of New York, 45 F.3d 653 (2d Cir. 1995) ....................... 22, 23, 40, 47, 66

Houghton v. Cardone, 295 F. Supp. 2d 268 (W.D.N.Y. 2003) ............................. 57

Housing Works, Inc. v. Turner, 179 F. Supp. 2d 177 (S.D.N.Y. 2001), aff'd, 56 Fed.
    Appx. 530 (2d Cir. 2003) .............................................................................. 74

Huber v. Schriver, 140 F. Supp. 2d 265 (E.D.N.Y. 2001) ................................... 25

Hunt v. Jaglowski, 926 F.2d 689 (7th Cir. 1991) ............................................... 47

Hunter v. Bryant, 502 U.S. 224 (1991) ............................................................ 48

Imbler v. Pachtman, 424 U.S. 409 (1976) .............................................. 20, 21, 22

Jacobs v. Port Neches Police Department, 915 F. Supp. 842 (E.D. Tex. 1996) ............... 52

Jenkins v. City of New York, 1992 U.S. Dist. LEXIS 8279 (S.D.N.Y. June 15, 1992) ..........77

Jenkins v. City of New York, 1999 U.S. Dist. LEXIS 15353 (S.D.N.Y. Sept. 29, 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000) ........................................................................58

Johnson v. Gibson, 169 F.3d 1239 (10th Cir. 1999) ........................................................26

Johnson v. Watkins, 101 F.3d 792 (2d Cir. 1996).............................................. 33, 34, 41

Kalina v. Fletcher, 522 U.S. 118 (1997) ........................................................................22

Katz v. Morgenthau, 709 F. Supp. 1219 (S.D.N.Y.), aff'd in part, rev'd in part, 892 F.2d 20 (2d Cir. 1989) ........................................62

Kent v. Katz, 312 F.3d 568 (2d Cir. 2002) ....................................................................48

Kentucky v. Graham, 473 U.S. 159 (1985).............................................................. 19, 53

Khal Charidim Kiryas Joel v. Village of Kiryas Joel, 935 F. Supp. 450 (S.D.N.Y. 1996) .........................................................................................................46

Kipps v. Caillier, 197 F.3d 765 (5th Cir. 1999) ..............................................................49

LaFleur v. Whitman, 300 F.3d 256 (2d Cir. 2002)..............................................................4

Lawson v. City of New York, 2002 U.S. Dist. LEXIS 10705 (S.D.N.Y. June 11, 2002) ........................................................................................................................68

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993) ......................................................................................................60

Lee v. Willins, 617 F.2d 320 (2d Cir. 1980) ..................................................................22

Lehman v. Discovery Communs., Inc., 217 F. Supp. 2d 342 (E.D.N.Y. 2002).......................57

Lieber v. Village of Spring Valley, 40 F. Supp. 2d 525 (S.D.N.Y. 1999)........................... 30, 70

Maglione v. Briggs, 748 F.2d 116 (2d Cir. 1984) ..........................................................23

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000).........................................7, 16

Malley v. Briggs, 475 U.S. 335 (1986)........................................................................48

Marden v. Dinin, 22 F. Supp. 2d 180 (S.D.N.Y. 1998) .......................................... 29, 46

Martinez v. Simonetti, 202 F.2d 625 (2d Cir. 2000) ......................................................36

Martinez v. Winner, 771 F.2d 424 (10th Cir. 1985) ......................................................51

McAllister v. New York City Police Department, 49 F. Supp. 2d 688 (S.D.N.Y. 1999) .......................................................................................................... 63, 64

McGinty v. New York, 193 F.3d 64 (2d Cir. 1999)...................................................16

McKeon v. Daley, 101 F. Supp. 2d 79 (N.D.N.Y. 2000),
   aff'd, 8 Fed. Appx. 138 (2d Cir. 2001) ........................................................ 32, 46

McMillian v. Monroe County, 520 U.S. 781 (1997) .................................................55

McPhail v. Warden, Attica Correctional Facility, 539 F. Supp. 165 (S.D.N.Y. 1982),
   aff'd 707 F.2d 67 (2d Cir. 1983) ........................................................................25

Merritt v. Shuttle, Inc., 245 F.3d 182 (2d Cir. 2001) ...............................................16

Meyers v. County of Orange, 157 F.3d 66 (2d Cir. 1998)..........................53, 55, 66

Meyers v. County of Orange, 870 F. Supp. 555 (S.D.N.Y. 1994)............................54

Migra v. Warren City Sch. District Board of Education, 465 U.S. 75 (1984)............44

Miller v. Angliker, 848 F.2d 1312 (2d Cir. 1988) .....................................................26

Mitchell v. Hartnett, 262 F. Supp. 2d 153 (S.D.N.Y. 2003)......................................35

Moccio v. New York State Office of Court Admin., 95 F.3d 195 (2d Cir. 1996) .29, 45, 46, 58

Monell v. Department of Social Services, 436 U.S. 658 (1978)...............................53

Moore v. City of New York, 219 F. Supp. 2d 335 (E.D.N.Y. 2002) .........................75

Moore v. Vega, 371 F.3d 110 (2d Cir. 2004) ...........................................................47

Morrissey v. City of New York, 963 F. Supp. 270 (S.D.N.Y. 1997).........................65

Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) .........................................................23

Neufeld v. Neufeld, 910 F. Supp. 977 (S.D.N.Y. 1996) ..........................................71

New York Stock Exch., Inc. v. Gahary, 196 F. Supp. 2d 401 (S.D.N.Y. 2002) ......76

New York v. Operation Rescue National, 273 F.3d 184 (2d Cir. 2001) .....................7

O'Brien v. Alexander, 101 F.3d 1479 (2d Cir. 1996).................................................62

Ortiz v. Morgenthau, 772 F. Supp. 1430 (S.D.N.Y. 1991),
   aff'd, 962 F.2d 4 (2d Cir. 1992)..........................................................................40

Owens v. Okure, 488 U.S. 235 (1989).................................................................30

Owens v. Treder, 873 F.2d 604 (2d Cir. 1989) ............................................ 42, 43

Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999) ........................................37

Parkinson v. Cozzolino, 238 F.3d 145 ...............................................................23

Patel v. Searles, 305 F.3d 130 (2d Cir. 2002).....................................................48

Patterson v. County of Oneida, 375 F.3d 206 (2d Cir. 2004)............................30

Paul v. Davis, 424 U.S. 693 (1976) ............................................................. 56, 57

Penhurst State Schools & Hospital v. Halderman, 465 U.S. 89 (1984)....................19

Perez v. County of Westchester, 83 F. Supp. 2d 435 (S.D.N.Y.),
      aff'd, 242 F.3d 367 (2d Cir. 2000) ............................................................60

Phifer v. City of New York, 289 F.3d 49 (2d Cir. 2002) .........................28, 30, 45, 50

Pierson v. Ray, 386 U.S. 547 (1967) ..................................................................36

Pinaud v. County of Suffolk, 52 F.3d 1139 (2d Cir. 1995)...........................28, 40

Pinaud v. County of Suffolk, 798 F. Supp. 913 (E.D.N.Y. 1992),
      aff'd in part, rev'd in part, 52 F.3d 1139 (2d Cir. 1995) ...........................20

Pou v. United States Drug Enforcement Agency, 923 F. Supp. 573 (S.D.N.Y. 1996)...........35

Powers v. Coe, 728 F.2d 97 (2d Cir. 1984)........................................................56

Powers v. McGuigan, 769 F.2d 72 (2d Cir. 1985) .............................................57

Quartararo v. Catterson, 917 F. Supp. 919 (E.D.N.Y. 1996) ............................21

Rawlings v. Kentucky, 448 U.S. 98 (1980).........................................................34

Rex v. Teeples, 753 F.2d 840 (10th Cir. 1985)...................................................46

Ricciuti v. New York City Transit Authority, 941 F.2d 119 (2d Cir. 1991)...............63

Richards v. City of New York, 1998 U.S. Dist. LEXIS 13675 (S.D.N.Y. Sept. 2,
      1998).........................................................................................................46

Robichaud v. Ronan, 351 F.2d 533 (9th Cir. 1965)...........................................46

Rodriguez v. Weprin, 116 F.3d 62 (2d Cir. 1997).............................................19

Rogers v. City of Amsterdam, 303 F.3d 155 (2d Cir. 2002)........................................................21

Romer v. Morgenthau, 119 F. Supp. 2d 346 (S.D.N.Y. 2000)...................................................39

Rooker v. Fidelity Trust Company, 263 U.S. 413 (1923) ............................................................28

Ross v. Mitsui Fudosan, 2 F. Supp. 2d 522 (S.D.N.Y. 1998)....................................................77

Rothstein v. Carriere, 373 F.3d 275 (2d Cir. 2004) ...................................................................27

Salgado v. City of New York, 2001 U.S. Dist. LEXIS 3196 (S.D.N.Y. Mar. 21, 2001) ..........39

Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003) ............................................................23

Schiavone Construction Co. v. Merola, 848 F.2d 43 (2d Cir. 1988)
    aff'g on opinion below, 678 F. Supp. 64 (S.D.N.Y. 1988) ....................................................56

Siegert v. Gilley, 500 U.S. 226 (1991) .......................................................................................56

Simmons v. O'Brien, 77 F.3d 1093 (8th Cir. 1996) ...................................................................43

Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995).........................................17, 38, 40

Singleton v. City of New York, 632 F.2d 185 (2d Cir. 1980) ......................................................31

Sivadel v. City of New York, 2004 U.S. Dist. LEXIS 15190 (S.D.N.Y. Aug. 4, 2004) ...........79

Smith v. Edwards, 175 F.3d 99 (2d Cir. 1999)...........................................................................69

Smith v. Garretto, 147 F.3d 91 (2d Cir. 1998) ...........................................................................56

Smith v. Gribetz, 958 F. Supp. 145 (S.D.N.Y. 1997)...........................................................22, 52

Sorlucco v. New York City Police Department, 971 F.2d 864 (2d Cir. 1992).........................60

Spencer v. Casavilla, 44 F.3d 74 (2d Cir. 1994)........................................................................49

Steed v. Delohery, 1998 U.S. Dist. LEXIS 2754 (S.D.N.Y. Mar. 11, 1998).............................51

Stovall v. Staroff, 1984 U.S. Dist. LEXIS 22804 (S.D.N.Y. Oct. 12, 1984) ......................66, 68

Sweet v. Sheahan, 235 F.3d 80 (2d Cir. 2000).........................................................................16

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)...................................................................16

Teller v. White, 2000 U.S. Dist. LEXIS 13140 (S.D.N.Y. Sept. 11, 2000) ...............................65

Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999) ..........................................................48, 78

Thompson v. Sweet, 194 F. Supp. 2d 97 (N.D.N.Y. 2002) .......................................... 75

Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999) ...................................... 17

Traxel v. Granville, 530 U.S. 57, 120 S. Ct. 2064 (2000) ...................................... 48

Trujillo v. Board of County Comm'rs, 768 F.2d 1186 (10th Cir. 1985) .................... 49

Tsotesi v. Board of Education of City Sch. District of City of N.Y., 258 F. Supp. 2d
      336 (S.D.N.Y. 2003) ..................................................................................... 60

United Mine Workers v. Gibbs, 383 U.S. 715 (1966) ............................................. 69

United States v. Morales, 788 F.2d 883 (2d Cir. 1986) .......................................... 34

United States v. Newton, 369 F.3d 659 (2d Cir. 2004) ........................................... 29

United States v. Payne, 63 F.3d 1200 (2d Cir. 1995) .............................................. 25

United States v. Williams, 504 U.S. 36 (1992) ....................................................... 25

Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994) ....................................................... 56

Vargas v. City of New York, 377 F.3d 200 (2d Cir. 2004) ...................................... 45

Veal v. Geraci, 23 F.3d 722 (2d Cir. 1994) ............................................................ 30

Verizon Md., Inc. v. Public Service Commission of Md., 535 U.S. 635 (2002) ........ 19

Wade v. Mantello, 333 F.3d 51 (2d Cir. 2003) ....................................................... 26

Wahad v. F.B.I., 994 F. Supp. 237 (S.D.N.Y. 1998) ............................................... 74

Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992) ............................... 53, 55, 63-65, 68

Wallikas v. Harder, 67 F. Supp. 2d 82 (N.D.N.Y. 1999) ........................................ 72

Ward v. Thomas, 207 F.3d 114 (2d Cir. 2000) ....................................................... 19

Washington v. Kelly, 2004 U.S. Dist. LEXIS 6580 (S.D.N.Y. Apr. 12, 2004) ........ 20

Weaver v. Brenner, 40 F.3d 527 (2d Cir 1994) ...................................................... 46

Webb v. Goord, 340 F.3d 105 (2d Cir. 2003) ................................................... 37, 39

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996) .................................................. 17, 29, 33

Will v. Michigan Department of State Police, 491 U.S. 58 (1989) ........................... 19

Williams v. City of New York, 508 F.2d 356 (2d Cir. 1974)............................................23, 24, 58

Wimmer v. Suffolk County Police Department, 176 F.3d 125 (2d Cir. 1999).........................60

Wishnefsky v. Addy, 969 F. Supp. 953 (E.D. Pa. 1997),
    aff'd, 162 F.3d 1153 (3d Cir. 1998) ...................................................30

Young v. County of Fulton, 160 F.3d 899 (2d Cir. 1998)...................................... 38, 64

Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000) ...........................................................46

## STATE CASES

423 South Salina St., Inc. v. City of Syracuse, 510 N.Y.S.2d 507 (N.Y. 1986)..........................72

Alexander & Alexander of N.Y., Inc. v. Fritzen, 510 N.Y.S.2d 546 (N.Y. 1986) ...................76

Antoniuos v. Muhammad, 673 N.Y.S.2d 158 (App. Div. 1998) ................................................75

Arteaga v. State, 532 N.Y.S.2d 57 (N.Y. 1988) ........................................................ 20, 77

Augat v. State, 666 N.Y.S.2d 249 (App. Div. 1997) .......................................................74

Barr v. County of Albany, 428 N.Y.S.2d 665 (N.Y. 1980)......................................... 77, 79

Bethea v. Scoppetta, 713 N.Y.S.2d 320 (App. Div. 2000)................................................50

Bloomfield Building Wreckers, Inc. v. City of Troy, 396 N.Y.S.2d 359 (N.Y. 1977) .............73

Brenner v. County of Rockland, 413 N.Y.S.2d 185 (App. Div. 1979) ......................................22

Broughton v. State, 373 N.Y.S.2d 87 (N.Y. 1975) ................................................. 17, 35

Brown v. City of New York, 470 N.Y.S.2d 573 (N.Y. 1983) ..................................................44

Brown v. State, 652 N.Y.S.2d 223 (N.Y. 1996) ...........................................................71

Brown v. State, 681 N.Y.S.2d 170 (App. Div. 1998) .......................................................69

Caminito v. City of New York, 269 N.Y.S.2d 826 (App. Div. 1966), aff'd, 281
    N.Y.S.2d 338 (N.Y. 1967) ...........................................................24, 31, 36, 70

Cantalino v. Danner, 729 N.Y.S.2d 405 (N.Y. 2001)......................................................28

Claude H. v. County of Oneida, 626 N.Y.S.2d 933 (App. Div. 1995) ......................................37

Colon v. City of New York, 468 N.Y.S.2d 453 (N.Y. 1983) ................................................23, 27

Community Board 7 v. Schaffer, 615 N.Y.S.2d 644 (N.Y. 1994) ...............................52

Couch v. Schmidt, 612 N.Y.S.2d 511 (App. Div. 1994)...........................................76

Cunningham v. State, 422 N.Y.S.2d 497 (App. Div. 1979)......................................22

Dailey v. Smiley, 410 N.Y.S.2d 468 (App. Div. 1978) ...........................................31

Davidson v. Bronx Municipal Hospital, 484 N.Y.S.2d 533 (N.Y. 1984) ....................72

Dillon v. City of New York, 704 N.Y.S.2d 1 (App. Div. 1999) .................................75

Doe v. State, 700 N.Y.S.2d 554 (App. Div. 1999).................................................78

Drakeford v. City of New York, 775 N.Y.S.2d 138 (App. Div. 2004)................... 20, 74

Du Chateau v. Metropolitan-North Commuter R.R. Co., 688 N.Y.S.2d 12 (App.
    Div. 1999) .............................................................................................32

Fariello v. City of New York Department of Education, 606 N.Y.S.2d 20 (App. Div.
    1993) ....................................................................................................76

Fischer v. Maloney, 402 N.Y.S.2d 991 (N.Y. 1978) .............................................75

Gisondi v. Town of Harrison, 532 N.Y.S.2d 234 (N.Y. 1988).................................36

Goddard v. Daly, 744 N.Y.S.2d 330 (App. Div. 2002)..........................................24

Grullon v. City of New York, 635 N.Y.S.2d 24 (App. Div. 1995) ............................70

Hernandez v. New York City Law Department Corp. Counsel, 685 N.Y.S.2d 674
    (App. Div. 1999)......................................................................................75

Hirschfeld v. City of New York, 686 N.Y.S.2d 367
    (App. Div. 1999).........................................................................20, 23, 74

Howell v. New York Post Co., 596 N.Y.S.2d 350 (N.Y. 1993) ................................75

Hugar v. Nigro, 616 N.Y.S.2d 833 (App. Div. 1994) ...........................................35

Janendo v. Town of New Paltz Police Department, 621 N.Y.S.2d 175 (App. Div.
    1995) ....................................................................................................34

Johnson v. Kings County District Attorney's Office, 763 N.Y.S.2d 635 (App. Div.
    2003) ........................................................................................51, 55, 75

Johnson v. Town of Colonie, 477 N.Y.S.2d 513 (App. Div. 1984)...........................22

Kelly v. Halle, 182 N.E. 163 (N.Y. 1932) ............................................................24

Kenavan v. City of New York, 523 N.Y.S.2d 60 (N.Y. 1987)................................78

Larsen v. Schultz, 720 N.Y.S.2d 625 (App. Div. 2001) .......................................35

Leung v. City of New York, 627 N.Y.S.2d 369 (App. Div. 1995) .........................71

Levy v. State, 459 N.Y.S.2d 27 (1982)................................................................74

Maloney v. Board of Education of Buffalo, 578 N.Y.S.2d 31 (App. Div. 1991)....78

Martinez v. City of Schenectady, 735 N.Y.S.2d 868
    (N.Y. 2001) ...................................................................................21, 27, 71, 74

McCormack v. City of New York, 587 N.Y.S.2d 580 (N.Y. 1992).........................78

McElveen v. Police Department of City of N.Y., 418 N.Y.S.2d 49 (App. Div. 1979) ...........70

Mon v. City of New York, 574 N.Y.S.2d 529 (N.Y. 1991) ...................................78

Moore v. First Federal Savings & Loan Associate of Rochester, 654 N.Y.S.2d 900
    (App. Div. 1997) ...........................................................................................77

Murray v. City of New York, 725 N.Y.S.2d 73 (App. Div. 2001).........................70

Naturman v. Crain Communications, 628 N.Y.S.2d 281 (App. Div. 1995) ...........75

New York State Board of Examiners of Sex Offenders v. Ransom, 672 N.Y.S.2d
    185 (App. Div. 1998) ....................................................................................52

Nunez v. City of New York, 762 N.Y.S.2d 384 (App. Div. 2003) .........................31

O'Brien v. City of Syracuse, 445 N.Y.S.2d 687 (N.Y. 1981)................................72

Offenhartz v. Cohen, 562 N.Y.S.2d 500 (App. Div. 1990)..................................76

Pandolfo v. U.A. Cable System of Watertown, 568 N.Y.S.2d 981 (App. Div. 1991) .............75

Panzera v. Johnny's II, 678 N.Y.S.2d 336 (App. Div. 1998)................................77

Parker v. Blauvelt Volunteer Fire Co., 690 N.Y.S.2d 478 (N.Y. 1999) ............... 34, 41

People v. Bradley, 778 N.Y.S.2d 687 (App. Div. 2004).......................................26

People v. Evans, 706 N.Y.S.2d 678 (N.Y. 2000) ............................................. 36, 43

People v. McCray, 604 N.Y.S.2d 93 (App. Div. 1993) ................................ 8, 10, 43

People v. Nieves, 501 N.Y.S.2d 1 (N.Y. 1986) ................................................................ 36, 43

People v. Primo, 728 N.Y.S.2d 735 (N.Y. 2001) ............................................................ 26

People v. Richardson, 608 N.Y.S.2d 627 (App. Div. 1994) ................................. 8, 10, 43

People v. Salaam, 590 N.Y.S.2d 195 (App. Div. 1992) ....................................... 8, 10, 43

People v. Salaam, 607 N.Y.S.2d 899 (N.Y. 1993) ................................................... 8, 43

People v. Wise, 612 N.Y.S.2d 117 (App. Div. 1994) ........................................... 8, 10,  43

People v. Wise, et al., 752 N.Y.S.2d 837 (Sup. Ct., N.Y. Co. 2002) .................... 14, 15, 27

Peresluha v. City of New York, 400 N.Y.S.2d 818 (App. Div. 1977) ......................... 70

Pitts v. County of Kern, 949 P.2d 920 (Cal. 1998) ................................................... 55

Ramos v. City of New York, 729 N.Y.S.2d 678 (App. Div. 2001) ................................ 24, 55, 64

Richardson v. New York University, 609 N.Y.S.2d 180 (App. Div. 1994) ..................... 77

Roche v. Village of Tarrytown, 766 N.Y.S.2d 46 (App. Div. 2003) ............................ 31

Rodrigues v. City of New York, 602 N.Y.S.2d 337 (App. Div. 1993) ........................ 37

Rosen & Bardunias v. County of Westchester, 552 N.Y.S.2d 134 (App. Div. 1990) ............. 72

Ryan v. New York Telegraph Co., 478 N.Y.S.2d 823 (N.Y. 1984) ...................................... 35, 50

Ryan v. State, 439 N.Y.S.2d 703 (App. Div. 1981), aff'd, 450 N.Y.S.2d 179 (N.Y. 1982) ................................................................................................................ 23

Santangelo v. State, 474 N.Y.S.2d 995 (App. Div. 1984) ......................................... 37

Schildhaus v. City of New York, 261 N.Y.S.2d 909 (App. Div. 1965), aff'd, 271 N.Y.S.2d 286 (N.Y. 1966) ....................................................................................... 31

Shmueli v. New York City Police Department, 743 N.Y.S.2d 871 (App. Div. 2002) ............. 79

Matter of Slocum ex rel Nathan "A" v. Joseph "B", 588 N.Y.S.2d 930 (App. Div. 1992) ......................................................................................... 39, 41, 50, 51, 52

Smith-Hunter v. Harvey, 712 N.Y.S.2d 438 (N.Y. 2000) ........................................... 27

Tango v. Tulevech, 471 N.Y.S.2d 73 (N.Y. 1983) ................................................... 77, 78

Tango v. Tulevech, 471 N.Y.S.2d at 77 ................................................................ 78

Tartar v. State, 510 N.Y.S.2d 528 (N.Y. 1986)................................................................77

Taveras v. City of New York, 635 N.Y.S.2d 608 (App. Div. 1995)............................44

Tom Sawyer Motor Inns, Inc. v. Chemung County Sewer District, 305 N.Y.S.2d 408
    (App. Div. 1969)........................................................................................................52

Topal v. State, 693 N.Y.S.2d 130 (App. Div. 1999) .......................................................78

Tucker v. City of New York, 709 N.Y.S.2d 796 (Sup. Ct., N.Y. Co. 2000) .............74

Vavolizza v. Krieger, 352 N.Y.S.2d 919 (N.Y. 1974)....................................................33

Vitale v. Hagan, 528 N.Y.S.2d 823 (N.Y. 1988)
    rev'g on dissent, 517 N.Y.S.2d 725 (App. Div. 1987)........................................73

Watts v. Swiss Bank Corp., 317 N.Y.S.2d 315 (N.Y. 1970).......................................50

Whitmore v. City of New York, 436 N.Y.S.2d 323 (App. Div. 1981) ...........22, 24, 36

Williams v. Moore, 602 N.Y.S.2d 199 (App. Div. 1993) .....................................18, 35

## FEDERAL CONSTITUTION, STATUTES AND RULES

U.S. Const., Art. IV, § 1 ...............................................................................33, 36, 41, 43

28 U.S.C. § 1367(c)(3) ...................................................................................................69

28 U.S.C. § 1738 ...........................................................................................33, 36, 41, 43

42 U.S.C. § 1981 .......................................................................................................15, 30

42 U.S.C. § 1983 ...............................................................................................15, 30, 37, 51

42 U.S.C. § 1985 .......................................................................................................15, 37

Fed. R. Civ. P. 4(m).........................................................................................................16

Fed. R. Civ. P. 8(c) ...................................................................................................33, 60

Fed. R. Civ. P. 11(b)(3)...................................................................................................62

Fed. R. Civ. P. 12(b)(1)......................................................................................2, 16, 33

Fed. R. Civ. P. 17(b)........................................................................................................52

Fed. R. Evid. 201(b).........................................................................................................7

## STATE STATUTES AND CODES

Gen. Mun. Law §§ 50-i(1), 50-k(6) ................................................................. 30

N.Y. City Admin. Code § 7-110 ..................................................................... 72

N.Y. Const. Art. XIII, § 13 ........................................................................... 51

N.Y. County Law § 54 ................................................................................... 79

N.Y. County Law § 700, ............................................................................... 51

N.Y. County Law § 926-29 ........................................................................... 51

N.Y. County Law § 941 ................................................................................. 79

N.Y. CPLR § 215(3) ................................................................................. 30, 69

N.Y. Crim. Proc. Law § 1.20(1) ................................................................ 44, 51

N.Y. Crim. Proc. Law §§ 1.20(16)-(17) ......................................................... 18

N.Y. Crim. Proc. Law § 1.20(31) .............................................................. 44, 51

N.Y. Crim. Proc. Law § 1.20(32) .............................................................. 44, 51

N.Y. Crim. Proc. Law §§ 1.20(31), 1.20(32) ............................................. 44, 51

N.Y. Crim. Proc. Law § 210.40(1) ................................................................. 28

N.Y. Crim. Proc. Law § 440.10(1) ................................................................. 13

N.Y. Crim. Proc. Law § 440.10(5) ............................................................ 15, 27

N.Y. Crim. Proc. Law § 450.10(1) ................................................................. 34

N.Y. Crim. Proc. Law § 710.70(3) ................................................................. 42

N.Y. Gen. Mun. Law § 50-e(1) ................................................................ 72, 73

N.Y. Gen. Mun. Law § 50-i .......................................................................... 72

N.Y. Gen. Mun. Law § 50-i(1) ................................................................ 30, 70

N.Y. Gen. Mun. Law § 50-k .......................................................................... 72

N.Y. Gen. Mun. Law §§ 50-k(1)(e) ............................................................... 30

N.Y. Penal Law § 20.00 ........................................................................................................... 9

N.Y. Penal Law § 110.00 ......................................................................................................... 4

N.Y. Penal Law § 120.05(2) ..................................................................................................... 4

N.Y. Penal Law § 120.05(6) ..................................................................................................... 4

N.Y. Penal Law § 120.10(1) ..................................................................................................... 4

N.Y. Penal Law § 120.10(3) ..................................................................................................... 4

N.Y. Penal Law § 125.25(1) ..................................................................................................... 4

N.Y. Penal Law § 130.35(1) ..................................................................................................... 4

N.Y. Penal Law § 130.50(1) ..................................................................................................... 4

N.Y. Penal Law § 130.65(1) ..................................................................................................... 4

N.Y. Penal Law §§ 160.10(1), 160.10(2) ................................................................................. 4

N. Y. Penal Law § 240.06 ........................................................................................................ 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTRON McCRAY, et al.,

                                        Plaintiffs,

                - against -                                    03 Civ. 9685(DAB)

THE CITY OF NEW YORK, et al.,

                                        Defendants.

