USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2 15 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE MCRAY, RICHARDSON, SANTANA, WISE,
AND SALAAM LITIGATION

:
:
:
:
:
:
:

OPINION AND
ORDER

03 Civ. 9685 (DAB) (RLE)

---

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

The above-captioned Plaintiffs and their families filed suit against the City of New York,
and various current and former employees of the New York City Police Department ("NYPD")
and the New York County District Attorney's Office ("DANY"), alleging a number of federal
and state causes of action connected to the arrest, investigation, and conviction of Plaintiffs for
the attack on the Central Park Jogger on April 19, 1989. (*See* Am. Compl., Doc. 47.) Pending
before the Court is Defendants' motion for reconsideration of the Court's December 6, 2010
Order declining to apply the deliberative process privilege to the opinions, deliberations, and
recommendations of personnel assigned to NYPD's reinvestigation into the 1989 arrests that
gave rise to this litigation. Defendants' contend that the Second Circuit's decision in *Adamowicz
v. IRS*, Nos. 10-263-cv (L), 10-265-cv (CON), 2010 WL 4978494 (2d Cir. Dec. 8, 2010),
superceded the Court's Order, and that the information sought by Plaintiffs is not relevant to any
claims or defenses in this action. For the reasons set forth below, Defendants' motion for
reconsideration is **DENIED**.

## II. BACKGROUND

### A. NYPD's Reinvestigation of the 1989 Arrest and the Armstrong Report

The Court assumes general familiarity with the facts and circumstances of the events that gave rise to this litigation. To provide context for this motion, however, it is necessary to briefly outline the circumstances surrounding NYPD's reinvestigation of the 1989 attack.

In January 2002, Matias Reyes came forward and admitted that he was responsible for the attack on the Central Park Jogger. Following Reyes's confession, Plaintiffs filed several N.Y. C.P.L. § 440.10(1)(g) motions to vacate their convictions, and DANY and NYPD jointly launched a reinvestigation of the 1989 attack. Plaintiffs allege that DANY and NYPD had a "falling out" shortly after they began the reinvestigation because NYPD disagreed with DANY's conclusion that Reyes acted alone in assaulting the Central Park Jogger. (Pls.' Response to Defs.' Mot. for Reconsideration ("Pls.' Resp.") at 2.) On November 5, 2002, following DNA testing that linked Reyes to the attack, DANY joined Plaintiffs' § 440 motions and filed an affirmation stating that the Plaintiffs conviction should be vacated.

In October 2002, Police Commissioner Raymond Kelly established the Armstrong Commission (the "Commission") to reinvestigate the case "to determine if there was any improper conduct on the part of police officers, and what lessons could be or might be learned from the events of 4/19/89 or thereafter."[1] According to Commissioner Kelly, the Commission had two purposes. The Commission's first stated purpose was to determine whether police

---

[1] The Executive Summary of the Armstrong Report described the goal of the Commission as follows: "Our task was to provide an overview for the investigation of [the events surrounding Plaintiffs arrest, conviction, and DANY's decision to join Plaintiffs motion to vacate], determine whether the new evidence indicates that police supervisors or officers acted improperly or incorrectly, identify any possible weaknesses in Police Department procedures and make recommendations to address any failures or weaknesses. The panel relied heavily upon police personnel assigned to assist in the review of this matter." (Defs.' Nov. 23, 2010 Letter, Ex. D ("Armstrong Report") at 1.)

2

personnel acted permissibly during the underlying investigation. (Defs.' Nov. 23, 2010 Letter,

Ex. A, Decl. of Commissioner Kelly ¶ 7.) The Commission's second stated purpose was to

determine whether there were any weaknesses in any NYPD policies or procedures, and to make

recommendations to address any failures or shortcomings of the same. (*Id.* ¶ 8.) Commissioner

Kelly instructed the Commission to present its final conclusions and final recommendations in

the form of a written report, and Commissioner Kelly states that he played no role in the

reinvestigation itself. (*Id.* ¶ 10.) Plaintiffs contend that the actual purpose of the Commission

was not to review police procedures but was to discredit DANY's findings that Reyes acted

alone and that the principal Plaintiffs were not involved in the attack. (Pls.' Resp. at 4.)

