# BELDOCK LEVINE & HOFFMAN LLP

## 99 PARK AVENUE

### NEW YORK, N.Y. 10016-1503

ELLIOT L. HOFFMAN
MYRON BELDOCK
BRUCE E. TRAUNER*
PETER S. MATORIN
KATHERINE G. THOMPSON
CYNTHIA ROLLINGS
JONATHAN MOORE*&
KAREN L. DiPPOLD
JEFFREY A. GREENBERG
JONATHAN K. POLLACK
VERA M. SCANLON
HENRY A. DLUGACZ

TEL: (212) 490-0400
FAX: (212) 557-0565
WEBSITE: blhny.com

LAWRENCE S. LEVINE (1934-2004)

COUNSEL
MARJORY D. FIELDS

REF: 3191.022

WRITER'S DIRECT DIAL:

ALSO ADMITTED IN:
*CALIFORNIA
& ILLINOIS
* FLORIDA

July 19, 2011

**BY ECF & HAND**

Honorable Ronald L. Ellis
United States District Court
Southern District of New York
500 Pearl Street - Room 18-D
New York, New York 10007-1312

    Re: In re McCray, Richardson, Santana, Wise and Salaam Litigation,
       Docket No. 03 CV 9685 (DAB)(RLE)

Your Honor:

  We write to compel production of documents and obtain rulings concerning privilege and

confidentiality claims made by the defendants.

## Preliminary Statement[1]

  Defendants have provided various privilege logs during this litigation.  For about the last

---

[1] This letter is divided into sections under the following headings:    Page
  Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
  Analysis of the Privilege Log and Categorization Proposals . . . . . . . . . . . . . . . 3
  Claims Made in Plaintiffs' Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  Attorney Work Product Privilege  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
  Law Enforcement/Official Information Privilege  . . . . . . . . . . . . . . . . . . . . . 14
  Deliberative Process, Attorney-Client &
   Attorney Work Product Privileges  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 2

four months the parties have been engaged in discussions concerning the most recent versions of

defendants' privilege logs, the last two of which were produced during recent stages of

production and withholding of documents.

In March 2011, we requested that defendants' counsel reconsider their privilege logs

based on comprehensive decisions in two cases (discussing numerous other relevant decisions),

copies of which we then provided: *Crosby* by Judge Scheinlin and *Abdell* by Judge Francis.  Our

related letters, dated March 22, 2011 and March 23, 2011, with attachments, are Exhibits 1 & 2

to this letter.[2]  In our March 22, 2011 letter, we suggested that defense counsel should at least

recognize their obligation to separate factual from alleged opinion materials and to provide the

former and redact the latter.  Defense counsel agreed, resulting in  several other rounds of

produced documents and new privilege logs submitted over several months.  That process is now

essentially completed.  *See* Exhibits 3 & 4, copies of July 7 & 14, 2011 letters from defendants'

counsel, Elizabeth M. Daitz, to plaintiffs' counsel, Karen Dippold.  The net result of those

discussions and exchanges between counsel is that we now have a new revised and consolidated

privilege log – dated July 13, 2011, received in our offices July 14, 2011, and submitted here as

Exhibit 5 — replacing privilege logs number 2 dated July 7, 2011 and number 1 dated May 26,

2011.

For purposes of this discussion, we accept the accuracy of the representations made in

Ms. Daitz's July 7th letter that initially, on May 26, 2011, the defendants produced the first

portion of the approximately 8,676 pages of documents which defendants had reviewed in

---

[2] All numbered exhibits referred to in this letter are simultaneously separately submitted.

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 3

response to plaintiffs' letters of March 22, 2011 and March 23, 2011; and that as a result

defendants "have reversed or modified the assertion of privilege over an additional 466

documents (for a combined total of 954 documents)...." Of course this still leaves a very large

number of documents that are being withheld. For reasons stated below, we think that the bulk

of them should be provided to plaintiffs in unredacted form. However, to the extent that *in*

*camera* review by the Court will be conducted, and in an attempt to avoid the necessity of

reviewing thousands of documents, we have a proposal which is based upon categorization of the

documents with the expectation that the Court will only have to review selectively chosen

exemplary documents in each category to make a decision that will apply to all such documents.

## Analysis of Privilege Log and Categorization Proposals

The categories that we have identified are drawn from Exhibit 5, using defendants'

descriptions of documents, without conceding the accuracy of those descriptions. They are

shown in Exhibit 6, a copy of which was provided to defendants' counsel on July 16, 2011.

Exhibit 6, entitled Categorization of Documents in Defendants' Privilege Log Dated July 13,

2011, is divided into the following categories:

1.   Armstrong related

2.   ADA notes

      a.   Pre-indictment matters
      b.   "To do"
      c.   Discovery and admissibility of documents
      d.   "Thoughts" & "Mental Impressions" of evidence
      e.   Analysis of witnesses & other evidence
      f.   Preparation of examinations of witnesses
      g.   Preparation for examinations at trials & for summations

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 4

|     |     |
|-----|-----|
| h.  | Testimony at suppression hearing & trials |
| i.  | Court appearances |
| j.  | ADA reports with ADA mark-ups |
| k.  | Experts |
| l.  | Expert reports with ADA mark-ups |
| m.  | Pleadings with ADA mark-ups |
| n.  | Statements with ADA mark-ups |
| o.  | Trial & hearing transcripts with ADA mark-ups |
| p.  | NYPD manuals with ADA mark-ups |
| q.  | Other ADA notes |

3.   ADA Drafts

|     |     |
|-----|-----|
| a.  | Draft examinations for witness interviews |
| b.  | Draft pleadings & trial documents |
| c.  | Drafts for court proceedings |
| d.  | Drafts for trial proceedings & examinations |
| e.  | ADA draft memoranda |
| f.  | ADA draft press releases |

4.   Other

|     |     |
|-----|-----|
| a.  | Correspondence |
| b.  | Media |
| c.  | Reports/Memoranda |
| d.  | Legal research |
| e.  | Hand drawn renderings of various precincts |
| f.  | Other |

As shown by Exhibits 5 & 6, the privileges which defendants claim are attorney-client, attorney work product, deliberative process, law enforcement/official information and privacy and/or safety concerns.[3]  As shown by those exhibits, the privilege asserted for the vast majority of the documents is the attorney work product privilege.

