# BELDOCK LEVINE & HOFFMAN LLP

## 99 PARK AVENUE

### NEW YORK, N.Y. IOOI6-I503

ELLIOT L. HOFFMAN
MYRON BELDOCK
BRUCE E. TRAUNER*
PETER S. MATORIN
KATHERINE G. THOMPSON
CYNTHIA ROLLINGS
JONATHAN MOORE*&
KAREN L. DIPPOLD
JEFFREY A. GREENBERG
JONATHAN K. POLLACK
VERA M. SCANLON
HENRY A. DLUGACZ

TEL: (212) 490-0400
FAX: (212) 557-0565
WEBSITE: blhny.com

LAWRENCE S. LEVINE (1934-2004)

COUNSEL

MARJORY D. FIELDS

REF:   3191.022

WRITER'S DIRECT DIAL:

ALSO ADMITTED IN:
*CALIFORNIA
& ILLINOIS
* FLORIDA

March 22, 2011

**BY E-MAIL & REGULAR MAIL**
edaitz@law.nyc.gov

Elizabeth M. Daitz, Esq.
Assistant Corporation Counsel
New York City Department of Law
100 Church Street – Room 3-218
New York, New York 10007

  Re: In re McRay, Richardson, Santana, Wise and Salaam Litigation
     03 Civ. 9685 (DAB)(RLL)

Dear Ms. Daitz:

   Attached as Exhibits A through C is our list of Bates numbered documents to which you have asserted privilege and to which we object.  Exhibit A covers documents created with regard to the reinvestigation and the Armstrong Commission; Exhibit B covers documents, which as far as we can determine from your privilege log, were created by non-parties to this action; and Exhibit C covers documents created by parties to this action.

   In considering your asserted privileges and our objections, we ask you to be guided by Judge Scheindlin's opinion in *Crosby v. City of New York*, 269 F.R.D. 267 (S.D.N.Y. June 22, 2010), and Judge Francis's opinion in *Abdell v. City of New York*, No. 05 Civ. 8453, 2006 U.S. Dist. LEXIS 66114 (S.D.N.Y Sept. 14, 2006), copies of which are attached as Exhibit D

   Without limiting our objections, we suggest that as a preliminary matter you should identify those documents or portions of documents for which you claim privilege on grounds of opinion as opposed to fact.   By doing so, you would greatly reduce our tasks in meeting and conferring about the issues.  In that regard, we also suggest that you should voluntarily consent to withdraw privilege assertions to all documents concerning the reinvestigation and the Armstrong report (as to which Judge Ellis has already ruled in our favor on the so called deliberative process privilege) and all

BELDOCK LEVINE & HOFFMAN LLP

documents containing information concerning attorneys' discussions with any witnesses regarding the underlying criminal case, be they defendants or non-parties. We believe the analyses made by Judge Scheindlin and Judge Francis requires that you comply with these suggestions.

Attached as Exhibit E is a list of Bates numbers for approximately 144 pages of documents that were not produced to plaintiffs and which do not appear on your privilege log. We request that you produce these documents to us or provide us with a privilege log specifying why these documents are being withheld.

Attached as Exhibit F is a list of documents that were produced to defendants by the District Attorney's officer, which apparently were not produced to plaintiffs. If these documents have been provided to plaintiffs, plaintiffs request that you identify what Bates numbers they were produced under. Otherwise, we request that you produce these documents to us or provide us with a privilege log specifying why these documents are being withheld.

Very truly yours,

Myron Beldock
On Behalf of All Plaintiffs' Counsel

MB:mc

cc:     ACC Elizabeth W. Dollin, Esq (By E-Mail)
        ACC Jessica Cohen, Esq. (By E-Mail)
        ACC Andrew Myerberg, Esq. (By E-Mail)
        ACC Genevieve Nelson, Esq. (By E-Mail)
        Jonathan C. Moore, Esq. (By E-Mail)
        Karen Dippold, Esq. (By E-Mail)
        Michael W. Warren, Esq. (By E-Mail)
        Evelyn W. Warren, Esq. (By E-Mail)
        Roger S. Wareham, Esq. (By E-Mail)
        Jane Byrialsen, Esq. (By E-Mail)
        David N. Fisher, Esq. (By E-Mail)
        David P. Kreizer, Esq. (By E-Mail)
        Alissa Boshnack, Esq. (By E-Mail)
        Marc Cannan (By E-Mail)
        Janice Badalutz (By E-Mail)

Exhibit A

# EXHIBIT A:

NYC017488-17532
NYC017533-17573
NYC017576-17577
NYC018431-18432
NYC018441-18483
NYC059475
NYC060554-60555
NYC060566-60632

Exhibit B

**EXHIBIT B:**

| | | |
|---|---|---|
| NYC017533-17573 | NYC031758-31759 | NYC036775-36777 |
| NYC017576-17577 | NYC031806 | NYC036838 |
| NYC018431-18432 | NYC031810 | NYC036843-36848 |
| NYC018484-18541 | NYC031816 | NYC036879 |
| NYC019113 | NYC031865 | NYC036992 |
| NYC019119-19122 | NYC031866 | NYC037609 |
| NYC019206 | NYC031867 | NYC037023 |
| NYC019358 | NYC031868 | NYC037087 |
| NYC019706-19716 | NYC032815 - 32816 | NYC037141 |
| NYC019717–19720 | NYC032818 | NYC037252 - 37254 |
| NYC019801-19805 | NYC032822 | NYC037256 |
| NYC019860-19865 | NYC032824 | NYC037609 |
| NYC020049 | NYC032840 | NYC038010 - 38011 |
| NYC020056-20109 | NYC032849 | NYC038025 |
| NYC020236-20360 | NYC033009-33026 | NYC038026 |
| NYC020450-20526 | NYC033228 - 33229 | NYC038059 - 38060 |
| NYC020527-20604 | NYC033234 - 33235 | NYC038064-38091 |
| NYC020606-20628 | NYC033237 | NYC038155 |
| NYC020630-20696 | NYC033309 | NYC038202 - 38203 |
| NYC020697-20758 | NYC033335 | NYC038630 - 38632 |
| NYC020785-20877 | NYC034588-34591 | NYC038637 - 38638 |
| NYC021210-21225 | NYC034597-34601 | NYC038665-38692 |
| NYC021348-21366 | NYC034770 - 34772 | NYC038751 |
| NYC021390 - 21466 | NYC034870-34871 | NYC038798 - 38800 |
| NYC021468 - 21544 | NYC034935 | NYC038811 |
| NYC021546 - 21568 | NYC034938 | NYC038812 |
| NYC021570 - 21636 | NYC034987 | NYC038816-38841 |
| NYC021638 - 21698 | NYC035062 | NYC038843-38854 |
| NYC021725 - 21817 | NYC035267 | NYC038861 - 38862 |
| NYC022149 - 22164 | NYC035708-35711 | NYC038871 |
| NYC022504 - 22507 | NYC035838 | NYC038947-39028 |
| NYC022512-22653 | NYC035839-35840 | NYC039030-39110 |
| NYC022921-22930 | NYC035904 | NYC039111-39193 |
| NYC022935-22949 | NYC035965 | NYC039203-39285 |
| NYC023552-23557 | NYC035993-35994 | NYC039203-39285 |
| NYC026464-26468 | NYC035995-35996 | NYC039287 |
| NYC026571-26575 | NYC035998 | NYC039291-39360 |
| NYC026803-26805 | NYC036174 | NYC039362-39430 |
| NYC027362 | NYC036451 | NYC039435 |
| NYC027402-27407 | NYC036497 | NYC039461 - 39463 |
| NYC027445 | NYC036512 | NYC039491-39573 |
| NYC027449-27451 | NYC036762-36766 | NYC039577-39600 |
| NYC027483 | NYC036767 | NYC039624 |

NYC040111 - 40112
NYC040344
NYC040466-40467
NYC040493
NYC040930
NYC040964
NYC040966
NYC040971
NYC040973
NYC040975
NYC040982
NYC040987
NYC040992
NYC040996
NYC041001
NYC041006
NYC041011
NYC041013
NYC041017
NYC041021
NYC041028
NYC041033
NYC041037
NYC041042
NYC041047
NYC041051
NYC041061
NYC041073
NYC041084
NYC041089
NYC041093
NYC041095
NYC041107
NYC041145
NYC041147
NYC041150
NYC041207
NYC041211
NYC041218 - 41223
NYC041259 - 41263
NYC041382 - 41387
NYC041398
NYC041426 - 41427
NYC041431 - 41441
NYC041559

NYC041576
NYC041614
NYC041621
NYC041640 - 41642
NYC041665
NYC041667
NYC041698
NYC041700
NYC041717-41718
NYC041734
NYC041739
NYC041846
NYC041908
NYC042020
NYC042067
NYC042105
NYC042254
NYC042272 - 42273
NYC042291
NYC042297
NYC042298
NYC042299
NYC042300
NYC042335-42340
NYC042342 - 42343
NYC042350
NYC042372

NYC042548-42549
NYC042560-42561
NYC042572-42573
NYC042576-42577
NYC042580-42581
NYC042582-42583
NYC042588
NYC042620
NYC042727
NYC043151
NYC043153
NYC043206-43209
NYC043210
NYC043223-43224
NYC043226-43227
NYC043228
NYC044056
NYC044057-44136

NYC044137
NYC044146
NYC044147
NYC044268-44269
NYC044293
NYC044302
NYC044315
NYC044316
NYC044347 - 44348
NYC044416 - 44417
NYC044449
NYC044454
NYC044456
NYC044506
NYC044534
NYC044732 - 44737
NYC044740 - 44743
NYC044846 - 44848
NYC044849 - 44852
NYC044863
NYC044905
NYC044940
NYC044942
NYC044995
NYC045032 - 45037
NYC045038
NYC045040 - 45045
NYC045046
NYC045047
NYC045048 - 45053
NYC045142 - 45143
NYC045309 - 45312
NYC045362 - 45371
NYC045374
NYC045475
NYC045478
NYC045487 -54589
NYC045491 - 45493
NYC045540
NYC045577
NYC045591 - 45592
NYC045612 - 45617
NYC045619-45620
NYC045626-45631
NYC045634-45677

NYC045698
NYC045699 - 45706
NYC045750 - 45754
NYC045756 - 45757
NYC045774
NYC045778
NYC045780
NYC045784
NYC045785
NYC045820 - 45822
NYC045824 - 45838
NYC045840 - 45846
NYC045849 - 45854
NYC045856 - 45860
NYC045862 - 45863
NYC045875
NYC046272 - 46280
NYC046324-46325
NYC046337-46338
NYC046370
NYC046387
NYC046739-46742
NYC046833
NYC046835-46838
NYC046860
NYC047090 - 47091
NYC047159
NYC047173
NYC047207
NYC047222-47228
NYC047276
NYC047614
NYC047619
NYC047621
NYC047623
NYC047750-47758
NYC047760-47943
NYC048062-48063
NYC048311 - 48588
NYC048589 - 48600
NYC048590 - 49609
NYC048627
NYC048628 - 48871
NYC048873 - 48875
NYC048876 - 48925

NYC048903 - 48925
NYC048927 - 49000
NYC049002 - 49017
NYC049037 - 49087
NYC049089 - 49320
NYC049327 - 49377
NYC049379-49411
NYC049413 - 49582
NYC049584 - 49589
NYC049607 - 49609
NYC049611 - 49656
NYC049658 - 49864
NYC049878 - 49911
NYC049914
NYC049983
NYC049984
NYC049988
NYC050018 - 50020
NYC050021 - 50022
NYC050023
NYC050103
NYC050111
NYC050112
NYC050228 - 50231
NYC050497-50501
NYC050503-50608
NYC050609-50613
NYC050680-50726
NYC050747-50749
NYC050762-50811
NYC050812-50814
NYC050832-50876
NYC050877
NYC050897-50892
NYC051047-51048
NYC051233
NYC051234
NYC051273 - 51274
NYC051276
NYC051282 - 51285
NYC051290
NYC051293
NYC051298 - 51300
NYC051389-51390
NYC051858-51860

NYC051903-51905
NYC052153
NYC052365-52414
NYC052511-52635
NYC052638-52653
NYC052656-52741
NYC053033 - 53034
NYC053033-53034
NYC053317 - 53318
NYC053350
NYC053402
NYC053403-53452
NYC053464
NYC053640
NYC053668
NYC053727 - 53728
NYC053893
NYC053894
NYC053959
NYC053989
NYC053991-54080
NYC054082-54091
NYC054117 - 54141
NYC054149-54257
NYC054520
NYC054770
NYC055077-55081
NYC055088-55089
NYC055135
NYC055139 - 55142
NYC055217-55231
NYC055326-55327
NYC055376-55405
NYC055488-55526
NYC055529-55606
NYC055607-55611
NYC055635
NYC055636-55637
NYC055671
NYC055745
NYC055752
NYC055763
NYC055790
NYC055950-56009
NYC056144-56236

NYC056265-56267
NYC056267
NYC056297-56304
NYC056426 - 56431
NYC058334
NYC058337
NYC058342-58343
NYC058532-58536
NYC058566-58567
NYC058569
NYC058575-58576
NYC058775-58790
NYC058899-59046
NYC059160
NYC059167-59168
NYC059170
NYC059397-59429
NYC059469-59471
NYC059474
NYC060056
NYC060308
NYC060309 - 60310
NYC060365-60366
NYC060372 - 60374
NYC060557-60564
NYC060644-60645
NYC060647-60648
NYC060651
NYC060659-60660
NYC060715
NYC060729 - 60730
NYC060960
NYC060974
NYC060977
NYC061012
NYC061064
NYC061263- 61264
NYC061655
NYC066995-66997
NYC067086-67087
NYC067094
NYC067121
NYC067250-067327
NYC067605
NYC067607-67609