KHAREY WISE, et al.,

                                        Plaintiffs,

                - against -                                    03 Civ. 9974(DAB)

THE CITY OF NEW YORK, et al.,

                                        Defendants.

YUSEF SALAAM, et al.,

                                        Plaintiffs,

                - against -                                    03 Civ. 10080(DAB)

THE CITY OF NEW YORK, et al.,

                                        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS THE COMPLAINT AS TO DEFENDANTS ROBERT M.
MORGENTHAU, ELIZABETH LEDERER, TIM CLEMENTS, AND
THE "NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE"**

Defendants Robert M. Morgenthau, District Attorney of New York County ("DA Morgenthau"), Elizabeth Lederer, an Assistant District Attorney of New York County ("ADA Lederer"), Arthur "Tim" Clements, a former Assistant District Attorney of New York County ("Former ADA Clements"), and the "New York County District Attorney's Office" (collectively the "DA Defendants") submit this Memorandum of Law in support of their motion for an order pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the above-captioned complaints as to them for failure to state a claim upon which relief may be granted, and for any other

fair and equitable relief that may be appropriate.[1]

## PRELIMINARY STATEMENT

In this pre-answer motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the DA Defendants are obliged to assume the truth of factual assertions made by plaintiffs.  But the DA Defendants wish to make plain that they by no means concede the veracity of plaintiffs' contentions.  Indeed, plaintiffs' complaints contains numerous statements that are either misleading or outright false, some of which, quite frankly, cannot be squared with plaintiffs' Rule 11 obligations.  The DA Defendants emphasize that their failure to identify each of these misstatements in this memorandum is based solely on the procedural requirements attendant with the present motion.

## FACTUAL BACKGROUND AND THE PERTINENT ALLEGATIONS OF PLAINTIFFS' COMPLAINTS

### A.  The Events of April 19, 1989 and plaintiffs' arrests in connection therewith

On April 19, 1989, between 9:00 p.m. and 9:30 p.m., a series of criminal incidents occurred in Central Park, apparently perpetrated by some youths on a rampage.  First, a man was accosted by a group of youths on the park's East Drive.  Minutes later, another person was assaulted and robbed, and a couple riding a tandem bicycle was menaced soon thereafter.  Within a matter of moments, a taxi driver had rocks thrown at his cab, and was threatened when he exited his cab to investigate (MC ¶ 33; WC ¶ 24; SC ¶ 26).[2]  Then, four separate male joggers were attacked as they

---

[1] DA Morgenthau, ADA Lederer and the "New York County District Attorney's Office" are named as defendants in all three actions; Former ADA Clements is named as a defendant only in the action brought by the Kharey Wise plaintiffs.  Linda Fairstein, a former New York County Assistant District Attorney, is also named as a defendant in all three complaints; she is being represented in this action by the Corporation Counsel of the City of New York.

[2] Parenthetical references preceded by "MC," "WC" and "SC" are to the complaint filed by Antron McCray, Kevin Richardson, Raymond Santana Jr. and their relatives (03 Civ. 9685); the amended complaint filed by Kharey Wise and his relatives (03 Civ. 9974); and the complaint filed by Yusef Salaam and his relatives (03 Civ. 10080).  Unless the context suggests otherwise, the term "plaintiffs" will refer to the five criminal defendants convicted in the underlying criminal proceedings.

ran along the jogging path at the northern end of the reservoir; two escaped unharmed, but the other two -- including John Loughlin -- were assaulted, and Loughlin was beaten unconscious (MC ¶ 33; WC ¶ 24; SC ¶ 26; see also Prosecution's 440.10 Response ¶ 7 [DA Def. Exh. E]).[3]

The police responded to these incidents.  Shortly thereafter, Raymond Santana Jr., Kevin Richardson, and "a number of other youths" were arrested when the police spotted them on the western outskirts of Central Park near 100th Street; Santana and Richardson assert that the arresting officers used excessive force (MC ¶¶ 31-32, 35; WC ¶ 27).  Antron McCray, Kharey Wise, and Yusef Salaam were brought in for questioning the next day, April 20, 1989, after other arrested youths identified them as participants in "some of the events in the park" (MC ¶¶ 30, 36; WC ¶¶ 23, 27; SC ¶¶ 24-25).

Meanwhile, at about 1:30 a.m. on April 20, 1989, two men found an unconscious woman, Patricia Meili, lying on a footpath in Central Park.  Meili, who became known as "The Central Park Jogger," had been brutally beaten about her head and face, suffered numerous other bruises, scratches and abrasions, and had lost a significant amount of blood.  Her t-shirt had been used as a ligature, and she had been raped and sodomized (MC ¶ 24; WC ¶ 25; SC ¶ 27).

Over the next 24 to 48 hours, McCray, Santana, Richardson, Wise, and Salaam were questioned by several police officers.  According to the complaints, all but Salaam were eventually questioned by ADA Lederer; Wise also claims he was questioned by Former ADA Clements, and Salaam admits that he was questioned only by a detective, not by any prosecutor (MC ¶ 37; WC ¶ 28; SC ¶¶ 34-35, 40).  The initial police interviews were not recorded, and were conducted "in part[]

---

[3] Plaintiffs' complaints refer to the prosecution's 440.10 response (MC ¶ 55; WC ¶ 48; SC ¶ 51), and, indeed, many of their factual allegations appear to be lifted almost verbatim from that document.  The Court may therefore consider that document in passing on the present motion to dismiss.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  The Court may also take judicial notice of that document.  See note 5 infra.

without family advisers being present," although eventually various family members joined plaintiffs during their respective interviews (MC ¶¶ 38-39; WC ¶¶ 28-29; SC ¶¶ 40-41).  Although no one admitted raping Meili, McCray, Santana, Richardson, and Wise all made statements tending to incriminate themselves and each other in the attack upon Meili, and also implicated themselves in "a number" of the other assaults and robberies that had occurred during the evening of April 19, 1989.  Salaam notes that he "allegedly" made similar incriminating admissions (MC ¶ 38; WC ¶ 29; SC ¶¶ 34, 39, 41-42).  Those inculpatory admissions were memorialized in videotaped statements that all plaintiffs except Salaam made to ADA Lederer (MC ¶ 37; WC ¶¶ 28, 32-33; SC ¶¶ 40, 42).[4]

On or about April 22, 1989, McCray, Santana, Richardson, Wise, and Salaam were each charged in felony complaints with Rape in the First Degree (N.Y. Penal Law § 130.35(1)), Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110.00, 125.25(1)), and Assault in the First Degree (N.Y. Penal Law § 120.10(1)), all in connection with the attack on Meili (DA Defs. Exh. A [felony complaints]).[5]  On May 4, 1989, McCray, Santana, Richardson, Wise, and Salaam (as well as others) were indicted by a New York County grand jury.  Plaintiffs were charged with Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110.00, 125.25(1)), Rape in the First Degree (N.Y. Penal Law § 130.35(1)), Sodomy in the First Degree (N.Y. Penal Law § 130.50(1)), Sexual Abuse in the First Degree (N.Y. Penal Law § 130.65(1)), and two counts of Assault in the First Degree (N.Y. Penal Law §§ 120.10(1), 120.10(3)) in connection with the attack upon Meili; two counts of Robbery in the Second Degree (N.Y. Penal Law §§ 160.10(1), 160.10(2)(a)) and Assault in the Second Degree (N.Y. Penal Law §§ 120.05(2), 120.05(6)) for the attack upon John Loughlin;

---

[4] While the other plaintiffs seem to suggest that everyone made a videotaped statement to ADA Lederer (MC ¶ 37; WC ¶ 28), Salaam's complaint makes clear that he did not make a videotaped statement (SC ¶ 34).

[5] Pursuant to Rule 201(b) of the Federal Rules of Evidence, the Court may take judicial notice of the charging instruments (as well as any other documents) filed in plaintiffs' state court proceedings.  See LaFleur v. Whitman, 300 F.3d 256, 267 n.1 (2d Cir. 2002).

Assault in the Second Degree (N.Y. Penal Law § 120.05(6)) for the attack upon another jogger who had been set upon on April 19, 1989; and Riot in the First Degree (Penal Law § 240.06) for the crime spree that occurred that evening (DA Def. Exh. B [indictment]; see also MC ¶ 45; SC ¶ 28).

### B. The criminal proceedings against plaintiffs

> 1. Plaintiffs' challenges to the legality of their incriminating statements, and the related state court suppression and appellate proceedings

Plaintiffs do not specifically allege that the statements implicating them in the Central Park attacks (e.g., the robbery of Loughlin) were untruthful. They do claim that the defendants "elicit[ed]" from them "false statements . . . concerning their involvement in the attack on Meili" (MC ¶ 42; WC ¶ 39; SC ¶ 44). Plaintiffs now contend that their inculpatory statements were the product of coercive interrogation tactics on the part of the investigating police officers and, apparently, also ADA Lederer and, as to Wise, Former ADA Clements (MC ¶ 37-38; WC ¶¶ 28-29; SC ¶¶ 40-41). Specifically, plaintiffs claim that the police and prosecutors sought to "exploit their youthful age . . . and the lack of experience they and their parents and family members had with the criminal justice system," and utilized "coercion, isolation, intimidation, manipulation, suggestiveness, deceit, false promises, [and] sleep deprivation" to obtain their statements. The officials also "actively shap[ed] the statements' contents before they were formally given," told the plaintiffs "what facts to put in their written statements," and misled plaintiffs and their parents and/or family members "about the true intent behind the defendants['] questioning." Indeed, plaintiffs assert (without any explanation) that the police and prosecutors "manipulated" plaintiffs' relationships with their parents and/or family members, and somehow effectively "turn[ed] the family members into interrogators" (MC ¶ 38; WC ¶ 29; SC ¶ 41).

Two plaintiffs offer more particulars. Wise alleges that he was interrogated by "police officers and detectives for a number of hours," while his mother was being "misled by other police officers" about where her son was being held (WC ¶ 30). Wise also alleges that after making a videotaped

statement to ADA Lederer, he was questioned by a detective without his mother being present, in a "manner intended to coerce him" into making a more inculpatory statement (WC ¶ 32). Wise then made a further videotaped confession to ADA Lederer, which, he claims, contained false details about his involvement in the attack upon Meili. Wise also claims that he told ADA Lederer that he had been "induced" into making that statement by "police officers" who had "yelled at and struck" him, and that he had been "led to believe by these Defendants that if he made an inculpatory statement he would be allowed to go home" (WC ¶¶ 33-36). According to Wise, ADA Lederer and the police officers knew that his confession was "false," and they "conspired" "to cover up the coerced nature of the confession" which Wise has steadfastly disavowed (WC ¶¶ 33, 36, 44). Wise does not, however, explain exactly how ADA Lederer carried out that alleged conspiracy.

Salaam similarly claims that his inculpatory statements were made while he was "sealed off from his aunt, his 'big brother' (an Assistant U.S. Attorney) and his mother" (SC ¶ 34). According to Salaam, while he was being interviewed by a detective, those three individuals were "unlawfully and improperly prevented" from seeing him by ADA Lederer and another assistant district attorney (defendant Linda Fairstein) (SC ¶¶ 34-36). During that questioning Salaam made statements implicating himself in the attack upon Meili. However, according to his complaint, in later proceedings Salaam disavowed the truth of those statements, and "asserted his innocence of the crimes that occurred in Central Park on the night of April 19, 1989, and . . . specifically denied any involvement in the attack on Patricia Meili" (SC ¶ 36). Indeed, in subsequent proceedings all of the plaintiffs denied their involvement in that rape (MC ¶ 51; WC ¶ 44; SC ¶¶ 47-48).

During the course of the criminal prosecution, plaintiffs challenged the admissibility of their incriminating statements, raising most (if not all) of the very same alleged improprieties complained of in this civil action. Those legal challenges were aired in a suppression hearing that lasted almost two months, culminating in a 116-page decision of the trial court (Thomas B. Galligan, J.), dated February

23, 1990 (DA Def. Exh. C [suppression decision]).[6]  Justice Galligan made factual findings detailing at length the police investigation that occurred during the immediate aftermath of the rampage that occurred on April 19, 1989 (Suppression Decision: 3-13), as well as the interrogations and investigative efforts which followed (Suppression Decision:  14-70).  Justice Galligan then determined that there had been no illegality in the arrests or investigative detentions of any of plaintiffs (Suppression Decision: 71-81), and that, with one exception, all of plaintiffs' inculpatory statements had been lawfully obtained.[7]

Specifically, Justice Galligan found that the statements made by Richardson were voluntary and free of any police or prosecutorial misconduct (Suppression Decision: 81-86), and, apart from the single Miranda violation just noted, the court found no constitutional or other infirmity with the statements made by Santana (Suppression Decision: 86-93), McCray (Suppression Decision: 103-09), Salaam (Suppression Decision: 109-14), and Wise (Suppression Decision: 114).  Of particular note, Justice Galligan explicitly rejected Wise's contention that he had been physically or psychologically coerced (Suppression Decision: 114-15).  He also rejected Salaam's contention that he had been improperly questioned in the absence of a parent or guardian, concluding that Salaam had affirmatively "misrepresented his age to the police, telling them that he was sixteen," and had also provided them with a "school transit card" which "showed him to be sixteen" (Suppression Decision: 110-11).

Following their convictions, plaintiffs (except Santana, who elected not to appeal [MC ¶ 50]) appealed their convictions (MC ¶¶ 48-49; WC ¶ 43; SC ¶ 33).  The Appellate Division unanimously

---

[6] Pursuant to Fed. R. Evid. 201(b), the Court may take judicial notice of the written decisions issued by the state courts during plaintiffs' criminal proceedings (e.g., the trial court's suppression decision).  See New York v. Operation Rescue Nat'l, 273 F.3d 184, 199 (2d Cir. 2001).  Indeed, it is especially appropriate to do so where, as here (see discussion infra) a defense of issue and/or claim preclusion is raised.  See Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000).  And, of course, the Court "may refer to evidence outside the pleadings" in resolving a motion to dismiss for lack of subject matter jurisdiction.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

[7] The lone exception was a statement by Santana (unchallenged by Santana at the suppression hearing) which Justice Galligan concluded had been obtained by the police in violation of Miranda (Suppression Decision: 94-95).  This isolated Miranda violation is not at issue here.

affirmed plaintiffs' convictions, concluding in each appeal that the respective plaintiff's statements had been lawfully obtained.  See People v. Wise, 612 N.Y.S.2d 117, 117-18 (App. Div. 1994); People v. Richardson, 608 N.Y.S.2d 627, 628 (App. Div. 1994); People v. McCray, 604 N.Y.S.2d 93, 94-95 (App. Div. 1993); People v. Salaam, 590 N.Y.S.2d 195, 196 (App. Div. 1992).  The New York Court of Appeals granted Salaam leave to appeal (denying the applications made by the other plaintiffs), and likewise concluded, in a 5-1 decision, that there had been no illegality in the obtaining of his inculpatory statements.[8]  People v. Salaam, 607 N.Y.S.2d 899, 899-902 (N.Y. 1993).

> 2.  Plaintiffs' challenges to the lawfulness of their arrests and prosecutions, and the related trial and appellate proceedings

Plaintiffs also assert that their inculpatory statements had "serious weaknesses and major inconsistencies which should have raised doubts about and negated probable cause to arrest."  In particular, plaintiffs contend that their accounts "differ[ed]" on "significant details" pertaining to the attack and rape of Meili, such as who struck her, who actually raped her, and their descriptions of the crime scene (MC ¶¶ 39-40; WC ¶ 31, 37; SC ¶ 42).[9]  Plaintiffs also contend that their statements "conflicted with the physical evidence."  Specifically, plaintiffs point out that even though the rape victim had "lost significant amounts of blood, there was no blood evidence that implicated any of the plaintiffs in the crimes against her," and the fact that "the impression left on the ground from the spot where Meili was first knocked down to where she was dragged" and raped measured "forty feet long and no more than 16 to 18 inches wide," purportedly "exclud[ing] the possibility that she was dragged

---

[8] Notably, even the dissenting judge found no federal constitutional infirmity in Salaam's confessions.  See People v. Salaam, 607 N.Y.S.2d at 904-06 (Titone, J., dissenting).

[9] While plaintiffs highlight the fact that they inaccurately described the crime scene, that is hardly a matter that showed their innocence to investigators in 1989.  Even the man who later confessed to raping Meili, Matias Reyes, was also unable to describe the crime with complete accuracy (Prosecution's 440.10 Response ¶¶ 30-31, 63, 64(1)-(8), 65).

by five un-regimented teenage boys" (MC ¶ 41; WC ¶ 38; SC ¶ 43).[10]  Plaintiffs also assert that the fact

that none of their DNA matched the samples collected from the crime scene "demonstrated that they

were not responsible for the attack on" Meili (MC ¶ 75; WC ¶ 67; SC ¶ ).[11]

Despite these alleged "weaknesses" in plaintiffs' inculpatory statements, the grand jury

nevertheless found probable cause to believe that plaintiffs had been involved in the crimes that

occurred in Central Park on April 19, 1989 (DA Def. Exh. B [indictment]; see also MC ¶ 45; SC ¶ 28).

Justice Galligan likewise determined that the evidence presented to the grand jury was sufficient to

support the charges (DA Def. Exh. D [ruling on omnibus motion]).  And, at plaintiffs' trials, the

juries, based largely on their incriminating statements, convicted plaintiffs of Meili's rape, as well as

other crimes of April 19, 1989 (MC ¶¶ 46-47; WC ¶ 42; SC ¶¶ 29-31, 46).  The jury returned those

guilty verdicts knowing that the DNA evidence did not match any of the plaintiffs -- thereby

indicating that there was an unapprehended assailant -- and even though there was "no physical or

forensic evidence" linking them to the rape (MC ¶¶ 59-61; WC ¶¶ 51-53; YC ¶¶ 55-56, 64), other

than three hairs found on Richardson which, according to the prosecution's expert trial witness,

linked Richardson to the jogger (MC ¶ 58; SC ¶ 54).

With the exception of Santana, who, again, elected not to appeal (MC ¶ 50), plaintiffs'

convictions all withstood their challenges to the adequacy of the evidence against them (MC ¶¶ 48-

49; WC ¶ 43; SC ¶ 33).  On each occasion, the Appellate Division found more than sufficient

---

[10] Plaintiffs' references to the drag marks provides a typical instance of the retrospective analysis they employ in their pleadings.  While the drag marks are supportive of Reyes's account, they are not so definitive as to have excluded other possible scenarios in the mind of an investigator who did not have the benefit of Reyes's confession.

[11] This assertion is obviously incorrect as a matter of law.  Plaintiffs were guilty even if they did not participate in the physical act of rape if they aided the rapist, i.e., if they acted as accomplices. See N.Y. Penal Law § 20.00.

evidence to sustain plaintiffs' convictions.[12]  As a result of their convictions, plaintiffs were required to serve substantial terms of imprisonment (MC ¶¶ 48-50; WC ¶ 43; SC ¶¶ 32, 37-38).

　　　　3.　Plaintiffs' allegations concerning Matias Reyes and the prosecution's
　　　　　　post-conviction investigation

In January 2002, Matias Reyes, a convicted murder and rapist who was serving prison sentences totaling $33\frac{1}{3}$ years to life, informed law enforcement officials that "he, alone, committed the rape and other crimes concerning the female jogger" (MC ¶ 52; WC ¶ 45).  The New York County District Attorney investigated that claim and submitted Reyes's DNA for comparison; on May 8, 2002, the District Attorney was notified that that Reyes's sample matched the DNA found at the scene of Meili's rape (MC ¶¶ 53, 55, 57, 70; WC ¶¶ 46, 48, 50, 62; SC ¶¶ 49, 51, 53, 64).  The District Attorney also sought a new examination of the hair evidence linking Richardson to that crime, and upon this reexamination the expert concluded that "the hairs were not suitable for comparison and could not be used to connect Richardson to the Central Park jogger" (MC ¶ 58; WC ¶ 54; SC ¶ 53).

The District Attorney next undertook to investigate Reyes's claim to have acted alone during the attack upon Meili.  Reyes's account of the crime itself was generally consistent with the objective evidence, and provided corroboration (if any was needed given the DNA match) of his involvement (Prosecution's 440.10 Response ¶¶ 63-64; see also MC ¶ 62; WC ¶ 54; SC ¶¶ 57, 63).  Plaintiffs assert that Reyes's claim to have acted alone was most "consistent with" the evidence (MC ¶¶ 62, 64; WC ¶¶

---

[12]  See People v. Wise, 612 N.Y.S.2d at 118 (Wise's "various statements and admissions" provided "sufficient evidence" to support the verdict); People v. Richardson, 608 N.Y.S.2d at 627 ("the jury was certainly warranted in finding that a rape had occurred and that defendant participated in the act, either as an accomplice or one of the rapists," and "[t]here was also substantial evidence that defendant was one of the youths responsible for nearly killing the victim and that he was also involved in the attack and robbery of John Loughlin"); People v. McCray, 604 N.Y.S.2d at 95-96 ("the proof that a rape occurred is overwhelming," and evidence "amply corroborated his confession" which "supplied the missing evidence of his identity, and of his participation in the crime"); People v. Salaam, 590 N.Y.S.2d at 196 (Salaam's "detailed inculpatory statement in which he admitted using a pipe to beat the male jogger, as well as the female jogger, when she resisted one of his accomplices," was "corroborated overwhelmingly by substantial physical evidence").

54, 56; SC ¶¶ 57, 59, 63).  The District Attorney also examined the circumstances of the convictions for which Reyes was incarcerated, all of which involved crimes committed in the summer of 1989 (Prosecution's 440.10 Response ¶ 55).  Those crimes included four robbery/rapes that occurred inside apartments in the same general Upper East Side neighborhood -- in one of which the victim was stabbed to death -- as well as an additional apartment robbery in that vicinity during which, Reyes admitted, he had intended to rape his victim.  The victims in those crimes were white or light-skinned Hispanic women in their twenties; three of those women had been attacked with a knife (one fatally), and one was bound in a manner which was similar -- but not identical -- to manner in which Meili had been found (Prosecution's 440.10 Response ¶¶ 55(1)-(5); see also MC ¶ 56; WC ¶ 49; SC ¶ 52).