Between the summer of 2002 and January 2003, the Commission held a number of

meetings to evaluate the progress of NYPD's reinvestigation. (Defs.' Nov. 23, 2010 Letter, Ex.

B, Decl. Of Stephen L. Hammerman ¶ 8.) At the meetings, the NYPD personnel assigned to the

reinvestigation reported to committee members about their findings, discussing the evidence that

had been gathered in 1989 and 2002. (*Id.* ¶ 12.) Defendants state that "in addition to discussing

factual information, the meeting attendees also expressed their preliminary, personal opinions

regarding the evidence, engaged in uninhibited deliberations about possible outcomes of the

reinvestigation, made recommendations regarding what they believed should be memorialized in

the Armstrong Report, and ruminated about the evidence developed and/or relied upon by

DANY." (*Id.* ¶ 15.)

The bulk of the Report, which was completed in January 2003, reflects the Commission's

conclusion that the Reyes evidence did not exonerate Plaintiffs. (*See* Armstrong Report, at 4-8.)

After evaluating the evidence, the Report adopted "the view that the most likely scenario for the

events of April 9, 1989 was that the defendants came upon the jogger and subjected her to the

same kind of attack, albeit with sexual overtones, that they inflicted on other victims in the park that night." (Armstrong Report, at 8.) The Commission also offered a series of "observations and lessons learned" at the end of report, where weaknesses in the original investigation were identified. (*See Id.* 8-10.) The majority of the problems identified by the Commission had been corrected by changes to police procedures prior to the Report, and the only observed problem with the original investigation that had not been corrected at the time of the Report was that the police continued to allocate insufficient space for the interview of minors. (*See Id.* at 9.)

**B. The Court's December 6, 2010 Order**

Defendants asserted the deliberative process privilege at the depositions of Deputy Chief Robert Gianelli and Detective Robert Mooney, and instructed the witnesses not to answer questions about conversations that they had with each other and with members of the Commission concerning their disagreement with DANY's decision to join in the motion to vacate Plaintiffs' sentences. (*See* Pls.' Nov. 23, 2010 Letter, Ex. A.) Chief Gianelli was the senior NYPD official involved in the reinvestigation, and Detective Mooney was a detective who worked closely with DANY during the initial reinvestigation, but who later disagreed with DANY's decision to exonerate Plaintiffs. (Pls.' Nov. 23, 2010 Letter, at 4-5.)

Defendants asserted that the opinions, deliberations, and recommendations of the individuals assigned to the NYPD's reinvestigation were protected by the deliberative process privilege because they were used to assist the Commission in reaching their final decision as to what conclusions and recommendations to include in the Report. (Defs.' Nov. 23, 2010 Letter, at 3-5.) Defendants' argued that the recommendations set forth in the final Report were designed to assist the agency decision-maker, Commissioner Kelly, in determining whether potential changes needed to be made to NYPD policies and procedures. (*Id.* at 4.) Defendants'

4

additionally argued that the evidence sought was not reasonably calculated to lead to the

discovery of admissible evidence on any of the claims or defenses in the case, particularly

Plaintiffs' state law intentional infliction of emotional distress claim ("I.I.E.D.") asserted against

Commissioner Kelly. (*Id.* at 5-8.)

Plaintiffs argued that the opinions, deliberations, and recommendations of those involved

in the reinvestigation were "neither predecisional nor deliberative, nor in good faith related to

any policy decisions at all." (Pls.' Nov. 30, 2010 Letter, at 7.) Plaintiffs maintained that the real

intent of the Commission was not to formulate policy or to review police procedures, but that it

was created to undermine the conclusions of DANY that Reyes was the sole participant in the

sexual assault and rape of the Central Park Jogger. (*Id.* at 6.) They also argued that the decision-

making process itself is the subject of the litigation, and so the deliberative process privilege

could not be used to bar the disclosure of critical information regarding that process. (*Id.* at 8.)