We have also created a second categorization document, Exhibit 7, which sub-categorizes

---

[3] Plaintiffs do not currently question redaction of information for privacy and/or safety concerns.

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 5

the grouped documents as they relate to specific named witnesses.  We propose that, if the Court

chooses to conduct extensive document examination (something we urge below is neither

required nor appropriate), documents as to certain of those witnesses be given priority

consideration – to be ruled on first so that depositions which have been delayed subject to

disclosure of documents pertaining to those witnesses can go forward sooner than later.  Those

witnesses include, without limitation and in alphabetical order, attorney Michael Armstrong,

former detective Arroyo, former ADA "Tim" Clements, former ADA Linda Fairstein, attorney

Stephen Hammerman, attorney Ruby Marin Jordan, former ADA and now Justice Kindler, ADA

Elizabeth Lederer, attorney Jules Martin, former ADA Robert Morgenthau, Detective Captain

Roe, and former detective Michael Sheehan.[4]  We further suggest that the Court start by making

determinations concerning the documents for Arroyo, Sheehan, Lederer, Clements and Fairstein.

We are still in the process of preparing two other exhibits, using the texts of Exhibits 6 &

7 and showing our proposals for selectively chosen exemplary documents.  We will provide

those final exhibits as soon as we can and, in any event, before the end of this week, which we

trust will be timely given that defendants' responsive papers are due July 29th.

## Claims Made In Plaintiffs' Complaint

Plaintiffs' 150 page 1044 paragraph Amended Complaint is an exceedingly detailed

presentation of the factual basis for the various claims of separate and joint police and

prosecutorial misconduct in this litigation.  We provide, as framework for relevancy

---

[4] Defendants' counsel have advised that Arroyo is too ill for a current deposition, but, to
the extent possible, he will be made available before September 30th; and that Rosenthal's mental
and physical condition is such that deposition may not be feasible.

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 6

considerations regarding the documents we contend should not be withheld for privilege reasons,

Exhibit A attached to this letter: a summary chart of the claims and elements stated in the

Amended Complaint.

### Attorney Work Product Privilege

We start with several fundamental contentions.  First, in the circumstances of this case,

and given the nature of the charges that are made in the complaint, even if the attorney work

product privilege or the deliberative process privilege apply, that would not protect factual

information, factual observations, factual findings and factual conclusions.  As stated in *Crosby*,

in considering whether to disclose work product documents:

> . . . Court have consistently distinguished between primarily factual
> work product and "core" work product, the latter of which includes
> the "mental impressions, conclusions, opinions, or legal theories of
> an attorney." . . . (269 F.R.D. 267 at 277)(citing *Abdell*, 2006 U.S.
> Dist. LEXIS 66114, 2006 WL 2664313 at *6).

*See also Tankleff v. County of Suffolk*, 2011 WL 12051488, at *2, 2011 U.S. Dist. LEXIS 32740,

at *5 (E.D.N.Y.) (Deliberative process privilege "does not protect factual observations, findings

or conclusions.")

Defendants' counsel appear to have accepted that principle at least in part since they

agreed, in response to our March 22, 2011 letter, to review all of the documents as to which they

had previously claimed privilege in order to separate fact from opinion material.  *See* Daitz July

7, 2011 letter, Exhibit 3.  Whether or not defendants have done so fairly or accurately remains to

be seen.

The burden of justifying assertions of work product privilege is, at least initially, on the

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 7

asserting party.  In *Gonzalez v. City of New York*, 74 Fed. R. Serv. 3d 69, 2009 U.S. Dist. LEXIS

64835, *3-4 n.3 (E.D.N.Y.), Judge Pollak rejected the City's assertion of the work product

privilege regarding an ADA's closing memorandum and related notes and commentary, and

explained in footnote 3, citing *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988):

> . . . in the context of protecting from disclosure law enforcement
> records relevant to a federal civil rights case, the defendant must
> make a "substantial threshold showing" that specific harms will
> occur if the information is disclosed, before the court should order
> *in camera* review of the documents.

For over two decades the leading case providing guidance to courts in determining

discovery issues in civil rights cases has been *King v. Conde*, where Judge Weinstein wrote:

> [l]awsuits brought under 42 U.S.C. § 1983 require special attention
> to full disclosure [in discovery]: ". . . *Section 1983* represents a
> balancing feature in our governmental structure whereby individual
> citizens are encouraged to police those who are charged with
> policing us all. Thus, it is of special import that suits brought under
> this statute be resolved with a determination of the truth rather than
> by a determination that the truth shall remain hidden."