NYC067613
NYC067618
NYC067644
NYC067647
NYC067649-67650
NYC067666
NYC067677-67678
NYC067719
NYC067726
NYC067734-67736
NYC067741
NYC067742-67743
NYC067745-67748
NYC067782-67784
NYC067789-67791
NYC067796-67837
NYC067838-67841
NYC067847
NYC067854
NYC067856
NYC067861

Exhibit C

**EXHIBIT C:**

NYC018703
NYC018766
NYC018898
NYC019068
NYC019103
NYC019242
NYC019262
NYC019273-19282
NYC019284
NYC019316-19318
NYC019653-19654
NYC019658
NYC019694-19704
NYC019807-19859
NYC019868
NYC019869
NYC019988-20006
NYC020007
NYC020008-20049
NYC020050
NYC020051-20054
NYC020137
NYC020138
NYC020149
NYC020151-20152
NYC020212-20233
NYC020234
NYC020378-20406
NYC020408-20426
NYC020428-20448
NYC021368-21388
NYC022312
NYC022508-22510
NYC022763-22766
NYC022807
NYC022810-22812
NYC022922-22934
NYC022951-22957
NYC022960-22982
NYC022983-22984
NYC026206
NYC026221-26222
NYC026304

NYC027064
NYC031823-31826
NYC031864
NYC031869
NYC032273
NYC032545-32546
NYC032549
NYC032698-32703
NYC032814
NYC032942-32990
NYC033047-33060
NYC033095-33098
NYC033104-33107
NYC033121
NYC033132-33133
NYC033136-33139
NYC033173
NYC033177
NYC033183-33184
NYC033193
NYC033226-33227
NYC033272
NYC033351
NYC033355
NYC033357
NYC033358
NYC034349
NYC034351
NYC034575-34576
NYC034628
NYC034644-34645
NYC034844
NYC034846-34849
NYC034851-34865
NYC035004
NYC035113-35204
NYC035206-35216
NYC035218
NYC035264-35266
NYC035529-35530
NYC035654-35655
NYC035659-35660
NYC035837

NYC035885
NYC037808
NYC038016
NYC038810
NYC038855
NYC039194-39195
NYC039196-39202
NYC039286
NYC039431-39433
NYC039451-39459
NYC039469
NYC039476-39477
NYC039604
NYC040306
NYC040310-40311
NYC040350
NYC040916
NYC041303
NYC041618-41620
NYC042091
NYC042173-42174
NYC042185
NYC042189-42191
NYC042218
NYC042228-42230
NYC042257
NYC042258-42261
NYC042259-44267
NYC042262-42263
NYC042301-42302
NYC042349
NYC042360
NYC042423-42424
NYC042427
NYC042584
NYC042585
NYC042586-42587
NYC042596
NYC043940-43946
NYC044144
NYC044153
NYC044250
NYC044251-42256

NYC044271-44292
NYC044294-44300
NYC044306-44310
NYC044311-44312
NYC044313-44314
NYC044507
NYC044523
NYC044739
NYC044996-45031
NYC045039
NYC045144-45156
NYC045157
NYC045293-45299
NYC045353
NYC045373
NYC045381
NYC045467-45473
NYC045476-45477
NYC045479-45482
NYC045484-48485
NYC045563-45568
NYC045571-45576
NYC045578
NYC045580-45584
NYC045587-45589
NYC045593-45609
NYC045611
NYC045618
NYC045622-45624
NYC045697
NYC045707-45721
NYC045723-45749
NYC045759-45773
NYC045775-45776
NYC045781-45783
NYC045788
NYC045847
NYC045848
NYC046339
NYC046353-46358
NYC046363
NYC046533
NYC046639
NYC046701-46702
NYC046739-46742

NYC046828-46829
NYC046832
NYC046834
NYC046932-46936
NYC047089
NYC047147-47149
NYC047187-47206
NYC047208-47215
NYC047216-47218
NYC047219-47221
NYC047330
NYC047337
NYC047364
NYC047365-47370
NYC047655-47656
NYC047658-47663
NYC047945-47968
NYC047969-47991
NYC047993-48020
NYC048021-48060
NYC049866-49868
NYC049986-49987
NYC049989
NYC050183-50184
NYC050455
NYC050614-50649
NYC050650-50670
NYC050727-50730
NYC050731
NYC050732-50734
NYC050735-50746
NYC050758-50760
NYC050815-50825
NYC050826-50827
NYC050828-50829
NYC050878-50889
NYC050890-50893
NYC050993-51001
NYC051002
NYC051003-51004
NYC051005-51019
NYC051020-51022
NYC051023-51046
NYC051050-51051
NYC051303

NYC051756-51805
NYC052139-52142
NYC053190
NYC053453-53463
NYC053465-53466
NYC053707
NYC053837-53838
NYC053953-53958
NYC053960
NYC054092
NYC054093
NYC054094-54095
NYC054096-54097
NYC054098
NYC054099-54100
NYC054101-54113
NYC0541046
NYC054114-54115
NYC054258-54269
NYC054270-54306
NYC054307-54308
NYC054309
NYC054310-54322
NYC054323-54336
NYC054337-54346
NYC054347-54348
NYC054349-54353
NYC054354
NYC054355
NYC054666-54669
NYC054670-54675
NYC054677
NYC054678
NYC054679-54683
NYC054771-54772
NYC054773
NYC054774-54775
NYC054777-54778
NYC055062
NYC055120-55121
NYC055528
NYC055739
NYC055787
NYC055789
NYC056010-56012

NYC056013-56020
NYC056021
NYC056022
NYC056023-56031
NYC056032-56043
NYC056237-56241
NYC056242
NYC056243-56248
NYC056249-56251
NYC056252-56259
NYC058572-58574
NYC059067-59094
NYC059155
NYC059156
NYC059328-59329
NYC059386
NYC059393
NYC059472-59473
NYC060041-60042
NYC060053
NYC060055
NYC060064
NYC060073
NYC060102-60103
NYC060114
NYC060116
NYC060125
NYC060134
NYC060349
NYC060556
NYC060565
NYC060649-60650
NYC060680
NYC060684
NYC060692-60696
NYC060714
NYC060799-60800
NYC060961
NYC061057
NYC061420-61434
NYC061584
NYC061643

Exhibit D



LEXSEE 269 FRD 267

**BRAD CROSBY and RICHARD DANIELS, Plaintiffs, - against - THE CITY OF NEW YORK, ET AL., Defendants. LUIS REIS, Plaintiff, - against - THE CITY OF NEW YORK, ET AL., Defendants. PAUL RICHARDSON, Plaintiff, - against - THE CITY OF NEW YORK, ET AL., Defendants.**

**09 Civ. 9693 (SAS),09 Civ. 9694 (SAS),09 Civ. 9695 (SAS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*269 F.R.D. 267; 2010 U.S. Dist. LEXIS 63424*

**June 22, 2010, Decided
June 22, 2010, Filed**

**COUNSEL:**  [**1]  For Plaintiffs: Michael L. Spiegel, Esq., New York, New York.

For Defendants: Tonya Jenerette, Senior Counsel, The City of New York Law Department, New York, New York.

For the District Attorney of New York County: Leila Kermani, Assistant District Attorney, New York County, New York, New York.

**JUDGES:** Shira A. Scheindlin, U.S.D.J.

**OPINION BY:** Shira A. Scheindlin

**OPINION**

[*271]  **OPINION AND ORDER**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I. INTRODUCTION**

The District Attorney's Office of New York County ("DANY"), which is not a party to the above-captioned civil-rights actions, moves for an order quashing portions of three subpoenas *duces tecum* served on DANY by plaintiffs. For the reasons provided below, DANY's motion is granted in part and denied in part.

**II. BACKGROUND**

In 2009, amidst a public outcry from the gay community that the New York Police Department ("NYPD") was entrapping men on prostitution charges, [1] DANY conducted two separate investigations into the arrests. DANY's Official Corruption Unit conducted one of the investigations and it concerned whether undercover officers # 3371, # 5601, and # 31107 -- who were assigned to the NYPD's Manhattan South Vice Enforcement Squad -- committed crimes in pursuit of the arrests. [2] Ultimately,  [**2]  DANY declined to  [*272]  criminally charge any of the officers. [3]

1   *See* Duncan Osborne, "DA Pledges Prostitution Bust Probe," *Gay City News* (Mar. 27, 2009), Ex. B to Declaration of Michael L. Spiegel, Plaintiffs' Counsel, in Opposition to DANY's Motion to Quash Subpoenas ("Spiegel Decl."); *see also* Christine Hauser, "Among Gay Men, Arrests Spark Concern of Being Singled Out," *N. Y. Times* (Feb. 15, 2009) (recounting a 52-year-old arrestee's version of the events: that he, Robert Pinter, was approached at an adult store by a younger, handsome man (who unbeknownst to Pinter was an undercover police officer); the two agreed to leave to have consensual sex; when the younger man offered Pinter money, Pinter refused, thinking it "odd for a younger man to want to pay him for sex"; and Pinter being arrested for prostitution). *Cf. Casale v. Kelly, Nos. 05 Civ. 5442, 08 Civ. 2173, 710 F. Supp. 2d 347, 2010 U.S. Dist. LEXIS 40606, 2010 WL 1685582,*

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

at *1 (S.D.N.Y. Apr. 26, 2010) (holding New York City in contempt of court for failing to diligently comply with court orders to cease enforcing three unconstitutional loitering statutes, and observing: "More disturbing still, it appears that the laws -- which target panhandling, remaining [**3] in a bus or train station, and 'cruising' for sex -- have been [unlawfully] enforced particularly against the poor and gay men."); *Casale v. Kelly*, 257 F.R.D. 396, 415 n.132 (S.D.N.Y. 2009) ("Insofar as [*New York Penal Law section*] 240.35(3) has been used to harass gay men seeking to engage in consensual sexual activity ... it is likely that some potential plaintiffs would not choose to come forward individually to publicly challenge past prosecution. This does not lessen the gravity of their claims."); *Martinez v. Port Auth. of N.Y.*, No. 01 Civ. 721, 2005 U.S. Dist. LEXIS 19141, 2005 WL 214333, at *9 (S.D.N.Y. Sept. 2, 2005) (affirming jury verdict that "the Port Authority had a policy, custom or practice of initiating public lewdness arrests as part of 'sweeps' to clear the restrooms of persons subjectively viewed by the Port Authority as undesirable, regardless of whether there was probable cause to make the arrests"), *aff'd*, 445 F.3d 158 (2d Cir. 2006) (per curiam).

2    The Official Corruption Unit is primarily responsible for investigating and prosecuting official misconduct. *See* Memorandum of Law in Support of DANY's Motion to Quash Subpoenas ("DANY Mem.") P 33.

3    *See id.* P 37.

Prosecutors in DANY's Trial Division [**4] conducted the other investigation, which pertained to the viability of the prosecution charges. [4] While some of the arrestees had already pled to lesser non-criminal offenses, namely disorderly conduct, [5] DANY dismissed a number of the prosecutions. [6]

4    The Trial Division is responsible for the prosecution of misdemeanor offenses, including prostitution cases. *See* Affirmation of Leila Kermani, DANY's Counsel, in Support of DANY's Motion to Quash Subpoenas ("Kermani Aff.") P 12.

5    At least one of the individuals who pled to disorderly conduct, Robert Pinter, successfully vacated his conviction -- a motion DANY did not oppose. Thereafter, DANY dismissed the accusatory instrument. *See Pinter v. City of New York*, No. 09 Civ. 7841, Amended Complaint PP 110-111, 117-118; Certificate of Disposition in *People v. Pinter*, 2008NY075734, Ex. G to Declaration of James I. Meyerson in Opposition to

Defendant's Motion for Summary Judgment in *Pinter v. City of New York* ("Meyerson Decl."); DANY's Affirmation and Response to Defendant's Motion to Vacate Conviction in *People v. Pinter*, Ex. H to Meyerson Decl.

6    *See* Email from Erin Duggan, DANY Communications Director, to Sharon Stapel, Director of New York [**5] City Gay and Lesbian Anti-Violence Project (Mar. 31, 2010), Ex. C to Spiegel Decl.

Plaintiffs here are four of the men arrested for prostitution. According to the complaints, the charges against each were dropped. [7] Plaintiffs allege that their arrests not only were baseless, but were part of an unconstitutional program by New York City to pursue nuisance abatement lawsuits against businesses by making false arrests for prostitution at the business sites, then using the fact of those arrests to bolster the City's efforts to close those businesses -- in these cases, a pornography shop and a spa. [8] Indeed, say plaintiffs, their *arrests* (as opposed to convictions) were listed, among others, in affidavits in support of the City's lawsuits to shut down the Unicorn DVD Store and the Miracle Spa. [9]

7    *See Crosby and Daniels v. City of New York*, Amended Complaint ("*Crosby* Compl.") PP 10, 13; *Reis v. City of New York*, Amended Complaint ("*Reis* Compl.") P 11; *Richardson v. City of New York*, Amended Complaint ("*Richardson v. City of New York*") P 11.

8    *See* Plaintiffs' Memorandum of Law in Opposition to DANY's Motion to Quash Subpoenas ("Pl. Mem.") at 1-7; *see also Crosby* Compl. P 14; *Reis* Compl. P 10;   [**6] *Richardson* Compl. P 10.

9    *See* Pl. Mem. at 3 (citing Exs. F, H to Spiegel Decl.).

Plaintiffs emphasize that the arrests were for *being* prostitutes, not *patronizing* prostitutes. Plaintiffs state that they are obviously unlikely prostitutes: they are gainfully employed, have never been arrested for prostitution, and were in their mid- to late-thirties when arrested. [10] According to plaintiffs, nineteen of the twenty-three currently-identifiable men arrested by undercover officers # 3371 and # 31107 for prostitution in 2008 were over thirty years of age at the time of their arrests, eight were over forty, and one was fifty-two years old. [11]

10    *See id.* at 5 (citing Spiegel Decl. P 13).

11    *See* Spiegel Decl. P 14.