Additionally, Reyes informed the prosecutors that he had raped another woman in Central Park, but he had "limited" recollection of the incident (Prosecution's 440.10 Response ¶ 56; see also MC ¶ 52; WC ¶ 45).  That crime had occurred on the afternoon of April 17, 1989 (two days before the attack upon Meili), and involved a twenty-six-year old white woman who had been exercising near Lasker Rink and Pool, near 107th Street (about five blocks north and some distance east of where Meili was attacked).  The victim of that attack was also robbed and badly beaten; she was not, however, bound in any fashion, and the assault ended when a bystander intervened.  The police investigation ended when the victim could not later be contacted (Prosecution's 440.10 Response ¶¶ 57-59).[13]

---

[13] In their complaints, plaintiffs allege, "on information and belief," that the DA Defendants (among others) "encourag[ed] the victim of Reyes's crime on April 17, 1989 . . . to drop the prosecution" (MC ¶ 76; WC ¶ 68; SC ¶ 70).  While plaintiffs' complaints contain several unsubstantiated allegations of prosecutorial misconduct, this one its particularly outrageous.  If plaintiffs do not agree to withdraw this statement, they should be ordered to articulate with specificity their good-faith basis for making this accusation and, when they cannot do so, should be sanctioned.  Plaintiffs are, none to subtly, trying to use this forum as a tool to defame the DA Defendants with outlandish allegations of professional misconduct.  Plaintiffs' efforts to do so amount to an unethical abuse of the judicial system and should be dealt with accordingly.

In August 1989, Reyes was arrested and questioned by police officers in connection with "numerous sexual assaults that he was suspected of committing." Reyes's DNA was analyzed and was "matched to several sexual assaults that occurred during the spring and summer of 1989," namely the Upper East Side robberies, rapes, and murder that resulted in his conviction and incarceration (MC ¶ 65; WC ¶ 57; SC ¶ 60). Even though the crimes for which Reyes was arrested were markedly different from the rape of April 17, 1989, plaintiffs assert that the DA Defendants and the investigating officers should have nevertheless connected Reyes to the April 17th attack, and then to the April 19, 1989 attack upon Meili (MC ¶¶ 43-44, 75; WC ¶¶ 40-41; SC ¶¶ 45, 69). Indeed, in plaintiffs' view, the earlier Central Park rape shared "fingerprint-like characteristics" with the April 19th rape. Plaintiffs assert that "at the time they were interrogating" plaintiffs about the attack on Meili the defendants "knew" or "reasonably should have known of a far more likely suspect," namely Reyes (MC ¶ 43; WC ¶¶ 40, 45; SC ¶¶ 62, 70). At the very least, plaintiffs assert, by the time of Reyes's arrest in August 1989, the DA Defendants (and others) "knew or should have known" that plaintiffs were not involved in the April 19th rape, and also "knew or should have known" that Reyes had been involved (MC ¶¶ 75-76; WC ¶ 67-68; SC ¶ 69-70). Plaintiffs infer that the DA Defendants and others "deliberately and purposefully" "suppressed the truth about Reyes," in order to "cover-up Reyes's connection to the Central Park Jogger case" (MC ¶¶ 44, 67-68, 72-73, 76, 81; WC ¶¶ 41, 59, 60, 64-65, 68; SC ¶¶ 45, 62, 66, 69-70). Not surprisingly, plaintiffs advance not a single factual allegation which could reasonably support any such inference.[14]

---

[14] This is most likely because these accusations do not bear scrutiny. Plaintiffs admit that Reyes was not even taken into custody until August 1989 -- some four months after their interrogations -- and then only in connection with crimes other than the April 17th rape (MC ¶ 65; WC ¶ 57; SC ¶ 69). And the four rapes for which Reyes was arrested in August 1989 were different in significant respects from the crimes in Central Park. They all occurred inside the victims' Upper East Side apartments, and all but one involved the use of a knife (Prosecution's 440.10 Response ¶¶ 55(1)-(3), (5)). Plaintiffs allege no similarities which should have alerted the authorities that the

(continued…)

<u>4.  Plaintiffs' post-judgment motions</u>

In September 2002, plaintiffs filed motions in the Supreme Court, New York County, seeking to vacate their judgments of conviction under N.Y. Crim. Proc. Law § 440.10(1)(g), on the ground of newly discovered evidence (MC ¶ 54; WC ¶ 47; SC ¶ 50).  In December 2002, the New York County District Attorney filed a response to those motions, in which the District Attorney conceded that the evidence implicating Reyes in the April 19, 1989 rape -- namely the DNA evidence linking him to the crime, as well as his confession and claim that "he alone attacked and raped Meili" -- constituted "newly discovered evidence" within the meaning of New York's post-judgment statute (MC ¶ 55; WC ¶ 48; SC ¶ 51; <u>see also</u> Prosecution's 440.10 Response ¶ 80).  Although the District Attorney concluded that the plaintiffs' inculpatory statements were "sufficiently persuasive" to support the jury's verdicts, he agreed that Reyes's claim to have acted alone, coupled with new forensic evidence and certain "weaknesses" inherent in plaintiffs' statements, was sufficient to entitle plaintiffs to a new trial on the counts involving the robbery and rape of Meili (Prosecutions' 440.10 Response ¶¶ 80-105).  Reyes's confession did not, however, have any factual relation to the other charges for which plaintiffs were convicted (Prosecution's 440.10 Response ¶ 106).  Nevertheless, the District Attorney agreed that, "[u]nder the extraordinary circumstances" of this case, plaintiffs were entitled to a new trial on those charges as well,

_____

(...continued)

apartment rapist was connected to the April 19th rape in Central Park, and it is thus hard to see how they can assert that that attack was somehow reflective of the "pattern" or "modus operandi" of Reyes's other crimes (MC ¶¶ 63, 69; WC ¶¶ 55, 61; SC ¶ 58, 63).

Moreover, the fact that two days earlier another young white woman had been beaten and raped in a different area of Central Park hardly compelled the conclusion that both crimes had been committed by the same individual.  These crimes did not, as plaintiffs assert, manifest "fingerprint-like" similarities.  Apart from the fact that both crimes involved young white women who were raped somewhere in Central Park, these crimes were markedly different from each other.  Indeed, the true "pattern" evident to the investigators of the Central Park Jogger rape was that it occurred during a rampage by plaintiffs and other youths in the immediate vicinity of the rape.  Plainly, the "pattern" of crimes evident in Central Park on April 19, 1989 strongly suggested that the jogger assault was committed by those involved in the rampage, not by a serial rapist.

notwithstanding that two of them (Richardson and Santana) had "candidly acknowledged involvement in criminal incidents that occurred on April 19" in interviews they gave in 2002 (Prosecution's 440.10 Response ¶¶ 107-118).

While the District Attorney was formulating his response to plaintiffs' motions, on November 1, 2002, the Commissioner of the New York City Police Department announced the establishment of an investigatory commission (the "Armstrong Commission") to "review the events of April 19, 1989" and to investigate "whether police supervisors or officers acted properly or improperly" (MC ¶ 78; WC ¶ 70; SC ¶ 72). The Armstrong Commission concluded that there had been no misconduct on the part of any police officer connected with the April 19, 1989 investigation, "either in the manner in which they interrogated the plaintiffs or their failure to connect Reyes to the rape and assault of Meili prior to him coming forward and admitting his involvement" (MC ¶ 78; WC ¶ 72; SC ¶ 72). The Armstrong Commission further concluded that, "notwithstanding the Reyes confession," the evidence still reasonably supported the conclusion that "plaintiffs were nevertheless guilty of the sexual assault on Meili" (MC ¶ 79; WC ¶ 73; SC ¶ 73). According to plaintiffs, by establishing this commission the Police Commissioner and other defendants became involved in a conspiracy designed "to propound the belief that the plaintiffs were and are in fact guilty of the crimes they were charged with" (MC ¶¶ 74, 77, 80; WC ¶¶ 66, 69, 71, 75; SC ¶¶ 68, 71, 74, 76 ).[15]

On December 19, 2002, Justice Charles J. Tejada granted plaintiffs' motions to vacate their convictions "upon the sole grounds of newly discovered evidence." People v. Wise, et al., 752 N.Y.S.2d 837, 839 (Sup. Ct., N.Y. Co. 2002) (MC ¶ 66; WC ¶ 58; SC ¶ 61). Justice Tejada's decision did not purport to "exonerat[e]" plaintiffs of the crimes for which they had been convicted, as plaintiffs assert

_____

[15] Although plaintiffs have not sought to specify which defendants were part of this purported conspiracy, they obviously do not mean to include the DA Defendants (see MC ¶¶ 92-96; WC ¶¶ 85-90; SC ¶¶ 72-74). The DA Defendants played no role in either establishing that commission or ratifying its findings.

-14-

(MC ¶ 77; WC ¶ 69; SC ¶ 71).  Justice Tejada merely found, as conceded by the People, that had the newly-discovered evidence been received at trial, there was a "reasonable probability" that "the verdict would have been more favorable to the [plaintiffs]," and that plaintiffs were therefore entitled to "a new trial."  People v. Wise, et al, 752 N.Y.S.2d at 848, 850; see also N.Y. Crim. Proc. Law § 440.10(5)(a).  Ultimately, however, the District Attorney elected not to pursue a retrial of plaintiffs. The District Attorney moved to dismiss the indictment on the ground that "no useful purpose would be served by a retrial" (DA Def. Exh. F [Prosecution's Motion to Dismiss Indictment, p.3]).  That motion was granted.

## ARGUMENT

### THE COMPLAINTS SHOULD BE DISMISSED AS TO DA MORGENTHAU, ADA LEDERER, FORMER ADA CLEMENTS AND THE "NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE" FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

In their federal causes of action against the DA Defendants, plaintiffs seek money damages under 42 U.S.C. §§ 1981, 1983, and 1985, as well as New York state law, for their allegedly unconstitutional and tortious activities in connection with plaintiffs' prosecution under New York County Indictment Number 4762/89.  Plaintiffs first seek to hold all the DA Defendants liable, in both their individual and official capacities (MC ¶¶ 20, 28; WC ¶¶ 13, 21; SC ¶¶ 9, 17), for false arrest and malicious prosecution under § 1981 and § 1983 (MC ¶¶ 81, 84, 86; WC ¶¶ 76, 77;  SC ¶¶ 94-95, 97). Plaintiffs' relatives have asserted derivative claims for loss of familial association under § 1983 based on plaintiffs' prosecution and resulting incarceration (MC ¶¶ 106-08; WC ¶ 102-04; SC ¶¶ 106-09). Plaintiffs further seek to hold ADA Lederer and Former ADA Clements (Wise only) liable for conspiracy under § 1983 and § 1985, claiming, in essence, that these prosecutors conspired to violate their rights by prosecuting them based on their allegedly coerced confessions, by allegedly suppressing exculpatory evidence (namely the evidence of Reyes's serial rapes), and by failing to investigate whether

Reyes had been involved in the April 19, 1989 rape of which plaintiffs were accused (MC ¶¶ 88-89; WC ¶¶ 80-82; SC ¶¶ 100-04).  As against the "New York County District Attorney's Office," plaintiffs assert a § 1983 claim under <u>Monell</u> and its progeny, claiming that their prosecutions were the result of various unconstitutional prosecutorial policies purportedly adopted by that office (MC ¶¶ 98-99; WC ¶¶ 92-94; SC ¶¶ 85-91, 115-17).  Finally, plaintiffs invoke the Court's supplemental jurisdiction to assert a host of state law claims against the DA Defendants (MC ¶¶ 101-02, 104; WC ¶¶ 96-100; SC ¶¶ 119, 122; 128-29; 132-33; 135-36; 138; 144-45, 147-49).

      Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), a complaint must be dismissed when it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him to relief.  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) (Rule 12(b)(6)); <u>Sweet v. Sheahan</u>, 235 F.3d 80, 83 (2d Cir. 2000) (Rule 12(b)(1)).  The Court's inquiry under Rule 12(b)(6) is generally limited to testing the allegations of the complaint, though the Court should also consider any "matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d at 153. Likewise, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)," the Court "may refer to evidence outside the pleadings."  <u>Makarova v. United States</u>, 201 F.3d at 113.  Here, even assuming the truth of plaintiffs' factual allegations, <u>see</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508, n.1 (2002) (Rule 12(b)(6)); <u>Merritt v. Shuttle, Inc.</u>, 245 F.3d 182, 186 (2d Cir. 2001) (Rule 12(b)(1)), and drawing all reasonable inferences in plaintiffs' favor, <u>see</u> <u>Christopher v. Harbury</u>, 536 U.S. 403, 406 (2002) (Rule 12(b)(6)); <u>McGinty v. New York</u>, 193 F.3d 64, 68 (2d Cir. 1999) (Rule 12(b)(1)), plaintiffs' complaint should be dismissed as to the DA Defendants.[16]

---

[16] Salaam also names as defendants various "Richard and Rachel Roes" alleged to be Assistant District Attorneys for New York County (SC ¶ 18).  The undersigned does not purport to be presenting this motion on their behalf.  Of course, since Salaam has not served these defendants (continued…)

### I.   Plaintiffs' Federal and State Law Claims against the DA Defendants for False Arrest and Imprisonment and Malicious Prosecution

We begin by distinguishing which periods could support a claim for false arrest and imprisonment, and which a claim for malicious prosecution.  In New York, a cause of action for false arrest and imprisonment under § 1983 "is substantially the same as a claim for false arrest under New York law."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  A false arrest claim under § 1981 requires proof of these common-law elements, plus a showing that the arrest was the product of "intentional racial discrimination."  Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000).  A claim for "false arrest (or false imprisonment) allows plaintiffs to seek damages from 'the time of detention up until issuance of process or arraignment, but not more.'"  Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999) (citation omitted).  Once a plaintiff is arraigned the tort of false arrest and imprisonment comes to an end, since "after arraignment the accused is no longer held as a result of the arrest but as a result of the intervening act of the arraigning Magistrate."  Broughton v. State, 373 N.Y.S.2d 87, 96 (N.Y. 1975).  Thereafter, "the tort of malicious prosecution . . . [is] implicate[d] [by any] post-arraignment deprivations of liberty."  Singer v. Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995); accord Heck v. Humphrey, 512 U.S. 477, 484 (1994).

Here, Santana and Richardson were arrested near Central Park on the evening of April 19, 1989, shortly after the rampage there had been reported (MC ¶¶ 31-32, 35; WC ¶ 27).  McCray, Wise, and Salaam were brought in for questioning the next day, April 20, 1989, after having been identified by other suspects as participants in "some of the events in the park" (MC ¶¶ 30, 36; WC ¶¶ 23, 27; SC ¶¶ 24-25).  Felony criminal complaints were filed against plaintiffs no later than April

---

(...continued)

within the time set by the federal rules, see Fed. R. Civ. P. 4(m), or the August 20, 2004 deadline established by the Court's June 18, 2004 scheduling order, the DA Defendants would have no objection if the Court, on its own motion, chooses to dismiss Salaam's complaint as against these unserved defendants.

22, 1989, marking the commencement of the criminal prosecution against them.  <u>See</u> N.Y. Crim. Proc. Law §§ 1.20(16)-(17).  Plaintiffs' claims for false arrest and imprisonment thus "implicate[] only the brief [two- or three-day] period" spanning their respective "arrest[s] to arraignment." <u>Dallas v. Goldberg</u>, 143 F. Supp.2d 312, 321 (S.D.N.Y. 2001); <u>see also</u> <u>Williams v. Moore</u>, 602 N.Y.S.2d 199, 202 (App. Div. 1993).  Claims for any later period during which plaintiffs were incarcerated must be brought in the context of a cause of action sounding in malicious prosecution. <u>See</u> <u>Bender v. City of New York</u>, 78 F.3d 787, 793 n.3 (2d Cir. 1996).  Plaintiffs, however, cannot recover against any of the DA Defendants under either theory of liability.

A.  Malicious Prosecution

The gravamen of plaintiffs' claims against the DA Defendants is that they were subjected to malicious prosecution.  This, of course, must be the case.  As discussed above, it is only under this theory that plaintiffs could possibly recover under federal or state law for any period of incarceration following their arraignments.  It is, however, crystal clear that plaintiffs have no viable claim against the DA Defendants for malicious prosecution, under either federal or state law.  As will be noted below, perhaps the clearest reason is that the DA Defendants enjoy complete immunity from any such claim.  Indeed, considering that the law in this area is so well settled, it is hard to see how plaintiffs can pursue such a cause of action in good faith.

*1. Official Capacity Claims*

Insofar as plaintiffs are seeking to hold DA Morgenthau, ADA Lederer and Former ADA Clements liable, in their official capacities, plaintiffs plainly have no cause of action justiciable in this Court.  "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."  <u>Gan v. City of New York</u>, 996 F.2d 522, 536 (2d Cir. 1993) (quoting <u>Baez v. Hennessey</u>, 853 F.2d 73, 77 (2d Cir. 1988)).  But the Eleventh Amendment divests this Court of subject matter jurisdiction over any claim for money damages

against a state actor in his or her official capacity.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Thus, any official-capacity claim for damages against the DA Defendants is plainly barred by the Eleventh Amendment.[17]  See Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997); Gan v. City of New York, 996 F.2d at 529, 536.  The Eleventh Amendment likewise precludes any state law claim brought in this forum against the DA Defendants in their official capacities.  See Penhurst State Schools & Hosp. v. Halderman, 465 U.S. 89, 120-21 (1984).  Moreover, a state actor sued in his or her official capacity is not a "person" subject to liability under § 1983, see Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and this is the additional "stopper" to any such "official capacity" claim against the DA Defendants.  Arizonans for Official English v. Arizona, 520 U.S. 43, 69 & n.24, (1997); see also Gan v. City of New York, 996 F.2d at 529.

### 2.  *Individual Capacity Claims*
### <u>a.</u>

Plaintiff's claims against the DA Defendants in their individual capacities fare no better.  To begin, plaintiffs have not specifically alleged that DA Morgenthau was personally involved in the conduct of their criminal prosecutions.  But a defendant's "[p]ersonal involvement . . . in alleged constitutional deprivations is a prerequisite to an award of damages" under the federal civil rights statutes.  Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).  Personal involvement is likewise a prerequisite to any recovery against DA Morgenthau under a state law claim for malicious

---

[17] Plaintiffs have asked the Court to award them declaratory and injunctive relief (MC ¶ 2, Prayer for Relief ¶ (f); WC ¶ 2, Prayer for Relief ¶¶ (c),(f); SC ¶ 1, Prayer for Relief ¶ (c)).  It appears that they are asking for a declaration that their rights were violated during their criminal prosecutions (e.g., WC Prayer for Relief ¶ (b)).  The Eleventh Amendment, however, precludes the awarding of any such retrospective declaratory relief.  See Green v. Mansour, 474 U.S. 64, 71-74 (1985); Ward v. Thomas, 207 F.3d 114, 119-20 (2d Cir. 2000).  And while the Eleventh Amendment does not bar a claim for prospective injunctive relief, see Connecticut ex rel. Blumenthal v. Cahill, 217 F.3d 93, 101 (2d Cir. 2000), plaintiffs do not "'allege[] an ongoing violation of federal law'" by any of the DA Defendants.  Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)).

prosecution (see discussion infra).  "Because there are no allegations that D.A. Morgenthau was personally involved in plaintiff[s'] prosecution," for this reason alone "the malicious prosecution and wrongful imprisonment claims against D.A. Morgenthau must be dismissed."  Washington v. Kelly, 2004 U.S. Dist. LEXIS 6580, *8 (S.D.N.Y. Apr. 12, 2004); see also Haygood v. City of New York, 64 F. Supp. 2d 275, 279-80 (S.D.N.Y. 1999) (same).[18]

Otherwise, the Supreme Court has made plain that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); see also Imbler v. Pachtman, 424 U.S. 409, 431 (1976).  The same holds true as a matter of New York law.  See Arteaga v. State, 532 N.Y.S.2d 57, 59-60 & n.1 (N.Y. 1988); Hirschfeld v. City of New York, 686 N.Y.S.2d 367, 370-71 (App. Div. 1999).  And, the Second Circuit has squarely held that when a plaintiff is seeking to hold a prosecutor liable in his or her individual capacity, any allegation that the prosecutor "engaged in malicious prosecution of the charge against [the plaintiff] is clearly within the 'judicial phase of the criminal process,'" and thus barred by absolute prosecutorial immunity.  Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990) (quoting Imbler v. Pachtman, 424 U.S. at 430); see also Drakeford v. City of New York, 775 N.Y.S.2d 138 (App. Div. 2004).

That this must be so is confirmed simply by examining the elements of malicious prosecution.  To prevail on such a claim, a plaintiff is required to show, inter alia, "'that a criminal

---

[18] Plaintiffs' complaints would fare no better even if they were to allege that DA Morgenthau had taken an active supervisory role in the conduct of their prosecutions.  This is so because DA Morgenthau would be entitled to assert "the same immunity defenses" available to his subordinate prosecutors, Gan v. City of New York, 996 F.2d at 536-37; see also Pinaud v. County of Suffolk, 798 F. Supp. 913, 918 (E.D.N.Y. 1992), aff'd in part, rev'd in part, 52 F.3d 1139 (2d Cir. 1995), defenses which, as discussed infra, are fatal to plaintiffs' malicious prosecution claims against the DA Defendants.

proceeding was commenced'" against him.  Rogers v. City of Amsterdam, 303 F.3d 155, 160 (2d Cir. 2002) (quoting Martinez v. City of Schenectady, 735 N.Y.S.2d 868, 872 (N.Y. 2001)).  But obviously, a prosecutor's decision to file criminal charges is the paradigm act of "initiating a prosecution." Imbler v. Pachtman, 424 U.S. at 431; see also Gan v. City of New York, 996 F.2d at 530. Necessarily, then, any claim sounding in malicious prosecution will be barred by prosecutorial immunity.  This remains so even if, as plaintiffs claim, the prosecutors' actions were racially motivated.   See Bernard v. County of Suffolk, 356 F.3d 495, 504-05 (2d Cir. 2004) (while "racially invidious or partisan prosecutions, pursued without probable cause, are reprehensible," an allegation "that improper motives may [have] influence[d] [a prosecutor's] authorized discretion cannot deprive him of absolute immunity"); see also Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987).

Particular examination of the purportedly tortious acts undertaken by ADA Lederer and Former ADA Clements in connection with plaintiffs' criminal prosecution demonstrates unequivocally that they, and DA Morgenthau as well, are entitled to the protections of prosecutorial immunity.[19]  Plaintiffs first seek to hold the DA Defendants liable for their use of plaintiffs' inculpatory statements at their criminal trials (MC ¶ 47; WC ¶ 42; SC ¶ 46).  According to plaintiffs, the DA Defendants "knew or should have known" that plaintiffs' statements were false, but nevertheless "knowingly" presented that "false inculpatory evidence" to the jury (MC ¶¶ 47, 67, 81, 84, 86; WC ¶¶ 41, 59, 76; SC ¶¶ 4, 62, 75, 95, 97-98).  The Second Circuit, however, has squarely held that "absolute immunity protects a prosecutor" from any claim based on the allegation that he or she knowingly "present[ed] false evidence at a criminal trial."  Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994); see also Imbler v. Pachtman, 424 U.S. at 431 n.34; Daloia v. Rose, 849 F.2d 74, 75 (2d

---

[19] Although Former ADA Clements is no longer employed by the New York County District Attorney, there is no doubt that he is entitled to invoke the shield of prosecutorial immunity for conduct that was previously undertaken in his capacity as a prosecutor.  See Quartararo v. Catterson, 917 F. Supp. 919, 954 (E.D.N.Y. 1996).

Cir. 1988); Lee v. Willins, 617 F.2d 320, 322 (2d Cir. 1980); accord Johnson v. Town of Colonie, 477 N.Y.S.2d 513, 514 (App. Div. 1984) (prosecutor allegedly "continued the prosecution despite his personal knowledge that plaintiff had not committed the crime"); Brenner v. County of Rockland, 413 N.Y.S.2d 185, 186 (App. Div. 1979) (prosecutor allegedly persisted in prosecution without "thoroughly investigat[ing] the matter"); Cunningham v. State, 422 N.Y.S.2d 497, 499 (App. Div. 1979) (prosecutor allegedly engaged in a "selective and highly distorted presentation of evidence"); see generally Kalina v. Fletcher, 522 U.S. 118, 124 (1997).

Plaintiffs also claim that the DA Defendants withheld purportedly exculpatory evidence from them.  Specifically, plaintiffs allege that the DA Defendants did not disclose "the existence of" Matias Reyes or the fact that, prior to their criminal trials, Reyes had pleaded guilty to "several rapes and sexual assaults" that had occurred in 1989 (MC ¶¶ 43, 52, 62-63, 65, 67-68, 72-73, 76, 81; WC ¶¶ 45, 54-55, 57, 59-60, 64-65, 67-68, 76; SC ¶¶ 52, 57-58, 60, 62, 66-67, 69-70, 75).  Plaintiffs also fault the DA Defendants for not disclosing that on April 17, 1989, another woman had been raped in Central Park.  Plaintiffs assert that by the time of their trials the DA Defendants "knew" or "should have known" that Reyes was involved in that crime (MC ¶¶ 43, 67; WC ¶¶ 40, 59; SC ¶¶ 45, 62).[20] Salaam also claims that these non-disclosures deprived him of his due process rights and the right to effective assistance of counsel (SC ¶¶ 97(b)-(d), (f)-(g)).  Again, however, the Supreme Court, the Second Circuit, and the New York courts have made plain that prosecutors enjoy absolute immunity from any malicious prosecution claim based on the alleged suppression of exculpatory evidence.  See Imbler v. Pachtman, 424 U.S. at 431 n.34; Hill v. City of New York, 45 F.3d 653, 662 (2d Cir. 1995); Whitmore v. City of New York, 436 N.Y.S.2d 323, 325 (App. Div. 1981).