In a telephone conference on December 6, 2010, the Court declined to uphold the

Defendants' assertion of the deliberative process privilege. (*See* Decl. of Andrew Myerberg, Ex.

A, Transcript of Dec. 6, 2010 Conference.) The Court stated that:

> [T]he lynchpin of [the] deliberative process privilege really is more a question of
> policy than anything else, so the question that the Court addresses here is whether
> or not the Armstrong Report and the information provided to that report
> constitutes the formulation of policy as I understand it and as the privilege is
> applicable to.

(*Id.* 3:24 - 4:5.) The Court found that the opinions, deliberations, and recommendations of

individuals pertaining to the reinvestigation of the 1989 attacks did not constitute the formulation

of policy. The Court concluded that the information provided to the Commission related to a

factual issue regarding Plaintiffs' involvement in the attack, and that the ultimate question

addressed by the Commission about whether the Reyes confession exonerated Plaintiffs was not

a governmental decision or a question of policy protected by the deliberative process privilege.

## III. DISCUSSION

### A. Legal Standard

The standard for a motion for reconsideration under Local Rule 6.3 and Federal Rule of Civil Procedure 59(e) is a strict one. *See Schrader v. CSX Tramp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). The party must be able to "point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* A motion for reconsideration "is not a substitute for appeal," *Morales v. Quintiles Transnat'l Corp.,* 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998), and is generally only granted on three grounds: "(1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992).

### B. Merits of Defendants' Motion

Defendants' request the Court reconsider its decision based on the holding in *Adamowicz.* (Defs.' Mot. for Reconsideration ("Defs.' Mot.") at 3-6.) Defendants further argue that the Court should reconsider its decision because the information sought is not relevant to Plaintiffs claims. (*Id.* at 7.)

#### 1. *Adamowicz* Decision

The Court finds that the Second Circuit's decision in *Adamowicz* is not a change in controlling authority. In *Adamowicz,* plaintiffs challenged defendant Internal Revenue Services' assertion of the deliberative process privilege to shield from disclosure documents pertaining to the "consultative process underlying IRS decisions concerning the Examination [of an estate tax return], the FOIA requests, and related litigation." *Adamowicz,* 2010 WL 4978494, *3. Plaintiffs

6

argued that the documents did not pertain to the formulation of "policy," but only to the
execution of existing policies. *Id.* The Second Circuit upheld defendant's assertion of the
privilege, holding that deliberative materials generated by low-level officials are covered by the
deliberative process privilege even if they are not ultimately circulated or considered by a final
decision-maker. *Id.*

Here, the Court held that the deliberative process privilege did not apply to the
individuals involved in the creation of the Armstrong Report because the information provided
by those individuals did not relate to a consultative process by which a governmental decision or
policy was formed. The Court's decision was not based upon the level of the officials providing
the information or whether the information sought was shown to a final decision-maker. Based
on the Court's evaluation of the Commission and its Report, the Court concluded that the
primary purpose of the Commission was to determine whether Reyes's confession exonerated
the principal Plaintiffs, and that it only marginally involved an analysis of the police procedures
used in the initial investigation. Moreover, the Court determined that the deposition questions at
issue pertained exclusively to witnesses' opinions, deliberations, and recommendations
regarding the Reyes evidence and its impact on whether Plaintiffs were involved in the attack.
The Court found that the ultimate question of whether Plaintiffs were in fact guilty of an attack
that occurred more than a decade before the issuance of the Report did not implicate
governmental policy because the question was purely factual and entirely retrospective.  The
Court further found that it was not the type of governmental decision intended to be protected by
the deliberative process privilege.[2] Accordingly, the Court finds that *Adamowicz* does not