We recognize that in cases that have considered the attorney work product privilege in the

context of documents subpoenaed from district attorney's office, a distinction has sometimes

been made based upon whether the district attorney is a party or a non-party witness.  In this case,

where a district attorney and former district attorneys are parties, we assume therefore that FRCP

26(b)(3) applies.  *See, e.g., Gonzalez, supra*, at *6.  However, we will also address the privilege

with recognition that the common law work product doctrine is considered to be somewhat

broader than Rule 26(b)(3), and that, as a general matter, courts will provide more stringent

protection against disclosure of mental work impressions made by an attorney or other

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 8

representative party in the litigation, sometimes referred to as "core-work product," rather than factual work product, even when a showing of substantial need has been made. *See Abdell v. City of New York*, 2006 U.S. Dist. LEXIS 66114 at *7, 8 20 (S.D.N.Y. 2010). Finally, our discussion recognizes that in order to obtain disclosure of core work product, a highly persuasive showing of need must be made. *See Crosby v. City of New York*, 269 F.R.D. 267, 278 (S.D.N.Y. 2010).

Nonetheless, we believe and assert that, regardless of whether district attorneys are parties or non-parties, prosecutors' files in civil lawsuits arising out of underlying criminal prosecutions are generally not protected from discovery by the attorney work product privilege. Indeed, the liberal discovery principles for civil rights actions are particularly applicable to considerations of attorney work product privilege claims as to district attorneys' files because there is an inherent substantial need for discovery where, as in this case, there are substantial allegations of police and prosecutorial misconduct. In such cases, and regardless of whether dealing with factual or opinion material, the essence of the lawsuit involves consideration of the opinions and decision making process of the prosecutors. Indeed, the decision making process itself is the subject of the wrongful conduct contentions made in the litigation and for that reason alone courts have found substantial and compelling need and hardship on the part of civil rights plaintiffs.

Discovery of information related to thought processes during the investigation and prosecution of the underlying criminal charges is centrally involved with the issues in this case. For example, information about discussions with and preparation of witnesses; analysis and evaluation of evidence; decisions as to what evidence should and should not be disclosed to the

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 9

criminal defendants; information indicative of whether persons in the District Attorney's office,

with or without involvement of the principal police defendants, were aware of and/or withheld

exculpatory evidence or deceived or misled the defense; and any information about such subjects

that could be informative as to who participated in wrongfully charging and prosecuting the

defendants (now plaintiffs), is very much at issue.  The District Attorney's files in this case

necessarily contain information which should be critical to plaintiffs' claims, including the police

and prosecutorial misconduct claims that have been made.  It would be both beyond the

reasonable scope of the privilege and contrary to applicable principles of discovery in civil rights

cases for the defendants to be able to misuse the attorney work product privilege (or, as discussed

further below, the deliberative process privilege) to avoid disclosure of relevant information for

evidentiary and impeachment purposes.

As stated by Judge Scheindlin in *Crosby v. City of New York*, *supra*, 269 F.R.D. at 276,

in discussing the work product privilege in regard to a plaintiff seeking discovery of prosecutor's

files in a civil law suit in which the district attorney was a non-party:

> . . . Indeed, "'courts have consistently held that the privilege [set
> forth in *Rule 26(b)*] is unavailable when a prosecutor in a prior
> criminal investigation later objects to discovery of her work
> product by a litigant in a related civil lawsuit.'" 41
>
> > fn 41: *Abdell, 2006 U.S. Dist. LEXIS 66114, 2006 WL
> > 2664313, at *3 (quoting Klein v. Jefferson Parish School
> > Bd., No. Civ A 00-3401, 2003 U.S. Dist LEXIS 6514, 2003
> > WL 1873909 at *3 (E.D. La. Apr. 10 2003) and collecting
> > cases) (alteration omitted).*

In that regard, the Court should also consider that discovery is meant to be broad in scope under

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 10

Rule 26(b)(1), "designed to achieve disclosure of all the evidence relevant to merits of a

controversy." *Id.* at 282.  While parties must demonstrate that the information sought is relevant

and material to the allegations and claims at issue in the proceedings, relevance is construed

broadly and was, for example, found to be satisfied in *Crosby* with documents that were not

directly on point but concern the broader context of the issue.  *Id.*

In cases such as this one, where there are allegations of police and prosecutorial

misconduct, any substantial need requirement for factual work product is usually considered

satisfied because of the obvious need to discover statements made to prosecutors.  *Abdell*, 2006

U.S. Dist. LEXIS at *23-25.  No substantial equivalent exists for a source of statements made to

prosecutors.  In *Abdell*, at *23-25,  the court explained that in cases of alleged police misconduct,

depositions were limited by the practical problems of lapse of time and diminished memory and

that other evidence of witnesses' observations and knowledge must be compared to prosecutor's

statements for inconsistencies.  *See also Crosby*, 269 F.R.D. at 279-280 (statements made by

police and other fact witnesses fulfill substantial need requirements in alleged police misconduct

cases; and depositions are not substantially equivalent to contemporaneous memoranda).  We

emphasize, in that regard, that the statements in the District Attorney's files are largely taken by

prosecutors involving several categories of witnesses: victims, youths who were in the park other

than our clients, relatives of witnesses, police and detectives involved in investigations and

arrests, and, most significantly, the detectives involved in the interrogations of our clients – all

involving crucial areas of consideration in this case.

We submit that the law in this area has developed to favor disclosure of fact and even

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 11

core opinion material in prosecutors' files in recognition of the difficulties civil rights plaintiffs

have in obtaining relevant information, particularly where there are allegations of misconduct

and conspiracy. There is a tangible compelling need to be able to penetrate the conspiratorial

cloak in the search for truth by allowing the discovery of available documents. That need is

particularly heightened because of the many years that have passed since the original events and

the need to be able to use original materials both to refresh witnesses' recollection and to

confront them with inconsistencies between what they now say in civil depositions and what the

original materials show.