On November 25, 2009, plaintiffs served three subpoenas *duces tecum* on DANY, seeking "all documents, files, records, audio or visual recordings, notes and materials of whatever kind" concerning the prosecutions of

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

plaintiffs. [12] The subpoenas also seek "all documents, files, records, audio or visual records, notes and materials of whatever kind concerning the investigation into arrests by the Manhattan South Vice Enforcement Squad, including but not limited to the arrests of [plaintiffs] [**7] and other arrests made by New York City undercover officers # 3371 and # 31107." [13] Along with the subpoenas, plaintiffs provided signed and notarized authorizations waiving their rights to have their criminal case files sealed.

> 12    Ex. D to Spiegel Decl.
> 13    *Id.*

By letters dated December 15, 2009, DANY responded to plaintiffs' subpoenas. [14] DANY provided a number of documents from plaintiffs' criminal case files but objected [*273] to discovery of certain documents from those files that DANY considers attorney work product or otherwise privileged and/or confidential. [15] DANY also objected wholesale to discovery of *any* document from the Official Corruption Unit investigation into wrongdoing by the undercover officers on the grounds that the file is sealed and contains privileged attorney work product in addition to information from sealed criminal cases. [16] DANY did not provide a privilege log of the Official Corruption Unit investigation file until February 4, 2010. [17]

> 14    *See* Exs. A, B, & C to Kermani Aff. DANY also objected that the subpoenas were overbroad. Before this Court, DANY has not pressed this point; therefore, I do not address it.
> 15    *See id.*
> 16    *See id.*
> 17    *See* Ex. D to Kermani Aff.

On March 12, [**8] 2010, DANY filed a motion to quash with this Court. DANY withdrew this application, however, when the Assistant District Attorney ("ADA") assigned to respond to the subpoenas learned that, in addition to the investigation by the Official Corruption Unit, ADAs in the Trial Division conducted a separate investigation into the merits of the prostitution charges. DANY produced some documents from this file, with redactions, [18] but objected to full disclosure -- again based on the work-product privilege and New York's sealing law.

> 18    *See* DANY Mem. P 20.

On March 30, 2010, DANY filed the instant motion to quash those portions of the subpoenas to which DANY raised objections. [19] Thereafter, the Court ordered DANY to submit the withheld documents for *in camera* inspection. DANY provided the Court with a number of documents on May 11, 2010. During its *in camera* re-

view, the Court discovered that DANY's submission was facially incomplete. DANY submitted additional documents on June 2, 2010.

> 19    *Federal Rule of Civil Procedure 45(c)(3)(A)(iii)* provides that, on a timely motion, a court may quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or [**9] waiver applies[.]"

## III. DISCUSSION

### A. Official Corruption Unit File

The investigative file of the Official Corruption Unit contains the following documents: (1) a list of nineteen arrestees' names (three of whom are plaintiffs Daniels, Crosby, and Richardson) and their arrest numbers and birth dates; (2) for each of those individuals, a set of criminal case papers; (3) three newspaper clippings; (4) three facsimile coversheets; and (5) a memorandum to the file. [20]

> 20    *See* DANY Mem. P 36(a)-(d).

#### 1. *New York Criminal Procedure Law Sections 160.50 and 160.55*

DANY first objects to disclosure of the entire Official Corruption Unit file on the ground that it is sealed pursuant to *New York Criminal Procedure Law Section 160.50* ("*Section 160.50*"). DANY is statutorily prohibited from disclosing such sealed records, absent an unsealing order or consents from the targets of the investigation (*i.e.,* undercover officers # 3371, # 5601, # 31107). [21] DANY additionally objects to discovery of the list of arrestees and each of their criminal case papers because those cases are sealed by operation of either *Section 160.50* or a similar statute *Section 160.55*. Again, release of such information requires an unsealing [**10] order or proper consents from those arrestees who are not plaintiffs here ("non-plaintiff arrestees").

> 21    "A number of cases have considered the appropriate procedure to be followed to effect an unsealing of criminal records pursuant to *§ 160.50* in the context of discovery in a federal civil suit, and the consensus seems to be that a plaintiff can either apply to the state court to unseal the records, or can subpoena the district attorney, or seek discovery if the district attorney is a party to the proceeding. If the district attorney moves to quash a subpoena, or objects to a discovery demand, the issue is appropriately before the federal court." *Fountain v. City of New York,*

Page 4

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

*No. 03 Civ. 4526, 2004 U.S. Dist. LEXIS 7539, 2004 WL 941242, at \*6 (S.D.N.Y. May 3, 2004)* (collecting cases).

*Section 160.50* provides, in relevant part:

> Upon the termination of a criminal action or proceeding against a person in favor of such a person ... all official records and papers ... relating to the arrest or prosecution [\*274] [shall be sealed, and shall not be] made available to any person or public or private agency . . . but only to the person accused or to such person's designated agent. [22]

"The purpose of the provision is to ensure 'that [\*\*11] one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation.'" [23] Similarly, *Section 160.55* requires the sealing of certain records of an individual convicted of a violation -- a non-criminal offense. [24]

22   *N.Y. Crim. Pro. L. § 160.50. Accord Haus v. City of New York, No. 03 Civ. 4915, 2006 U.S. Dist. LEXIS 23006, 2006 WL 1148680, at \*1 (S.D.N.Y. Apr. 24, 2006)* ("[*Section 160.50*] requires, in the case of people arrested but not convicted, that arrest records filed with the state courts or held by law-enforcement authorities be sealed and not disclosed except in limited circumstances.").

23   *MacNamara v. City of New York, No. 04 Civ. 9612, 2006 U.S. Dist. LEXIS 82926, 2006 WL 3298911, at \*1 n.1 (S.D.N.Y. Nov. 13, 2006)* (quoting *Matter of Hynes v. Karassik, 47 N.Y.2d 659, 393 N.E.2d 1015, 419 N.Y.S.2d 942, 944 (1979)). Accord Katherine B. v. Cataldo, 5 N.Y.3d 196, 833 N.E.2d 698, 800 N.Y.S.2d 363, 366 (2005)* ("'That detriment to one's reputation and employment prospects often flows from merely having been subjected to criminal process has long been recognized as a serious and unfortunate by-product of even unsuccessful criminal prosecutions. The statute's design is to lessen such consequences.'" (quoting *Hynes, 419 N.Y.S.2d at 944*)).

24   *Section 160.55* [\*\*12] specifically provides: "Upon the termination of a criminal action or proceeding against a person by the conviction of... a violation ... all official records and papers relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, police agency,

or prosecutor's office shall be sealed and not made available to any person or public or private agency" except in limited circumstances. *N.Y. Crim. Pro.L. § 160.55(1)*.

However, in cases presenting federal questions, such as here, discoverability, privileges, and confidentiality are governed by federal law, not state law. [25] "[S]tate statutory privileges ... must be construed narrowly, 'and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact.'" [26] In other words, state privilege rules should not be permitted to "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in *section 1983*." [27] Nonetheless, "the policies underlying state evidentiary privileges must still be given serious consideration, even if they [\*\*13] are not determinative." [28]

25   *See Fed. R. Evid. 501* (stating privileges in federal-question cases are governed by federal common law); *United States v. Goldberger &. Dubin, 935 F.2d 501, 505 (2d Cir. 1991); Von Bulow v. Von Bulow, 811 F.2d 136, 141-42 (2d Cir. 1987); MacNamara, 2006 U.S. Dist. LEXIS 82926, 2006 WL 3298911, at \*2; Haus, 2006 U.S. Dist. LEXIS 23006, 2006 WL 1148680, at \*2; Daniels v. City of New York, No. 99 Civ. 1695, 2001 U.S. Dist. LEXIS 2312, 2001 WL 228091, at \*1 (S.D.N.Y. Mar. 8, 2001); Cruz v. Kennedy, No. 97 Civ. 4001, 1997 U.S. Dist. LEXIS 23012, 1997 WL 839483, at \*1 (S.D.N.Y. Dec. 19, 1997); King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)*.

26   *Daniels, 2001 U.S. Dist. LEXIS 2312, 2001 WL 228091, at \*1* (quoting *United States v. One Parcel of Property at 31-33 York Street, 930 F.2d 139, 141 (2d Cir. 1991)*).

27   *King, 121 F.R.D. at 187*. As Judge Jack B. Weinstein aptly explained: "Mere adherence to state rules would often improperly elevate the role of privileges in federal question cases. Moreover, state rules protecting state officers must always be viewed with caution because they may be parochially designed to thwart federal interests: 'It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is [\*\*14] to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.'"

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

Page 5

*Id.* at 187-88 (quoting *Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987)).*

28   *Burka v. New York City Transit Auth.,* 110 *F.R.D. 660, 664 (S.D.N.Y. 1986). Accord Haus, 2006 U.S. Dist. LEXIS 23006, 2006 WL 1148680, at *2; Daniels, 2001 U.S. Dist. LEXIS 2312, 2001 WL 228091, at *1.*

*Sections 160.50* and *160.55* protect "important privacy interests, and 'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" [29] This [*275] Court must therefore "balance the deference to be accorded state-created privileges with the need for the information sought to be protected by the privilege." [30]

29   *King,* 121 *F.R.D.* at 187 (quoting *Lora v. Board of Educ,* 74 *F.R.D. 565, 576 (E.D.N.Y. 1977)).*

30   *Daniels, 2001 U.S. Dist. LEXIS 2312, 2001 WL 228091, at *1.*

Federal courts commonly order [**15] production of documents sealed pursuant to *Sections 160.50* or *160.55,* particularly where the documents are "cleansed of the names and other identifying information of the [non-party] arrestees . . . ." [31] The worthy goals of *Sections 160.50* and *160.55* as well as a litigant's need for pertinent discovery can usually be honored simultaneously by redaction of information that identifies, directly or indirectly, persons entitled to protection under these statutes. [32]

31   *Haus, 2006 U.S. Dist. LEXIS 23006, 2006 WL 1148680, at *3 (collecting cases). Accord MacNamara, 2006 U.S. Dist. LEXIS 82926, 2006 WL 3298911, at *3-*4.*

32   *See Haus, 2006 U.S. Dist. LEXIS 23006, 2006 WL 1148680, at *4-*5 (ordering production of NYPD arrest and on-line booking documents but permitting redaction of information identifying non-party arrestees); see also In re Am. Tobacco Co., 880 F.2d 1520, 1530-31 (2d Cir. 1989) (approving district court order granting access to a medical study because redaction of subjects' identities adequately protected the New York statutory physician-patient privilege); Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1137 (9th Cir. 2003) (holding that redaction of information identifying third-parties from medical and personnel records allowed for disclosure); Johnson by Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir. 1992) [**16] (approving district court order granting access to records of* medical studies of infants where subjects' identities redacted); *Lora,* 74 *F.R.D.* at 579-84 (ordering release of student records under various protective provisions, including redaction of names).

Here, plaintiffs contend that the City is liable for an unconstitutional policy or practice of falsely arresting men perceived to be gay on charges of prostitution to support nuisance abatement lawsuits to close businesses viewed by the City as undesirable. The arrests of plaintiffs are but a few of the total arrests that occurred under the alleged City program. Therefore, plaintiffs have a demonstrable need for information regarding the arrests of non-plaintiff arrestees, as well as the Official Corruption Unit's investigation into the undercover officers, in order to acquire a fuller picture of the circumstances surrounding their own arrests and current allegations. That DANY did not criminally charge the undercover officers does not diminish the relevance of the investigation to plaintiffs' claims.

In this connection, I reject DANY's suggestion that plaintiffs are on a fishing expedition. That DANY itself believed that the prostitution [**17] arrests were sufficiently suspect to warrant two different investigations -- neither of which the Court believes DANY undertook lightly (especially the inquiry into possible criminal conduct by police officers) -- demonstrates that plaintiffs' subpoenas seek discovery relevant to their claims of having been falsely arrested pursuant to an unconstitutional municipal policy or practice. Further, plaintiffs' allegations are not bald or conclusory. For example, plaintiffs' counsel avers that he has identified forty-three arrests of men for prostitution cited in affidavits submitted in support of nuisance abatement lawsuits filed by the City in 2008; many of these arrests, according to plaintiffs, did not result in criminal convictions. [33]

33   *See* Pl. Mem. at 4 (citing Spiegel Decl. P10).

Accordingly, DANY's objection to disclosure of the Official Corruption Unit file based on *Sections 160.50* and *160.55* is overruled, though certain redactions are necessary to protect the identities of the undercover officers and non-plaintiff arrestees. As to the undercover officers, DANY itself has publicly disclosed that they were the targets of the Official Corruption Unit investigation. [34] Therefore, insofar [**18] as these [*276] officers are identified by their badge numbers, unsealing the file does not risk further revealing their identities. The investigator's memorandum is the only document from the Official Corruption Unit investigation that refers to anyone other than the men arrested for prostitution. To the extent that portions of this memorandum are ordered disclosed, as addressed below, DANY shall re-

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

dact information identifying officers # 3371, # 5601, and # 31107, beyond their badge numbers.

> 34   *See, e.g.,* DANY Mem. P 37 ("After DA-NY's Official Corruption Unit completed its in-vestigation into the prostitution arrests of Man-hattan South Vice Enforcement Squad undercov-er police officers # 3371 and # 31107, the Offi-cial Corruption Unit declined to bring charges against any police officer or any other individual in connection with these arrests."). As far as the Court is aware, DANY has not disclosed publicly that the Official Corruption Unit inquiry also tar-geted undercover officer # 5601. Nor did DANY disclose this fact to the Court privately. Rather, the Court made this discovery during its *in cam-era* inspection of documents submitted by DA-NY. When the Court brought this fact to DANY's attention, [**19] DANY admitted that it had inadvertently failed to identify undercover # 5601 as a subject of the Official Corruption Unit inves-tigation. Therefore, I see no reason not to make this disclosure now.