---

[20] As pled, this claim sounds in negligence, which is not actionable under the federal civil rights statutes.  See Smith v. Gribetz, 958 F. Supp. 145, 149 n.3 (S.D.N.Y. 1997) (claim "that the D.A. Defendants 'knew or, within the exercise of reasonable care and investigation, should have known' of the existence of exculpatory evidence" was not actionable under § 1983).

Finally, plaintiffs make a general claim that the DA Defendants' alleged misconduct resulted in the "deception of grand juries, petit juries, and the New York courts" (MC ¶ 81; WC ¶ 76; SC ¶ 75). But again, the law is clear that absolute immunity protects prosecutors not only from claims concerning conduct at trial (i.e., before the petit jury), see, e.g., Gan v. City of New York, 996 F.2d at 530; but also for conduct before the grand jury, see Bernard v. County of Suffolk, 356 F.3d at 503; Hill v. City of New York, 45 F.3d at 661-62; Fields v. Soloff, 920 F.2d 1114, 1120 (2d Cir. 1990); Maglione v. Briggs, 748 F.2d 116, 118 (2d Cir. 1984); accord Hirschfeld v. City of New York, 686 N.Y.S.2d 367, 370-71; Ryan v. State, 439 N.Y.S.2d 703, 704 (App. Div. 1981), aff'd, 450 N.Y.S.2d 179 (N.Y. 1982), as well as their conduct before the courts in seeking to preserve a conviction. See Parkinson v. Cozzolino, 238 F.3d 145. 151-53 (2d Cir. 2001).

<u>b.</u>

Irrespective of this immunity bar, plaintiffs' malicious prosecution claims suffer from a fatal flaw. The existence of probable cause is a complete defense to a claim for malicious prosecution. See Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997). Here, it is undisputed that plaintiffs were indicted by a grand jury, and thus a presumption exists that their prosecutions were supported by probable cause. See Savino v. City of New York, 331 F.3d 63, 73 (2d Cir. 2003); Colon v. City of New York, 468 N.Y.S.2d 453, 435 (N.Y. 1983). If that were the controlling presumption, it could be overcome only by showing "'that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994) (quoting Colon v. City of New York, 468 N.Y.S.2d at 456). But apart from their indictment, plaintiffs were actually convicted at trial, and these convictions, which were affirmed on appeal, create "a conclusive presumption of probable cause" as a matter of federal law. Williams v. City of New York, 508 F.2d 356, 359 (2d Cir. 1974) (emphasis added). Those convictions preclude

any federal cause of action sounding in malicious prosecution.[21]

In any event, even assuming that plaintiffs' convictions create only a rebuttable presumption of probable cause, the allegations of their complaints fail to overcome that presumption. Plaintiffs seem to claim that the prosecution's reliance upon their purportedly involuntary statements is sufficient to strip their indictments and convictions of the presumption of probable cause (MC ¶ 81; WC¶ 76; SC ¶ 75). However, leaving aside the fact that plaintiffs are now precluded from relitigating the state courts' conclusion that their statements were lawfully obtained (see discussion infra), the type of coercion alleged by plaintiffs (MC ¶¶ 38-39; WC ¶¶ 29-30, 32-36; SC ¶¶ 34-35, 41), even if true, is not, as a matter of law, sufficient evidence of "fraud" or "undue means" to undermine the presumption of probable cause attendant to their indictment and convictions. See Caminito v. City of New York, 269 N.Y.S.2d 826, 829 (App. Div. 1966), aff'd, 281 N.Y.S.2d 338 (N.Y. 1967);[22] compare Williams v. City of New York, 508 F.2d at 363-64 (distinguishing Caminito on the ground that the confessions elicited were the product of "physical brutality" and misconduct so severe as to evidence "an intent to frame an innocent man").

---

[21] As to plaintiffs' state law claims, the Second Circuit has concluded that a conviction after trial is accorded only a rebuttable presumption of probable cause under New York law. See Williams v. City of New York, 508 F.2d at 359. But there is at least one decision from the New York Court of Appeals that reaches a contrary conclusion where, as here, the conviction has been upheld on direct appeal. See Kelly v. Halle, 182 N.E. 163 (N.Y. 1932); compare Goddard v. Daly, 744 N.Y.S.2d 330, 331 (App. Div. 2002) (rebuttable presumption exists where conviction is reversed on appeal). This issue is not well settled in the state courts, as other decisions suggest that where it is claimed that exculpatory evidence was withheld from the trier-of-fact, and the plaintiff's conviction is thereafter set aside on the basis of that evidence, only a rebuttable presumption of probable cause attaches to the antecedent conviction. See Ramos v. City of New York, 729 N.Y.S.2d 678, 690 (App. Div. 2001); Whitmore v. City of New York, 436 N.Y.S.2d at 639.

[22] The Second Circuit summarized the Caminito interrogation as follows: "Caminito was interrogated by five or six officers for five hours, locked in a cell with only a wooden bench on which to recline and, after a seven-hour respite, subjected to continuous questioning anew. In addition, Caminito was confronted with three detectives masquerading as witnesses to the crime. They brought further pressures on him to confess his guilt by identifying him as the driver of the holdup car. Finally, 27 hours after his arrest, Caminito signed a confession." Williams v. City of New York, 508 F.2d at 363.

Nor do plaintiffs' allegations concerning the suppression of exculpatory evidence suffice to overcome this presumption.  Reyes did not confess to either the April 17, 1989 or April 19, 1989 rapes until 2002 -- more than a decade after plaintiffs' trials.  The DA Defendants obviously cannot be faulted for failing to disclose this evidence; it simply did not exist at the time of trial.  Similarly, since the crimes of which Reyes was ultimately convicted did not occur until after plaintiffs' indictment in May 1989 (MC ¶ 56; WC ¶ 49; SC ¶ 52; Prosecution's 440.10 Response ¶¶ 55(1)-(5)), the prosecution likewise could not have presented that information to the grand jury, even assuming they had an obligation to do so.  But see United States v. Williams, 504 U.S. 36, 51-52 (1992) (prosecutors have no constitutional obligation to present exculpatory evidence to a grand jury).

Moreover, while plaintiffs assert that Reyes had pleaded guilty to those crimes before they were tried (MC ¶ 65, WC ¶ 65; SC ¶60), the DA Defendants violated no constitutional obligation in failing to alert plaintiffs to those convictions, for two reasons.  First, Reyes's convictions -- as well as the circumstances of those crimes, as detailed in Reyes's indictment, court records, and ultimately his guilty plea colloquies -- were a matter of public record, and thus not the subject of any constitutional disclosure obligation.  See McPhail v. Warden, Attica Correctional Facility, 539 F. Supp. 165, 170 (S.D.N.Y. 1982) ("Brady does not require the state to provide transcripts of materials which are in the public domain"), aff'd 707 F.2d 67 (2d Cir. 1983); see also United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995) ("[d]ocuments that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence").

Second, as has been previously discussed, the crimes for which Reyes was convicted were not like the April 19, 1989 Central Park rape.  Those crimes were not connected to Central Park and, indeed, involved a different modus operandi (home invasion and, usually, use of a knife).  That information was not "exculpatory" within the meaning of Brady, as there was no reason to believe that the perpetrator of those crimes had any connection to the April 19th rape in Central Park.  See Huber

v. Schriver, 140 F. Supp. 2d 265, 274-75 (E.D.N.Y. 2001) (where two crimes occurred in different geographic locations, and the similarities were limited to the fact "that that they were both committed by a tall white man, with a gun,' the undisclosed crime did not constitute Brady material"); see also Johnson v. Gibson, 169 F.3d 1239, 1254-55 (10th Cir. 1999) (non-disclosure of several unsolved rapes did not violate Brady); compare Miller v. Angliker, 848 F.2d 1312, 1321-23 (2d Cir. 1988) (evidence that another person had been arrested for several murders with same modus operandi, in the same area).

This leaves only the DA Defendants' failure to disclose the April 17, 1989 rape that had occurred in Central Park. Again, though, this crime bore marked differences from the April 19th attack on Meili. They occurred in different parts of the park, at different times of day. And they were carried out differently. For example, Meili was bound, while the earlier victim was not, and unlike the April 17th assault, in the latter the assailant sneaked up on the victim and bludgeoned her into unconsciousness. The April 17th rape thus cannot be characterized as sufficiently similar to the April 19th rape to raise any Brady concerns. Indeed, neither that evidence nor the other Reyes evidence identified by plaintiffs would have been admissible at plaintiffs' trials. See People v. Bradley, 778 N.Y.S.2d 687 (App. Div. 2004) (trial court "properly precluded defendant from introducing evidence of third-party culpability" in sexual assault case where "[t]he possible connection of another person to the crimes was too speculative to have any probative value); see generally Wade v. Mantello, 333 F.3d 51, 60-61 (2d Cir. 2003) (for evidence of third-party culpability to be admissible, there must be a sufficient factual basis to link that person to the crime charged); People v. Primo, 728 N.Y.S.2d 735, 738-39 (N.Y. 2001) (same). To conclude otherwise would entail the conclusion that the DA Defendants should have considered Reyes a suspect in every unsolved rape that occurred in New York County in 1989, a manifestly absurd proposition.

Put simply, plaintiffs' allegation that the DA Defendants did not disclose or adequately investigate the unsolved April 17th rape is not of sufficient character to overcome the presumption of

probable cause attendant with their indictments and convictions.  Nor can plaintiffs fill the void by suggesting that the authorities should have investigated the April 17th crime more diligently.  There was no pertinent "duty" to plaintiffs to investigate a crime unrelated on its face to the charges against plaintiffs.  See Colon v. City of New York, 468 N.Y.S.2d at 456 (claim that the authorities "fail[ed] to pursue" "further avenues of investigation" was not sufficient to rebut indictment's presumption of probable cause); see also Hathaway v. County of Essex, 995 F. Supp. 62, 69 (N.D.N.Y. 1998) ("[r]eliance on variations in testimony, as well as defendants' failure to pursue further avenues of investigation . . . are insufficient to overcome the presumption of probable cause"), aff'd, 172 F.3d 37 (2d Cir. 1999).  And, of course, since plaintiffs have not contested the accuracy of their admissions to "a number" of other crimes that occurred during the rampage of April 19, 1989 (MC ¶¶ 33, 38-39; WC ¶¶ 24, 29-31; SC ¶¶ 26, 41-42), those admissions independently provided the authorities with the probable cause needed to charge plaintiffs.

<u>c.</u>

There is still a third fatal flaw in plaintiffs' malicious prosecution claims.  To prevail on such a claim, plaintiffs must establish that the underlying criminal proceedings "terminated favorably" to them.  Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004); see also Martinez v. City of Schenectady, 735 N.Y.S.2d at 872).  As the New York Court of Appeals has explained, "a criminal proceeding is terminated favorably to the accused when 'there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense.'"  Smith-Hunter v. Harvey, 712 N.Y.S.2d 438, 441 (N.Y. 2000).  Here, however, the state court did not preclude any re-prosecution of plaintiffs following the grant of their post-judgment motions.  On the contrary, as it was required to do, see N.Y. Crim. Proc. Law § 440.10(5)(a), the court ordered "new trial," People v. Wise, et al., 752 N.Y.S.2d at 848, 850, so that the trier-of-fact could weigh the newly discovered evidence against plaintiffs' inculpatory admissions.

The Second Circuit has held, however, that a post-conviction court's "reversal of a conviction and remand for a new trial does not constitute . . . a [favorable] termination" for purposes of a malicious prosecution claim.  DiBlasio v. City of New York, 102 F.3d 654, 658 (2d Cir. 1996).  The fact that the District Attorney ultimately elected not to go forward with those retrials -- hardly a surprising exercise of discretion considering that plaintiffs had completed their sentences, and thus "no useful purpose would be served by a retrial" (Prosecution's Motion to Dismiss Indictment, p.3) -- does not alter that conclusion.  The record clearly reflects that the District Attorney moved to dismiss the indictment in the interest of justice.  See N.Y. Crim. Proc. Law § 210.40(1)(j) (authorizing dismissal in the interest of justice where "a judgment of conviction would serve no useful purpose").  And, in fact, that was the only basis upon which the People (as opposed to plaintiffs) could move to dismiss the indictment.  And the Second Circuit has concluded that, "as a matter of law, [a dismissal in the interest of justice] cannot provide the favorable termination required as the basis for a claim of malicious prosecution."  Pinaud v. County of Suffolk, 52 F.3d 1139, 1154-55 (2d Cir. 1995) (internal quotes and citation omitted); see also Cantalino v. Danner, 729 N.Y.S.2d 405, 409 (N.Y. 2001) ("interest of justice" dismissal can constitute a favorable determination only where that disposition is not, under the circumstances, "inconsistent with the innocence of the accused," e.g., where the court "makes clear that it dismissed the charges against plaintiff because they were groundless" under N.Y. Crim. Proc. Law § 210.40(1)(c).  Because plaintiffs cannot, as a matter of law, show that the underlying criminal proceeding terminated in their favor, their claims of malicious prosecution must be dismissed.

### B.  False Arrest and Imprisonment
#### 1.  Subject Matter Jurisdiction

As a threshold matter, the Court lacks the power to entertain plaintiffs' claims for false arrest and imprisonment.  "The Rooker-Feldman doctrine holds that inferior federal courts lack subject matter jurisdiction over cases that effectively seek review of judgments of state courts."  Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002) (internal quotes and citation omitted); see also Rooker v.

Fidelity Trust Company, 263 U.S. 413, 416 (1923).  Similarly, this doctrine deprives federal courts of

jurisdiction over claims that are "inextricably intertwined" with a state court's determinations.  District

of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983).  Application of these

principles demonstrates that the Court lacks the power to entertain these false arrest claims.

The existence of probable cause is a complete defense to a cause of action for false arrest,

"whether that action is brought under state law or under § 1983."  Weyant v. Okst, 101 F.3d at 852

(citing Broughton v. State, 373 N.Y.S.2d at 95).  Here, the state suppression court has already ruled that

Richardson, Santana, Wise, Salaam and McCray were lawfully arrested (Suppression Decision: 71-81,

103-06, 109, 114).[23]  Those findings were undisturbed on plaintiffs' direct appeals (except, of course, for

Santana, who chose not to appeal), and were never questioned by the post-conviction court.

On this record, there can be no doubt that plaintiffs' false arrest and imprisonment claims are

"inextricably intertwined" with the state courts' suppression decisions.  See Moccio v. New York State

Office of Court Admin., 95 F.3d 195, 198-99 (2d Cir. 1996) ("If the precise claims raised in a state court

proceeding are raised in the subsequent federal proceeding, Rooker-Feldman plainly will bar the

action."); Hason v. Office of Prof'l Med. Conduct, 314 F. Supp. 2d 241, 247 (S.D.N.Y. 2004) (Rooker-

Feldman bars any claim "that has been presented to and opined upon by" the state courts); Marden v.

Dinin, 22 F. Supp. 2d 180, 185 (S.D.N.Y. 1998) ("A federal claim is inextricably intertwined with the

state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided

---

[23] The court's rulings with respect to Richardson, Santana, Wise, and Salaam were made in
connection with a motion to suppress their inculpatory statements as the fruits of an unlawful arrest.
See generally Dunaway v. New York, 442 U.S. 200 (1979).  The court's finding with respect to McCray
was made in the context of rejecting a claim that his statements were the product of custodial
interrogation.  The court's conclusion necessarily precluded a finding that McCray had been unlawfully
arrested (or arrested at all) before he made his inculpatory statements, and incontestably provided
probable cause.  See California v. Beheler, 463 U.S. 1121, 1125 (1983) (in determining "whether a
suspect is 'in custody' for purposes of receiving Miranda protection, the ultimate inquiry is simply
whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a
formal arrest") (citation omitted); United States v. Newton, 369 F.3d 659, 669-71 (2d Cir. 2004) (same).

the issues before it.") (internal quotes and citation omitted).  Accordingly, plaintiffs' false arrest and imprisonment claims are barred by the Rooker-Feldman doctrine.  See Datz v. Kilgore, 51 F.3d 252, 254 (11th Cir. 1995) (Rooker-Feldman barred Fourth Amendment § 1983 claim that had been rejected by the state courts); Wishnefsky v. Addy, 969 F. Supp. 953, 955 (E.D. Pa. 1997) (Rooker-Feldman doctrine precludes reconsideration of state court finding of probable cause following suppression hearing), aff'd, 162 F.3d 1153 (3d Cir. 1998); cf. Phifer v. City of New York, 289 F.3d at 60-61 (under Rooker-Feldman doctrine, Fourth Amendment § 1983 claim was barred by family court's finding in neglect proceeding).

### 2. Statute of Limitation Issues

In New York, the statute of limitations applicable to actions brought under 42 U.S.C. §§ 1981 and 1983 is three years from the date the cause of action accrues.  See Owens v. Okure, 488 U.S. 235, 250-51 (1989) (§ 1983); Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (§ 1981).  By contrast, the statute of limitations applicable to plaintiffs' state law claims of false arrest and imprisonment[24] is one year and ninety days.[25]  See N.Y. Gen. Mun. Law § 50-i(1); Lieber v. Village of Spring Valley, 40 F. Supp. 2d 525, 532-33 (S.D.N.Y. 1999).  And, for purposes of determining when plaintiffs' various causes of action accrued, the critical date is the date on which "the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm."  Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994).

_____

[24] Technically, only Salaam has pleaded a state law claim for false arrest and imprisonment (compare MC ¶ 101; WC ¶ 96 with SC ¶¶ 122-25).  However, since the other plaintiffs presumably intended to do so as a corollary to their federal claims, the DA Defendants will, in anticipation of a motion to amend, assume that such a claim has been brought by all the defendants.

[25] While the statute of limitations for this intentional tort is ordinarily one year, see N.Y. CPLR § 215(3), because plaintiff has brought this action against the DA Defendants, who for these limited purposes are deemed to be employees of the City of New York, see N.Y. Gen. Mun. Law §§ 50-k(1)(a), (1)(e), the applicable limitation period is one year and ninety days.  See Gen. Mun. Law §§ 50-i(1), 50-k(6).

Here, plaintiffs' federal claims for false arrest and imprisonment against the DA Defendants accrued no later than April 1989, when plaintiffs were arraigned on the felony complaints. See Day v. Morgenthau, 909 F.2d at 79 (false claim arrest accrues on date of arrest); Singleton v. City of New York, 632 F.2d 185, 191-93 (2d Cir. 1980) (same for false imprisonment). Ordinarily, then, plaintiffs' federal false arrest claims would be subject to dismissal on timeliness grounds. However, since plaintiffs have argued that their inculpatory statements were the product of their allegedly illegal arrests, and as the DA Defendants concede that their convictions could likely not have been obtained in the absence of those statements, it is clear that their false arrest claims against the DA Defendants, if successful, would call into question the legality of their convictions. Accordingly, plaintiffs' federal claims for false arrest did not accrue until, at the earliest, December 19, 2002, when the state court vacated their convictions and remanded the matter for a new trial. See Heck v. Humphrey, 512 U.S. at 486-87; Covington v. City of New York, 171 F.3d 117, 119 (2d Cir. 1999). Since plaintiffs commenced this action within three years of that date, the DA Defendants concede that their federal causes of action against them are timely.

A different conclusion, however, obtains with respect to plaintiffs' state law claims for false arrest and imprisonment. New York has no Heck-like delayed accrual rule; that is, the accrual of a claim of false arrest or false imprisonment is not dependent on the date the criminal action ultimately terminates. See Roche v. Village of Tarrytown, 766 N.Y.S.2d 46, 47 (App. Div. 2003); Nunez v. City of New York, 762 N.Y.S.2d 384, 385 (App. Div. 2003); Schildhaus v. City of New York, 261 N.Y.S.2d 909, 911 (App. Div. 1965), aff'd, 271 N.Y.S.2d 286 (N.Y. 1966). Rather, under New York law a claim for false arrest or imprisonment accrues whenever the plaintiff is released from actual custody -- whether on bail pending trial, see Dailey v. Smiley, 410 N.Y.S.2d 468 (App. Div. 1978), upon acquittal or dismissal of the charges, see Nunez v. City of New York, 762 N.Y.S.2d at 385, or after service of his sentence following conviction. See Caminito v. City of New York, 269 N.Y.S.2d at 829.

McCray, Santana, Richardson, and Salaam were convicted in April 1990, while Richardson and

Wise were convicted in December 1990 (MC ¶¶ 46-47; WC ¶¶ 42).  McCray served a 7½ year sentence, Richardson and Santana 7 year sentences (MC ¶¶ 48-50), and Salaam no more that 10 years imprisonment (SC ¶ 32).  Measured from the latest of these four accrual dates, namely April 2000 (the latest Salaam's claim could have accrued), these four plaintiffs had until July 2001 to bring their state law claims for false arrest and imprisonment.  By contrast, Wise was released on parole in August 2002 (see WC ¶ 43), and thus had until, at the latest, December 1, 2003 to file his complaint.  Plaintiffs all filed their complaints sometime after December 1, 2003.  Thus, McCray, Richardson, Santana, and Salaam were all more than two years late, while Wise was late by a couple of weeks.

### 3. The Merits of Plaintiffs' Claims Against the DA Defendants

Plaintiffs' false arrest and imprisonment claims also fail on the merits, as a matter of law.  To begin, plaintiffs do not allege (nor could they) that ADA Lederer, Former ADA Clements or DA Morgenthau had been personally involved in making the arrests of Santana and Richardson, which occurred on the street near Central Park shortly after the crime spree on April 19, 1989.  Indeed, plaintiffs seem to acknowledge that those street arrests were effectuated by New York City police officers (MC  31-32, 35; WC  27).  Plaintiffs likewise make no claim that any of the DA Defendants personally ordered the investigating police officers to bring McCray, Wise, and Salaam in for questioning on April 20, 1989, or to place those individuals under arrest after they first incriminated themselves (MC ¶ 36; WC ¶ 27; SC ¶ 25), a claim that would be barred by absolute immunity in any event.  See McKeon v. Daley, 101 F. Supp. 2d 79, 87-88 (N.D.N.Y. 2000), aff'd, 8 Fed. Appx. 138 (2d Cir. 2001).  Because plaintiffs have not specifically alleged that any of the DA Defendants were personally involved in effecting their arrests, they have no viable cause of action against them based on that event.  See Escalera v. Lunn, 361 F.3d 737, 748-49 (2d Cir. 2004) (personal involvement a prerequisite for federal claim of false arrest); (same); Du Chateau v. Metro-North Commuter R.R. Co., 688 N.Y.S.2d 12, 16 (App. Div. 1999) (same under New York law).

Even if plaintiffs could overcome this hurdle, any false arrest claim would still be doomed to fail. As previously mentioned, probable cause is a complete defense to any claim for false arrest and imprisonment. See Weyant v. Okst, 101 F.3d at 852. But again, the state suppression court has already ruled plaintiffs were all lawfully arrested, and except for Santana (who chose not to appeal), those findings withstood plaintiffs' appeals. And, likewise, the state post-conviction court never suggested that there had been any illegality in plaintiffs' arrests. In view of these findings, plaintiffs are now precluded from challenging the state court's findings of probable cause; indeed, as noted above, the Court lacks subject matter jurisdiction to revisit this issue.

Under 28 U.S.C. § 1738, a federal court must afford the "judicial proceedings" of a state court the "same full faith and credit . . . as they have by law or usage in the courts of such State." See also U.S. Const., Art. IV, § 1. In other words, the federal court must give a state court decision or judgment "the same preclusive effect as would be given to the judgment [or decision] under the law of the State in which the judgment [or decision] was rendered," Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996), in this case New York. Moreover, the New York Court of Appeals has squarely held that "an order made upon a motion [in a criminal proceeding] provides such a 'judgment' as will bar relitigation under the doctrine of res judicata or collateral estoppel," provided the other requirements of the applicable preclusion doctrine have been met. Vavolizza v. Krieger, 352 N.Y.S.2d 919, 923 (N.Y. 1974). There is, therefore, no question that preclusion principles apply to the state courts' suppression decisions.[26]

Under New York law, the doctrine of collateral estoppel (issue preclusion) "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or

---

[26] Although collateral estoppel and res judicata are affirmative defenses, see Fed. R. Civ. P. 8(c), "[d]ismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000); see also Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) (same where claim was barred by defense of res judicata).

proceeding and decided against that party . . ., whether or not the tribunals or causes of action are the same," provided that the party to be "precluded was afforded "full and fair opportunity to litigate the issue in the earlier action"  Parker v. Blauvelt Volunteer Fire Co., 690 N.Y.S.2d 478, 482 (N.Y. 1999) (internal quotes and citation omitted).  Additionally, the issue that was raised previously "must be decisive of the present action."  Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003) (internal quotes and citation omitted).  Here, there is no question that all three requirements have been met.