---

[2] To the extent that NYPD's conclusion regarding the evidence could be considered a governmental decision
protected by the privilege, the Court notes that the privilege is qualified, and that the privilege would not apply in
this case because the decision-making process that led to that ultimate finding in the Report is at issue. *See Burka v.
New York City Transit Authority*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986) ("Where the decision-making process itself

represent a change in controlling law, and Defendants motion for reconsideration based upon the *Adamowicz* decision is **DENIED.**

### 2. Relevance of the Material Sought to Plaintiffs' Claims

Plaintiffs contend that information relating to the Commission and its Report is relevant to their *Monell* claim and their I.I.E.D. claim against Commissioner Kelly. (*See* Pls.' Resp. at 11-13.) Defendants' argue that neither claim is legally cognizable, and that, as a result, neither claim can form the basis for the discovery Plaintiffs' seek. (Defs.' Reply Mem. of Law in Further Supp. of Defs.' Mot. for Reconsideration at 4-10.)

As an initial matter, the Court notes that it has only been referred this case for general pretrial purposes, and that the ultimate question of whether Plaintiffs' claims are legally cognizable is not within the scope of the instant referral.[3] Nevertheless, the Court finds that the information sought is relevant to Plaintiffs' claims as pled in their Amended Complaint. Although Defendants deny that the Commission was improperly motivated, and that Commissioner Kelly had any role in the issuance of the Report, Defendants' decision-making process regarding the reinvestigation of the 1989 attacks and the ratification of the Armstrong Report is in dispute. Plaintiffs have claimed that at the time of the events alleged in the Complaint, including when the Armstrong Report was issued in 2003, Defendants engaged in a policy, practice and custom of, among other things, "immediate public vilification of persons

---

is the subject of the litigation, the deliberative privilege may not be raised as a bar against disclosure of critical information."); *Marisol A. v. Giuliani*, No. 95 Civ. 10533 (RJW), 1998 WL 132810, *7 (S.D.N.Y. Mar. 23, 1998) ("The mental process, which are normally privileged under the deliberative process privilege, may also be discoverable where there are allegations of misconduct or misbehavior.")

[3] The Court notes, however, that the Honorable Deborah A. Batts previously denied Defendants' motion to dismiss Plaintiffs' I.I.E.D. claim, and that when she denied Defendants' motion for reconsideration of that decision, she noted: "Particularly with respect to the Armstrong Report, the Court finds that in a society legally committed to the principle that the accused are innocent until proven guilty beyond a reasonable doubt, a reasonable mind could find Commissioner Kelly's conduct in adopting public conclusions about the guilt or innocence of Plaintiffs outrageous." (Jan. 25, 2008 Order Denying Defendants' Motion for Reconsideration, at 10, Doc. 44.)

accused of "high-profile" crimes with concomitant refusal to consider evidence inconsistent with that portrayal." (Am. Compl. ¶ 1020(e).) The Amended Complaint alleges that the primary purpose of the Armstrong Commission was to malign Plaintiffs and to falsely maintain that NYPD engaged in no misconduct during their initial investigation, and that Commissioner Kelly ratified this misconduct when he adopted the Report. (*See* Am. Compl. ¶¶ 961-970.) The information sought regarding the discussions that led to the creation of the Armstrong Report is therefore relevant to Plaintiffs' claims and is reasonably calculated to lead to the discovery of admissible evidence. Even if the Court were to conclude that the information sought was not relevant to Plaintiffs' claims, the Court would order the discovery of the information sought as relevant to the subject matter involved in the action pursuant to Federal Rule of Civil Procedure 26(b)(1). Accordingly, Defendants' motion for reconsideration based on the relevance of the information sought by Plaintiffs is **DENIED.**

## IV. CONCLUSION

Based on the foregoing, Defendants' motion for reconsideration is **DENIED** because the Second Circuit's decision in *Adamowicz* did not represent a change in controlling law and the information sought by Plaintiffs is relevant to their claims.

**SO ORDERED this 15th day of February 2011**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge

9