     Allowing the discovery sought by plaintiffs in this case does not in any way undermine

the purposes of the common law work product doctrine: 1) ensuring that an attorney does not

alter his behavior, 2) alleviating the "freeloader" problem, and 3) preventing disruption of

ongoing litigation. *See Hickman v. Taylor*, 329 U.S. 495 (1947). As stated in *Gonzalez* at \*9-10:

> . . . The purpose of the work product doctrine is to create a "zone of privacy" that
> allows an attorney to prepare for litigation "free from unnecessary intrusion by his
> adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (22d Cir. 1998)
> (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 91 L.Ed. 451
> (1947)). The doctrine has been justified as preserving the "public policy
> underlying the orderly prosecution and defense of legal claims." *Hickman v.
> Taylor*, 329 U.S. at 510. Courts have recognized three specific purposes
> justifying application of the doctrine: where disclosure would "(1) alter attorney
> behavior, (2) reward sloth, or (3) interfere with ongoing litigation." *Haus v. City
> of New York*, 2006 WL 3375395, at \*3 (citing *Abdell v. City of New York*, 2006
> WL 2664313 at \*4).

We think it abundantly clear that in this case none of those purposes are applicable and that

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 12

disclosure could not conceivably undermine the work product privilege.[5]  Particularly in regard to

the assertion of work product privilege by prosecutors, it is demeaning to the prosecutorial

function and authority to suggest that the so-called chilling effect from disclosure might alter

district attorney behavior.  The prosecutor's sacred mantra has always been its duty to seek

justice.  Prosecutors have a dual role and dual ethical/professional obligations as attorneys for the

state and attorneys for the citizens of the state, including persons accused of crime.  Prosecutors

have a duty to record facts and information in a non-biased manner and to uphold truth and

justice.  If they fail to carry out that function and duty, if district attorneys' files reveal that they

have rather acted in an improper manner and, for example, have withheld evidence helpful to the

defense or made decisions based upon seeking conviction rather than justice, or have exhibited

wilful blindness/deliberate indifference to their obligations to accused persons, the policy behind

the attorney-client privilege would not be served by keeping those files secret.

    It may be, in the Court's discretion, that *in camera* review of various of the withheld

and/or redacted documents is the best way to resolve certain of those issues.  That was the

procedure followed in *Gonzalez*, as in various other cases.  However, in the present state of the

record, defendants must first sustain their burden, as recognized in *Gonzalez*, of demonstrating

the applicability of the work product doctrine according to the requirements of *King v. Conde*,

--------------------------------------------------

    [5] Although not an issue that need be resolved here, we question whether in a civil rights
litigation arising out of a criminal prosecution that ended in dismissal of charges against the
accused, district attorney's files should be protected from disclosure as if "prepared in
contemplation of litigation" in the intended sense of that phrase, because, *inter alia*, the three
stated purposes of the attorney work product doctrine are not meaningful once the criminal
prosecution is terminated, and because the district attorney's work product was never prepared in
contemplation of *civil* litigation.

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 13

*supra*, including a substantial threshold showing that specific harms will occur if the information

is disclosed. *Gonzalez*, at *1.  This burden is a heavy one, and merely stating that the redactions

are based on the grounds of attorney work product privilege is not sufficient. *Gonzalez*, at *1,

*2; *see also*, *Crosby*, 269 F.R.D. at 279.  Surely, balancing the equities and needs of the parties,

the speculative-chilling effect harm to district attorney behavior is so insubstantial by comparison

that it should be rejected as a basis for withholding the documents in question.

\* \* \* \*

The Court should consider these issues with an overview drawn from *Dorey v. Ryan*, 25

F.3d 81; 1994 U.S. App. LEXIS 11792 (2d Cir.), which discusses immunity issues in cases such

as the one at bar where a conspiracy between police and prosecutors has been alleged.  The

decision in *Dorey* came after a petition for rehearing and reconsideration of the reversal of the

lower court's dismissal of plaintiff's 42 U.S.C. §1983 complaint and after the Supreme Court's

intervening opinion in *Buckley v. Fitzsimmons*, 125 L. Ed. 2d 209, 113 S. Ct. 2606 (1993)

regarding prosecutorial immunity.  The result of the *Buckley* decision, building on and explaining

the holding in *Imbler v. Pachtman*, 424 U.S. 409, 430 N. 32, 47 L. Ed. 2d 198, 96 S. Ct. 984

(1976), was that in *Dorey* the Second Circuit rejected its previous holding that the prosecutor was

not "protected by absolute immunity, because [he was] being sued for [his] participation in an

extra-judicial conspiracy to deprive Dorey of his constitutional rights." *Dorey* , 25 F.3d at 82.

However, the Second Circuit then held that despite dismissal against the prosecutor, the

complaint against officer Anderson for being involved in the extra-judicial conspiracy with

prosecutor Ryan could still be maintained. *Id.* at 83-84.  In other words, while the prosecutor

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 14

was immune for his alleged improper actions, those improper actions were still relevant to consideration of the conspiratorial charges against Officer Anderson.

The significance of the *Dorey* decision to these issues concerning disclosure of documents lies in the fact that although prosecutors may be immune for their actions as advocates during the judicial proceeding, the information in the prosecutors' files developed during the entire case is still very much relevant to consideration of the charges of police misconduct separate from and/or in conjunction with prosecutorial misconduct. That conclusion is all the more applicable and required in this case since Fairstein, Lederer and Clements are individual defendants because of their participation as prosecutors in the pre-judicial investigatory stage of the criminal case.