With respect to the list of arrestees and the papers from their criminal cases (principally criminal com-plaints and supporting depositions), plaintiffs do not presently object to redaction of non-plaintiff arrestees' names, addresses, and telephone numbers. [35] Plaintiffs, however, object to redaction of birth dates, ages, occupa-tions, prior arrests, or homeownership -- information that is relevant to plaintiffs' allegation that the men arrested for prostitution, including themselves, "were not, in fact, engaging in prostitution when they were arrested." [36] Demographic, employment, and arrest information of non-plaintiff arrestees will elucidate, even if only by inferences, the facts of these cases, whatever those facts may be. In addition, disclosure of the criminal com-plaints and supporting depositions is warranted in order to test whether the documents in support of the prostitu-tion busts were individualized or formulaic. DANY is ordered to disclose the list of arrestees and their criminal [**20] case papers, with redaction of non-plaintiffs' names, arrest numbers, and criminal court file numbers (the only potentially identifying information contained in these documents). Additionally, DANY shall redact the day (but not month or year) of birth.

> 35   *See* Pl. Mem. at 12, 15.
> 36   *Id.* at 14-15.

DANY is also ordered to disclose the newspaper ar-ticles, which are already in the public sphere, [37] as well as the facsimile coversheets, which do not refer to anyone whose consent is required for unsealing. Rather, the co-versheets bear the names of potential witnesses in these

actions -- the Official Corruption Unit investigator and an officer in the NYPD Internal Affairs Bureau. Finally, I note that these coversheets refer to thirty-eight pages of materials, across two transmissions. DANY is ordered to produce to the Court within seven calendar days of this Opinion and Order an affidavit from someone with knowledge of these faxes attesting to the content of the transmissions and, specifically, whether or not these thirty-eight pages have been produced to the Court for *in camera* inspection. This affidavit may be provided to the Court *ex parte* for *in camera* review.

> 37   *Cf. MacNamara,* 2006 U.S. Dist. LEXIS 82926, 2006 WL 3298911, at *4 n.8   [**21] ("In balancing the privacy interests of the non-party arrestees against the federal interest in broad dis-covery of relevant information, it is relevant, though not dispositive, that the names of 1793 arrestees were published in the *Village Voice* in September 2004."); *Woodard v. City of New York, No. 99 Civ. 1123, 2000 U.S. Dist. LEXIS 5231, 2000 WL 516890, at *5 (S.D.N.Y. Mar. 10, 2000)* (stating that privacy concerns are "hardly prepossessing" where names of non-party arres-tees are known to all parties and events at issue are largely a matter of public record).

## 2. Attorney Work-Product Privilege

DANY argues that the investigator's memorandum to the file is privileged work product, citing *Federal Rule of Civil Procedure 26(b)* [38] and *Hickman v. Taylor.* [39] *Rule 26(b)(3),* however, has no application in these cir-cumstances because DANY is not a party to this action. [40] Indeed, "'courts have consistently [*277] held that the privilege [set forth in *Rule 26(b)*] is unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit.'" [41] *Rule 26(b)(3)(A)* provides: "Ordinarily, a party may not discover documents and tangible things that are prepared   [**22] in anticipation of litigation or for trial by or for another party or its representative (including the other party's attor-ney, consultant, surety, indemnitor, insurer, or agent)."

> 38   *Rule 26(b)(3)(A)* provides: "Ordinarily, a party may not discover documents and tangible things that are prepared   [**22] in anticipation of litigation or for trial by or for another party or its representative (including the other party's attor-ney, consultant, surety, indemnitor, insurer, or agent)."
> 39   *See* 329 U.S. 495, 508, 67 S. Ct. 385, 91 L. Ed. 451 (1947).
> 40   *See Jean v. City of New York, No. 09 Civ. 801, 2010 U.S. Dist. LEXIS 2282, 2010 WL 148420, at *1 (E.D.N.Y. Jan. 12, 2010)* ("[B]y its express terms [*Rule 23(b)(3)(A)*] affords protec-tion only to documents prepared 'by or for anoth-er party or its representative.' As the DA is not a party, *Rule 26(b)(3)* simply does not apply." (ci-

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

tation omitted)); *Abdell v. City of New York, No. 05 Civ. 8453, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *2 (S.D.N.Y. Sept. 14, 2006)* ("By its own terms, *Rule 26(b)(3)* does not protect materials prepared by lawyers for non-parties .... Accordingly, courts have repeatedly held that *Rule 26(b)(3)* does not shield work produced for non-parties.").

41   *Abdell, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *3 (quoting Klein v. Jefferson Parish School Bd., No. Civ. A. 00-3401, 2003 U.S. Dist. LEXIS 6514, 2003 WL 1873909, at *3 (E.D. La. Apr. 10, 2003)* and collecting cases) (alteration omitted).

Nevertheless, the work-product doctrine articulated in *Hickman* and its progeny, which is broader than the protection supplied by *Rule 26(b)(3)*, [42] may have application here.   [**23] "[C]ourts have extended work-product protection to non-parties when [doing so] vindicated the purposes underlying the [*Hickman*] doctrine." [43] There are at least three such purposes: [44] protecting an attorney's ability to formulate legal theories and prepare cases, [45] preventing opponents from "free-loading" off their adversaries' work, [46] and preventing interference with ongoing litigation. [47] "In some instances it was also significant that the non-party was at least potentially a party or had interests that were likely to be affected by the litigation in which the work product was sought." [48]

42   *See 2006 U.S. Dist. LEXIS 66114, [WL] at *3 (citing In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003); In re Grand Jury Subpoena, 220 F.R.D. 130, 141 (D. Mass. 2004); U.S. Infor. Sys., Inc. v. International Bhd. of Elec. Workers Local Union No. 3, AFL-CIO, No. 00 Civ. 4763, 2002 U.S. Dist. LEXIS 19363, 2002 WL 31296430, at *5 (S.D.N.Y. Oct. 11, 2002); Maynard v. Whirlpool Corp., 160 F.R.D. 85, 87 (S.D.W. Va. 1995)).*

43   *Jean, 2010 U.S. Dist. LEXIS 2282, 2010 WL 148420, at *2 (citing Allied Irish Banks, P.L.C. v. Bank of America, N.A., 252 F.R.D. 163, 175 (S.D.N.Y. 2008); In re Student Fin. Corp., No. 06-MC-69, 2006 U.S. Dist. LEXIS 86603, 2006 WL 3484387, at *10 (E.D. Pa. Nov. 29, 2006); [**24] Federal Election Comm'n v. Christian Coalition, 179 F.R.D. 22, 24 (D.D.C. 1998); Basinger v. Glacier Carriers, Inc., 107 F.R.D. 771, 772 (M.D. Pa. 1985)).*

44   *See Jean, 2010 U.S. Dist. LEXIS 2282, 2010 WL 148420, at *2; Abdell, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *4.*

45   "[T]he work-product doctrine ... is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation/ free from unnecessary intrusion by his adversaries." *United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)* (quoting *Hickman, 329 U.S. at 511*). "Were the attorney's work accessible to the adversary, the *Hickman* court cautioned, 'much of what is now put down in writing would remain unwritten' for fear that the attorney's work would redound to the benefit of the opposing party." *Id. at 1197* (quoting *Hickman, 329 U.S. at 511*).

46   "An attorney who has access to the results of his adversary's research and investigation has less incentive to be diligent in his own trial preparation, and '[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Abdell, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *4 (quoting Hickman, 329 U.S. at 516 [**25] (Jackson, J., concurring)).*

47   "In performing his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he . . . prepare his legal theories and plan his strategy without undue and needless interference." *Hickman, 329 U.S. at 510-11.*

48   *Jean, 2010 U.S. Dist. LEXIS 2282, 2010 WL 148420, at *2 (citing In re Student Fin. Corp., 2006 U.S. Dist. LEXIS 86603, 2006 WL 3484387; Basinger, 107 F.R.D. at 772).*

Even where work-product protection applies, the protection is not absolute. Disclosure of work product may be ordered if the party seeking it can demonstrate substantial need for the information and an inability to obtain the information, or a substantial equivalent of it, by other means without undue hardship. [49]

49   *See In re Grand Jury Proceedings, 219 F.3d 175, 190-91 (2d Cir. 2000); Jean, 2010 U.S. Dist. LEXIS 2282, 2010 WL 148420, at *2; Abdell, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *6-*7; see also Fed. R. Civ. P. 26(b)(3)(A)(ii).*

When evaluating whether to order disclosure of work product, courts have consistently distinguished between primarily factual work product and "core" work product, the latter of which includes the "mental impressions, [**26] conclusions, opinions, or legal theories of an attorney." [50] Although factual work product is subject to disclosure once   [*278] the required showings are

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

Page 8

made, core work product is entitled to more stringent protection, protection described by some courts as "absolute" or "near absolute." [51] In the Second Circuit, "'at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.'" [52] The high degree of protection accorded to core work product is such that not only parties, but also non-parties have been able to protect it even where work-product protection was otherwise denied. [53]

    50  *Abdell*, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *6. According to Black's Law Dictionary, factual work product is "[a] lawyer's tangible work product that includes facts but not the lawyer's mental impressions[,]" whereas core work product, also known as opinion work product, is "[a] lawyer's opinions, conclusions, and legal theories arising from a client's case." Black's Law Dictionary (9th ed. 2009) at 1746.
    51  *See, e.g., In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3rd Cir. 2003) (near absolute); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983-84 (4th Cir. 1992) [**27] (absolute).
    52  *In re Grand Jury Proceedings*, 219 F.3d at 190-91 (quoting *Adlman*, 134 F.3d at 1204) (alteration in original).
    53  *See, e.g., Abdell*, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *4-6 (DANY permitted to redact handwritten notations reflecting opinions of ADAs from documents for which protection was denied); *Federal Election Comm'n v. Christian Coalition*, 178 F.R.D. 61, 87 (E.D. Va. 1998) (non-party required to produce "non-opinion" work product, but not "opinion" work product).

    Comparison of two recent decisions -- both involving a District Attorney's Office as a subpoenaed non-party -- nicely illustrates the operation of the *Hickman* doctrine. In *Abdell v. City of New York*, the court ordered DANY to disclose factual content -- such as statements of police officers and other witnesses -- contained in "DA Data Sheets" but permitted redaction of prosecutors' notations on those sheets that constituted core work product. [54] In reaching this conclusion, the court held that none of the policies underlying the *Hickman* doctrine were implicated because (1) the DA Data Sheets are routinely disclosed to the defense in criminal proceedings; [55] (2) there was no danger of freeloading because the prior cases were [**28] criminal; [56] and (3) there was no risk of interfering with ongoing litigation because the criminal cases had terminated. [57] The court in *Abdell* further held that even if the *Hickman* doctrine were in play, the plaintiffs -- suing New York City for constitutional deprivations stemming from their arrests

during protests of the 2004 Republican National Convention ("2004 RNC") -- had a substantial need for the information contained in the DA Data Sheets, which they could not otherwise obtain. [58]

    54  *See Abdell*, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313. The DA Data Sheet is a form created by an ADA early on in a criminal prosecution that may include a host of information about the facts, the arrest, statements by the defendant, arraignment, bail, identities of police or civilian witnesses, vouchered physical items, and 911 tapes. *See* 2006 U.S. Dist. LEXIS 66114, [WL]at * 1.
    55  *See* 2006 U.S. Dist. LEXIS 66114, [WL] at *4-*5 ("Accordingly, disclosing DA Data Sheets in civil litigation can have no chilling effect on assistant district attorneys, because they draft the worksheets with the expectation that defense attorneys may obtain them as *Rosario* material" (citing, *inter alia, People v. Rosado*, 9 N.Y.2d 286, 289-90, 173 N.E.2d 881, 213 N.Y.S.2d 448 (1961))).
    56  *See* 2006 U.S. Dist. LEXIS 66114, [WL] at *5 (citing, *inter alia, Doubleday v. Ruh*, 149 F.R.D. 601, 607 (E.D. Cal. 1993)). [**29] In *Doubleday*, the court explained:

>     The potential economic vice of a less diligent attorney raiding the file of a previously diligent attorney is lacking in the context of a former criminal defendant, now plaintiff, seeking information from criminal files of a previous prosecution. As is generally the case in such a situation . . . plaintiff's attorney is seeking information directly pertinent to the issues in this civil case, is not seeking the information because he is too "lazy" to develop the information himself, and is seeking information solely within the possession of the prosecuting agency.

*Doubleday*, 149 F.R.D. at 607.
    57  *See Abdell*, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at * 5 (citing, *inter alia, Ostrowski v. Holem*, No. 02 Civ. 50281, 2003 U.S. Dist. LEXIS 794, 2002 WL 31956039, at *3-*4 (N.D. Ill. Jan. 21, 2002)).
    58  *See* 2006 U.S. Dist. LEXIS 66114, [WL] at *6-*7. In this opinion, I cite to two decisions --

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

Page 9

*Abdell* and *MacNamara* -- that involve civil-rights suits against New York City by demonstrators arrested at the 2004 RNC. To avoid confusion, I note that neither of these opinions was disturbed by the Second Circuit's recent landmark decision in *In re The City of New York*, which vacated a discovery order by the district court in *MacNamara* and two other [**30] related cases. Specifically, *In re The City of New York* elaborated the law enforcement privilege and held that this privilege barred disclosure of highly-sensitive field reports of undercover NYPD officers who had infiltrated civilian groups planning to protest the RNC. *See No. 10-0237, -- F.3d --, 607 F.3d 923, 2010 U.S. App. LEXIS 11784, 2010 WL 2294134 (2d Cir. June 9, 2010).*

By contrast, in *Jean v. City of New York*, the court denied a motion to compel the [*279] District Attorney's Office of Queens County ("DAQ") to disclose communications among ADAs concerning the prosecution of the plaintiff. [59] The court held that protection of these materials served the interests underlying the *Hickman* privilege -- namely, because the statute of limitations had not expired on prosecuting the plaintiff, DAQ had a continuing interest in the matters in dispute. [60] The court further held that the plaintiff failed to make a showing of substantial need for the information and an inability to obtain its substantial equivalent some other way. [61] While the court did not reach the question of whether the communications constituted core work product, it observed in a footnote that a substantial portion of the materials appeared to qualify as core work [**31] product. [62]

59   *See Jean, 2010 U.S. Dist. LEXIS 2282, 2010 WL 148420.*

60   *See 2010 U.S. App. LEXIS 11784, [WL] at *3.*

61   *See id.*

62   *See 2010 U.S. App. LEXIS 11784, [WL] at *3 n.l.*

Here, DANY does not raise any specific arguments about why protecting the Official Corruption Unit investigator's memorandum vindicates the interests advanced by the *Hickman* doctrine. [63] Rather, DANY simply argues that this document "is a legal analysis of the arrests of a number of men for prostitution" and as such constitutes core work product. [64] According to DANY, "[the memorandum] contains the opinion and thought processes of the assigned investigative prosecutor into the legitimacy of these arrests and whether or not any police officers could be criminally charged in connection with having participated in these arrests." [65]

63   As to the purposes of the *Hickman* privilege, disclosing the Official Corruption Unit memorandum clearly does not risk providing a windfall to indolent attorneys or interfering with ongoing litigation, given that the investigation was criminal in nature and apparently is closed. *Cf. Abdell, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *5-*6.* However, disclosing the memorandum may have a chilling effect on the Official Corruption Unit and DANY more broadly. If DANY investigations are discoverable, [**32] DANY could possibly be less inclined to pursue such inquiries or do so less vigorously. However, because DANY has not made any argument in this regard, it is waived.