First, the issue concerning the lawfulness of plaintiffs' arrests is obviously "decisive" of their claims for false arrest and imprisonment, since a finding of probable cause is a complete defense to those claims.  Second, it is clear that this question was decided by the suppression court, which by refusing to suppress their statements as the fruits of an unlawful arrest necessarily resolved that issue against them.  The court specifically held that Santana's and Richardson's street arrests had been supported by probable cause.  Similarly, by concluding that the inculpatory statements made by McCray, Wise, and Salaam had not been the product of an illegal arrest (and were not subject to suppression on other grounds), the court necessarily found probable cause to support their arrests. See Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) (a suspect's inculpatory statement provides probable cause to arrest); United States v. Morales, 788 F.2d 883, 885-87 (2d Cir. 1986) (same).

Finally, since plaintiffs all had the opportunity to appeal those suppression rulings following their convictions, it is clear that they were afforded a "full and fair" opportunity to challenge the lawfulness of their arrests.[27]  See Johnson v. Watkins, 101 F.3d at 795-76 (under New York law, a party has a "full and fair" opportunity to litigate a suppression ruling if the adverse ruling can be appealed);

---

[27] Although Santana chose not to appeal his conviction or, by extension, the adverse suppression ruling, New York law afforded him the "opportunity" to do so as a matter of right, see N.Y. Crim. Proc. Law § 450.10(1), which is all the doctrine of collateral estoppel requires.  See Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986); Janendo v. Town of New Paltz Police Dept., 621 N.Y.S.2d 175, 178 (App. Div. 1995).

Williams v. Moore, 602 N.Y.S.2d at 201-02 (same).  And, since the appellate courts rejected plaintiffs' challenges and affirmed their convictions, there can be little doubt that plaintiffs are now precluded from challenging the lawfulness of their arrests.  See Larsen v. Schultz, 720 N.Y.S.2d 625 (App. Div. 2001) (pretrial suppression ruling, followed by affirmance on appeal, precluded the plaintiff from relitigating the legality of his arrest in the context of a false arrest claim); see also Ryan v. New York Tel. Co., 478 N.Y.S.2d 823, 827-28 (N.Y. 1984) (false arrest claim precluded by prior administrative finding of criminality); Hugar v. Nigro, 616 N.Y.S.2d 833 (App. Div. 1994) (same for administrative finding of probable cause); accord Mitchell v. Hartnett, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003) (pretrial suppression ruling followed by conviction precluded the plaintiff's civil claims challenging the lawfulness of his arrest); Pou v. United States Drug Enforcement Agency, 923 F. Supp. 573, 589-80 (S.D.N.Y. 1996) (same where plaintiff's conviction was also affirmed on appeal); Brown v. De Fillipis, 717 F. Supp. 172, 178-79 (S.D.N.Y.1989) (same, specifically applying New York law); see generally Allen v. McCurry, 449 U.S. 90, 97-105 (1980) (holding that a state suppression ruling rejecting Fourth Amendment challenge was entitled to preclusive effect in federal civil rights proceeding).

Additionally, apart from this issue preclusion bar, plaintiffs are foreclosed from challenging the legality of their arrests under general common law principles.  In Cameron v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986), the Second Circuit held that "[w]here the civil rights plaintiff has been convicted of the offense for which he was arrested, . . . the fact of that conviction [serves] as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest," and thus bars any action for false arrest.  See also Broughton v. State, 373 N.Y.S.2d at 95 ("a conviction which survives appeal would be conclusive evidence of probable cause").  Here, plaintiffs' convictions were all affirmed on direct appeal (except again for Santana, who elected to bypass that remedy), and they are precluded from pursuing any action for false arrest and imprisonment.

This remains so even though plaintiffs were later granted a new trial based on newly discovered

evidence.  That new evidence pertained solely to plaintiffs' factual guilt of the April 19, 1989 rape; it was

not at all relevant to the question whether the plaintiffs were arrested upon probable cause, for the rape

and for the other crimes committed during the Central Park rampage.  See generally Pierson v. Ray, 386

U.S. 547, 555 (1967) ("a peace officer who arrests someone with probable cause is not liable for false

arrest simply because the innocence of the suspect is later proved"); Gisondi v Town of Harrison, 532

N.Y.S.2d 234, 236 (N.Y. 1988) (similar); cf. Caminito v. City of New York, 269 N.Y.S.2d at 829 ("A

determination, 14 years after judgment, that plaintiff's constitutional rights were violated, is insufficient

to expose defendant to an action for malicious prosecution for a proceeding which was properly

conducted with probable cause under then-existing State law"); but cf. Whitmore v. City of New York,

436 N.Y.S.2d at 639 (where an affirmed conviction is later vacated based on "fresh evidence" which

"cast[s] doubt upon the sufficiency and trustworthiness of the trial evidence," "there exists, at the least,

a question as to whether the presumption of probable cause survives").  Indeed, the 440.10 court's

decision did not in any way question the lawfulness of plaintiffs' arrests, and, as a matter of New York

law, the suppression court's decision, as affirmed on appeal, would therefore have been entitled to

preclusive effect upon any retrial.  See People v. Evans, 706 N.Y.S.2d 678, 682 (N.Y. 2000); People v.

Nieves, 501 N.Y.S.2d 1, 8 n.5 (N.Y. 1986).  This ruling must be accorded the same preclusive effect by

this Court.  See U.S. Const., Art. IV, § 1; 28 U.S.C. § 1738.

    Finally, irrespective of these preclusion issues, the state courts' determinations concerning

plaintiffs' arrests show, at a minimum, that the decision to arrest plaintiffs -- not only for rape, but also

for the other Central Park crimes which they admitted -- was objectively reasonable.  See Brogdon v.

City Of New Rochelle, 200 F. Supp. 2d 411, 425 (S.D.N.Y. 2002); Ferreira v. Westchester County, 917

F. Supp. 209, 218 (S.D.N.Y. 1996).  Accordingly, the DA Defendants are shielded from plaintiffs'

claims by qualified immunity, which applies where there is at least "'arguable' probable cause" to

support an arrest.  Martinez v. Simonetti, 202 F.2d 625, 634 (2d Cir. 2000); see generally Day v.

Morgenthau, 909 F.2d at 76, 78; Claude H. v. County of Oneida, 626 N.Y.S.2d 933, 935 (App. Div. 1995).  Indeed, because "[p]rosecutorial immunity is, if anything, even broader under New York state law than it is under federal law," Coakley v. Jaffee, 49 F. Supp.2d 615, 627 (S.D.N.Y. 1999), aff'd, 234 F.3d 1261 (2d Cir. 2000), the DA Defendants actually have absolute immunity from any state law false arrest claim based on their investigative activities.  See Rodrigues v. City of New York, 602 N.Y.S.2d 337, 342 (App. Div. 1993) ("a prosecutor, as a quasi-judicial officer, is, with respect to State law claims, immune from civil suit for official acts performed in the investigation and prosecution of criminal charges"); Santangelo v. State, 474 N.Y.S.2d 995, 997 (App. Div. 1984) ("absolute immunity has been extended to . . . a District Attorney in his official actions in investigating and prosecuting crime").

## II.  Plaintiffs' Federal Civil Rights Conspiracy Claims Against the DA Defendants

Plaintiffs have also alleged a civil rights conspiracy claim under 42 U.S.C. §§ 1983 and 1985 against ADA Lederer, and Wise has included Former ADA Clements in this claim (MC ¶ 88; WC ¶ 80; SC ¶ 100).  None of the plaintiffs, however, has specifically alleged that DA Morgenthau was involved, and for that reason alone their conspiracy claims must be dismissed as to him.  See Hernandez v. Goord, 312 F. Supp. 2d 537, 546-47 (S.D.N.Y. 2004).  Nevertheless, for the sake of completeness, the DA Defendants will assume plaintiffs intend to advance this claim against DA Morgenthau as well.

It does not appear that the Second Circuit presently recognizes a conspiracy claim brought under § 1983.  See Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) ("The plaintiffs' claim under 42 U.S.C. § 1983, which is styled 'Conspiracy to Violate Civil Rights,' should actually be stated as a claim under Section 1985, which applies specifically to conspiracies.").  But assuming such an action is viable, to establish a conspiracy claim under § 1983 plaintiffs would have to allege:  "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  To establish a claim under § 1985, plaintiffs

must further allege, as they have (MC ¶ 88; WC ¶ 82; SC ¶ 102), that the conspiracy was "motivated by racial, or perhaps otherwise class-based, invidiously discriminatory animus." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993). And in either case, plaintiffs must allege that the conspiracy was successful, i.e., that it effected "an actual violation of constitutional rights." Singer v. Fulton County Sheriff, 63 F.3d at 119; see also Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001). Obviously, without a "deprivation of a constitutional right . . . there can be no civil rights conspiracy to deprive that right." Young v. County of Fulton, 160 F.3d 899, 904 (2d Cir. 1998).

No conspiracy claim has been properly pleaded against the DA Defendants. Plaintiffs variously assert that the DA Defendants "reached an understanding" with several police officers and "engaged in a course of conduct" with them to deprive plaintiffs of their rights "to be free from unreasonable arrest and seizure, from wrongful confinement, imprisonment, and conviction, and from malicious prosecution; and their right to access the Courts" (MC ¶ 88; WC ¶ 81; SC ¶¶ 100-01). In furtherance of this purported conspiracy, plaintiffs first allege that the DA Defendants, among others, coerced them into making "false inculpatory statements," and thereby "manufacture[d]" the basis for them to be arrested and charged with the April 19, 1989 sexual assault (MC ¶ 89; WC ¶ 82, SC ¶ 103). Plaintiffs next assert that the DA Defendants suppressed and "fail[ed] to investigate the Matias Reyes evidence" that was available at the time of their trials, evidence which plaintiffs assert (incorrectly, as noted above) was "exonerating" and "exculpatory" (MC ¶ 89; WC ¶ 82, SC ¶ 103). Finally, plaintiffs assert that the DA Defendants made "known misstatements" and presented "knowingly false and incomplete evidence to . . . judges, juries, and appellate courts" (MC ¶ 89; WC ¶ 82, SC ¶ 103).[28]

As these allegations make clear, plaintiffs have actually alleged two conspiracies -- one focused

---

[28] Salaam further asserts that the DA Defendants effected his "public vilification" as part of this conspiracy (SC ¶ 103). But as discussed infra, this purported "public vilification" deprived Salaam of no constitutional right, and thus cannot be the subject of a civil conspiracy claim.

on the interrogations which led to their inculpatory statements, and the other focused on the DA Defendants' conduct during their criminal prosecution.  Plaintiffs have also alleged with specificity a series of overt acts purportedly taken in furtherance of those conspiracies.  However, "[t]o withstand a motion to dismiss, the conspiracy claim must contain . . . some factual basis supporting a 'meeting of the minds,'" i.e., allegations which could support an inference "that defendants 'entered into an agreement, express or tacit, to achieve the unlawful end.'"  Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000).  Here, though, plaintiffs have offered nothing, apart from wholly conclusory assertions, to support their claim that the DA Defendants actually reached an agreement with any of the investigating police officers to coerce confessions or wrongfully prosecute them.  For this reason alone, their conspiracy claims are deficient.[29]  See Webb v. Goord, 340 F.3d at 111 (conspiracy claim dismissed where "[p]laintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants"); Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004) (same); Romer v. Morgenthau, 119 F. Supp. 2d 363 (same).  And apart from this crucial defect, plaintiffs' conspiracy claims suffer other fatal flaws.

A.

As noted, one of plaintiffs' conspiracy claims focuses on the DA Defendants' alleged misconduct during the course of their criminal prosecutions (MC ¶ 88; WC ¶ 81; SC ¶¶ 100-01).  In particular, plaintiffs assert that the DA Defendants "suppress[ed]" and "fail[ed] to investigate" exculpatory evidence, made "known misstatements" during their trials, and presented "false and incomplete evidence" (MC ¶ 89; WC ¶ 82, SC ¶ 103).  In other words, plaintiffs are attempting to

---

[29] Insofar as plaintiffs might be suggesting that the DA Defendants conspired among themselves to effect these alleged constitutional violations, any such claim would be foreclosed by the "intracorporate conspiracy doctrine."  See Cameron v. Church, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003); Salgado v. City of New York, 2001 U.S. Dist. LEXIS 3196, *23-26 (S.D.N.Y. Mar. 21, 2001); see generally Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978).

repackage their free-standing claim of malicious prosecution into a civil rights conspiracy.  But the bar of absolute prosecutorial immunity cannot be skirted so easily.

A prosecutor's entitlement to "absolute immunity depends . . . on the function being performed," not the theory of recovery advanced by the plaintiff.  Day v. Morgenthau, 909 F.2d at 77; see also Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996).  Thus, if actions purportedly taken by a prosecutor would be shielded by immunity, a prosecutor will likewise enjoy immunity from any claim that he took those actions as part of a conspiracy.  See Pinaud v. County of Suffolk, 52 F.3d at 1148-49; Ortiz v. Morgenthau, 772 F. Supp. 1430, 1433 (S.D.N.Y. 1991), aff'd, 962 F.2d 4 (2d Cir. 1992).  Here, as has already been discussed, all of the malfeasance which plaintiffs claim occurred during their criminal prosecutions involves conduct shielded by absolute immunity, and this forecloses any conspiracy claim against the DA Defendants based on those activities.  See Dory v. Ryan, 25 F.3d at 83 (absolute immunity barred claim that a prosecutor "allegedly conspir[ed] to present false evidence at a criminal trial"); Babi-Ali v. City of New York, 979 F. Supp. 268, 270 n.1 (S.D.N.Y. 1997) (similar); see also Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995).  Covington v. City of New York, 916 F. Supp. 282, 287 (S.D.N.Y. 1995).

Additionally, as has already been discussed, plaintiffs are unable to overcome the presumption that their prosecutions were, at a minimum, supported by probable cause, nor can they show that the underlying criminal proceedings actually terminated in their favor.  Plaintiffs' allegations also make clear that, as a matter of law, they were not deprived of any Brady material during the course of their criminal prosecutions.  In other words, insofar as plaintiffs' conspiracy claims are focused upon their purportedly "wrongful" prosecution (MC ¶ 89; WC ¶ 82, SC ¶ 103), they are unable to show that the DA Defendants actually violated any of their constitutional rights during those prosecutions.  For this reason too, this aspect of plaintiffs' conspiracy claim must be dismissed.  See Singer v. Fulton County Sheriff, 63 F.3d at 119 (conspiracy claim properly dismissed

where underlying substantive claim of malicious prosecution was legally deficient).

B.

Plaintiffs also press a conspiracy claim against based upon their inculpatory statements. Specifically, plaintiffs assert that ADA Lederer and, as to Wise, Former ADA Clements, along with several investigating police officers, employed unlawful tactics to obtain plaintiffs' statements (MC ¶¶ 37-38, 88-89; WC ¶¶ 28-30, 32-36; SC ¶¶ 34-35, 39-42, 100, 103).   To prevail on this claim, plaintiffs must show not only that their statements were involuntary, but also that the authorities' conduct in obtaining them was so "egregious" as to "shock the conscience," Chavez v. Martinez, 538 U.S. 760, 774-76 (2003) (plurality opinion of Thomas, J.); id. at 779 (Souter, J. concurring); id. at 782-83 (Scalia, J., concurring) -- a showing not met by the allegations of their complaints.   But leaving that issue to the side, plaintiffs still cannot recover because they are precluded from challenging either the voluntariness of their statements or the lawfulness of the prosecutors' tactics in this civil rights action.   Indeed, the Court lacks subject matter jurisdiction even to entertain these claims.   And, irrespective of these insurmountable hurdles, the DA Defendants are immunized from this component of plaintiffs' conspiracy claims.

<em>1. Preclusion/<u>Rooker</u>-<u>Feldman</u></em>

As has already been discussed, this Court is required to give the prior decisions of the state courts the same preclusive effect they would be entitled to under state law.   See U.S. Const., Art. IV, § 1; 28 U.S.C. § 1738.   That, in turn, requires the Court to apply New York's rules of claim preclusion to plaintiffs' federal civil rights claims.   See Allen v. McCurry, 449 U.S. at 103-04; Johnson v. Watkins, 101 F.3d at 794.   Under New York law, issue preclusion bars a party from relitigating in a later proceeding action "an issue clearly raised in a prior action or proceeding and decided against that party," provided that the party had a "full and fair opportunity to litigate the issue in the earlier action," Parker v. Blauvelt Volunteer Fire Co., 690 N.Y.S.2d at 482 (internal quotes and citation omitted), and that the

issue previously raised is "decisive of the present action."  Curry v. City of Syracuse, 316 F.3d at 331. There is no question that plaintiffs are precluded from challenging the legality of their inculpatory statements in the context of their civil rights conspiracy claim.

First, there is obviously no doubt that the state courts' resolution of this issue -- whether plaintiffs' statements were involuntary or otherwise the product of illegal conduct -- is "decisive of the present action."  This aspect of plaintiffs' conspiracy claim depends entirely on their contention that the DA Defendants (and others) obtained their statements through coercion and other unlawful means. Nor is there any question that this issue has already been litigated in the underlying criminal proceedings.  Plaintiffs challenged their incriminating statements in their pretrial suppression motions -- arguing, among other things, that their statements had been involuntarily made -- and the suppression court rejected these contentions, concluding that none of plaintiffs' statements were the product of coercive or otherwise unlawful tactics (Suppression Decision: 81-86 [Richardson], 86-93 [Santana], 103-09 [McCray], 109-14[ Salaam], 114-16 [Wise]).[30]  Those statements were thereafter presented to the jury (MC ¶¶ 46-47; WC ¶ 42; SC ¶¶ 29-31, 46), and the resulting guilty verdicts manifest the jury's rejection of plaintiffs' claims that their statements were involuntary.[31]  See generally N.Y. Crim. Proc. Law § 710.70(3).  It is likewise clear that plaintiffs were afforded a "full and fair" opportunity to litigate this issue.  With the exception of Santana (who chose not to appeal), plaintiffs challenged the suppression court's ruling on their direct appeals, and on each occasion the Appellate Division

---

[30] As previously pointed out, the court did suppress one of Santana's statements to the police on Miranda grounds (Suppression Decision: 94-95).  Santana does not appear to be predicating his current civil rights claims upon that Miranda violation, nor could he.  See Chavez v. Martinez, 538 U.S. 760 (2003); see also Deshawn E. ex rel. Charlotte E. v. Safir, 156 F.3d 340, 346 (2d Cir. 1998).

[31] Plaintiffs admit that their statements were "critical to their convictions" (MC ¶¶ 46-47; WC ¶ 42; SC ¶ 46), any they have not alleged (nor could they in good faith) that the issue of voluntariness was not presented to the jury during their trials.  Compare Owens v. Treder, 873 F.2d 604, 609-10 (2d Cir. 1989) (where there was sufficient evidence to sustain the plaintiff's conviction even without his statements, the jury's guilty verdict could not be said to have necessarily decided whether the plaintiff's statements had been coerced).

affirmed.[32]  Salaam was further allowed to press his claims before New York's highest court, where they were once again rejected.  See People v. Salaam, 607 N.Y.S.2d at 902 ("we cannot say that [Salaam] was deprived of any rights he was entitled to" during his questioning).

In short, all three elements of New York's rules of issue preclusion have been met, and plaintiffs are collaterally estopped from relitigating the lawfulness of their confessions.  See Simmons v. O'Brien, 77 F.3d 1093, 1094, 1096-97 (8th Cir. 1996); Camarano v. New York, 577 F. Supp. 18, 20 (S.D.N.Y. 1984); cf. Owens v. Treder, 873 F.2d 604, 609-10 (under New York law, "if the ruling denying a motion to suppress is followed by an appellate decision expressly stating that the trial court had properly admitted the confession, then the combination of the suppression ruling and the appellate affirmance would bar relitigation of a coercion issue.").  The fact that plaintiffs' convictions were later set aside based on newly discovered evidence does not alter this conclusion.  Again, that evidence pertained solely to the factual question of plaintiffs' guilt of the April 19, 1989 sexual attack; it did not relate at all to the conduct of the plaintiffs' interrogations, and the post-conviction court never suggested that there had been any constitutional infirmity attendant upon plaintiffs' questioning.  Under these circumstances, New York law would continue to afford preclusive effect to the state courts' resolution of the voluntariness question, see People v. Evans, 706 N.Y.S.2d at 682; People v. Nieves, 501 N.Y.S.2d 1, 8 n.5, and this Court must do likewise.  See U.S. Const., Art. IV, § 1; 28 U.S.C. § 1738.

Additionally, if plaintiffs' complaints raise challenges to their incriminating statements beyond those raised in the state courts, they would still be precluded in this civil action.  The Supreme Court has

---

[32]  See People v. Wise, 612 N.Y.S.2d 118 ("defendant's various statements and admissions were either spontaneous or provided after the administration of the Miranda warnings, and suppression was properly denied"); People v. Richardson, 608 N.Y.S.2d at 628 ("The evidence strongly supports the trial court's conclusion that neither the Family Court Act nor the State and Federal constitutions were violated and that defendant's statements were properly admitted."); People v. McCray, 604 N.Y.S.2d at 94 ("the hearing testimony provided a reasonable basis for the court's finding that the questioning of defendant was not coercive"); People v. Salaam, 590 N.Y.S.2d 196 (rejecting Salaam's arguments challenging his statements).

made clear that state law doctrines of res judicata (claim preclusion) apply in federal civil rights actions. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81-84 (1984). Under New York's claim preclusion rules, "all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy," in subsequent litigation between "the parties to [the prior] action, and those in privity with them." Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) (internal quotes and citations omitted); see also Heimbach v. Chu, 744 F.2d 11, 14-15 (2d Cir. 1984) (under New York law "a claim that could have been asserted under a given set of facts in a concluded action is barred from being asserted under the same set of facts in a subsequent action").

Here, although the "parties" to the criminal action were plaintiffs and the "People of the State of New York," see N.Y. Crim. Proc. Law § 1.20(1), the People were represented by the DA Defendants in that proceeding, see N.Y. Crim. Proc. Law §§ 1.20(31), 1.20(32), and this established sufficient privity with the People to allow the DA Defendants to invoke the defense of res judicata. Cf. Brown v. City of New York, 470 N.Y.S.2d 573, 574 (N.Y. 1983) (holding that the City of New York could not invoke claim preclusion based on a prosecution commenced by a county District Attorney, since "the city and the District Attorney are separate entities"); Taveras v. City of New York, 635 N.Y.S.2d 608 (App. Div. 1995) (City employees could not invoke preclusion because they were "not in privity with the New York County District Attorney's Office which prosecuted the criminal case"). Nor is there any question that plaintiffs could have raised all possible challenges to their statements in the state suppression proceedings. Plaintiffs were present during their respective interrogations, and were in a position to bring any alleged acts of misconduct to the attention of the state courts. See generally Gauger v. Hendle, 349 F.3d 354, 360 (7th Cir. 2003) (since the plaintiff "knew what he had said at the interrogation," he could not base a civil claim upon the detectives having allegedly lied about the substance of his statements to the court). Accordingly, to the extent plaintiffs are attempting to expand upon the arguments they made in the state courts to support their conspiracy claim against the

DA Defendants, claim preclusion prevents them from doing so.  See Ferris v. Cuevas, 118 F.3d at 125-26; Collard v. Flower Hill, 759 F.2d 205, 207 (2d Cir. 1985); Heimbach v. Chu, 744 F.2d at 14-15.

Finally, since plaintiffs are precluded from relitigating the lawfulness of their incriminating statements under general preclusion principles, it likewise follows that the Court lacks subject matter jurisdiction to entertain plaintiffs' conspiracy claim under the Rooker-Feldman doctrine.  See Phifer v. City of New York, 289 F.3d at 56-57.  Moreover, even if the Court were to conclude that plaintiffs' conspiracy claim were not, for some reason, barred by issue or claim preclusion, the Rooker-Feldman doctrine would still apply.  Although the Rooker-Feldman doctrine is "generally applied coextensively with principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion)," Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004), the Second Circuit has made plain that its full scope is not limited by common-law preclusion principles.  See Doctor's Assocs. v. Distajo, 107 F.3d 126, 137-38 (2d Cir. 1997) ("a district court may lack subject matter jurisdiction under the Rooker-Feldman doctrine even when that court would not be precluded, under res judicata or collateral estoppel principles, by a prior state judgment").

Rather, Rooker-Feldman bars relitigation of matters either directly decided or "inextricably intertwined" with the determinations of a state court, Phifer v. City of New York, 289 F.3d at 55, and applies to "state court decisions whether final or interlocutory in nature."  Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir. 1995).  Here, the question of the lawfulness of plaintiffs' confessions was both "directly decided" and is "inextricably intertwined" with the state courts' decisions.  See Moccio v. New York State Office of Court Admin., 95 F.3d at 198-99 ("If the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, Rooker-Feldman plainly will bar the action.").  In pressing this conspiracy claim, plaintiffs are asking this Court to conclude, contrary to the decisions of the state trial and appellate courts (and in Salaam's case, the New York Court of Appeals), that the DA Defendants extracted unlawful and involuntary statements from

them.  This is precisely the type of end run around the state courts that <u>Rooker</u>-<u>Feldman</u> is designed to foreclose.  <u>See</u> <u>id</u>. at 199-202; <u>see also</u> <u>Marden v. Dinin</u>, 22 F. Supp. 2d at 185-86 (<u>Rooker</u>-<u>Feldman</u> applies if "'the federal district court would necessarily have to determine that the state court erred in order to find that the federal claims have merit.'") (quoting <u>Khal Charidim Kiryas Joel v. Village of Kiryas Joel</u>, 935 F. Supp. 450, 455 (S.D.N.Y. 1996)).