### Law Enforcement/Official Information Privilege

The defendants claim the law enforcement/official information privilege in regard to a group of documents which can be found in Exhibit 5 at pages 79-80 and Exhibit 6 at pages 56-57. Those documents involve "Hand-drawn renderings of rooms within" and notes regarding rooms in various precincts: 24th, 20th, Central Park and an unidentified precinct. If those drawings and notes were made, as they appear to have been, at the time of the prosecution of the underlying criminal cases and were not turned over to the defense, they should have been, as that was required by state discovery standards and arguably by *Brady* standards. Since the documents relate to the circumstances of interrogation at various precincts of our clients and other youths who had been in the park, they should have been made available for use in defense counsel questioning of witnesses at hearings and trial. They therefore should be provided to plaintiffs'

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 15

counsel for use at depositions and trial in this case.  In any event, the privilege should not protect

those documents because withholding them does not suit any of the appropriate purposes for this

privilege claim.

In that regard, we rely on Judge Dolinger's decision in *Haus v. City of New York*, 2004

U.S. Dist. LEXIS 26074 (S.D.N.Y.), for the proposition that the type of information being

withheld cannot justify the privilege.

> The rationale for the law-enforcement privilege is "to prevent
> disclosure of law enforcement techniques and procedures, to
> preserve the confidentiality of sources, to protect witnesses and law
> enforcement personnel, to safeguard the privacy of individuals
> involved in an investigation , and otherwise to prevent interference
> in an investigation." *In re Dep't of Investigation, 856 F.2d 481,*
> *484 (2d Cir. 1988).* It is invoked to prevent interference with police
> investigations and, as already ruled in this case, defendants are
> required to specify what investigations may be imperiled by
> disclosure of information assertedly covered by the privilege.
> *Fountain v. City of New York, 2004 U.S. Dist. LEXIS 7539, 2004*
> *WL 941242 \*4 (S.D.N.Y. May 3, 2004)* [*4]

> Defendants fail to meet this initial requirement, and that alone
> should doom their argument.  Moreover, they utterly fail to
> demonstrate the harm that disclosure of the unredacted planning
> documents to plaintiffs' counsel would occasion for any future
> law-enforcement effort, whether or not investigative.

*Id.* At *13.

The documents in question here are not even remotely relevant to preventing interference

with police investigations and there can be no meaningful harm demonstrated if they are

disclosed.

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 16

### <u>Deliberative Process, Attorney-Client and Attorney Work Product Privileges</u>

We have previously written to the Court about and briefed deliberative process privilege

issues in connection with the Armstrong Report.  Insofar as defendants now claim attorney-client

privilege and attorney work product protections for certain Armstrong Report related documents

(*see* pages 1 of Exhibit 5 & 6), the same arguments that we have previously made which resulted

in this Court rejecting the City's assertion of the deliberative process privilege should prevail

here, particularly since the Armstrong Report and the procedures that led to the report involve the

core issues of our related cause of action.  This Court made two decisions which rejected the

City's assertion of that privilege.  In that regard, your Honor's opinion denying reconsideration,

dated February 15, 2011, stated in relevant part at pages 4-5:

> In a telephone conference on December 6, 2010, the Court declined to uphold the
> Defendants' assertion of the deliberative process privilege....The Court stated that:
>
>> [T]he lynchpin of [the] deliberative process privilege really is more
>> a question of policy than anything else, so the question that the
>> Court addresses here is whether or not the Armstrong Report and
>> the information provided to that report constitutes the formulation
>> of policy as I understand it and as the privilege is applicable to.
>
> (*Id.* 3:24 - 4:5.)  The Court found that the opinions, deliberations, and
> recommendations of individuals pertaining to the reinvestigation of the 1989
> attacks did not constitute the formulation of policy.  The Court concluded that the
> information provided to the Commission related to a factual issue regarding
> Plaintiffs' involvement in the attack, and that the ultimate question addressed by
> the Commission about whether the Reyes confession exonerated Plaintiffs was not
> a governmental decision or a question of policy protected by the deliberative
> process privilege.

The relevance of the materials plaintiffs sought from the Armstrong Report documents

was discussed, in your Honor's decision at pages 8-9 as follows:

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 17

> . . . the Court finds that the information sought is relevant to Plaintiffs' claims as
> pled in their Amended Complaint.  Although Defendants deny that the
> Commission was improperly motivated, and that Commissioner Kelly had any
> role in the issuance of the Report, Defendants' decision-making process regarding
> the reinvestigation of the 1989 attacks and the ratification of the Armstrong
> Report is in dispute.  Plaintiffs have claimed that at the time of the events alleged
> in the Complaint, including when the Armstrong Report was issued in 2003,
> Defendants engaged in a policy, practice and custom of, among other things,
> "immediate public vilification of persons accused of "high profile" crimes with
> concomitant refusal to consider evidence inconsistent with that portrayal." (Am.
> Compl. ¶ 1020(e).)  The Amended Complaint alleges that the primary purpose of
> the Armstrong Commission was to malign Plaintiffs and to falsely maintain that
> NYPD engaged in no misconduct during their initial investigation, and that
> Commissioner Kelly ratified this misconduct when he adopted the Report. (*See*
> Am. Compl. ¶ ¶ 961-970.)  The information sought regarding the discussions that
> led to the creation of the Armstrong Report is therefore relevant to Plaintiffs'
> claims and is reasonably calculated to lead to the discovery of admissible
> evidence.  Even if the Court were to conclude that the information sought was not
> relevant to Plaintiffs' claims, the Court would order the discovery of the
> information sought as relevant to the subject matter involved in the action
> pursuant to Federal Rule of Civil Procedure 26(b)(1) . . . .