64   *See DANY Mem. P 41.*

65   *Id.*

DANY's characterization is partially correct: in addition to the opinions, impressions, and conclusions of the investigator, this memorandum includes summaries of facts as well as statements of individuals either from *outside* of DANY or whose institutional affiliation cannot be discerned from the memorandum.

"[L]ower courts have consistently treated witness statements as factual rather than opinion work product, even where those statements have been summarized by counsel." [66] As one court explained:

[A] distinction must be drawn between summaries of the interviewee's statements on one hand, and explicit mental impressions, conclusions, opinions or legal theories of the attorney on the other. To the extent attorney interview notes comprise the former, they are producible upon a showing of substantial need. To the extent such notes are more than just summaries of statements and explicitly contain (as opposed to implicitly reflecting) the opinions, legal theories or mental impressions of the attorney, [**33] those portions are entitled to greater protection. [67]

Thus, the memorandum's summaries of facts and statements unattributable to DANY attorneys are factual work product subject to disclosure on a demonstration by plaintiffs of substantial need and undue hardship. To obtain the core work product contained in the memorandum, plaintiffs must additionally [*280] establish a highly persuasive showing of need.

66   *Abdell, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *6* (concluding

ADA-summarized statements by police officers and other witnesses constituted factual work product, and citing *Johnson v. Bryco Arms*, Nos. 03 Civ. 2582, 02 Civ. 3029, 2005 U.S. Dist. LEXIS 2938, 2005 WL 469612, at *5 (E.D.N.Y. Mar. 1, 2005); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291, 2002 U.S. Dist. LEXIS 11949, 2002 WL 1455346, at *7 (S.D.N.Y. July 3, 2002); *United States v. Weissman*, No. 94 Cr. 760, 1995 U.S. Dist. LEXIS 5476, 1995 WL 244522, at *9.-*10 (S.D.N.Y. Apr. 26, 1995); *Securities and Exchange Commission v. Thrasher*, No. 92 Civ. 6987, 1995 U.S. Dist. LEXIS 1355, 1995 WL 46681, at *6 (S.D.N.Y. Feb. 7, 1995)).

67    *Weissman*, 1995 U.S. Dist. LEXIS 5476, 1995 WL 244522, at *10 (citing *In re John Doe Corp.*, 675 F.2d 482 (2d Cir. 1982)).

Plaintiffs have met their burden as to the memorandum's factual work product. As I have already explained, and as DANY concedes, [**34] [68] a pivotal issue in these cases is whether the officers had probable cause to arrest plaintiffs and other men for prostitution. As the court explained in *Abdell*, "courts have regularly held that in cases of alleged police misconduct, plaintiffs have a substantial need to discover statements that the officers made to prosecutors." [69] While the statements here are not by the undercover or other arresting officers, the statements memorialized in the Official Corruption Unit memorandum nonetheless have particular significance for plaintiffs' claims. And while plaintiffs may pursue other avenues to obtain the information contained in these statements, such as by taking depositions, no alternative method is substantially equivalent to the Official Corruption Unit investigator's contemporaneous memorandum. [70]

68    *See* DANY Mem. P 6.
69    *Abdell*, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *7 (citing *Boyd v. City and County of San Francisco*, No. C-04-5459, 2006 U.S. Dist. LEXIS 27647, 2006 WL 1141251, at *4 (N.D. Cal. May 1, 2006); *Doubleday*, 149 F.R.D. at 607-08). *Accord Johnson*, 2005 U.S. Dist. LEXIS 2938, 2005 WL 469612, at *5 ("A prior statement by a witness -- in this case, a central witness to the case -- will provide plaintiffs with a critical piece of impeachment material. [**35] . . .").
70    *See Abdell*, 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *7 ("While the plaintiffs can take the deposition of each officer, the difficulty of recalling the details of chaotic events that took place more than two years ago is likely to diminish the utility of the testimony. . . . And,

while other evidence of an officer's knowledge, such as memo book entries, will be available, it is important for the plaintiffs to be able to determine the extent to which the information recorded there differs from what the officer told the ADA."); *Boyd*, 2006 U.S. Dist. LEXIS 27647, 2006 WL 1141251, at *4 (holding contemporaneous statements of witnesses constitute best evidence); *Johnson*, 2005 U.S. Dist. LEXIS 2938, 2005 WL 469612, at *5 (holding ability to take deposition does not obviate need for disclosure of prior statement); *Doubleday*, 149 F.R.D. at 608 ("[T]he passage of time and the present, potential bias of the defendants may color recollections such that what was said at the time cannot be accurately deciphered [through depositions].").

DANY shall disclose the factual information from this memorandum. DANY shall produce to the Court within seven calendar days of this Opinion and Order a proposed redacted version of the memorandum consistent with the rulings issued [**36] herein. [71] DANY may submit an affidavit explaining its proposed redactions. These filings may be provided to the Court *ex parte* for *in camera* review.

71    My review of the Official Corruption Unit memorandum reveals that this document contains little or no core work product of DANY attorneys. Nonetheless, DANY may submit a redacted version indicating those portions *it concludes* upon careful reflection are core attorney work product.

### 3. Public Interest in Confidentiality of DA Files

Finally, with respect to the Official Corruption Unit file, DANY argues that "the public interest in insuring [sic] the confidentiality of the District Attorney's files, particularly where it relates to a civil action in which the District Attorney is a non-party, outweighs the defendants' [sic] (undemonstrated) need for the information contained within this file." [72] DANY's objection on this ground is overruled under the principles and for the reasons previously discussed.

72    DANY Mem. P 44.

### B. Trial Division Investigative File

The Trial Division investigation concerned the viability of several of the prostitution prosecutions. This investigation is not, as a whole, sealed pursuant to *Section 160.50* because the investigation [**37] "did not target any uncharged individuals for potential prosecution . . . ." [73] Consequently, DANY produced some re-

dacted documents from this file but has withheld thirteen different sets of documents that are detailed below. [74]

73   *Id.* P 18.
74   *See id.* PP 20-21.

## 1. Inclusion of Sealed Records

While the Trial Division investigative file is not sealed, it contains information and documents from sealed criminal cases of non-plaintiff arrestees. For reasons previously discussed, DANY's objection based on *Sections 160.50* and *160.55* is overruled.   [*281] Therefore, DANY is ordered to produce from non-plaintiff arrestees' files (1) Court Action Sheets [75] and Misdemeanor Backs [76] and (2) "Defendant Details" printouts. [77] DANY must also produce (3) an NYPD memo detailing an interview with a non-plaintiff arrestee. For each of these items and those ordered disclosed below, DANY shall redact non-plaintiffs' names, work and home addresses, telephone numbers, emergency contact information, arrest numbers, criminal case numbers, NYSID numbers, day of birth, and other identifying information. [78] DANY shall not redact birth month and year, age, occupation, homeownership, arrest location, or prior charges. [79] For   [**38] those redacted documents already produced by DANY to the parties, DANY shall make disclosures consistent with this Opinion and Order.

75   Court Action Sheets are notes made by the criminal court judge during calendar call and which constitute the official court file. *See id.* P 27.
76   The Misdemeanor Backs are the back page of a criminal court file.
77   A Defendant Detail printout contains, as the name suggests, a variety of information about a criminal case, such as the defendants' name, date of birth, age, race, sex, and contact information; arrest and charge details; names of witnesses; and court appearance information.
78   In addition to the NYPD memo detailing the interview with the non-plaintiff arrestee, the fourth item withheld by DANY from the Trial Division file is a recording of this interview. Because this recording likely cannot be sufficiently redacted -- *e.g.*, because the non-plaintiff arrestee's voice may by identifiable -- it shall not be disclosed absent a consent from this individual.
79   The Court's *in camera* inspection of the Trial Division investigative file revealed only two non-plaintiff arrestees with prior criminal history. For these two individuals' prior criminal history,   [**39] DANY shall redact all information other than the identification of the charged offenses.

## 2. Attorney Work-Product Privilege

DANY asserts that the work-product privilege bars disclosure of: (5) one list entitled "Prostitution Arrests at Blue Door & Other Locations"; (6) eight copies of a list entitled "Prostitution Arrests at the Blue Door"; (7) seven copies of a list entitled "Prostitution Arrests at Other Locations"; (8) one handwritten list summarizing the conversations between the undercover and the arrestee, as well as the arrestee's name and age, the arrest location, and the undercover's badge number; (9) one list of names of non-plaintiff arrestees and their arrest dates; (10) email correspondence between prosecutors regarding the prostitution cases; (11) prosecutors' notes from a meeting with other ADAs regarding the prostitution cases; and (12) DANY's response (an edited draft and final copy) to a motion made by one of the non-plaintiff arrestees.

As to items (5) through (9) -- the various lists -- DANY argues that they are core work product because they "were created by attorneys during the course of litigation for the prostitution criminal cases in order to help them analyze   [**40] the data, as well as sort through and keep track of the numerous cases." [80] I have carefully reviewed these documents and conclude that they constitute nothing more than factual work product that plaintiffs have a substantial need for and could not otherwise obtain. Accordingly, these lists must be disclosed.

80   *Id.* P 22.

Items (10) and (11) -- the ADAs notes and emails -- contain mostly factual work product and possibly some very limited core work product. DANY shall disclose the factual information from these documents. DANY shall produce to the Court within seven calendar days of this Opinion and Order proposed versions of these documents with redactions consistent with the rulings issued herein. [81] DANY may submit an affidavit explaining its proposed redactions. These filings may be provided to the Court *ex parte* for *in camera* review.

81   My review of the the ADA notes and emails reveals that these documents contain little or no core work product of DANY attorneys. Nonetheless, DANY may submit a redacted version indicating those portions *it concludes* upon careful reflection are core attorney work product.

I find as a matter of law that item (12), the edited and final drafts of a court   [**41] filing, contain *no* privileged core attorney work product. [*282]  The final draft was, of course, filed with the criminal court, thereby DANY waived any privilege as to that document. The marked draft contains only minor non-substantive edits that in no way comprise mental impressions, conclu-

sions, opinions, or legal theories entitled to protection. DANY shall disclose these documents.

### 3. Relevance

Lastly, DANY raises two relevance objections. *Federal Rule of Civil Procedure 26(b)(1)* governs the scope of discovery from parties and non-parties alike, [82] and broadly permits parties to obtain:

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"Relevance" under *Rule 26* "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue [**42] that is or may be in the case." [83] "[T]he broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy." [84] Where a party has subpoenaed a non-party, "'[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" [85]

82  *See, e.g., Kingsway Fin. Serv., Inc. v. Price water house-Coopers, LLP, No. 03 Civ. 5560, 2008 U.S. Dist. LEXIS 77018, 2008 WL 4452134, at *4-*6 (S.D.N.Y. Oct. 2, 2008)* (analyzing motion to quash subpoena of non-party for relevance under *Rule 26(b)); Night Hawk Ltd. v. Briarpatch Ltd., LP, No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)* (same); *Salvatore Studios Int'l v. Mako's Inc., No. 01 Civ. 4430, 2001 U.S. Dist. LEXIS 11729, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001)* (same).
83  *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).*
84  *Thomas E. Hoar, Inc. v. Sara Lee Corp., 882 F.2d 682, 687 (2d Cir. 1989).*
85  *Kingsway Fin. Serv., Inc., 2008 U.S. Dist. LEXIS 77018, 2008 WL 4452134, at *4* (quoting *Night Hawk Ltd., 2003 U.S. Dist. LEXIS 23179, 2003 WL 23018833, at *8).*

The thirteenth set of documents from the Trial Division file that DANY withheld are  [**43] "NYPD Kites" concerning offenses other than prostitution. NYPD Kites are documented complaints from civilians to the NYPD about offenses occurring at a specific location. [86] DANY argues that the non-prostitution Kites are irrelevant to plaintiffs' claims because they do not pertain specifically to prostitution. While certainly these documents are not directly on point, they are nonetheless relevant to these suits. The non-prostitution Kites are the broader context of the prostitution arrests, for the NYPD publicly stated that in pursuing the prostitution arrests it was responding to civilian complaints about conduct not necessarily limited to prostitution. [87]

86  *See* DANY Mem. P 32.
87  *See* Hauser, *supra* note 1 (reporting that "[t]he chief police spokesman, Paul J. Browne, said the police were not singling out gay men but merely responding to complaints about *illegal activities*" (emphasis added)).

DANY also contends that the sealed cases of non-plaintiff arrestees are irrelevant to plaintiffs' civil-rights claims. This objection is overruled. As I have discussed, non-plaintiffs arrestees' criminal cases are part of the context of plaintiffs' arrests and claims and, as such, are possible  [**44] evidence bearing on the unconstitutional City scheme alleged by plaintiffs.