*2. Immunity Defenses*

Even if plaintiffs were not precluded from challenging the voluntariness of their confessions in the context of their civil rights conspiracy claim, they would still be unable to recover from the DA Defendants.  While a prosecutor enjoys only qualified immunity when he or she "performs the investigative functions normally performed by a detective or police officer," <u>Buckley v. Fitzsimmons</u>, 509 U.S. at 273, "[t]he line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw." <u>Zahrey v. Coffey</u>, 221 F.3d 342, 346 (2d Cir. 2000).  The Supreme Court has stated, however, that at a minimum, a prosecutor should not "consider himself to be[] an advocate before he has probable cause to have anyone arrested." <u>Buckley v. Fitzsimmons</u>, 509 U.S. at 274; <u>see also</u> <u>Day v. Morgenthau</u>, 909 F.2d at 77-78.

This dividing line, though rough and not always dispositive, is useful in addressing the immunity that should be afforded prosecutors in the questioning of a suspect.  If a prosecutor is claimed to have coerced a suspect into confessing, or to have directed another person to do so, in order to develop the predicate for the suspect's arrest, that is conduct properly characterized as investigative, and hence protected only by qualified immunity.  <u>See</u> <u>Weaver v. Brenner</u>, 40 F.3d 527, 537 (2d Cir 1994); <u>Rex v. Teeples</u>, 753 F.2d 840, 843-44 (10th Cir. 1985); <u>Robichaud v. Ronan</u>, 351 F.2d 533, 535 (9th Cir. 1965); <u>McKeon v. Daley</u>, 101 F. Supp. 2d at 89-92; <u>Richards v. City of New York</u>, 1998 U.S. Dist. LEXIS 13675, *7-*8 (S.D.N.Y. Sept. 2, 1998); <u>see also</u> <u>Buckley v. Fitzsimmons</u> 20 F.3d 789, 795 (7th Cir. 1994) ("*[o]btaining* the confession is not covered by immunity but . . . *using* the confession . . would

-46-

be covered by absolute immunity"). By contrast, if probable cause to arrest the suspect has already been established, and the prosecutor's questioning is with an eye toward determining what charges to file, such questioning is properly characterized as prosecutorial conduct protected by absolute immunity. See Hunt v. Jaglowski, 926 F.2d 689, 693 (7th Cir. 1991) (prosecutor's taking statement from a suspect after he made an allegedly coerced statement to detectives was shielded by absolute immunity); cf. Hill v. City of New York, 45 F.3d at 662-63.

Here, while plaintiffs do not specifically state whether their statements to the various DA Defendants occurred before or after they had already incriminated themselves to police officers, all the plaintiffs (except Salaam) acknowledge that their questioning culminated in videotaped statements to the prosecutors (MC ¶ 37; WC ¶ 28; SC ¶ 40). And, indeed, Wise does seem to admit that his statements to ADA Lederer and Former ADA Clements came after he made inculpatory statements to police officers (WC ¶¶ 32-35), and Salaam specifically states that the only statement he "allegedly" made was to a detective, not a prosecutor (SC ¶¶ 34-35). A fair reading of plaintiffs' complaints is that their statements to the prosecutors came after they had confessed to the police, i.e., after they had already given the authorities probable cause to charge them with the rape of Meili and other crimes. Under these circumstances, the DA Defendants should be afforded absolute immunity from plaintiffs' conspiracy claim predicated upon their conduct in questioning them. See Hunt v. Jaglowski, 926 F.2d at 693; cf. Hill v. City of New York, 45 F.3d at 662-63.

Moreover, even if the DA Defendants' conduct was investigative in nature, the DA Defendants would still be entitled to qualified immunity from plaintiffs' conspiracy claim. Even if a plaintiff can show that a law enforcement official violated his "clearly established" constitutional rights, that official is nevertheless entitled to qualified immunity provided that he or she acted reasonably in dealing with the plaintiff. See Anderson v. Creighton, 483 U.S. 635, 640 (1987); Moore v. Vega, 371 F.3d 110, 116-17 (2d Cir. 2004). This is a very forgiving standard, one which

"'gives ample room for mistaken judgments,'" and which protects "'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Here the DA Defendants' conduct in questioning plaintiffs has been exhaustively litigated in the state courts, and not only the trial court but also five appellate judges (ten in Salaam's case) have concluded that neither ADA Lederer, Former ADA Clements, nor any other prosecutor acted illegally when questioning plaintiffs.  As a matter of law, these judgments demonstrate that it was objectively reasonable for the DA Defendants to believe that their conduct was lawful, and hence to entitle them to the protection of qualified immunity.  See Brogdon v. City Of New Rochelle, 200 F. Supp. 2d at 425; Ferreira v. Westchester County, 917 F. Supp. at 218; compare Kent v. Katz, 312 F.3d 568, 573-76 (2d Cir. 2002).

### III.  The Loss of Familial Relations Claims Against the DA Defendants

Various of plaintiffs' parents and siblings have advanced claims for loss of familial relations under § 1983 (MC ¶¶ 106-08; WC ¶¶ 102-04; SC ¶¶ 106-09).  Courts have recognized a constitutionally-protected liberty interest in the continuation of the parent/child relationship, at least where the child is a minor.  See, e.g., Traxel v. Granville, 530 U.S. 57, 66, 120 S. Ct. 2064, 2060 (2000); Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999); Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir. 1977).  And while it has been held that no such liberty interest exists in the continuation of the familial relationship among siblings, see, e.g., Bell v. City of Milwaukee, 746 F.2d 1205, 1246-47 (7th Cir. 1984), the Second Circuit has taken a contrary view.  See Patel v. Searles, 305 F.3d 130, 136 (2d Cir. 2002).  Thus, all of plaintiffs' named relatives have standing to press their § 1983 claims against the DA Defendants.  But none has a viable cause of action.

While plaintiffs' relatives have alleged that their right to associate with plaintiffs was impinged by the DA Defendants' conduct in connection with plaintiffs' criminal prosecutions (MC ¶¶ 107-08; WC ¶¶ 103-04; SC ¶¶ 108-09), critically absent from their complaint is any allegation that

in prosecuting plaintiffs, the DA Defendants actually intended to deprive their relatives of their associative rights.  In other words, plaintiffs' relatives have not alleged that the DA Defendants acted with the requisite intent to sustain their § 1983 claims.  For this reason alone those claims must be dismissed.  See Trujillo v. Board of County Comm'rs, 768 F.2d 1186, 1190 (10th Cir. 1985) ("an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983"); cf. Spencer v. Casavilla, 44 F.3d 74, 79 (2d Cir. 1994) (applying Trujillo to claim under § 1985); but see Greene v. City of New York, 675 F. Supp. 110, 115-16 (S.D.N.Y. 1987) (rejecting Trujillo).

Further, the claims of plaintiffs' relatives are directly derivative of the claims advanced by plaintiffs themselves.  That is, plaintiffs' relatives are arguing that, as a result of plaintiffs' purportedly unlawful arrest, prosecution, and resulting imprisonment, they have been deprived of their right to associate with plaintiffs (MC ¶ 107; WC ¶ 103; SC ¶ 108).  However, claims of this type remain subject to the immunity defenses generally applicable to § 1983 claims.  See Kipps v. Caillier, 197 F.3d 765, 768-69 (5th Cir. 1999).  This must be so, since, again, a prosecutor's entitlement to "immunity depends . . . on the function being performed," not the party challenging it.  Day v. Morgenthau, 909 F.2d at 77.  As has been discussed at length above, all of the misconduct allegedly committed by the DA Defendants in the underlying criminal action is conduct shielded by absolute immunity, or, at a minimum, qualified immunity.  Accordingly, the DA Defendants are immune from the § 1983 claims pressed by plaintiffs' relatives.  See Fodelmesi v. Schepperly, 1991 U.S. Dist. LEXIS 8517, *8-12 (S.D.N.Y. June 24, 1991); see also Kipps v. Caillier, 197 F.3d at 768-69.

There is likewise no doubt that the claims advanced by plaintiffs' relatives suffer the same preclusive bars applicable to the claims advanced by plaintiffs themselves.  Plaintiffs' relatives clearly stand in privity with plaintiffs, since plaintiffs obviously had every incentive to litigate the misconduct upon which their relatives' claims depend in the criminal proceedings.  See Bethea v.

Scoppetta, 713 N.Y.S.2d 320, 320-21 (App. Div. 2000) (parents held to have privity relationship with children for preclusion purposes); Matter of Slocum ex rel Nathan "A" v. Joseph "B", 588 N.Y.S.2d 930, 932 (App. Div. 1992) (same); see also Ferris v. Cuevas, 118 F.3d at 127 n.6 ("[p]rivity may attach if the two parties have a familial relationship"); Watts v. Swiss Bank Corp., 317 N.Y.S.2d 315, 320 (N.Y. 1970) (privity includes parties "whose interests are represented by a party to the action"); compare Fay v. South Colonie Cent. Sch. Dist., 802 F.2d 21, 30 (2d Cir. 1986).

Since, as discussed above, plaintiffs' civil rights claims challenging the legality of both their arrests and inculpatory statements are barred by New York's preclusion principles, plaintiffs' relatives' claims based upon those alleged constitutional violations are precluded. See generally Ferris v. Cuevas, 118 F.3d at 126 (res judicata applies to those in privity with parties to prior action); Ryan v. New York Tel. Co., 478 N.Y.S.2d at 826 (same for collateral estoppel). These claims are also subject to Rooker-Feldman's jurisdictional bar. Although "Rooker-Feldman is not generally applied to bar a suit by those who were not parties to the original state court action," Hartford Courant Co. v. Pellegrino, 371 F.3d 49, 67 (2d Cir. 2004), this jurisdictional bar does apply to parties in privity with the prior litigants. See Bologna v. Allstate Ins. Co., 138 F. Supp. 2d 310, 325-25 (E.D.N.Y. 2001); see generally Phifer v. City of New York, 289 F.3d at 55-56 (at a minimum, Rooker-Feldman applies where state preclusion rules apply).

And, like plaintiffs, their relatives will be unable to overcome the presumption that plaintiffs' prosecution was supported by probable cause, and will also be unable to show that plaintiffs' prosecutions terminated favorably to them. Thus, plaintiffs' relatives will also be precluded from predicating their § 1983 claim on a contention that plaintiffs were maliciously prosecuted. In short, since none of plaintiffs' direct claims against the DA Defendants provides a viable cause of action, the parasitic "loss of familial association" claim raised by plaintiffs' relatives likewise fails to state a claim against the DA Defendants.

## IV. __Plaintiffs' Federal Claim Against "The New York County District Attorney's Office"__

### A.

In addition to similar claims against the City of New York, plaintiffs have brought a <u>Monell</u> claim against the "New York County District Attorney's Office," based upon its purported adoption of several unconstitutional prosecutorial policies (MC ¶¶ 19, 98-99; WC ¶¶ 12, 92-94; SC ¶¶ 8, 85-91, 115-17).  This claim has, however, been brought against a non-existent entity.  The "New York County District Attorney's Office" does not investigate crimes or participate in criminal proceedings.  Rather, a public servant who represents the People of the State of New York in a criminal action does that.  <u>See</u> N.Y. Crim. Proc. Law §§ 1.20(1), 1.20(31), 1.20(32).  And, except for criminal proceedings brought by New York's Attorney General, the public servant tasked with that responsibility in New York County is that county's District Attorney.  <u>See</u> N.Y. Const. Art. XIII, § 13; N.Y. County Law §§ 700, 926-29.

The "New York County District Attorney's Office" exists only in the sense that it symbolizes the holder of the elected position of New York County District Attorney, along with his staff.  <u>Cf.</u> <u>Johnson v. Kings County District Attorney's Office</u>, 763 N.Y.S.2d 635, 644-46 (App. Div. 2003) (treating § 1983 claims against the "Kings County District Attorney's Office" as, in reality, claims against the District Attorney and his staff, and concluding accordingly that "the District Attorney's Office . . . is immune from liability under 42 USC § 1983").  Put another way, "[t]he New York County District Attorney's Office is not a suable entity" recognized by New York law, and judgment may not be entered against it on any of plaintiffs' claims.  <u>Steed v. Delohery</u>, 1998 U.S. Dist. LEXIS 2754, *3 (S.D.N.Y. Mar. 11, 1998); <u>see also</u> <u>Gonzalez v. City of New York</u>, 1999 U.S. Dist. LEXIS 11413, *1-*2 (S.D.N.Y. July 27, 1999), <u>aff'd</u>, 69 Fed. Appx. 7 (2d Cir. 2003); <u>accord</u> <u>Martinez v. Winner</u>, 771 F.2d 424, 442 (10th Cir. 1985) ("the Department of Justice was properly dismissed as a named defendant, if for no other reason, because it is not a juridical entity separate from the United States or the individual officers and employees who direct and work for it"); <u>Buchanan v. City of Kenosha</u>, 57 F. Supp. 2d 675,

678-79 (E.D. Wis. 1999) ("Kenosha County District Attorney's Office" not a sueable entity); <u>Jacobs v. Port Neches Police Dept.</u>, 915 F. Supp. 842, 844 (E.D. Tex. 1996) ("A county district attorney's office is not a legal entity capable of suing or being sued."); <u>but cf.</u> <u>Smith v. Gribetz</u>, 958 F. Supp. at 155 n.12 (concluding in dictum that the New York County District Attorney's Office is a sueable entity).

Moreover, if the "New York County District Attorney's Office" had a juridical existence separate from that of the elected District Attorney and his staff, it still would not be sueable. Under New York law, which is controlling on this point, <u>see</u> Fed. R. Civ. P. 17(b), artificial entities that are creatures of statute, <u>e.g.</u>, "[g]overnmental entities created by legislative enactment," "require statutory authority to sue and be sued." <u>Community Bd. 7 v. Schaffer</u>, 615 N.Y.S.2d 644, 647 (N.Y. 1994). Since no statutory authority provides that the "New York County District Attorney's Office" may be sued, for this reason too it cannot be considered a sueable entity under New York law. <u>See New York State Bd. of Examiners of Sex Offenders v. Ransom</u>, 672 N.Y.S.2d 185, 186 (App. Div. 1998); <u>Tom Sawyer Motor Inns, Inc. v. Chemung County Sewer Dist.</u>, 305 N.Y.S.2d 408, 411 (App. Div. 1969). Because plaintiffs' <u>Monell</u> claim against the "New York County District Attorney's Office" has been directed against a non-sueable entity, that cause of action must be dismissed.

<u>B.</u>

Even if plaintiffs' complaint could be construed as having brought this <u>Monell</u> claim against DA Morgenthau (<u>cf.</u> MC ¶ 20; WC ¶13; SC ¶ 9), the claim would still have to be dismissed. Plaintiffs seek to hold the City of New York and the "New York County District Attorney's Office" liable under § 1983 for DA Morgenthau's purported failure to "train or supervise assistant district attorneys and investigators in the proper techniques of investigating serious crimes, particularly where juveniles are involved," and also for adopting a "policy, practice and custom of suppressing, destroying or otherwise secreting from criminal defendants exculpatory or exonerating evidence" (MC ¶¶ 98(a)-(b); WC ¶¶ 93(a)-(b); SC ¶¶ 115(a)-(b)). Salaam further accuses DA Morgenthau of

-52-

sanctioning the use of "improper methods to secure false confessions, particularly in matters where juveniles are involved," of failing to discipline prosecutors who violate "the rights of criminal suspects," and of allowing the "public vilification of persons accused of 'high-profile' crimes" while "refus[ing] to consider evidence inconsistent with that portrayal" (SC ¶¶ 115(c)-(d)).  Salaam also asserts, in connection with claims asserted against the City of New York, that DA Morgenthau's "prosecutors" have not been properly trained "with regard to the proper conduct and investigation at and in relation to a crime scene," "the preparation of truthful accusatory instruments," how to assess whether "adequate evidence of crimes" exists, and "the disclosure of exculpatory evidence." Salaam further asserts that DA Morgenthau has "failed to discipline those who unjustifiably charge and prosecute persons with crimes" (SC ¶¶ 88(a)-(d)).

But these types of <u>Monell</u> claims are not the appropriate vehicle for imposing liability upon an individually-named defendant; rather, such a claim allows a <u>municipality</u> to be held liable for the acts of its policymakers.  <u>See</u> <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 694-95 (1978). Thus, while <u>Monell</u> claims can be pressed against "local government officials sued in their official capacities . . . in those cases in which . . . a local government would be sueable in its own name," <u>id</u>. at 690 n. 55, an "official capacity" action is nothing more than "another way of pleading an action against an entity of which an officer is an agent."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-68 (1985) (internal quotes and citation omitted).  In other words, an "official capacity" action against DA Morgenthau is really an action against the City of New York, since only the City could be held liable on such a claim.  <u>See</u> <u>Walker v. City of New York</u>, 974 F.2d 293, 301 (2d Cir. 1992); <u>see also</u> <u>Meyers v. County of Orange</u>, 157 F.3d 66, 76-77 (2d Cir. 1998).

Here, though, the City of New York has been named as a defendant, so it is hard to see why plaintiffs have also chosen to name DA Morgenthau, at least if one accepts that they intend to pursue such an official capacity claim against him (MC ¶ 20; WC ¶ 13; SC ¶ 9).  <u>See generally</u> <u>Hafer</u>

v. Melo, 502 U.S. 21, 25 (1991) ("the real party in interest in an official-capacity suit is the governmental entity and not the named official").  Indeed, since plaintiffs have already named the real party in interest as a defendant, it is obvious that an official capacity action against DA Morgenthau is entirely unnecessary, and perhaps even improper.  Cf. Meyers v. County of Orange, 870 F. Supp. 555, 557 (S.D.N.Y. 1994) ("To the extent an institutional entity is responsible [for the named District Attorney's policy], plaintiffs' counsel is directed to reconsider the appropriateness of retaining each individual defendant as a party.").  For this reason alone, any official capacity claim against DA Morgenthau should be dismissed.  See generally Eisenberg v. District Attorney of Kings County, 847 F. Supp. 1029, 1036 n.8 (E.D.N.Y. 1994) ("To the extent that plaintiff states claims against the District Attorney in his [official] capacity as municipal policymaker, these claims are against the City, rather than the District Attorney").

In reality, does not appear that plaintiffs really intend to press an official capacity Monell claim against DA Morgenthau, their assertions to the contrary notwithstanding.  See generally Frank v. Relin, 1 F.3d 1317, 1325-26 (2d Cir. 1993).  The prayers for relief in plaintiffs' complaints make plain that they are seeking to recover a money judgment against DA Morgenthau separate from any judgment obtained against the City.  Such a claim is theoretically possible under § 1983, but it is not in the nature of an official capacity claim against DA Morgenthau, as such a claim allows for recovery only from the City's coffers.  If plaintiffs really want to recover independently against DA Morgenthau, they can do soon only by pursuing an individual capacity action against him, based on his purported adoption of an unconstitutional prosecutorial policy and/or his failure to train, supervise, et cetera.  See East Coast Novelty Co. v. City of New York, 809 F. Supp. 285, 299 (S.D.N.Y. 1992).  Plaintiffs have indicated their intent to pursue such an individual capacity action against DA Morgenthau (MC ¶ 20; WC ¶ 13; SC ¶ 9), and their complaints should be so limited.

In any case, plaintiffs' claims are doomed to fail.  As just noted, plaintiffs are seeking to hold DA Morgenthau liable as a municipal policymaker based on his purported adoption of various unconstitutional policies pertaining to the conduct of prosecutors in New York County.   DA Morgenthau does not, of course, dispute the general proposition that a municipal policymaker is a "person" subject to suit under § 1983 for any constitutional deprivation that results from a policy adopted by that individual.  See City of Canton v. Harris, 489 U.S. 378, 385-87 (1989).  And, for purposes of this motion, DA Morgenthau is constrained to concede that in promulgating policies to guide the prosecutorial activities of assistant district attorneys, his actions are deemed to be those of a municipal policymaker, rather than a representative of the State.  See Walker v. City of New York, 974 F.2d at 301.[33]  Nevertheless, plaintiffs fail to state a cause of action against DA Morgenthau.

*1. Causation*

To pursue a federal civil rights claim against a municipal policymaker, the plaintiff must first identify a municipal policy or custom that caused him to suffer an injury of constitutional dimension.  See City of St. Louis v. Praprotnik, 485 U.S. 112, 128 (1988).  It is not enough for a plaintiff simply to accuse the policymaker of having adopted an unconstitutional policy; the plaintiff must further show that his federal constitutional rights were violated as a direct result of that policy. See Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  If the plaintiff fails to satisfy this causation requirement, his Monell claim must be dismissed irrespective of whether the policy complained of actually exists.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Curley v.

---

[33] In DA Morgenthau's view, the continued viability of Walker is open to serious question following the Supreme Court's decision in McMillian v. Monroe County, 520 U.S. 781 (1997).  See, e.g., Pitts v. County of Kern, 949 P.2d 920 (Cal. 1998) (applying McMillian and concluding that District Attorneys act on behalf of the State in promulgating prosecutorial policies).  However, DA Morgenthau recognizes that the Second Circuit has concluded that Walker remains viable following McMillian.  See Meyers v. County of Orange, 157 F.3d at 76-77; see also Johnson v. Kings County District Attorney's Office, 763 N.Y.S.2d at 648; Ramos v. City of New York, 729 N.Y.S.2d at 678.

Village of Suffern, 268 F.3d 65, 71-72 (2d Cir. 2001).  Here, it is readily apparent that plaintiffs are unable to show that their federal constitutional rights were violated by any of the alleged policies identified in their complaints.

To begin, Salaam's claim that DA Morgenthau adopted a policy permitting the "immediate public vilification of persons accused of 'high-profile' crimes" (SC ¶ 115(e)) is insufficient for the simple reason that any such policy would not implicate any constitutionally-protected liberty interest. The Constitution does not protect an individual's reputation, see Siegert v. Gilley, 500 U.S. 226, 233 (1991); Paul v. Davis, 424 U.S. 693, 701 (1976), nor does it protect against "the deleterious effects which flow directly from a sullied reputation," such as "the impact that defamation might have on job prospects, . . . romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir. 1994).  Rather, the Constitution prohibits only the deprivation of a recognized liberty or property interest as a result of an allegedly injurious statement. See DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (discussing "stigma plus" doctrine).  Here, however, Salaam has not even seen fit specifically to identify any untrue public statements purportedly made by DA Morgenthau or his subordinates -- any statement announcing Salaam's arrest, his having made statements inculpating himself, or his conviction were true -- so he has failed even to show that he suffered any "stigma." See Smith v. Garretto, 147 F.3d 91, 95 (2d Cir. 1998); see also Powers v. Coe, 728 F.2d 97, 105 (2d Cir. 1984).

Moreover, Salaam has not shown that he was deprived of any liberty interest by any such statements.  Salaam's liberty was curtailed as a result of his arrest and conviction, not any public statements by prosecutors.  And, critically, Salaam has not alleged that his ability to receive a fair trial was prejudiced by any prosecutor's pretrial statements, or that the State's procedural safeguards were inadequate to insure that he received a fair trial.  See Schiavone Constr. Co. v. Merola, 848 F.2d 43 (2d Cir. 1988), aff'g on opinion below, 678 F. Supp. 64, 65-67 (S.D.N.Y. 1988) (dismissing § 1983

-56-

claim where a District Attorney allegedly made "false and inflammatory statements to the press" about the plaintiffs, as the plaintiffs did not allege that "'other remedies were not available or were used to no avail to alleviate the effects of the leaks'") (citing <u>Powers v. Coe</u>, 728 F.2d at 105); <u>see also</u> <u>Powers v. McGuigan</u>, 769 F.2d 72, 76 (2d Cir. 1985).  Nor has Salaam alleged that he suffered the deprivation of any property interest as a proximate result of any such statements made by prosecutors.  <u>See</u> <u>Paul v. Davis</u>, 424 U.S. at 697, 708-09 (flyer identifying the plaintiff as a criminal did not violate the constitution, even though the plaintiff claimed that characterization "would seriously impair his future employment opportunities"); <u>Houghton v. Cardone</u>, 295 F. Supp. 2d 268, 274-75 (W.D.N.Y. 2003) (District Attorney's report of the plaintiff's arrest to the media not actionable under § 1983); <u>Lehman v. Discovery Communs., Inc.</u>, 217 F. Supp. 2d 342, 348-49 (E.D.N.Y. 2002) (similar).  Because Salaam cannot demonstrate any constitutional violation resulting from his supposed "public vilification," any attempt to assert a <u>Monell</u> claim against DA Morgenthau for sanctioning such purported misconduct necessarily fails.

Salaam also asserts a <u>Monell</u> claim based on DA Morgenthau's alleged failure to train his "prosecutors" "with regard to the proper conduct and investigation at and in relation to a crime scene" (SC ¶ 88(a)).  Of course, it hardly need be said that the Constitution does not guarantee Salaam (or anyone else) a right to a thorough and accurate crime scene investigation.  But even if such a liberty interest existed, the fact remains that Salaam has not alleged in his complaint that any of DA Morgenthau's prosecutors (or other employees) were involved in processing the Central Park Jogger crime scene.  This causal disconnect is fatal to the above-described <u>Monell</u> claim.