* * * *

The defendants' renewed efforts to keep Armstrong Commission related documents

secret, now based on claiming attorney-client and attorney work product privileges, should be

rejected for much the same reasons stated in the Court's prior decision concerning the

deliberative process claim.  As to the attorney-client privilege, although the Armstrong

Commission, consisting of Messrs. Armstrong, Hammerman and Martin, included attorneys who

provided information to Commissioner Kelly, and presumably did do along with Ruby Marin

Jordan, "Special Counsel to Deputy Commissioner of Legal Matters," the publicly produced

Armstrong Report, purportedly resulting from the police reinvestigation, surely was not prepared

through attorney-client communications intended to be kept confidential.  We note that the stated

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 18

purpose of the Armstrong Report was "To determine whether police policy or procedures needed

to be changed as a result of the Central Park jogger case . . . ." *See* Exhibit 8, Armstrong Report

page stating "Executive Summary." As to the inapplicability of the claim of attorney work

product, we rely on our discussion earlier in this letter.

* * * *

Defendants claim deliberative process, as well as attorney work product, for one group of

documents: NYC 059400-08, described as "Fax from ADA John Dorman to ADA Lederer, dated

September 16, 1994, annexing excerpts of memo from Assistant Deputy Commissioner Kevin

Luvin to Police Commissioner Bratton regarding department advocate proceedings against Det.

Humberto Arroyo and others." *See* Exhibit 5 at p.81 & Exhibit 6 at p.57. Det. Arroyo was the

assigned detective from the Central Park Precinct in charge of the entire Central Park Jogger

investigation. This is not to say that others did not take prominent roles, which they did; but that

was his official designation and he played a major role throughout the investigation, including

without limitation crucial interviews of Raymond Santana, Steven Lopez, Jomo Smith, Raheim

Fledger, and Fedore Mitchell, as well as attendance at the video statements of Raymond Santana

and Kharey Wise (second video interrogation only); and he testified at pre-trial hearings and at

trial. Also, and quite significant to claims in this civil case, Arroyo, along with Detectives

Taglioni and McKenna, was assigned to work with Elizabeth Lederer and the other district

attorneys throughout the prosecution of the case on a full-time continual day-to-day basis for

investigative and trial preparation purposes in both criminal trials. The charges against Arroyo

were the subject of newspaper reports and apparently involved corrupt practices and dishonesty,

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 19

including thefts of substantial monies from suspected drug dealers in September 1992. The

defendants should not be allowed to withhold information about Arroyo's charges in department

advocate proceedings relating to Arroyo's dishonesty and misconduct.

Defendants cannot justify such an assertion of attorney work product or deliberative

process for these Arroyo-related documents in the circumstances of this case. At the very least

the credibility of Arroyo and arguably of other detectives with whom he had interactions

concerning this case, is a highly relevant issue that plaintiffs should be able to explore with all

existing documentation. We also note that the fax is dated December 16, 1994, several years

after the convictions in the underlying criminal cases, and yet it is directed specifically to ADA

Lederer who was the line ADA in charge of the Central Park Jogger prosecutions. The withheld

information should also therefore be made available for questioning Lederer and other assistants,

former and present, who had any involvement in this case regarding their knowledge or lack of

knowledge of Arroyo's misconduct.

* * * *

We next review the applicable precedents and principles regarding claims of the

deliberative process privilege.

To qualify for the deliberative process privilege, information and related documents must

be both "predecisional" and deliberative." *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473,

482 (2d Cir. 1999). They must also be related to formulation of policy. *Id.* at 482. The

information that defendants are attempting to protect here is neither "predecisional" nor

"deliberative," as those words have been interpreted by applicable precedents; nor are they

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 20

related to any policy decisions at all.

The court decisions discussed below stand for the proposition that the documents and related information the defendants seek to withhold are not covered or protected by the deliberative process privilege.  To some extent because the issues and principles are parallel and overlapping, they are also relevant to the previous analysis of attorney work product privilege issues.

"A document is predecisional when it is prepared in order to assist an agency decision maker in arriving at his decision" *Grand Cent. P'ship, Inc.,* 166 F.3d at 482. To establish this element of the privilege, the agency must "(i) pinpoint the specific agency decision to which the document correlates and (ii) verify that the document precedes, in temporal sequence, the 'decision' to which it relates." *Id.*

"A document is 'deliberative' when it is actually . . . related to the process by which policies are formulated." *Grand Cent. P'ship*, 166 F.3d at 482 (citation & internal quotation marks omitted).  In examining this prong of the privilege, courts have looked at "whether the document (i) formed an essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Id.* (citation & internal quotation marks omitted).

The deliberative process privilege "does not protect factual observations, findings or conclusions." *Tankleff v. County of Suffolk*, 2011 WL 1205148, at *2, 2011 U.S. Dist. LEXIS 32740, at *5 (E.D.N.Y.).

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 21

In any event, internal ADA communications and ADA thought processes are not

protected by the deliberative process privilege particularly when, if there is any decision-making

process involved, it is the subject of the wrongful conduct contentions made in the litigation.

*See, e.g., Burka v. New York City Transit Auth.,* 110 F.R.D. 660, 667 (S.D.N.Y. 1986) (Francis,

J.); *Marisol A. v. Guiliani.,* 1998 WL 132810, at *7 (S.D.N.Y. Mar. 23, 1998). As stated in

*Burka,* "[w]here the decision-making process itself is the subject of the litigation, the deliberative

privilege may not be raised as a bar against disclosure of critical information." *Id.,* 110 F.R.D. at

667, *and see, Marisol A.,* 1998 WL 132810, at *7("mental processes, which are normally

privileged under the deliberative process privilege, may also be discoverable where there are

allegations of misconduct or misbehavior").