### C. Plaintiffs' Criminal Case Files

DANY disclosed documents from plaintiffs' criminal case files, with the exception of prosecutor notes to the files ("ADA File Notes"), prosecutor notes regarding court dates ("Court Calendar Notes"), the Criminal Court Supervisor Evaluation Sheets, and New York State "Informational Sheets" (colloquially known as "rap sheets"). [88]

88  *See* DANY Mem. P 2.

### [*283]  1. ADA File Notes, Court Calendar Notes, and the Criminal Court Supervisor Evaluation Sheets

DANY represents to the Court that there are no ADA File Notes beyond those also contained within the Trial Division investigative file. I have already addressed this issue. [89]

89  *See supra* pp. 29-30 (discussing items (10) through (12) of the Trial Division file).

The Court Calendar Notes are internal communications among ADAs made in the course of the prostitution prosecutions. Specifically, these documents convey the assigned prosecutor's directions, advice, and questions to

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

Page 13

those ADAs covering the matter at a court appearance, as well as the covering ADA's communications following the court date. While the Court Calendar Notes often summarize [**45] statements made in open court, such as the next court appearance, these documents nonetheless are comprised almost entirely of core work product and, as such, need not be disclosed.

The Criminal Court Supervisor Evaluation Sheets are forms that supervising attorneys utilize to memorialize their evaluation and opinion about how the assigned ADA should handle a case. [90] However, in the files of Crosby, Daniels, and Richardson, the sheets contain no such information. In fact, not only is the space for the supervising attorney to initial the sheet blank on each, the forms contain no notations whatsoever beyond the case name, docket number, and assigned ADA. DANY shall produce these documents from plaintiffs' files. DANY may withhold the Criminal Court Supervisor Evaluation Sheet from Reis's file, however, because it is initialed and therefore reasonably constitutes an internal communication between the assigned ADA and his supervisor.

90   *See* DANY Mem. P 8.

## 2. Rap Sheets

Finally, DANY objects to producing plaintiffs' rap sheets because (1) the State of New York Criminal Justice Services Agency provided these documents to DANY on a strictly confidential basis; (2) plaintiffs may obtain these [**46] documents directly from the agency that generated them; and (3) each plaintiff was provided his own rap sheet at arraignment. Additionally, DANY argues plaintiffs' rap sheets are irrelevant to their civil claims.

Rap sheets contain a criminal defendant's pedigree information provided at the time of arrest, the charges for which he was arrested, and his past criminal history. Plaintiffs' rap sheets are relevant to their claims that they were falsely arrested because the documents show that none had been arrested previously for prostitution. Nonetheless, because plaintiffs may obtain these documents from the agency that provided them, the state confidentiality rule outweighs plaintiffs' need for this information.

## IV. CONCLUSION

For the reasons stated above, DANY's motion to quash is granted in part and denied in part.

With respect to the Official Corruption Unit File, DANY is hereby ordered to disclose: (i) the list of arrestees, with non-plaintiff arrestees' names, arrest numbers, and day of birth redacted; (ii) the arrestees' criminal court papers, with non-plaintiff arrestees' names, arrest num-

bers, and criminal court file numbers redacted; (iii) the news articles; and (iv) the facsimile [**47] coversheets. DANY shall submit to the Court an affidavit from someone with knowledge of these faxes attesting to the content of the transmissions and, specifically, whether or not all pages transmitted have been produced to the Court for *in camera* inspection. DANY shall either disclose the investigator's memorandum or submit to the Court a proposed version of the memorandum that redacts information identifying undercover officer # 3371, # 5601, or # 31107, as well as core work product of DANY attorneys. DANY may submit an affidavit explaining its proposed redactions.

With respect to the Trial Division File, DANY is hereby ordered to disclose: (i) the Court Action Sheets and Misdemeanor Backs; (ii) printouts of "Defendant Details"; [*284] (iii) the NYPD memo detailing an interview with a non-plaintiff arrestee; (iv) the list entitled "Prostitution Arrests at Blue Door & Other Locations"; (v) the eight copies of a list entitled "Prostitution Arrests at the Blue Door"; (vi) seven copies of a list entitled "Prostitution Arrests at Other Locations"; (vii) the list summarizing the conversations between the undercover and the arrestee, as well as the arrestee's name and age, the arrest location, [**48] and the undercover's badge number; (viii) the list of names of non-plaintiff arrestees and their arrest dates; (ix) the edited and final draft court filing; and (x) NYPD Kites concerning offenses other than prostitution. For all of these documents, DANY shall redact non-plaintiff arrestees' names, home and work addresses, telephone numbers, emergency contact information, arrest numbers, criminal case numbers, NYSID numbers, day of birth, and other identifying information. DANY shall not redact birth month and year, age, occupation, homeownership, arrest location, or prior charges.

DANY shall either disclose the prosecutors' (xi) email correspondence and (xii) meeting notes or submit to the Court proposed versions of these documents redacting information identifying non-plaintiff arrestees as well as core work product. DANY may submit an affidavit explaining its proposed redactions. For those redacted documents already produced by DANY to the parties from the Trial Division file, DANY shall make disclosures consistent with this Opinion and Order.

With respect to plaintiffs' criminal case files, DANY shall disclose Crosby's, Daniel's, and Richardson's Criminal Court Supervisor Evaluation [**49] Sheets.

All submissions to the Court from DANY ordered or permitted herein shall be made within seven calendar days of this Opinion and Order, and may be submitted *ex parte* for *in camera* review.

269 F.R.D. 267, *; 2010 U.S. Dist. LEXIS 63424, **

Page 14

The Clerk of Court is directed to close this motion (# 29 in 09 Civ. 9693, # 33 in 09 Civ. 0694, and # 25 in 09 Civ. 9695).

SO ORDERED:

/s/ Shira A. Scheindlin

Shira A. Scheindlin

U.S.D.J.

Dated: June 22, 2010

New York, New York



LEXSEE 2006 US DIST LEXIS 66114

TARASIK ABDELL, JOSEPH AMATO, GARY ASHBECK, ELLEN BARFIELD,
DAVID BARROWS, MICHAEL BECKER, DIANE BEENY, JOHN BEHLING,
RUTH BENN, BENJAMIN BERNARD, ARUN BHALLA, KATHLEEN BURICK,
DANIEL BURNS, LINNEA CAPPS, THOMAS CATCHPOLE, JOAN CAVA-
NAGH, MARC F. CHURCH, JEFFERY J. COHEN, MARK COLVILLE, WIL-
LIAM CONWELL, COLLEEN COOK, SUSAN CRANE, RICHARD CSONTOS,
POLLY A. DAVIES, FELTON DAVIS, PATRICIA DEBRUHL, PETER DE
MOTT, DEWAYNE DICKERSON, MATTHEW DIETZEN, WALTER DITMAN,
LOIS A. DOGGETT, JASON DORAIS, SUSAN D'ORNELLAS, ALEXANDER
HOLLEY DRUMMOND, STEVEN EKBERG, CALLA EVANS, ADAM FEINS-
TEIN, JAMES FLYNN, HOWARD J. GALE, STEPHEN GAMBOA, GABRIEL
GASTER, TOBIAH GASTER, EDWARD GIBBONS, ZOE GINSBURG, JOHN
THEODORE GLICK, THOMAS GOEKLER, CHARLES GOLDBERG, OREN
GOLDENBERG, DAVID GORDON, KATHRYN GORDON, BARRETT Z.
GROSS, RICHARD HARDIE, ED HEDEMANN, KATHLEEN D. HERNANDEZ,
ROGER HILL, EDWARD HOTCHKISS, RYAN D. HOTTLE, JANET S. HOWE,
BENJAMIN HUNT, ROCHELLE IANNUCCI, THOMAS IVORS, MELISSA JA-
MESON, JENNIFER JANNEY, DWIGHT JENKINS, MICHAEL JOSEPH, PEP-
PER JUDD, SARAH KANOUSE, JAY KANTOR, BRIAN KAVANAGH, KIM-
BERLY KERN, EDWARD F. KINANE, JOSHUA KNAPP, MATTHEW KOCEK,
KATHARINE KRASSAN, LAURA KRESSLY, ANDREW LAKEN, TESSA M.
LALONDE, JARED LANCTOT, JOHN LARSON, RICHARD LARSON, MI-
CHAEL R. LEVINSON, STEVEN LIPTAY, JONOTHAN LOGAN, MARIELLE
LOVECCHIO, JAY MARX, RYAN MCGEE, BARBARA ANN MEISINGER,
TRISTAN MIGLIORE, JOHN M. MILLER, ZACHARY C. MILLER, ROBERT V.
MINERVINI, CHRIS G. MURRAY, MARK NECHAY, BLOSSOM NICINSKI,
JAMES NOONAN, ANTHONY O'LEARY, DANIEL O'REILLY-ROWE, MI-
CHAEL OWEN, MICHAEL PALMER, CHRISTINE PARDEW, LAWRENCE
PARIS, DANIEL M. PARROTT, NATHANIEL PARRY, JEFFREY A. PATER-
SON, SHANNON PETRELLO, STEPHEN PETRICK, KATHERINE POE, LAURA
RAYMOND, EDWIN REED-SANCHEZ, BRUCE RENWICK, ADAM RICHINS,
SHANA RIGBY, DEBORAH RIVERBEND, RAYMOND ROBINSON, LAMBERT
ROCHFORT, RONALD E. ROSENBERG, DEVON RUECKNER, RONALD W.
SAN MARCHI, FRANK SANCHEZ III, MATTHEW SCHENNING, STEVEN
SCOFIELD, ANAIS SENSIBA, GORDON WILLIAM SENSIBA, ROBERT J.
SIEGEL, SELMA SPRITZER, ANDREW ST. LAURENT, MORA MI-OK STE-
PHENS, WILLIAM STEYERT JR., THERESA SWINK, HANNAH TAYLOR,
SARAH TEPSIC, EMILY JO TESTA, JOHN TRINKL, ANN TRUDELL,
CHRISTY ANN TURNER, JOHANNA VALENTE, PATRICK VOLPE, ZA-
CHARY VREELAND, FRANTZ WALKER, JAMES J. WHITE, PATRICIA
WIELAND, JAMES WILLIAMSON, JAMES WILSON, TERAN WILSON, JEN-
NIFER WONG, MATTHEW WRIGHT, RAISSA WU and THOMAS ZAMBECK,
Plaintiffs, - against - THE CITY OF NEW YORK; MICHAEL BLOOMBERG,
Mayor of the City of New York, RAYMOND KELLY, Commissioner of the New
York City Police Department, TERRENCE MONAHAN, Assistant Chief of the New
York City Police Department, and JOHN and JANE DOES, Defendants.

2006 U.S. Dist. LEXIS 66114, *

05 Civ. 8453 (KMK) (JCF)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 66114*

**September 14, 2006, Decided**
**September 14, 2006, Filed**

**PRIOR HISTORY:** *Abdell v. City of New York, 2006 U.S. Dist. LEXIS 65222 (S.D.N.Y., Sept. 11, 2006)*

**COUNSEL:** [*1] For Tarasik Abdell, Plaintiff: Alan Levine, New York, NY; Alan H. Levine; Martin R. Stolar; Michael L Spiegel, Michael L Spiegel, Esq., New York, NY; Norman Frederick Eugen Best, Law Office of Susan Douglas Taylor, New York, NY.

For Joseph Amato, Gary Ashbeck, Ellen Barfield, David Barrows, Michael Becker, David Beeny, John Behling, Ruth Benn, benjamin Bernard, Arun Bhalla, Kathleen Burick, Daniel Burns, Linnea Capps, Thomas Catchpole, Joan Cavanagh, Marc F. Church, Jeffery J. Cohen, Mark Colville, William Conwell, Colleen Cook, Susan Crane, Richard Csontos, Polly A. Davies, Felton Davis, Patricia Debruhl, Peter De Mott, Dewayne Dickerson, Matthew Dietzen, Walter Ditman, Lois A. Doggett, Jason Dorais, Susan D'Ornellas, Alexander Holley Drummond, Steven Ekberg, Calla Evans, Adam Feinstein, James Flynn, Howard J. Gale, Stephen Gamboa, Gabriel Gaster, Tobiah Gaster, Edward Gibbons, Zoe Ginsburg, Theodore Glick, Thomas Goekler, Charles Goldberg, Oren Goldenberg, David Gordon, Kathryn Gordon, Barrett Z. Gross, Richard Hardie, Ed Hedemann, Kathleen D. Hernandez, Roger Hill, Edward Hotchkiss, Ryan D. Hottle, Janet S. Howe, Benjamin Hunt, Rochelle Iannucci, Thomas Ivors, Melissa Jameson, [*2] Jennifer Janney, Dwight Jenkins, Michael Joseph, Pepper Judd, Sarah Kanouse, Jay Kantor, Brian Kavanagh, Kimberly Kern, Edward F. Kinane, Joshua Knapp, Matthew Kocek, Katharine Krassan, Laura Kressly, Andrew Laken, Tessa M. Lalonde, Jared Lanctot, John Larson, Richard Larson, Michael R. Levinson, Steven Liptay, Jonothan Logan, Marielle Lovecchio, Jay Marx, Ryan McGee, Barbara Ann Meisinger, Tristan Migliore, John M. Miller, Zachary C. Miller, Robert C. Minervini, Chris G. Murray, Mark Nechay, Blossom Nicinski, James Noonan, Anthony O'Leary, Daniel O'Reilly-Rowe, Michael Owen, Michael Palmer, Christine Pardew, Lawrence Paris, Daniel W. Parrott, Nathaniel Parry, Jeffrey A. Paterson, Shannon Petrello, Stephen Petrick, Katherine Poe, Laura Raymond, Edwin Reed-Sanchez, Bruce Renwick, Adam Richins, Shana Rigby, Deborah Riverbend, Raymond Robinson, Lambert Rochfort, Ronald E. Rosenberg, Devon Rueckner, Ronald W. San Marchi, Frank Sanchez, III, Matthew Schenning, Steven Scofield, Anais Sensiba, Gordon William Sensiba, Robert J. Siegel, Selma Spritzer, Andrew St. Laurent, Mora MI-OK Stephens, William Steyert, Jr., Theresa Swink, Hannah Taylor, Sarah Tepsic, Emily Jo Testa, John Trinkl, Ann [*3] Trudell, Christy Ann Turner, Johanna Valente, Patrick Volpe, Zachary Vreeland, Frantz Walker, James J. White, Patricia Wieland, James Williamson, James Wilson, Teran Wilson, Jennifer Wong, Matthew Wright, Raissa Wu, Thomas Zambeck, Plaintiffs: Alan Levine, New York, NY; Martin R. Stolar; Michael L Spiegel, Michael I. Spiegel, Esq., New York, NY; Norman Frederick Eugen Best, Law Office of Susan Douglas Taylor, New York, NY.