Salaam also attempts to fashion a <u>Monell</u> claim out of DA Morgenthau's purported failure to train his subordinate prosecutors in "the preparation of truthful accusatory instruments" and the assessment whether "adequate evidence of crimes" exists, and claims that DA Morgenthau further "failed to discipline those who unjustifiably charge and prosecute persons with crimes" (SC ¶ 88(b)-

(c)).  Taking these allegations together, Salaam seems to be claiming that DA Morgenthau failed to train his prosecutors not to commence criminal actions in the absence of probable cause.  However, as has already been discussed, Salaam was not only indicted by a grand jury, but also convicted at trial and his conviction was affirmed on appeal.  As a matter of federal law, that creates "a conclusive presumption of probable cause."  <u>Williams v. City of New York</u>, 508 F.2d at 359.  Because Salaam is precluded from establishing a lack of probable cause to support his prosecution, he is, as a matter of law, unable to show any constitutional deprivation resulting from this alleged training failure, and hence unable sustain his <u>Monell</u> claim.  <u>See</u> <u>Jenkins v. City of New York</u>, 1999 U.S. Dist. LEXIS 15353, *41 (S.D.N.Y. Sept. 29, 1999), <u>aff'd</u>, 216 F.3d 1072 (2d Cir. 2000).

Plaintiffs' <u>Monell</u> claim alleging that DA Morgenthau "fail[ed] to properly train or supervise assistant district attorneys and investigators in the proper techniques of investigating serious crimes, particularly where juveniles are involved" (MC ¶ 98(b); WC ¶¶ 93(b); SC ¶¶ 88(d), 115(b)), as well as Salaam's further claim that DA Morgenthau "fail[ed] to discipline" prosecutors who engaged in such misconduct (SC ¶ 105(d)), suffers from a similar defect.  This claim is based upon the allegation that plaintiffs' inculpatory statements were the product of coercive and unconstitutional techniques, "undertaken . . . pursuant to the policies, practices and customs of," <u>inter alia</u>, DA Morgenthau (MC ¶ 37; WC ¶ 28; SC ¶¶ 40, 105(c)).  However, as has already been discussed, the state courts have ruled that plaintiffs' statements were obtained lawfully, and plaintiffs are foreclosed from relitigating that issue here.  Hence, they cannot establish that they suffered any constitutional injury as a result of DA Morgenthau's alleged interrogation policies.  <u>See</u> <u>Crot v. Byrne</u>, 646 F. Supp. 1245, 1253-57 (N.D. Ill. 1986), <u>aff'd</u>, 957 F.2d 394 (7th Cir. 1992); <u>Aiello v. Wilmington</u>, 470 F. Supp. 414, 419-23 (D. Del. 1979), <u>aff'd</u> 623 F.2d 845 (3d Cir. 1980).  Indeed, since plaintiffs' <u>Monell</u> claim, no less than their claims directly challenging their interrogations, "effectively seek[s] review of [the] judgments of [the] state courts" rejecting plaintiffs' challenges to the legality of their statements, <u>Moccio v. New</u>

York State Office of Court Admin., 95 F.3d at 197, their Monell claim is, for reasons previously discussed, likewise precluded by the jurisdictional bar of Rooker-Feldman.

Finally, plaintiffs seek to hold DA Morgenthau liable for adopting a "policy, practice and custom of suppressing, destroying or otherwise secreting from criminal defendants exculpatory or exonerating evidence" (MC ¶ 95(a); WC ¶ 93(a); SC ¶ 115(a)).  This claim is based on the trial prosecutors' failure to disclose the circumstances of the sexual assaults to which Matias Reyes had pleaded guilty, as well as the fact that on April 17, 1989, another rape had been committed in Central Park by a then-unidentified assailant (SC ¶¶ 60, 67, 70).  Plaintiffs claim that this information was withheld "pursuant to policies and practices of" DA Morgenthau (SC ¶ 62).  However, as the DA Defendants have already explained at length, none of this information was "material exculpatory evidence" to which a constitutional disclosure obligation attached.  See generally Banks v. Dretke, 540 U.S. 668, ___, 124 S. Ct. 1256, 1272 (2004).  Plaintiffs thus cannot show that they suffered a constitutional violation as a result of any policy adopted by DA Morgenthau, or any failure by DA Morgenthau to train his prosecutors to comply with their Brady obligations.  As such, plaintiff's Monell claim necessarily fails.  See City of Los Angeles v. Heller, 475 U.S. at 799; Curley v. Village of Suffern, 268 F.3d at 71-72.

### 2. *The insufficiency of plaintiffs' pleadings to meet Monell obligations*

Even ignoring the causation problems attendant with every one of plaintiffs' Monell permutations, the allegations of plaintiffs' complaint are still insufficient to make out a cause of action against DA Morgenthau.  As noted above, the gravamen of plaintiffs' complaints is that DA Morgenthau has purportedly adopted a policy sanctioning the unlawful questioning of criminal suspects (particularly juveniles), and has also adopted policies sanctioning the suppression of exculpatory evidence and the commencing wrongful prosecutions.  "The mere assertion, however, that [DA Morgenthau] has such a policy is insufficient in the absence of allegations of fact tending

to support, at least circumstantially, such an inference." <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993).[34]  Rather, to survive a motion to dismiss a plaintiff must allege specific "<u>facts to support</u> [his] contention that the challenged actions were in any way related to a custom or policy promulgated by the New York County District Attorney's Office." <u>Gan v. City of New York</u>, 996 F.2d at 536 (emphasis added).  Moreover, "[b]efore the actions of subordinate [municipal] employees can give rise to § 1983 liability, their . . . practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." <u>Sorlucco v. New York City Police Dept.</u>, 971 F.2d 864, 871 (2d Cir. 1992); <u>see also</u> <u>Wimmer v. Suffolk County Police Dept.</u>, 176 F.3d 125, 137 (2d Cir. 1999).

Plaintiffs' complaints fall woefully short of even this minimal pleading standard.  Plaintiffs baldly allege that DA Morgenthau has adopted the general policies described above, but have not advanced a single concrete <u>factual</u> allegation that would support an such inference.  Apart from the Central Park Jogger case, plaintiffs have not identified any prosecution in which, supposedly, DA Morgenthau's prosecutors coerced suspects (juvenile or otherwise) into confessing, suppressed exculpatory evidence, or engaged in any other misconduct about which plaintiffs have complained.  In other words, plaintiffs' complaints, at most, might support a contention that the prosecutors in the Central Park Jogger case committed such constitutional violations (<u>but see</u> discussion <u>supra</u>).

---

[34] While the Supreme Court has rejected any "heightened pleading" requirement in § 1983 actions brought against municipalities, <u>see</u> <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164 (1993), the Court left open the question whether a "heightened pleading" requirement can be imposed upon plaintiffs in connection with lawsuits against individual governmental employees.  <u>See</u> <u>id</u>. at 166-67.  In any event, courts in this circuit continue to follow <u>Dwares</u> and require that a plaintiff's pleading contain more than mere boilerplate or generalized allegations of an unconstitutional policy for it to survive a motion to dismiss by an individual government actor.  The courts' reason that even "under the liberal notice pleading standard set forth in <u>Leatherman</u>," general or boilerplate allegations do not meet the "plain statement' requirement of Fed. R. Civ. P. 8(a).  <u>Perez v. County of Westchester</u>, 83 F. Supp.2d 435, 438-39 (S.D.N.Y.) (collecting authorities), <u>aff'd</u>, 242 F.3d 367 (2d Cir. 2000); <u>but see</u> <u>Tsotesi v. Board of Educ. of City Sch. Dist. of City of N.Y.</u>, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003).

But that one instance, even if true, would not be sufficient to show a practice so manifest as to suggest either gross negligence or the constructive acquiescence of senior policymaking officials. See Dwares v. City of New York, 985 F.2d at 100-01 (a single alleged incident of malfeasance involving actors who were below the policymaking level was insufficient to raise an inference of the existence of a custom or policy); see also City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, (1985). Stated differently, one incident by a non-policymaker is simply not enough to establish a municipal "policy" or "custom," nor is it sufficient to warrant an inference of gross negligence by a supervisory municipal official. See DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998); see also Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404-15 (1997).

Salaam alone has tried to meet this objection in his complaint, but only with respect to his allegations that DA Morgenthau has adopted policies sanctioning the suppression of exculpatory evidence and the prosecution of innocent individuals. According to Salaam, there is a "widespread custom and practice" in DA Morgenthau's office "to prosecute and continue to prosecute persons through allegations without adequate factual basis in fact and/or despite substantial exculpatory evidence known to them and withheld from accused persons." DA Morgenthau has allegedly known about this "custom and practice" for "a substantial period of time," but has "repeatedly" failed to remedy it (SC ¶¶ 85-87, 89-90). But these wholly conclusory allegations are insufficient to save either his or any other plaintiff's complaint. Again, neither Salaam nor any other plaintiff has seen fit to allege a single concrete fact that would suggest any such history of misconduct by DA Morgenthau's prosecutors, or that any such constitutional deprivations have actually occurred as a result of DA Morgenthau's policymaking. Indeed, there is no good-faith factual basis for these

scandalous allegations against DA Morgenthau and his subordinates.[35]   This is especially so considering that it was DA Morgenthau and his prosecutors -- not plaintiffs or their civil lawyers -- who investigated Reyes's claims exculpating plaintiffs, and that it was their efforts which were largely, if not entirely, responsible for plaintiffs securing the vacatur of their criminal convictions.

Put simply, none of the plaintiffs have made sufficient <u>factual allegations</u> that, if proven true, could demonstrate the history of wrongful and unlawful prosecutions necessary to support a reasonable inference that DA Morgenthau has adopted a policy sanctioning such misconduct by his subordinates.  <u>See</u> <u>Gan v. City of New York</u>, 996 F.2d at 536 (affirming Rule l2(b)(6) dismissal of § 1983 claim against DA Morgenthau where the plaintiffs "failed . . . to allege <u>any facts</u> to support their contention that the challenged actions were in any way related to a custom or policy promulgated by the New York County District Attorney's Office") (emphasis added), <u>Dwares v. City of New York</u>, 985 F.2d at 100-01 (similar); <u>Covington v. City of New York</u>, 916 F. Supp. at 289-90 (same where the plaintiff "ha[d] not asserted a single <u>concrete fact</u> from which the Court can conclude that District Attorney Morgenthau either had unconstitutional office policies or failed to adequately train his ADAs") (emphasis added); <u>Katz v. Morgenthau</u>, 709 F. Supp. 1219, 1228-29

---

[35] Fed. R. Civ. P. 11(b)(3) requires that all factual allegations made in a complaint "have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," and that all such allegations be made "to the best of the [signatory's] knowledge information and belief, formed after an inquiry reasonable under the circumstances."  In other words, by signing a pleading an attorney "certifies to the court that [he] has read the document, <u>has conducted a reasonable inquiry into the facts</u> and the law and is satisfied that the document is well grounded in both."   <u>Business Guides, Inc. v. Chromatic Communications Enters., Inc.</u>, 498 U.S. 533, 542 (1991) (emphasis added).  Here, since plaintiffs have not alleged that, apart from the Central Park Jogger case, any other New York County prosecution involved similar acts of alleged prosecutorial misconduct, it is, quite frankly, difficult to seek how plaintiffs (or their attorneys) can, in good faith, allege that the DA Morgenthau has adopted a policy of sanctioning such misconduct.  And, since plaintiffs have not asserted that these allegations are "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," the most natural conclusion to be drawn is that these frivolous allegations have been made without <u>any</u> pre-filing investigation into the pertinent facts.  <u>See generally</u> <u>O'Brien v. Alexander</u>, 101 F.3d 1479 (2d Cir. 1996).

(S.D.N.Y.) (same where the plaintiff "ha[d] not alleged any <u>facts</u> to show either [a] prior pattern or practice of unconstitutional acts" resulting from a policy adopted by DA Morgenthau) (emphasis added), <u>aff'd in part, rev'd in part</u>, 892 F.2d 20 (2d Cir. 1989); <u>see also</u> <u>McAllister v. New York City Police Dept.</u>, 49 F. Supp.2d 688, 704-05 (S.D.N.Y. 1999) (allegation that DA Morgenthau "failed to investigate the police[s'] conduct, and knowingly used false evidence and testimony" was too conclusory "to establish a <u>Monell</u> claim, absent evidence to support such an allegation"); <u>compare</u> <u>Ricciuti v. New York City Transit Auth.</u>, 941 F.2d 119, 121-24 (2d Cir. 1991) (<u>contra</u> where the complaint contained detailed factual allegations describing "a dozen or more" incidents of misconduct similar to that allegedly suffered by the plaintiff).

Nor can plaintiffs save their <u>Monell</u> claims against DA Morgenthau by couching them in terms of a purported failure to train subordinate prosecutors not to prosecute innocent individuals (SC ¶¶ 88(b)-(c)); not to coerce suspects into confessing or "otherwise transgress the rights of criminal suspect during their investigations" (MC ¶ 98(b); WC ¶ 93(b); SC ¶¶ 115(b)-(d)); and not to suppress or withhold exculpatory evidence (SC ¶ 88(d); <u>cf.</u> MC ¶¶ 20, 98(a); WC ¶¶ 13, 93(a); SC ¶¶ 9, 115(a)). While a District Attorney's failure to train and supervise his subordinates can be so severe as to evince a municipal "policy" sufficient to establish § 1983 liability, <u>see</u> <u>Walker v. City of New York</u>, 974 F.2d at 297; <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. at 387, plaintiffs' complaints do not make out any such claim. To begin, this claim must be dismissed because the complaint fails to establish the requisite causation element. As has already been discussed, plaintiffs are unable, as a matter of law, to establish that their constitutional rights were violated by any of DA Morgenthau's prosecutors (<u>e.g.</u>, ADA Lederer or Former ADA Clements). As with plaintiffs' <u>Monell</u> claims generally, this causal disconnect is fatal to any "failure to train" claim. <u>See</u> <u>Walker v. City of New York</u>, 974 F.2d at 298 (affirming dismissal of "failure to train" claim where the plaintiff failed to demonstrate "any causal connection" between the training failure alleged and the constitutional

injury identified by the plaintiff); McAllister v. New York City Police Dept., 49 F. Supp. 2d at 707 (same).

Plaintiffs' "failure to train" allegations also suffer from other fundamental defects. To state a viable cause of action under this theory, a plaintiff must allege sufficient facts that, if proven, could support findings that: (1) the municipal policymaker "knows 'to a moral certainty' that his employees will confront a given situation"; (2) the given "situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult"; and (3) the wrong choice by the municipal employee "will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d at 297-98; see also Young v. County of Fulton, 160 F.3d 899, 904 (2d Cir. 1998). However, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiffs' injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." Dwares v. City of New York, 985 F.2d at 100; see also Carnegie v. Miller, 811 F. Supp. 907, 911 (S.D.N.Y. 1992).

Here, while Salaam has arguably recited at least some of descriptive language of the Walker factors in his complaint (cf. SC ¶¶ 89-91), he has failed to make any factual allegations that would, if proven, support a finding that those factors actually obtained. Moreover, as has already been pointed out, plaintiffs have also manifestly failed to allege, with any factual specificity, the history of malfeasance by DA Morgenthau's prosecutors necessary to support a rational inference that any such "failure to train" actually occurred. Compare, e.g., Babi-Ali v. City of New York, 979 F. Supp. at 273-75 (complaint alleging a "failure to train" prosecutors as to their Brady obligations was sufficient where the plaintiff pointed to "nine separate instances in which the Queens County District Attorney's Office has withheld exculpatory evidence"); Ramos v. City of New York, 729

N.Y.S.2d at 695 (same where the plaintiff "enumerat[ed] 10 other Brady reversals" in cases prosecuted by the Bronx County District Attorney's Office); but see, e.g., Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (a "small number of cases [involving Brady reversals], out of thousands handled over twenty-five years," was insufficient to establish that the District Attorney was deliberately indifferent to establish a failure to train claim).  For this reason too, plaintiffs' Monell claim against DA Morgenthau is deficient.  See Gan v. City of New York, 996 F.2d at 536; Covington v. City of New York, 916 F. Supp. at 288-90; East Coast Novelty Co. v. City of New York, 809 F. Supp. at 299-300; see also Ferreira v. Westchester County, 917 F. Supp. 209, 216 (S.D.N.Y. 1996).

Moreover, it is settled that any such "failure to train" claim cannot be premised upon "misdeeds [that] relate to . . . basic norms of human conduct -- the duty not to lie or persecute the innocent."  Walker v. City of New York, 974 F.2d at 301; see also Morrissey v. City of New York, 963 F. Supp. 270, 273 & n.2 (S.D.N.Y. 1997) ("a municipality does not need to train officers to make choices which should be obvious to them").  Here, at least one of the policies allegedly adopted by DA Morgenthau -- to allow prosecutors to file "[un]truthful accusatory instruments" and to prosecute individuals without "adequate evidence" (SC ¶¶ 88(b)-(c)) -- falls into precisely such a category.  See Covington v. City of New York, 916 F. Supp. at 285, 290 (allegation that DA Morgenthau had a policy of commencing prosecutions without probable cause was legally insufficient under Walker to state a viable "failure to train" claim); see also Teller v. White, 2000 U.S. Dist. LEXIS 13140, *13-14 (S.D.N.Y. Sept. 11, 2000); Cooper v. Masiello, 2000 U.S. Dist. LEXIS 5146, *11-*12 (W.D.N.Y. Apr. 13, 2000).  Insofar as any of plaintiffs' present claims against DA Morgenthau directly relates to the "duty not to lie or prosecute the innocent," they cannot be the basis of a viable "failure to train" claim.  See ibid.

<u>C.</u>

Finally, even if plaintiffs' <u>Monell</u> claims against DA Morgenthau were not facially deficient for the reasons outlined above, they would, insofar as they are directed at DA Morgenthau in his individual capacity, still be subject to dismissal on the grounds of absolute prosecutorial immunity. To be sure, prosecuting attorneys generally do not enjoy absolute immunity for acts "perform[ed] in administration or investigation not undertaken in preparation for judicial proceedings." <u>Hill v. City of New York</u>, 45 F.3d at 661.  Ordinarily, then, a District Attorney is not entitled to invoke the shield of prosecutorial immunity for civil liability arising from his promulgation of an unconstitutional office policy.  Where, however, the policy at issue governs subordinate prosecutors in the exercise of their prosecutorial duties -- activities for which those prosecutors undoubtedly enjoy absolute immunity -- the District Attorney who promulgated that policy (as opposed to the municipality itself, <u>see</u> <u>Meyers v. County of Orange</u>, 157 F.3d at 76) should likewise enjoy such immunity.  <u>See</u> <u>Eisenberg v. District Attorney of County of Kings</u>, 1994 U.S. Dist. LEXIS 21535, *6 (E.D.N.Y. June 3, 1994) ("conferring absolute immunity on the District Attorney for the acts complained of here -- training and supervising ADAs with respect to general prosecutorial policies -- serves the policy of 'protecting the judicial process by preventing suits against prosecutors for the performance of their duties'") (citation omitted); <u>Stovall v. Staroff</u>, 1984 U.S. Dist. LEXIS 22804, *6-*7 (S.D.N.Y. Oct. 12, 1984) (absolute immunity barred the "plaintiffs' claim that District Attorney Morgenthau has established a policy permitting police officers to assault black persons without fear of criminal or disciplinary proceedings, and to fabricate charges to cover-up their own misconduct," because "in setting policies governing the initiation of a class of prosecutions, a District Attorney employs the same type of discretionary judgment required in the initiation of a single prosecution").

Indeed, while the Supreme Court has commented that "[a] prosecutor's administrative duties . . . that <u>do not</u> relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity," <u>Buckley v. Fitzsimmons</u>, 509 U.S. at 259 (emphasis added), the Court has never considered whether a prosecutor should be entitled to such immunity for promulgating policies that <u>do</u> directly relate to the actual prosecution of criminal cases. And, in fact, conferring absolute immunity upon District Attorneys for their role in adopting prosecutorial policies (as opposed to, for example, general policies governing the hiring and firing of employees) is perfectly consistent with the rationales underlying the doctrine of prosecutorial immunity.  As the District of Columbia Circuit has explained:

> [W]e find no meaningful distinction between a decision on prosecution in a single instance and decisions on prosecutions formulated as policies for general application.  Both practices involve a balancing of myriad factors, including culpability, prosecutorial resources, and public interests; both procedures culminate in initiation of criminal proceedings against particular defendants, and in each it is the individual prosecution that begets the asserted deprivation of constitutional rights.
>
> . . . There is no doubt that, were we to decline to insulate prosecutorial policymaking, an abundance of vexatious litigation would result.  As we observed in <u>Gray v. Bell</u>, [712 F.2d 490, 500 (D.C. Cir. 1983)], "the prosecutor is far more likely to be the target of vindictive hostility once he has initiated criminal proceedings." Since general prosecutorial policies culminate in the initiation of particular criminal actions, those policies raise the same spectre of invidious lawsuits as individual decisions to inaugurate single prosecutions.  Indeed, the threat to the policymaker may be amplified; he or she, as policymaker, faces the risk of recrimination from the potentially larger number of parties prosecuted in accordance with the agency directive.  The threat of litigation is very real, and indubitably would inhibit the performance of prosecutorial duties.

<u>Haynesworth v. Miller</u>, 820 F.2d 1245, 1269-70 (D.C. Cir. 1987) (footnotes omitted); <u>see also</u> <u>Hamilton v. Daley</u>, 777 F.2d 1207, 1213 n.5 (7th Cir. 1985) (absolute immunity barred a "failure to train" claim brought against supervisory prosecutors based on their purported failure to train and

supervise subordinates in the exercise of activities that were shielded by absolute prosecutorial immunity).[36]

This reasoning has been accepted by various judges of this Court.  For example, Judge Owen followed this line of reasoning in dismissing the policymaker claim brought against DA Morgenthau in Stovall.  And, in dismissing a complaint against DA Morgenthau that "attempt[ed] to get around the problem of absolute immunity by alleging that Mr. Morgenthau has failed to properly train the Assistant District Attorneys in his office so that a pattern has developed in which individuals are prosecuted even though there is evidence that they are not guilty," Judge Martin likewise concluded that "it would defeat the purpose of the doctrine of prosecutorial immunity, 'preventing perpetual suits against prosecutors for the performance of their duties,' to permit a plaintiff to avoid the bar of that doctrine through the simple expedient of alleging that the prosecutor's conduct in his case was but one of several similar cases."  Lawson v. City of New York, 2002 U.S. Dist. LEXIS 10705, *5-*6 (S.D.N.Y. June 11, 2002).  This logic is compelling, and provides yet another reason why plaintiff's Monell claims against DA Morgenthau should be dismissed.

---

[36] Relying on Gan v. City of New York, Walker v. City of New York, and Gentile v. County of Suffolk, the Court in Covington v. City of New York held that a "failure to train" claim against DA Morgenthau was "not barred by absolute immunity."  916 F. Supp at 228.  However, none of these Second Circuit cases addressed the question whether a District Attorney himself (as opposed to the municipality) could invoke the bar of absolute prosecutorial immunity to a § 1983 claim predicated upon a purportedly unconstitutional policy adopted by that official.  In those cases, the Second Circuit merely held that in adopting office policies, a District Attorney acts as a municipal official who therefore cannot invoke Eleventh Amendment immunity from suit.  However, the question whether the District Attorney could nevertheless avail himself of absolute immunity for his promulgation of prosecutorial policies was never considered.  See Gan v. City of New York, 996 F.2d at 536; Walker v. City of New York, 974 F.2d at 301; Gentile v. County of Suffolk, 926 F.2d at 152-53 n.5.  Accordingly, there is no controlling precedent which precludes this Court from adopting the analysis of this issue articulated in text.

### V. **Plaintiffs' Remaining State Law Claims against the DA Defendants**

Plaintiffs invoke this Court's supplemental jurisdiction to advance state law claims against the DA Defendants (among others) for violations of their rights guaranteed by the New York State Constitution, as well as generic state law tort claims for malicious prosecution, "conspiracy to cover up," negligence, intentional infliction of emotional distress, and conspiracy (MC ¶¶ 101(a)-(d), (g)-(h); WC ¶¶ 96(a)-(d), (g)(h); SC ¶¶ 119, 128, 135).  Salaam has further asserted a claim for false arrest and imprisonment (which, as previously discussed, the DA Defendants assume is being raised by all the plaintiffs), along with claims for assault and battery, negligent infliction of emotional distress, harassment, and general negligence (SC ¶¶ 122-25, 132, 138, 140-41, 144).  Plaintiffs also appear to be trying to hold DA Morgenthau liable under state law for negligent hiring, screening, retention, supervision, and training of the assistant district attorneys involved in the underlying criminal actions (MC ¶ 101(f); WC ¶ 96(f); SC ¶¶ 147-48), and with the exception of Salaam, plaintiffs also seek to hold DA Morgenthau liable "under the doctrine of *respondeat superior*" for the state law torts purportedly committed by his subordinates (MC ¶ 104; WC ¶ 98; compare SC ¶ 92).[37]  However, since, as discussed above, plaintiff has no viable federal cause of action against any of the DA Defendants, there is no reason for the Court to exercise jurisdiction over plaintiffs' state law claims against them.  See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Smith v. Edwards, 175 F.3d 99, 107 (2d Cir. 1999).  In any case, irrespective of this jurisdictional issue, it is clear that plaintiffs have failed to state a viable state law cause of action against any of the DA Defendants.