The statement by Judge Francis in *MacNamara v. City of New York,* 04 Civ. 9216 (KMK)

(JCF), 2007 WL 755401, at *32-34, 2007 U.S. Dist. LEXIS 17478, at *32-34 (S.D.N.Y.),

rejecting the City's assertion of the deliberative process privilege, is also very much on point:

> As the court emphasized in *King v. Conde,* 121 F.R.D. 180 (E.D.N.Y. 1988),
> [l]awsuits brought under 42 U.S.C. § 1983 require special attention
> to full disclosure [in discovery]: ". . . *Section 1983* represents a
> balancing feature in our governmental structure whereby individual
> citizens are encouraged to police those who are charged with
> policing us all. Thus, it is of special import that suits brought under
> this statute be resolved with a determination of the truth rather than
> by a determination that the truth shall remain hidden."

> *Id.* at 195 (quoting *Wood v. Breier,* 54 F.R.D. 7, 10-11 (E.D. Wis. 1972)).
> Accordingly, "in a civil rights action where the deliberative process of State or
> local officials is itself genuinely in dispute, privileges designed to shield that
> process from public scrutiny must yield to the overriding public policies expressed
> in the civil rights laws." *Grossman v. Schwarz,* 125 F.R.D. 376, 381 (S.D.N.Y.
> 1989) (citing *Burka v. New York City Transit Auth.,* 110 F.R.D. 660, 667

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 22

(S.D.N.Y. 1986)); see also *Scott v. Board of Education of the City of East Orange*, 219 F.R.D. 333, 337 (D.N.J. 2004) ("[W]hen the deliberations of a government agency are at issue, the [deliberative process privilege] is not available to bar disclosure of such deliberations."); *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass 2003) (same); *Marisol A.*, 1998 WL 132810, at *7 (same).

Also instructive is Judge Wall's decision in *Tankleff v. County of Suffolk*, 2011 WL 1205148, *1, 2011 U.S. Dist. LEXIS 32740, *4  (E.D.N.Y.), rejecting the Office of Attorney General's claim that its "'intra-office memoranda, e-mails and notes that preceded the determination of [its] ultimate position [supporting dismissal of criminal conviction and charges] and that contain interpretations of evidence and policy considerations' are covered by the deliberative process privilege." In *Tankleff*, after an *in camera* review of the documents and analysis of various decisions, the court concluded that the Attorney General failed to satisfy its burden of justifying application of the privilege, which "rests with the party asserting it:" and that even if its application were warranted, it is a qualified privilege and "plaintiffs' need for the materials outweighs" any deliberative process privilege claim. *Id.* at *3, *8.

In sum, the information sought to be withheld by defendants under the guise of the deliberative process privilege does not qualify.  It simply does not involve "matters of policy, for which the deliberative privilege was designed." *See Haus*, 2004 WL 3019762, at *3 (citing *Nat'l Congress/or Puerto Rican Rights*, 194 F.R.D. at 95).  And, in any event, plaintiffs' need for the materials is paramount.

BELDOCK LEVINE & HOFFMAN LLP

Honorable Ronald L. Ellis
July 19, 2011
Page 23

## Conclusion

For all the foregoing reasons, relief should be granted to plaintiffs in accordance with the

contentions made above, as well as such other and further relief as may be just and proper.

Respectfully submitted,

BELDOCK LEVINE & HOFFMAN LLP

By: _____

Myron Beldock
*Attorneys for the Salaam Plaintiffs*

MB:jms

cc:   Corporation Counsel of the City of New York
Attn:   Elizabeth Daitz, Esq., Philip DePaul, Esq.
and all other designated defense counsel


Patricia Bailey, Esq.
Assistant District Attorney
New York County District Attorney's Office

All Plaintiffs' Counsel

Exhibit A

**EXHIBIT A**

**Summary of Claims & Elements Stated in the Amended Complaint (ACP)**

| Claim | Elements |
|---|---|
| 1. Violation of Rights Under 1981 and 13th Amendment (ACP ¶ __ to ___) | • The misconduct relating to one or more of the activities enumerated by the statutes is racially motivated and purposefully discriminatory.<br><br>• Plaintiffs are members of a racial minority. |
| 2. Violation of Rights Under 1983 and 1st, 4th, 5th, 6th, 9th and 14th Amendments.  (ACP ¶ __ to ___) | • Defendants acted under the color of state law.<br><br>• Plaintiffs were deprived of a federal right:<br>1. 1st Amendment - familial association<br>2. 4th Amendment  - malicious prosecution<br>   a. Defendants commenced a criminal prosecution against P.<br>   b. The prosecution terminated in Plaintiffs' favor.<br>   c. There was no probable cause for the proceeding.<br>   d. Defendants acted with actual malice.<br>3. 5th Amendment - due process<br>   a. Defendants extracted an unconstitutional confession from plaintiffs<br>   b. Defendants knowingly used the confessions in a criminal case<br>4. 6th Amendment - fair and speedy trial<br>5. 9th Amendment - unenumerated rights<br>6. 14th Amendment - equal protection<br><br>• Defendants acts were the proximate cause of the injuries and consequential damages sustained by Plaintiffs |
| 3. Violation of Rights under 1983 and 1985(3) and 14th Amendment. (ACP ¶ __ to ___) | <u>1983</u><br><br>• an agreement between two or more state actors, or a state actor and a private entity<br><br>• to act in concert to inflict constitutional injury; and<br><br>• an overt act done in furtherance of the goal of |