For The City of New York, Defendant: James Mirro, Jeffrey Anthony Dougherty, NYC Law Department, New York, NY; Jay Alan Kranis, City of New York Law Department, New York, NY.

For Mayor Michael Bloomberg, City of New York, Commissioner Raymond Kelly, New York City Police Department, Asst. Chief Terrence Monahan, New York City Police Department, Defendants: Jeffrey Anthony Dougherty, NYC Law Department, New York, NY.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** JAMES C. FRANCIS IV

**OPINION**

*MEMORANDUM AND ORDER*

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Hundreds of protestors were arrested during the Republican National Convention in New York City in the summer of 2004. Many, including the plaintiffs in this case, have since [*4] brought suit alleging that their constitutional rights were violated because they were

arrested without probable cause, subjected to excessive force, and detained in substandard conditions. In the course of discovery, the plaintiffs have subpoenaed documents relating to their arrests from the New York County District Attorney's Office ("DANY"), which is not a party to this action. DANY now moves pursuant to *Rules 26(b)(3)* and *45(c)(3)* for an order quashing the subpoena insofar as it demands production of a document identified as the "DA Data Sheet" for each plaintiff. DANY maintains that the DA Data Sheet is attorney work product, immune from discovery. For the reasons that follow, the motion is denied.

*Background*

The DA Data Sheet is a form created in connection with each criminal prosecution. It is generally completed in the Early Case Assessment Bureau ("ECAB") by the Assistant District Attorney ("ADA") who drafts the Criminal Court complaint. (Letter of Patricia J. Bailey dated June 13, 2006 ("Bailey 6/13/06 Letter"), at 2). Because some of the plaintiffs received copies of the DA Data Sheets in connection with their own prosecutions, I have been able to review a number [*5] of examples. (Letter of Michael L. Spiegel dated June 22, 2006 ("Spiegel Letter"), Exh. B). On the first page, the form contains boxes for the defendant's name, information relating to the amount of bail recommended, the reasons for the recommendation, the bail requested, and the bail set. There is a space used for a factual summary, followed by spaces for any statements made by the defendant and notes concerning identification. Below that, there is a section apparently related to the arraignment, which includes spaces for such information as the names of the judge, the ADA, and the defense counsel, notes on the arraignment proceedings, and any special instructions. There is also a checklist for indicating whether specified notices have been provided. On the second page, there are boxes for providing information about details of the arrest, the defendant's address and phone number, the identity of any police or civilian witnesses and related notes, any injuries, the vouchering of any physical items recovered, and any 911 tape. Finally, there is a space for supplying any supplementary facts.

According to DANY, the DA Data Sheet is work product, created in anticipation of litigation. [*6]

DA Data Sheets necessarily reflect the mental impressions of the prosecutor reviewing the case at that time. Prior to its creation a prosecutor is required to filter through information about an event learned as of that moment in the process, so as to determine if charges can and should be drawn; and, if so, what infor-

mation will be relevant for the complaint, the criminal court arraignment and for the district attorney initially assigned to the matter should be aware of [sic]. The document is generally based upon more than one source of information. And, the ADA will summarize what he or she considers being the legally germane feature(s) of the case for purposes of the arraignment and initial assignment. As such, the contents of the document are necessarily evaluative in nature.

\* \* \*

To be sure, the very fact that [a] DA Data Sheet is even created demonstrates that the reviewing ADA was of the opinion that the case had prosecutorial merit and expresses that judgment by causing the complaint to be filed, thereby bringing formal charges against a defendant in criminal court. The document reflects the recorded mental impressions of the prosecutor['s] evaluation of [*7]  an arrest.

(Bailey 6/13/06 Letter at 2).

In response, the plaintiffs argue, first, that even if the DA Data Sheet is work product, DANY cannot avail itself of the protection of the doctrine because it is not a party to this case. (Spiegel Letter at 1-4). Furthermore, the plaintiffs dispute DANY's characterization of the DA Data Sheet as the manifestation of the prosecutor's mental impressions or legal theories and argue that it is in large part simply a recording of factual information. (Spiegel Letter at 4-6).

*Discussion*

A. *Rule 26(b)(3)*

An appropriate starting point for any analysis of work product immunity is *Rule 26(b)(3) of the Federal Rules of Civil Procedure*, which provides in part as follows:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of

the [*8] materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

By its own terms, *Rule 26(b)(3)* does not protect materials prepared by lawyers for non-parties. This makes sense; the primary function of the rule is to foster the attorney's adversary role in a system of open discovery. As the Advisory Committee Note accompanying the rule states, the rule "reflects the view that . . . one side should not automatically have the benefit of the detailed preparatory work of the other side." *Fed. R. Civ. P. 26(b)(3)*, advisory committee note. Accordingly, courts have repeatedly held that *Rule 26(b)(3)* does not shield work product produced for non-parties. *See California Public Utilities Commission v. Westinghouse Electric Corp., 892 F.2d 778, 781 (9th Cir. 1989)* [*9] ("*[Rule 26(b)(3)]*, on its face, limits its protection to one who is a party . . . to the litigation in which the discovery is sought."); *Ricoh Co. v. Aeroflex Inc., 219 F.R.D. 66, 69 (S.D.N.Y. 2003)* (disclosure of material may be required even where non-party is party in closely related lawsuit and may suffer disadvantage in latter suit as result of disclosure); *Ramsey v. NYP Holdings, Inc., 2002 U.S. Dist. LEXIS 11728, No. 00 Civ. 3478, 2002 WL 1402055, at *2 (S.D.N.Y. June 27, 2002)* ("[A] non-party cannot invoke the work-product immunity of *Fed. R. Civ. P 26(b)(3)* to withhold documents created for the non-party's benefit."); *Polycast Technology Corp. v. Uniroyal, Inc., 1990 U.S. Dist. LEXIS 12444, No. 87 Civ. 3297, 1990 WL 138968, at *2 (S.D.N.Y. Sept. 20, 1990)* (*Rule 26(b)(3)* not applicable to document prepared for non-party); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (2d ed. 1994) at 354 ("[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by *Rule 26 (b)(3)* even though the person may be a party in a closely related lawsuit"). Indeed, in a case [*10] interpreting an exemption to the disclosure requirements of the Freedom of Information Act, the Supreme Court looked to *Rule 26(b)(3)* for guidance and found that "the literal language of the Rule protects materials prepared for *any* litigation or trial *as long as they were prepared by or for a party to the subsequent litigation.*" *FTC v. Grolier Inc., 462 U.S. 19, 25, 103 S. Ct. 2209, 76 L. Ed. 2d 387 (1983)* (second emphasis added).

Not surprisingly, this issue has arisen before in civil cases that, like this one, flow from criminal prosecutions. And "courts . . . have consistently held that the privilege is unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." *Klein v. Jefferson Parish Sch. Bd., 2003 U.S. Dist. LEXIS 6514, No. Civ. A. 00-3401, 2003 WL 1873909, at *3 (E.D. La. April 10, 2003)* (citing cases). *See also Boyd v. City & County of San Francisco, 2006 U.S. Dist. LEXIS 27647, No. C-04-5459, 2006 WL 1141251, at *3-4 (N.D. Cal. May 1, 2006)* (prosecutorial files discoverable because district attorney not party to subsequent civil action); *Ostrowski v. Holem, 2003 U.S. Dist. LEXIS 794, No. 02 C 50281, 2002 WL 31956039,* [*11] *at *3-4 (N.D. Ill. Jan. 21, 2002)* (same); *Carter v. City of Philadelphia, 2000 U.S. Dist. LEXIS 6658, No. Civ. A. 97-4499, 2000 WL 632988, at *1 (E.D. Pa. May 5, 2000)* (same); *Hernandez v. Longini, 1997 U.S. Dist. LEXIS 18679, No. 96 C 6203, 1997 WL 754041, at *2 (N.D. Ill. Nov. 13, 1997)* (same); *Doubleday v. Ruh, 149 F.R.D. 601, 606 (E.D. Cal. 1993)* (same).

DANY nevertheless challenges the general rule that non-parties cannot assert the immunity granted in *Rule 26(b)(3)*, relying in large measure on two cases: *Thompson v. City of New York, 2006 U.S. Dist. LEXIS 4797, No. 05 Civ. 3082, 2006 WL 298702 (S.D.N.Y. Feb. 7, 2006)*, and *Federal Election Commission v. Christian Coalition, 179 F.R.D. 22 (D.D.C. 1998)*. In *Thompson*, a suit against the City of New York charging police misconduct, the court allowed the New York County District Attorney's Office to withhold DA Data Sheets as work product, but it did so without addressing the district attorney's status as a non-party. *Thompson, 2006 U.S. Dist. LEXIS 4797, 2006 WL 298702, at *2*. In *Federal Election Commission*, after a non-party had already been ordered to produce attorney work product, the court analyzed *Rule 26(b)(3)* to determine whether [*12] to approve a stipulated protective order seeking to withhold the documents from public view. *Federal Election Commission, 179 F.R.D. at 23-24*. Neither of these cases provides a sufficient legal basis to extend the protection of *Rule 26(b)(3)* to non-parties. As DANY is not a party to this lawsuit, the rule does not shield its work product.

### B. The Broader Work Product Doctrine

The inquiry does not end there, however, because the work product doctrine as articulated in *Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)*, is broader than *Rule 26(b)(3)*. *See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003)* (work product doctrine "codified in part" in *Rule 26(b)(3)*); *In re Grand Jury Subpoena, 220 F.R.D. 130, 141 (D. Mass. 2004)*

2006 U.S. Dist. LEXIS 66114, *

(work product doctrine "partially codified" in *Rule 26(b)*); *U.S. Info. Sys. v. IBEW Local Union No. 3, 2002 U.S. Dist. LEXIS 19363, No. 00 Civ. 4763, 2002 WL 31296430, at \*5 (S.D.N.Y. Oct. 11, 2002)* (*Hickman* doctrine broader than *Rule 26(b) (3)*); *Maynard v. Whirlpool Corp., 160 F.R.D. 85, 87 (S.D. W. Va. 1995)* [*13] (contours of work product doctrine distinct from *Rule 26(b)(3)*). This is exemplified by the treatment of intangible work product. While *Rule 26(b)(3)* protects only "documents and tangible things," the cases uniformly hold that disclosure of an attorney's mental processes -- even if those thoughts have not been reduced to writing -- generally cannot be compelled. *See, e.g., United States v. 266 Tonawanda Trail, 95 F.3d 422, 428 n.10 (6th Cir. 1996)* (as to information not memorialized in tangible form, *Hickman* applies, not *Rule 26(b)(3)*); *In re Grand Jury Subpoena, 220 F.R.D. at 141* (noting that *Rule 26(b)(3)*, unlike *Hickman*, does not reach "intangible" work product); *U.S. Information Systems, 2002 U.S. Dist. LEXIS 19363, 2002 WL 31296430, at \*5* (discussions in which counsel explored hiring forensic firm analyzed under *Hickman*); *Alexander v. Federal Bureau of Investigation, 192 F.R.D. 12, 17 (D.D.C. 2000)* ("courts must look to the caselaw under *Hickman v. Taylor* and its progeny and not to *Fed. R. Civ. P. 26(b)(3)*" when evaluating intangible work product) (citation omitted); *Maynard, 160 F.R.D. at 87* [*14] (when opposing counsel's mental impressions are sought "in the context of a deposition, rather than as memorialized on paper, it is to the *Hickman* decision, rather than *Rule 26*, that the Court must look in resolving the dispute").

The question then becomes whether the work product doctrine, as outlined in *Hickman* and its progeny, requires immunization of the DA Data Sheets from discovery. The doctrine serves at least three purposes. First, it ensures that an attorney will not alter his behavior for fear that his adversary will learn his strategies and thereby gain an advantage. "[T]he work-product doctrine . . . is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)* (quoting *Hickman, 329 U.S. at 511*). "Were the attorney's work accessible to the adversary, the *Hickman* court cautioned, 'much of what is now put down in writing would remain unwritten' for fear that the attorney's work would redound to the benefit of the opposing party. [*15] " *Id. at 1197* (quoting *Hickman at 511*). Second, protecting work product alleviates the "freeloader" problem. An attorney who has access to the results of his adversary's research and investigation has less incentive to be diligent in his own trial preparation, and "[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed

from the adversary." *Hickman, 329 U.S. at 516* (Jackson, J., concurring). Finally, the work product doctrine serves to prevent disruption of ongoing litigation.

> In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he . . . prepare his legal theories and plan his strategy without undue and needless interference.

*Hickman, 329 U.S. at 510-11*. Protecting the DA Data Sheets at issue here from discovery would advance none of these three purposes.