---

[37]  Actually, plaintiffs have brought this last set of claims against "the New York County District Attorney's Office" rather than DA Morgenthau himself.  However, as already discussed, the "New York County District Attorney's Office" is not a sueable entity, as it has no legal existence apart from the District Attorney himself.  Because this defect could be cured by amendment, for the sake of judicial economy DA Morgenthau has for now construed the complaints as presenting these claims as against himself.

A.  Procedural Issues

The statute of limitations applicable to plaintiffs' claims sounding in state law constitutional tort is that prescribed by N.Y. CPLR § 214(5), namely three years.  See Brown v. State, 681 N.Y.S.2d 170, 173 (App. Div. 1998).  By contrast, the statute of limitations applicable to the myriad of common law torts alleged in plaintiffs' complaint is one year and ninety days.  See N.Y. Gen. Mun. Law § 50-i(1); Lieber v. Village of Spring Valley, 40 F. Supp. 2d at 532-33.  With but two exceptions, plaintiffs' state law claims against the DA Defendants must be dismissed as timebarred.

Salaam's cause of action for assault and battery accrued in April 1989, when he was presumably arrested and interrogated (in point of fact, however, Salaam's complaint is devoid of an allegation that he was assaulted by anyone [SC ¶¶ 39-42]).  See Grullon v. City of New York, 635 N.Y.S.2d 24, 25 (App. Div. 1995); McElveen v. Police Dept. of City of N.Y., 418 N.Y.S.2d 49, 50 (App. Div. 1979).  Plaintiffs' claims for negligent hiring, training, supervision, and retention against DA Morgenthau -- based as it is on his subordinates' activities before and during plaintiffs' trials -- accrued, at the latest, in  December 1990, the latest any of the plaintiffs was convicted.  See Murray v. City of New York, 725 N.Y.S.2d 73, 74 (App. Div. 2001) ("[a]lthough the continuation of the criminal action delayed accrual of any possible claim alleging malicious prosecution, it did not delay accrual of the second cause of action to recover damages, inter alia, for negligent hiring, training, and retention").  As previously discussed, Wise's claim for false arrest and imprisonment, as well as any correlative state constitutional tort, accrued in August 2002 (when Wise was released on parole), while the remaining plaintiffs' claims accrued, at the latest, in April 2000 (the last date any of them, namely Salaam, was released from custody following the completion of their sentences).  See Caminito v. City of New York, 269 N.Y.S.2d at 829; see also Peresluha v. City of New York, 400 N.Y.S.2d 818, 819 n.* (App. Div. 1977).

Insofar as plaintiffs' claims for negligence, conspiracy (and the seemingly duplicative claim of

"conspiracy to cover up"), and intentional infliction of emotional distress involved conduct that purportedly occurred during their criminal prosecutions, those claims accrued at the latest in 1994, when the final plaintiff's conviction (namely Wise's) was affirmed on direct appeal.  See, e.g., Neufeld v. Neufeld, 910 F. Supp. 977, 983 (S.D.N.Y. 1996) (claim for intentional infliction of emotional distress accrues on the date of the "last actionable act" of the alleged course of conduct).[38] Plaintiffs' analogous state constitutional claims, as well as Salaam's claims for negligent infliction of emotional distress and harassment, likewise accrued, at the latest, in 1994, as they too are predicated upon the conduct of their criminal prosecutions.  Finally, plaintiffs' claims for malicious prosecution accrued on December 19, 2002, when the People moved to dismiss the indictment following the post-conviction court's order vacating plaintiffs' convictions and remanding the matter for a new trial.  See Leung v. City of New York, 627 N.Y.S.2d 369, 370 (App. Div. 1995).

According to the Court's records, Salaam filed his complaint on December 19, 2003, Wise on December 16, 2003, and the remaining plaintiffs on December 8, 2003.  It is thus clear that plaintiffs have all brought their claims for malicious prosecution within one year of their accrual, and that these claims are therefore timely.  Wise also filed his complaint within three years of the time his when claim for false arrest and imprisonment claim accrued (August 2002), so insofar as his state constitutional tort is predicated upon his purportedly unlawful arrest,[39] this claim too is timely.  However, with respect to every other state law claim asserted by Wise, as well as every common law and constitutional tort claim asserted by the remaining plaintiffs, these claims are manifestly untimely, as they have all been brought

---

[38] Plaintiffs do not allege that the DA Defendants committed any tortious acts following the conclusion of their direct appeals, nor could they in view of the District Attorney's conduct in connection with the post-conviction investigation, his decision to consent to plaintiffs' motion for post-judgment relief, and his ultimate decision to move to dismiss the indictment.

[39] New York has limited its recognition of state constitutional torts to claims under the New York Constitution's Equal Protection and Search and Seizure Clauses.  See Brown v. State, 652 N.Y.S.2d 223 (N.Y. 1996); see also Martinez v. City of Schenectady, 735 N.Y.S.2d at 871-72.

some eight years after the latest applicable accrual date (sometime in 1994).  In short, with the two exceptions noted above, all of plaintiffs' state law claims against the DA Defendants must be dismissed as barred by the applicable statute of limitations.

Apart from this statute of limitations problem, all but one of plaintiffs' state law claims must also be dismissed for failure to comply with New York's notice of claim requirement.  Under New York General Municipal Law §§ 50-e and 50-i, service of a notice of claim is a condition precedent to bringing a tort claim against a public corporation or any of its officers, agents, or employees.[40] See O'Brien v. City of Syracuse, 445 N.Y.S.2d 687, 689 (N.Y. 1981).  Failure to comply with this condition precedent is fatal to any underlying tort action.  See Davidson v. Bronx Mun. Hosp., 484 N.Y.S.2d 533, 534-35 (N.Y. 1984).  New York law further requires that a notice of claim be served "within ninety days after the claim arises," N.Y. Gen. Mun. Law § 50-e(1)(a), a requirement that applies not only to plaintiffs' garden-variety tort claims, see, e.g., Rosen & Bardunias v. County of Westchester, 552 N.Y.S.2d 134, 136 (App. Div. 1990), but also to their claim alleging that the DA Defendants violated their state constitutional rights.  See 423 South Salina St., Inc. v. City of Syracuse, 510 N.Y.S.2d 507, 509, 515-17 (N.Y. 1986); accord Alexander v. City of New York, 2004 U.S. Dist. LEXIS 17042, *65-*66 (S.D.N.Y. Aug. 24, 2004); Wallikas v. Harder, 67 F. Supp.2d 82, 84-86 & n.1 (N.D.N.Y. 1999).

Here, Salaam filed his notice of claim on March 14, 2003 (SC ¶ 20), while Wise filed his on March 17, 2003, as did McCray, Richardson, and Santana (DA Def. Exh. G [Plaintiffs' notices of

---

[40] In actions against individual defendants, this requirement applies only if the pertinent public corporation, in this case the City of New York, is obligated to indemnify that person for his conduct.  See N.Y. Gen. Mun. Law § 50-e(1)(b); Brogdon v. City of New Rochelle, 200 F. Supp. 2d at 411, 428 (S.D.N.Y. 2002).  Because the City of New York owes such an indemnification obligation to the DA Defendants, see N.Y. Gen. Mun. Law § 50-k; N.Y. City Admin. Code § 7-110, there is no doubt that this notice of claim requirement is applicable.

claim]).[41]  These notices are therefore concededly timely with respect to plaintiffs' malicious prosecution claims (which accrued on December 19, 2002), although just by a matter of days.  With respect to every other state law claim raised in their complaints, however, plaintiffs' notices are clearly untimely -- in most cases by several years -- and thus these claims must be dismissed for failure to comply with the condition precedent imposed by N.Y. Gen. Mun. Law § 50-e(1)(a).  See Vitale v. Hagan, 528 N.Y.S.2d 823 (N.Y. 1988), rev'g on dissent, 517 N.Y.S.2d 725, 727-28 (App. Div. 1987) (Murphy, P.J., dissenting); Bloomfield Bldg. Wreckers, Inc. v. City of Troy, 396 N.Y.S.2d 359, 360 (N.Y. 1977); see also Brogdon v. City of New Rochelle, 200 F. Supp. 2d at 428. Additionally, since Salaam's notice of claim makes no mention of any claim for assault and battery, harassment or general negligence (see DA Def. Exh. G [Plaintiffs' notices of claim]), for this independent reason these claims must be dismissed.  See Fincher v. County of Westchester, 979 F. Supp. 989, 1002-03 (S.D.N.Y. 1997) (any cause of action "not directly or indirectly mentioned in the notice of claim may not be included in a subsequent lawsuit.").  In short, the only state law cause of action commenced in a timely fashion, and for which a timely and appropriate notice of claim has been filed, is plaintiffs' claim for malicious prosecution.

### B.  The merits of plaintiffs' state law claims against all DA Defendants

Leaving aside the procedural problems noted above, it remains clear that plaintiffs have not stated a viable state law claim against any of the DA Defendants.  The DA Defendants have already discussed the myriad of reasons why plaintiffs cannot recover against them for malicious prosecution and false arrest and imprisonment, so that discussion will not be repeated here. Additionally, insofar as their other common law and state constitutional tort claims depend on

---

[41] The complaint filed by McCray, Richardson, and Santana does not allege that they have complied with the applicable notice of claim requirements (Compare WC ¶ 99-100; SC ¶¶ 20-23), and based on this pleading defect their state law claims are subject to dismissal.  See N.Y. Gen. Mun. Law § 50-i; Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789, 793-94 (2d Cir. 1999).

establishing the illegality of their arrests or the involuntariness of their inculpatory statements -- and, in fact, these issues are the heart of their various state law claims -- those claims are likewise subject to the preclusion and <u>Rooker</u>-<u>Feldman</u> bars that foreclose their analogous federal civil rights actions. And, of course, insofar as plaintiffs state law claims challenge the legality of the DA Defendants' actions in conducting their criminal prosecutions -- which, with the exception of Salaams' claim for assault, every one does -- it is clear that those claims are barred by absolute immunity. Absolute immunity is not limited to claims of malicious prosecution; it covers <u>any</u> tort claim involving a prosecutor's conduct in preparing and presenting the State's case. <u>See, e.g.</u>, <u>Levy v. State</u>, 459 N.Y.S.2d 27 (1982) (prosecutorial immunity barred libel claim); <u>See</u> <u>Tucker v. City of New York</u>, 709 N.Y.S.2d 796, 797-98 (Sup. Ct., N.Y. Co. 2000) (same as to claim for intentional infliction of emotional distress); <u>see also</u> <u>Drakeford v. City of New York</u>, 775 N.Y.S.2d at 138 (prosecutorial immunity bars all "civil claims arising out of the scope of a prosecution"). Once again, this must be the case, since "a prosecutor's entitlement to absolute immunity [depends on] the nature of the function being performed," <u>Hirschfeld v. City of New York</u>, 686 N.Y.S.2d at 371 (internal quotes and citation omitted), not the tort theory chosen by the plaintiff. In other words, apart from Salaam's claim for assault, all of plaintiffs' state law claims against the DA Defendants must be dismissed as barred by both state law preclusion principles and the <u>Rooker</u>-<u>Feldman</u> doctrine, and also because those claims are foreclosed by the DA Defendants' entitlement to absolute prosecutorial immunity.

Plaintiffs' state law claims against the DA Defendants also fail on the merits. First, because plaintiffs' claims for constitutional tort are predicated upon the same facts as their other tort claims (and thus may be redressed under those common law theories), they may not maintain an independent action under the New York constitution. <u>See</u> <u>Martinez v. City of Schenectady</u>, 735 N.Y.S.2d at 871-72; <u>Augat v. State</u>, 666 N.Y.S.2d 249, 251-52 (App. Div. 1997); <u>see also</u> <u>Housing</u>

Works, Inc. v. Turner, 179 F. Supp. 2d 177, 206-08 (S.D.N.Y. 2001), aff'd, 56 Fed. Appx. 530 (2d Cir. 2003); Wahad v. F.B.I., 994 F. Supp. 237, 239-40 (S.D.N.Y. 1998).

Plaintiffs' claim for intentional infliction of emotional distress must be dismissed, because "the conduct for the underlying claim may be redressed by way of traditional tort remedies such as battery, false arrest, and malicious prosecution." Black v. Town of Harrison, 2002 U.S. Dist. LEXIS 16597, *13 (S.D.N.Y. Sept. 5, 2002); see also Moore v. City of New York, 219 F. Supp.2d 335, 339 (E.D.N.Y. 2002); Thompson v. Sweet, 194 F. Supp. 2d 97, 103 (N.D.N.Y. 2002); accord Fischer v. Maloney, 402 N.Y.S.2d 991, 993 (N.Y. 1978).   This claim must also be dismissed because the conduct alleged by ADA Lederer, Former ADA Clements (by Wise alone) and DA Morgenthau is not of sufficient character to support such a claim.  See Hernandez v. New York City Law Dept. Corp. Counsel, 685 N.Y.S.2d 674, 675 (App. Div. 1999) (institution of criminal charges an insufficient predicate for a claim of intentional infliction of emotional distress); see generally Howell v. New York Post Co., 596 N.Y.S.2d 350, 352-54 (N.Y. 1993) (intentional infliction of emotional distress provides redress only for conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community") (internal quotes and citation omitted); Naturman v. Crain Communications, 628 N.Y.S.2d 281, 282 (App. Div. 1995) (same for negligent infliction of emotional distress).  And, as against DA Morgenthau, this claim is further barred as a matter of New York public policy.  See Dillon v. City of New York,704 N.Y.S.2d 1, 7 (App. Div. 1999) (dismissing claim against the City, District Attorney and supervisory assistant district attorneys, noting that "claims of intentional infliction of emotional distress against government bodies are barred as a matter of public policy").

Salaam's claim for negligent infliction of emotional distress, as well as all of plaintiffs' general claims for negligence, are deficient because New York law does not permit any negligence-based tort

claim predicated upon a criminal investigation or prosecution.  See Johnson v. Kings County District Attorney's Office, 763 N.Y.S.2d at 640; Antoniuos v. Muhammad, 673 N.Y.S.2d 158 (App. Div. 1998); Pandolfo v. U.A. Cable Sys. of Watertown, 568 N.Y.S.2d 981, 982 (App. Div. 1991); see also Bernard v. United States, 25 F.3d at 102 (describing New York law).  Salaam's harassment claim involves the DA Defendants' conduct in prosecuting him criminally (and is thus largely duplicative of his malicious prosecution claim, among others), and also is not cognizable under New York law. See Couch v. Schmidt, 612 N.Y.S.2d 511, 513 (App. Div. 1994); see also New York Stock Exch., Inc. v. Gahary, 196 F. Supp. 2d 401, 414 (S.D.N.Y. 2002) ("New York law does not recognize any independent tort for harassment") (internal quotes and citation omitted).  Similarly, plaintiffs' conspiracy claims must be dismissed because "New York law does not recognize a substantive tort of conspiracy."  Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank, 755 F.2d 239, 251 (2d Cir. 1985); see also Alexander & Alexander of N.Y., Inc. v. Fritzen, 510 N.Y.S.2d 546, 547 (N.Y. 1986).

And finally, Salaam's claim for assault and battery must be dismissed against the DA Defendants, for the simple reason that Salaam does not claim that ADA Lederer or DA Morgenthau (or anyone, for that matter) ever assaulted him.  See Offenhartz v. Cohen, 562 N.Y.S.2d 500, 501 (App. Div. 1990) (dismissing assault claim where the "defendant committed no overt act in furtherance of the alleged assault"); see also Fariello v. City of New York Dept. of Educ., 606 N.Y.S.2d 20, 21 (App. Div. 1993).

### C.  The merits of plaintiffs' state law claims against DA Morgenthau

Apart from their tort claims against all the DA Defendants, plaintiffs have advanced a state law claim against the City of New York and the "New York County District Attorney's Office" for "negligent hiring, screening, retention, supervision and training" of the assistant district attorneys involved in plaintiffs' prosecutions (namely ADA Lederer and, as to Wise, Former ADA Clements as well) (MC ¶ 101(f); WC ¶ 96(f); SC ¶¶ 147-48 ).  Assuming that plaintiffs intend to press this claim

against DA Morgenthau (as opposed to the non-sueable entity named in their complaints), it is clear that plaintiffs have failed to state a viable state law cause of action against DA Morgenthau.

As a threshold matter, since "there is no cause of action in the State of New York for negligent prosecution or investigation," "claims under various theories of negligence, … [such] as negligent investigation, negligent training, negligent supervision, negligent disciplining, [and] negligent retention of employees . . . are barred by the same public policy of the State of New York" when brought against a law enforcement official. Jenkins v. City of New York, 1992 U.S. Dist. LEXIS 8279, *23 (S.D.N.Y. June 15, 1992) (internal quotes and citation omitted). For this reason alone plaintiffs' claims of negligent training, supervision, et cetera should be dismissed against DA Morgenthau. And, even if New York public policy did not preclude these claims against DA Morgenthau, they would nevertheless be subject to dismissal for the same reason as plaintiffs' analogous federal claims. The complaints fail to allege any pattern of unlawful conduct which could rationally support an inference that DA Morgenthau failed to train or supervise his subordinates. See Moore v. First Fed. Savings & Loan Assoc. of Rochester, 654 N.Y.S.2d 900 (App. Div. 1997) ("conclusory allegations fail to state a valid cause of action for negligent training and supervision"); see also Barr v. County of Albany, 428 N.Y.S.2d 665, 670-71 (N.Y. 1980); Panzera v. Johnny's II, 678 N.Y.S.2d 336, 337 (App. Div. 1998); Richardson v. New York Univ., 609 N.Y.S.2d 180, 182 (App. Div. 1994); accord Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); Ross v. Mitsui Fudosan, 2 F. Supp. 2d 522, 532-33 (S.D.N.Y. 1998).

Irrespective of these deficiencies, plaintiffs' state law claims for negligent training, supervision, et cetera must fail for yet another reason. Under New York law, government officials enjoy absolute immunity for "governmental actions requiring expert judgment or the exercise of discretion." Arteaga v. State, 532 N.Y.S.2d at 59; see also Tartar v. State, 510 N.Y.S.2d 528, 530-31 (N.Y. 1986); Tango v. Tulevech, 471 N.Y.S.2d 73, 76-77 (N.Y. 1983). As the New York Court of

Appeals has explained, such immunity from liability is "founded on public policy" and "reflect[s] the value judgment that the public interest in having officials free to exercise their discretion unhampered by the fear of retaliatory lawsuits outweighs the benefits to be had from imposing liability." Arteaga v. State, 532 N.Y.S.2d at 59. Thus, in New York a governmental official is immune for "discretionary or quasi-judicial acts [which] involve the exercise of reasoned judgment which could typically produce different acceptable results," rather than "a ministerial act [which] envisions direct adherence to a governing rule or standard with a compulsory result." Tango v. Tulevech, 471 N.Y.S.2d at 77; see also Tenenbaum v. Williams, 193 F.3d 581, 606 (2d Cir. 1999) ("New York law provides absolute immunity for state and local employees when they perform discretionary, as opposed to ministerial, functions.").

Applying these principles here, DA Morgenthau enjoys absolute immunity from plaintiffs' state law claim for negligent training and supervision. Decisions concerning the proper means of training subordinates, as well as the degree of supervision to be exercised over those subordinates' particular activities, constitute discretionary judgment calls that are shielded by New York's governmental immunity. See Maloney v. Board of Educ. of Buffalo, 578 N.Y.S.2d 31, 32 (App. Div. 1991) (training and supervision decisions are, "as a matter of law, an exercise of professional judgment for which there can be no municipal liability"); accord Aiken v. Nixon, 236 F. Supp. 2d 211, 240-41 (N.D.N.Y. 2002) ("failure to train claim" barred by New York's absolute governmental immunity), aff'd, 80 Fed. Appx. 146 (2d Cir. 2003); see also McCormack v. City of New York, 587 N.Y.S.2d 580, 582 (N.Y. 1992); Kenavan v. City of New York, 523 N.Y.S.2d 60, 65 (N.Y. 1987).

It is likewise clear that decisions concerning how to handle misconduct claims made against staff members, as well as decisions concerning what (if any) corrective action should be taken in response, involve the exercise of reasoned discretion and judgment. See Doe v. State, 700 N.Y.S.2d 554, 557 (App. Div. 1999) (police officials immune from suit based upon their actions in processing

disciplinary complaints against subordinate police officers); Topal v. State, 693 N.Y.S.2d 130, 131 (App. Div. 1999) (actions taken by medical authority in processing complaints against dentists protected by governmental immunity).  So do decisions concerning the hiring and firing of municipal personnel.  See Mon v. City of New York, 574 N.Y.S.2d 529, 532-34 (N.Y. 1991) (law enforcement agency's discretionary hiring decisions protected by governmental immunity).  As such, it is readily apparent that these state law claims against DA Morgenthau are barred by New York's governmental immunity doctrine.  See Sivadel v. City of New York, 2004 U.S. Dist. LEXIS 15190, *9 (S.D.N.Y. Aug. 4, 2004) ("Morgenthau cannot be held liable for the discretionary decisions made in hiring, training and supervising district attorneys").

Apart from these negligence-based claims, all plaintiffs except Salaam seek to hold the "New York County District Attorney's Office," and thus presumably DA Morgenthau, vicariously liable for the purportedly tortious conduct of his subordinate prosecutors under a respondeat superior theory (MC ¶ 104; WC ¶ 98).  That theory, however, is not viable under New York law.  New York County Law § 54, which is applicable to the counties within the City of New York, see N.Y. County Law § 941, abrogates vicarious liability for the head of any county "agency" or "office" based upon the acts or omissions of an employee of that "agency" or "office."  N.Y. County Law § 54.  Thus, New York law precludes DA Morgenthau from being held liable under any theory of vicarious tort liability.  See Barr v. County of Albany, 428 N.Y.S.2d at 670.  And, indeed, it has been squarely held that "state law claims against District Attorney Morgenthau, seeking to hold him vicariously accountable for the acts or omissions of his subordinates," must be dismissed "since claims premised on vicarious liability do not lie against the head of a county agency."  Shmueli v. New York City Police Dept., 743 N.Y.S.2d 871, 871-72 (App. Div. 2002).  New York County Law § 54 presents an absolute bar to the state law respondeat superior claims raised against DA Morgenthau.

## **CONCLUSION**

Even assuming <u>arguendo</u> the truth of every allegation in plaintiffs' complaints, they have failed to state a claim upon which relief may be granted as against DA Morgenthau, ADA Lederer, Former ADA Clements, or the "New York County District Attorney's Office".  Thus, the DA Defendants' motion for an order pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing the complaints as to them, and for any other fair and equitable relief that may be appropriate, should be granted.

Dated:   New York, New York
      September 30, 2004

                          **ROBERT M. MORGENTHAU**
                          District Attorney, New York County
                          as Special Assistant Corporation Counsel
                          One Hogan Place
                          New York, New York 10013
                          (212) 335-9000 (telephone)
                          (212) 335-9288 (facsimile)

                By:  /s/Michael S. Morgan          
                          Michael S. Morgan (MM-9360)
                          Assistant District Attorney
                            Of Counsel

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANTRON McCRAY, et al.,

                                                      Plaintiffs,

                    - against -                                            03 Civ. 9685(DAB)

THE CITY OF NEW YORK, et al.,

                                                      Defendants.

---

KHAREY WISE, et al.,

                                                      Plaintiffs,

                    - against -                                            03 Civ. 9974(DAB)

THE CITY OF NEW YORK, et al.,

                                                      Defendants.

---

YUSEF SALAAM, et al.,

                                                      Plaintiffs,

                    - against -                                            03 Civ. 10080(DAB)

THE CITY OF NEW YORK, et al.,

                                                      Defendants.

---

## AFFIRMATION OF SERVICE

Michael S. Morgan affirms, under penalties of perjury pursuant to 28 U.S.C. § 1746, that the following is true and accurate to the best of my knowledge:

1.       I am not a party to the within action, and I am over 18 years of age.

2.       On September 30, 2004, I served one copy of the accompanying MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS on the parties and persons below by mailing the copy to said persons at the address designated by them for that purpose by depositing the same with the United States Postal Service in a first-class, properly-addressed, postage paid wrapper.

| | |
|---|---|
| Jonathan C. Moore | Alan Howard Scheiner |
| Moore & Goodman, LLP | Assistant Corporation Counsel |
| Attorney for Antron McCray, et al. | New York City Law Department |
| 740 Broadway | 100 Church Street |
| New York, New York  10003 | New York, New York  10007 |
| | |
| Myron Beldock | Lennox S. Hinds |
| Beldock, Levine & Hoffman, LLP | Stevens, Hinds & White, PC |
| Attorneys for Yusef Salaam, et al | Attorneys for Kharey Wise, et al. |
| 99 Park Avenue | 116 West 111th Street |
| New York, New York 10016 | New York, New York  10026 |

Dated:   New York, New York
         September 30, 2004

                                                   /s/ Michael S. Morgan
                                                   Michael S. Morgan