| Claim | Elements |
|---|---|
| | causing damages<br><br>1985(3)<br><br>•    a conspiracy<br><br>•    for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws<br><br>•    an act in furtherance of the conspiracy<br><br>•    plaintiffs were thereby deprived of rights of citizens of the United States. |
| 4. Loss of Familial Association (familial plaintiffs).  (ACP ¶ __ to ___) | •    The defendants committed an act that was so shocking, arbitrary and egregious that the Due Process Clause would not tolerate it<br><br>The conduct was intended to injure in some way and was unjustified by a government interest<br><br>or<br><br>the conduct was inflicted with deliberate indifference that was shocking under the circumstances |
| 5. Monell Claim in Regards to NYPD Police Officers. (ACP ¶ __ to ___) | Failure to Train<br><br>•    Defendant City knew to a moral certainty that police officers (POs) would confront a situation where they would be interrogating individuals who were suspected of being involved in a crime, and that such situations presented the POs with difficult choices of the sort that training or supervision would make less difficult or that there is a history of POs' mishandling such situations.<br><br>•    The wrong choice by POs will frequently cause the deprivation of a citizen's constitutional rights<br><br>•    City's failure to provide adequate training caused |

| Claim | Elements |
|---|---|
| | the violation of Plaintiffs' constitutional rights<br><br>**Policy of Not Recording Interrogations**<br><br>• City knew that its policy of refusing to videotape the interrogations of "prisoners," *i.e.*, persons in custody, was likely to result in deprivation of constitutional rights<br><br>• There was a deficiency in the City's policy that reflects purposeful rather than a negligent course of action<br><br>• The City's policy of refusing to videotape all stages of interrogations of crime suspects led to the violation of Plaintiffs' rights<br><br>**Failure to Supervise**<br><br>• City's inadequate supervision of its police officers was likely to result in the false arrest and imprisonment and malicious prosecution of crime suspects<br><br>• There was an obvious and severe deficiency in the City's supervision of its officers, which amounts to deliberate indifference to the rights of individuals who will come in contact with these officers<br><br>• There is a causal relationship between the City's failure to properly supervise its officers and the deprivation of Plaintiffs' rights. |
| | **Known Misconduct (Policy or Custom/Deliberate Indifference)**<br><br>• The City policy makers knew "to a moral certainty" that its employees would encounter a given |

A-3

| Claim | Elements |
|---|---|
| | situation<br><br>• That the situation would either present the kind of difficult decision for an employee that the training or supervision would ameliorate, or a history of employees mishandling the situation, and<br><br>• A deprivation of a person's constitutional rights will frequently result from an employee's mishandling such situations |
| 6. Monell Claim against ADAs and DANY (same as above for NYPD). (ACP ¶ __ to ___) | <u>Failure to Train</u><br><br>• Defendant City knew to a moral certainty that police officers would confront a situation where they would be interrogating individuals who were suspected of being involved in a crime, and that such situations presented the POs with difficult choices of the sort that training or supervision would make less difficult or that there is a history of POs' mishandling such situations.<br><br>• The wrong choice by POs will frequently cause the deprivation of a citizen's constitutional rights<br><br>• City's failure to provide adequate training caused the violation of Plaintiffs' constitutional rights<br><br><u>Policy of Not Recording Interrogations</u><br><br>• City knew that its policy of refusing to videotape the interrogations of "prisoners," *i.e.*, persons in custody, was likely to result in deprivation of constitutional rights<br><br>• There was a deficiency in the City's policy that reflects purposeful rather than a negligent course of action<br><br>• The City's policy of refusing to videotape all stages of interrogations of crime suspects led to the violation of Plaintiffs' rights |

| Claim | Elements |
|---|---|
| | <u>Failure to Supervise</u><br><br>• City's inadequate supervision of its ADAs was likely to result in the false arrest and imprisonment and malicious prosecution of crime suspects<br><br>• There was an obvious and severe deficiency in the City's supervision of its ADAs, which amounts to deliberate indifference to the rights of individuals who will come in contact with these officers<br><br>• There is a causal relationship between the City's failure to properly supervise its ADAs and the deprivation of Plaintiffs' rights. |
| | <u>Known Misconduct (Policy or Custom/Deliberate Indifference)</u><br><br>• The City policy makers knew "to a moral certainty" that its employees would encounter a given situation<br><br>• That the situation would either present the kind of difficult decision for an employee that the training or supervision would ameliorate, or a history of employees mishandling the situation, and<br><br>• A deprivation of a person's constitutional rights will frequently result from an employee's mishandling of the situation |
| 7. Violation of State Law Rights. (ACP ¶ __ to __) | <u>Malicious Prosecution</u><br><br>• At the time the prosecution was initiated, the defendant did not have probable cause to believe |

A-5

| Claim | Elements |
|---|---|
| | that the Plaintiffs were guilty of the crimes they were charged with; and<br><br>• In initiating the prosecution, the defendants acted maliciously<br><br>Intentional Infliction of Emotion Distress (re: Armstrong Report)<br><br>• Defendants' conduct towards the Plaintiffs was so outrageous and shocking that it exceeded all reasonable bounds of decency as measured by what the average member of the community would tolerate; and<br><br>• Defendants' conduct caused severe emotional distress to plaintiffs; and<br><br>• Defendants acted recklessly and with utter disregard of the consequences that might follow |
| 8. Respondeat Superior (ACP ¶ __ to ___) | • NYC is responsible for the acts of a police officer or ADA employed by it when such an officer or ADA acts are performed within the scope of the officer's or ADA's employment |

A-6