*1. Altering Attorney Behavior*

In criminal cases in New York, the prosecution is obligated to turn over to the defense any [*16] witness statement containing relevant information, regardless of whether it is inconsistent with the witness's trial testimony. *People v. Rosario, 9 N.Y.2d 286, 289-90, 173 N.E.2d 881, 213 N.Y.S.2d 448, 450-51 (1961)*. Consequently, prosecutors are routinely required to disclose DA Data Sheets and similar materials to the defense in criminal proceedings. *See Barrigar v. Couture, 2001 U.S. Dist. LEXIS 23758, No. 9:98 Civ. 0668, 2001 WL 1860889, at \*5 (N.D.N.Y. June 27, 2001)* (prosecutor's notes); *People v. Adger, 75 N.Y.2d 723, 550 N.E.2d 443, 551 N.Y.S.2d 190 (1989)*; *People v. Cecora, 186 A.D.2d 215, 216, 587 N.Y.S.2d 748, 749 (2d Dep't 1992)*; *People v. Rayford, 158 A.D.2d 482, 482-83, 551 N.Y.S.2d 257, 258 (2d Dep't 1990)*. A prosecutor's disclosure obligation under *Rosario* overrides any claim of work product protection. *See Adger, 75 N.Y.2d at 729 & n., 551 N.Y.S.2d at 194 & n.* (Titone, J., concurring) (citing *People v. Consolazio, 40 N.Y.2d 446, 453-54, 354 N.E.2d 801, 387 N.Y.S.2d 62, 65-66 (1976)* (prosecutor's notes of witness interview not exempt from disclosure as work product and "prosecutor's worksheets, containing as they [*17] do, abbreviated notes capsulizing witnesses' responses to questions relating to material issues raised on defendant's trial, fall within the reach of our holding in *Rosario*")). Moreover, the fact that data sheets "may contain information in addition to a witness' statement, such as witness evaluations, proposed plea offers, bail recommendations or information otherwise classifiable as 'work product,'" does not exempt the document from discovery by the criminal defendant under Rosario. *Adger, 75 N.Y.2d at 729, 551 N.Y.S.2d at 194* (Titone, J. concurring).

2006 U.S. Dist. LEXIS 66114, *

Accordingly, disclosing DA Data Sheets in civil litigation can have no chilling effect on assistant district attorneys, because they draft the worksheets with the expectation that defense attorneys may obtain them as *Rosario* material. Not all DA Data Sheets end up in the hands of defense counsel, of course, because not all cases are prosecuted. But an ADA cannot know, when she takes information from police officers in the hours after an arrest, which of her worksheets will be the subject of a *Rosario* request. Therefore, requiring assistant district attorneys to turn over DA Data Sheets during discovery [*18] in civil litigation will not alter their decisions about committing mental impressions to paper.

## 2. *Rewarding Sloth*

The danger that disclosing information collected by counsel will provide a windfall for indolent attorneys is also not present here.

The potential economic vice of a less diligent attorney raiding the file of a previously diligent attorney is lacking in the context of a former criminal defendant, now plaintiff, seeking information from criminal files of a previous prosecution. As is generally the case in such a situation . . . plaintiff's attorney is seeking information directly pertinent to the issues in this civil case, is not seeking the information because he is too "lazy" to develop the information himself, and is seeking information solely within the possession of the prosecuting agency.

*Doubleday, 149 F.R.D. at 607. See also Klein, 2003 U.S. Dist. LEXIS 6514, 2003 WL 1873909, at *4* (danger of freeloading not present when prior case was criminal and subsequent case is civil); *Ostrowski, 2003 U.S. Dist. LEXIS 794, 2002 WL 31956039, at *4* ("[Disclosure of work product] may raise the possibility of one attorney doing all the work while a subsequent [*19] attorney reaps the reward. However, because this is a civil case, and the file being sought is from a criminal case, that danger is not present.").

## 3. *Interfering with Ongoing Litigation*

Certainly, there is a risk that permitting discovery of work product will interfere with ongoing litigation, even if the information is being sought in an unrelated situation. This peril is exacerbated where the ongoing case is criminal, since the information disclosed could end up in the hands of the criminal defense attorneys and jeopardize the prosecution. *See Doe v. Hudgins, 175 F.R.D. 511,*

*517 (N.D. Ill. 1997)* ("Plaintiffs have pointed to no case, and this Court has found none, where a court ordered disclosure of investigatory files while criminal proceedings were pending."); *Doubleday, 149 F.R.D. at 607 n.6* (decision not "meant to encroach on the commonly accepted notion that work product of a sort can apply to *ongoing* criminal litigation"). No such danger is present in this case, however, since the criminal cases have long since been terminated. *See Ostrowski, 2003 U.S. Dist. LEXIS 794, 2002 WL 31956039, at *4* ("[B]ecause the underlying criminal case has been closed [*20] . . . there are no concerns with interfering with an ongoing criminal investigation.").

The principles underlying the work product doctrine thus do not militate in favor of shielding the DA Data Sheets from disclosure.

## C. *Qualified Protection*

Even if the work product doctrine applied to the DA Data Sheets, it would provide only qualified immunity from discovery. When a document comes within the work product rule, it may nevertheless be subject to disclosure upon a showing that "the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Fed. R. Civ. P. 26(b)(3)*. "Core" work product, however, is subject to more stringent protection; even where a showing of substantial need has been made, courts must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

## 1. *Fact or Legal Theory*

The primary information sought by the plaintiffs -- the statements [*21] of police officers and other witnesses -- does not qualify for the greater protection accorded to core work product. DANY argues that because the statements were summarized rather than transcribed verbatim, they necessarily reflect the thought processes of the ADAs who took them. (Bailey 6/13/06 Letter at 2). A similar contention was rejected by the Second Circuit in *In re John Doe Corp., 675 F.2d 482 (2d Cir. 1982)*. In that case, the government sought production of notes written by counsel in the course of interviewing corporate employees. The notes did not include word-for-word declarations by the employees; rather, they consisted of the employees' statements in "paraphrased, abbreviated form." *Id. at 493*. Accordingly, the corporation argued that the notes reflected the mental processes of counsel. Nevertheless, the court ordered disclosure, stating:

To the extent that the statements imply the attorney's questions from which inferences might be drawn as to his thinking, those inferences merely disclose the concerns a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything worthy of the description [*22]  "legal theory."

*Id.* Likewise, lower courts have consistently treated witness statements as factual rather than opinion work product, even where those statements have been summarized by counsel. *See, e.g., Johnson v. Bryco Arms, 2005 U.S. Dist. LEXIS 2938, Nos. 03 CV 2582, 02 CV 3029, 2005 WL 469612, at *5 (E.D.N.Y. March 1, 2005); SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC, 2002 U.S. Dist. LEXIS 11949, No. 01 Civ. 9291, 2002 WL 1455346, at *7 (S.D.N.Y. July 3, 2002); United States v. Weissman, 1995 U.S. Dist. LEXIS 5476, No. S1 94 Cr. 760, 1995 WL 244522, at *9-10 (S.D.N.Y. April 26, 1995); SEC v. Thrasher, 1995 U.S. Dist. LEXIS 1355, No. 92 Civ. 6987, 1995 WL 46681, at *6 (S.D.N.Y. Feb. 7, 1995).* As one court has reasoned,

a distinction must be drawn between summaries of the interviewee's statements on one hand and, explicit mental impressions, conclusions, opinions or legal theories of the attorney on the other. To the extent attorney interview notes comprise the former, they are producible upon a showing of substantial need. To the extent such notes are more than just summaries of statements and explicitly contain (as opposed to implicitly [*23]  reflecting) the opinions, legal theories or mental impressions of the attorney, those portions are entitled to greater protection.

*Weissman, 1995 U.S. Dist. LEXIS 5476, 1995 WL 244522, at *10.* Here, there has been no showing that the evidentiary summaries in the DA Data Sheets contain "anything worthy of the description 'legal theory,'" and so, to the extent the work product doctrine applies at all, the documents are subject to disclosure on a demonstration of substantial need and undue hardship.

### 2. *Substantial Need*

A pivotal issue in this case is whether the police officers had probable cause to arrest the plaintiffs. What the officers told the ADAs is therefore highly relevant: "[a] prior statement by a witness -- in this case, a central witness to the case -- will provide plaintiffs with a critical piece of impeachment material[.]" *Johnson, 2005*

*U.S. Dist. LEXIS 2938, 2005 WL 469612, at *5.* Accordingly, courts have regularly held that in cases of alleged police misconduct, plaintiffs have a substantial need to discover statements that the officers made to prosecutors. *See Boyd, 2006 U.S. Dist. LEXIS 27647, 2006 WL 1141251, at *4; Doubleday, 149 F.R.D. at 607-08.* That same rationale [*24]  applies here.

### 3. *Undue Hardship*

There may be alternative means of ascertaining what the police officers observed at the time of each arrest, but none of the sources of such information is the "substantial equivalent" of the DA Data Sheets. While the plaintiffs can take the deposition of each officer, the difficulty of recalling the details of chaotic events that took place more than two years ago is likely to diminish the utility of the testimony. *See Boyd, 2006 U.S. Dist. LEXIS 27647, 2006 WL 1141251, at *4* (contemporaneous statements of witnesses constitute best evidence); *Johnson, 2005 U.S. Dist. LEXIS 2938, 2005 WL 469612, at *5* (ability to take deposition does not obviate need for disclosure of prior statement); *Doubleday, 149 F.R.D. at 608* (substantial need for notes of prior statements because "the passage of time and the present, potential bias of the defendants may color recollections such that what was said at the time cannot be accurately deciphered" through depositions). And, while other evidence of an officer's knowledge, such as memo book entries, will be available, it is important for the plaintiffs to be able to determine the extent to which the information recorded [*25]  there differs from what the officer told the ADA.

### D. *Protective Order*

Notwithstanding the fact that the primary information sought by the plaintiffs is not work product immunized from disclosure under either *Rule 26(b)(3)* or *Hickman,* there are some residual notations on the DA Data Sheets that may merit protection. For example, an ADA's rationale for recommending bail comes closer to the type of mental impression that may be shielded from discovery even in subsequent, unrelated litigation. At the same time, such notations are less likely to be relevant in the current case. Therefore, to the extent that DANY wishes to redact specific entries from the documents that it produces, it shall propose a procedure for doing so to plaintiffs' counsel. If any disputes remain thereafter, DANY may move for a protective order with respect to individual notations.

### Conclusion

DANY's motion for an order quashing the plaintiffs' subpoena for DA Data Sheets is denied. To the extent that individual notations directly embody the thought processes of counsel, DANY may move for a protective

2006 U.S. Dist. LEXIS 66114, *

order if no agreement is reached with respect to redaction.

    SO ORDERED.

    JAMES C. FRANCIS IV

    [*26]   UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York

September 14, 2006

Exhibit E

**EXHIBIT E:**

NYC018905
NYC018919
NYC019151-19155
NYC022511
NYC023175
NYC023319
NYC023756
NYC036352
NYC036358
NYC039446
NYC042935-42936
NYC043217
NYC043386
NYC044582
NYC044992
NYC045300
NYC047620
NYC048626
NYC051191
NYC052154-52256
NYC053476
NYC055625
NYC053476
NYC059187
NYC059229
NYC060325
NYC067384

Exhibit F

**EXHIBIT F:**

From ADA's Privilege and Redaction Log:

| DOC ID. | DATE | AUTHOR | SUBJ. MATTER |
|---|---|---|---|
| 7(o) | 11/16/88-12/23/88 | NYPD | Complaint report and follow-up of 12/13/88 robbery of female. |
| 11(g) | 2/06/03 | Prevost | Summary of Angel Acevedo criminal history. |
| 17(a) | 1/20/03 | Fairstein | Public Statement by Linda Fairstein to City Counsel. ADA Casolero's notations and comments redacted by ADA. |
| 17(b) | 1/2003 | Armstrong, Hammerman, Martin | Public Report to Police Commissioner 10 pgs. - Report bhy Armstrong Commission on CPJ case. |
| | 1/2003 | Armstrong, Hammerman, Martin | Executive Summary on Report to Police Commissioner 10 pgs. Redaction of ADA notes/comments/opinions by ADA. |
| | ? | Raymond Kelly, Michael O'Looney | "Panel on CPJ case" - PD comments about Panel reviewing CPJ jogger. |
| 19(p) | 1989 | | 14 pages of handwritten notes - opinion and summary of evidence of each original CPJ defendant from original case file. |
| 19(a-1) | 1989 | | Various portions of the jogger's medical records. |
| 21(j) | 1989 | | Statements & testimony concerning "Tony" from original case file. |
| 25(f-3) | 4/20/90 | P.O. Medina | Emergency Service Report re Description ofESU's use of Path lights to illuminate crime scene |
| 25(p-2) | unknown | Unknown | Typed Pedigree lists: Witnesses and charged teens |
| 25(p-3) | unknown | Elizabeth Lederer | 6-pages of handwritten notes: Recreation of those present during rape |
| 26(b) | 1989 | Lederer | Timeline: Chronology of events. |
| | 1989 | Lederer / Clemens | Handwriten Notes of 911 transmissions |
| 26(e) | 1989 | Lederer / Clemens | Notes of 911 transmissions |
| 26(v) | 1989 | Liz Lederer | Case Reports: Updates on status of crime in 1989 |

| 29(g) | 1989 | NYPD | Handwritten notes 4 pgs.: Notes by detective from original case file |
| 29(i) | 1/30/03 | | Statement by Armstrong, Hammerman and Martin by NYC Public Safety Committee re. Discussion of findings of the Panel on the CPJ case |
| | 1/30/03 | Linda Fairstein | Statement by Linda Fairstein to NYC Public Safety Commitee re. Statement concerning CPJ case. |
| 32(a) | | Prevost | Memorandums re trips to crime scene with Richardson, Santana and McCray with synopsis of statements concerning visits to crime scene. |
| 36(a) | 1990 | LAF | Notes/statutes/handwritten notations re. Public Service Law and phone company regulations/concerning "anonymous tip." |

From Patircia Bailey's letter of September 24, 2008:

• 12 CDs containing audio interviews of ADA Lederer conducted by Court TV subsequent to the conclusion of the Central Park Jogger trials.

From Patricia Bailey's leter of July 29, 2010:

• Item No 29(h): the Order to Show Cause filed by the NYPD during the reinvestigation.