USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/22/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE MCRAY, RICHARDSON, SANTANA, WISE, AND SALAAM LITIGATION

OPINION AND ORDER

03 Civ. 9685 (DAB) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

The above-captioned Plaintiffs and their families filed suit against the City of New York, and various current and former employees of the New York City Police Department ("NYPD") and the New York County District Attorney's Office ("DANY"), alleging a number of federal and state causes of action connected to the arrest, investigation, and conviction of certain Plaintiffs for the attack on the Central Park Jogger on April 19, 1989. (*See* Am. Compl., Doc. No. 47.) Pending before the Court is Plaintiffs' motion to compel the production of documents which Defendants have asserted are privileged or protected from disclosure on other grounds. For the reasons set forth below, Plaintiffs' motion is **GRANTED, in part**, and **DENIED, in part.**

## II. BACKGROUND

The Court assumes general familiarity with the events that gave rise to this litigation, and only recounts the facts relevant to the current inquiry. In June 2010, Defendants began producing to Plaintiffs the original case files created by the prosecutors in the underlying criminal prosecution. The production also included documents concerning the Armstrong Commission's reinvestigation of the crime beginning in 2002. As part of Defendants' production, they provided Plaintiffs with privilege logs on a rolling basis. This process was

completed when a final privilege log was produced to Plaintiffs on February 14, 2011, followed by a supplemental privilege log on March 3, 2011.

In March 2011, Plaintiffs asked Defendants to reconsider their privilege log in light of cases that recognized a distinction between factual materials and core opinion materials when assessing the applicability of the work product doctrine. Plaintiffs provided Defendants with a list of approximately 8,676 documents from the privilege log to which they objected to the Defendants' assertion of privilege.

Defendants reviewed the entries in their privilege log which had been objected to by Plaintiffs, and determined that certain documents contained only factual work product. Defendants withdrew the privilege claim and produced those documents. Consistent with that distinction, when Defendants determined that a document contained a combination of factual material and core work product material, the document was produced in redacted form. Defendants continued to maintain, however, that other documents contained only core work product material, and continued to assert their privilege claim, although they attempted to amplify the descriptions of the entries for those documents in their privilege log. Ultimately, Defendants withdrew and/or modified their previous assertions of privilege to 954 documents, and provided Plaintiffs with a final, revised privilege log on July 14, 2011. Defendants assert that the vast majority of the documents are protected attorney work product, and contend that the remaining entries are protected by either the law enforcement/official information privilege, attorney-client privilege, or because of privacy and/or safety concerns. (*See* Pls.' Mot., Ex. 5.)

On July 19, 2011, Plaintiffs moved to compel Defendants to produce the challenged documents that continued to be withheld. Based on Defendants' descriptions of the entries, Plaintiffs have organized the documents into the following four categories, each containing

multiple subcategories: (1) documents related to the Armstrong Report, (2) ADA notes, (3) ADA drafts, and, (4) other miscellaneous documents, including hand drawn renderings of various precincts. (Pls.' Mot. at 3-4.) Defendants responded on July 29, and shortly thereafter submitted a selection of approximately 2000 documents from the various categories for *in camera* review if the Court determined that such a review was necessary. Some of the documents were chosen by Plaintiffs, although Defendants submitted hundreds of additional documents in order to provide context for the documents selected by Plaintiffs and to provide a broader cross-section of the allegedly privileged material. A response letter was also submitted on behalf of DANY on July 29. After a reply and a sur-reply, the motion was fully briefed on August 16, 2011.

## III. DISCUSSION

### A. The Claim of Work Product for Documents by ADAs or Their Assistants in Connection with the Criminal Prosecution

#### 1. Work Product Doctrine Overview

The work product doctrine was first defined in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947), and is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy "with an eye toward litigation," free from unnecessary intrusion by his adversaries. The doctrine was later partially codified in Rule 26(b)(3)(A), which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Notably, Rule 26(b)(3)(A) is narrower in scope than the work product doctrine developed in *Hickman* and its progeny, and by its terms only applies to tangible work product. *Abdell v. City of New York*, 05 Civ. 8453, 2006 WL 2664313, at *3 (S.D.N.Y. Sept. 14, 2006). Although Rule 26(b)(3)(A) only applies to

parties to an action, "courts have extended the work product doctrine when doing so vindicated the purpose of the *Hickman* doctrine." *Crosby v. City of New York*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010) (citing cases). When determining whether to apply the doctrine's protection, courts consider whether such protection is needed to: (1) safeguard an attorney's ability to formulate legal theories and prepare cases, (2) prevent opponents from "free loading" off their adversaries work, and (3) prevent interference with ongoing litigation. *Id.* (internal citations omitted).

The initial burden of justifying the application of the work product doctrine is on the asserting party, and "the burden is a heavy one because privileges are neither lightly created nor expansively construed." *Gonzalez v. City of New York*, 08 Civ. 2699, 2009 WL 2253118, at *2 (E.D.N.Y. July 28, 2009) (internal citations omitted). The doctrine provides only a qualified protection from discovery, and disclosure of protected information may be ordered if the party seeking the information can demonstrate a substantial need for the information and an inability to obtain the information without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). When assessing whether to order disclosure of work product, "courts have consistently distinguished between primarily factual work product and 'core' work product, the latter of which includes the 'mental impressions, conclusions, opinions, or legal theories of an attorney.'" *Crosby*, 269 F.R.D. at 277 (quoting *Abdell*, 2006 WL 2664313, at *6). Although factual work product is subject to disclosure once the required showings are made, core work product is entitled to more stringent protection, and a highly persuasive showing of need must be made to warrant disclosure. *See, e.g., In re Grand Jury Proceedings*, 219 F.3d 175, 190-91 (2d Cir. 2000); *Crosby*, 269 F.R.D. at 277-80; *Madanes v. Madanes*, 199 F.R.D. 135, 150 (S.D.N.Y. 2001); *Abdell*, 2006 WL 2664313, at *6. Even if a court orders the production of materials protected by

4

the work product doctrine, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

### 2. Application of the Doctrine in this Case

Defendants claim that certain documents that were generated by ADAs and their assistants in connection with the underlying criminal prosecution of Plaintiffs are protected by the work product doctrine. (Defs. Mem. at 8-10.) These documents comprise the bulk of the documents at issue, and mostly consist of handwritten ADA notes. These notes cover a variety of topics, including ADA: (1) "To Do Lists," (2) thoughts about the discoverability and admissibility of certain evidence, (3) analysis of evidence and witness testimony, (4) preparation and draft questions for direct and cross-examination of witness at trial and pretrial proceedings; (5) communications with expert witnesses, (6) legal research, and (7) draft opening statements and summations.

As an initial matter, the Court recognizes that the documents relating to the criminal prosecution were created by both parties and non-parties to this litigation. The vast majority of these documents were created by Defendants Linda Fairstein, Elizabeth Lederer, and Tim Clements, who are either current or former ADAs at DANY, and are represented by the City of New York in this action. Other documents were generated by unidentified ADAs and paralegals, or by ADAs who are not Defendants in this action. (Decl. of Elizabeth Daitz, Ex. B, Lederer Decl. ¶¶ 6, 21-23.) Because the bulk of the documents were created by, or at the direction of, Defendant ADAs, and because the documents all appear to be intimately related to the work completed by Defendant ADAs, the Court will treat Defendants' assertion of work product pursuant to Rule 26(b)(3).

In that regard, the Court finds that Defendants have met their initial burden of showing that the documents at issue are protected by Rule 26(b)(3). Based on the descriptions of the documents in the privilege log, there is little question that the documents were prepared by attorneys or their representatives in anticipation of litigation or trial. Although Plaintiffs argue that the documents should not be viewed as work product because the underlying criminal case has concluded and the documents were not prepared in anticipation of *civil* litigation (Pls. Mot. at 12 n.5), they provide no support for the proposition that documents should be disclosed based on that distinction. Indeed, courts have held that the attorney work product doctrine generally extends to subsequent litigation, although the threshold for overcoming the privilege may be lowered in later cases. *In re Omeprazole Patent Litigation*, 2005 WL 818821, at *8-9 (S.D.N.Y Feb. 18, 2005); *see also S.W. v. City of New York*, 2009 Civ. 1777, 2010 WL 5185141, at *1 (E.D.N.Y. Dec. 15, 2010).

Plaintiffs additionally assert that the documents should not be viewed as work product because the purposes of the common law work product doctrine would not be served by shielding the documents from disclosure. (Pls. Mot. at 11-13.) Plaintiffs argue, among other things, that disclosure would not have a chilling effect on the behavior of prosecutors because of prosecutors' ethical obligation to seek justice. (Pls. Mot. at 12.) The Court disagrees with both propositions. Not only are the documents properly classified as work product under Rule 26(b)(3), but that classification is also consistent with the purposes of the common law work product doctrine and the prosecutorial function. Prosecutors are entitled to the same "zone of privacy" and qualified work product protection of their mental impressions, thoughts and opinions as other attorneys. Indeed, the Supreme Court has recognized that the work product doctrine may be more vital to criminal proceedings than to civil litigation, noting that "[t]he

interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of *each* side of the case." *United States v. Nobles*, 422 U.S. 225, 238 (1975) (emphasis added). Although the nature of an action may, in certain circumstances, lower the threshold for overcoming the protection, it does not eliminate the existence of such protection.

Because the documents at issue constitute protected work product, the Court's next step is to determine whether Plaintiffs have demonstrated a sufficient need for the material and an inability to obtain the material without undue hardship. With respect to factual work product material, courts have regularly held that "in cases of alleged police misconduct, plaintiffs have a substantial need to discover statements that officers made to prosecutors," and that often "no substantial equivalent" of the ADA notes of those statements exists. *Abdell*, 2006 WL 2664313, at *7 (citing cases); *see also Crosby*, 269 F.R.D. at 280. Indeed, Defendants apparently concede that Plaintiffs are entitled to some of the material because they reviewed their privilege log and assert they attempted to produce all factual material contained therein. (*See* Defs. Mem. at 3-4.)

The Court has conducted an *in camera* review of the documents submitted by Defendants, and finds that the entries submitted contain core work product created by ADAs in preparation for, or during, trial. These documents reflect the ADAs' impressions, thoughts, and analysis of evidence and legal issues, and were clearly generated in anticipation of litigation. Using Plaintiffs' categorization of Defendants' privilege log, these core work product generally documents fall under the following categories: (1) "To Do Lists," (2) notes in preparation of examination of witnesses; (3) notes taken in preparation for examinations at trial and for summations; (4) contemporaneous notes regarding testimony at suppression hearing and trials; (5) notes regarding experts; (6) draft examinations for witness interviews; (7) draft pleadings and

7

trial documents; (8) drafts for trial proceedings and examination; (9) legal research, and (10) ADA draft memoranda. (Pls. Ex. 9)

Plaintiffs have not provided a basis for the production of Defendant ADA's core work product. Plaintiffs argue that courts generally apply liberal discovery standards in civil rights cases, and that they have a substantial need for the core work product because the prosecutors' thought processes during the investigation and prosecution of the criminal case has been placed at issue by their police and prosecutorial misconduct claims. (*See* Pls. Mot. at 7-10; Pls. Reply 1-7.) In particular, Plaintiffs contend that the material is relevant to their claims that police officers and prosecutors conspired together to prosecute Plaintiffs despite the initial lack of, and subsequent dissipation of, probable cause. (Pls. Reply. 5.)

As a general matter, in certain circumstances, "a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privilege for matters pertinent to the claims asserted." *In re Grand Jury Proceedings*, 350 F.3d 299, 302 (2d Cir. 2003). The loss of privilege in these circumstances is justified by considerations of fairness to an adversary. *Id.* For instance, "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2nd Cir. 2000). "Whether fairness requires disclosure . . . is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted." *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000).

The Court finds that the Plaintiff have made the highly persuasive showing necessary to demonstrate their entitlement to core work product related to Defendant ADAs assistance with the investigation of Plaintiffs. Several reasons support this conclusion. First, the Court notes that although the Honorable Deborah A. Batts previously dismissed Plaintiffs claims against Defendant ADAs in their prosecutorial capacity, she permitted claims against them in their non-prosecutorial capacity to go forward. *See McCray v. City of New York*, 03 Civ. 9685, 2007 WL 4352748, at *16 (S.D.N.Y. Dec. 1, 2007). Judge Batts specifically noted that "where ADAs themselves investigated or worked with police officers advising them on their investigative tactics, they are not entitled to absolute immunity." *Id.* Plaintiffs have alleged that Defendant ADAs were heavily involved in the initial investigation and interrogations of Plaintiffs, and worked closely with police officers to manipulate and coerce confessions. (*See* Am. Compl. ¶¶ 70, 132-33, 166, 169-190, 223, 289-97, 301, 329-30, 421-23, 427-43, 448-50, 510-13, 519-38, 542, 550, 577, 636-55, 664-92, 697-711, 719-21, 790.) Accordingly, ADA Defendants behavior during the investigation has been placed squarely at issue by Plaintiffs claims, and documents generated in connection with the investigation are clearly relevant.

Second, Plaintiffs cannot get the substantial equivalent of the material from other sources. Although Defendant ADAs may be deposed, their ability to recall events that occurred over twenty years ago will likely diminish the utility of their testimony. The best evidence about their involvement in the investigation is contained in their notes.

Third, the underlying purposes of the work product doctrine do not warrant withholding the material in the circumstances of this case. Given the alleged involvement of the ADAs in the investigation, Plaintiffs allegations regarding the initial investigation, and the fact that DANY

9

has previously submitted an affidavit requesting the Plaintiffs' convictions be vacated, the Court finds that the interests favoring disclosure of core work product related to the ADAs's involvement in the investigation outweigh any possible chilling effect that disclosure might have on attorney behavior. Furthermore, the Court finds that disclosure would not reward sloth or interfere with ongoing litigation.

Although it is difficult to distinguish between work product generated in connection with the investigation and core work product created in preparation for trial, after reviewing the documents *in camera*, the Court finds the following entries contain core work product related to the investigation of the underlying crimes, and shall be disclosed:

- NYC034987 (p. 570)
- NYC041385 - NYC041387 (p. **621-23**)
- NYC045702 - NYC045706 (p. 762-**67**)

For the most part, these documents contain lists of tasks, created by ADAs, relating to the investigation of the underlying crime. Although they do not contain factual matter, they contain the Defendant ADAs' thought processes, analyses, and recommendations regarding the investigation. The Court finds that these documents were not created in the ADA's prosecutorial capacity, are relevant to Plaintiffs' claims, and therefore orders that they be produced, along with any other similar documents in Defendants' possession.

With respect to the remaining core work product material, the Court finds that Plaintiffs have failed to make a highly persuasive showing of their need for the material. The remaining work product material is directly related to work completed by Defendant ADAs in their prosecutorial, rather than investigative, capacity. The documents include, for example, evaluations regarding the admissibility and discoverability of evidence, draft questions for direct

and cross-examination, marked transcripts of testimony of various witnesses and Defendants, contemporaneous notes taken during trial, and legal research and analysis. The documents are only directly relevant to possible claims against the ADAs in their prosecutorial capacity, claims that Judge Batts has previously dismissed. Insofar as the documents are relevant to the subject matter of this action, the Court finds that the general relevance of the material is insufficient to overcome the heightened protections for core work product material. Accordingly, Plaintiffs motion to compel production of core work product material generated in Defendant ADAs' prosecutorial capacity is denied.

## B. Documents Related to the Armstrong Report

Defendants assert that certain documents prepared by Ruby Marin-Jordan are protected by attorney-client privilege and the work product doctrine. (*See* Defs. Mem. at 23-28.) Plaintiffs argue the attorney-client privilege is not applicable because the Armstrong Committee's report was ultimately published, and therefore Marin-Jordan's communications were not intended to be kept confidential. (Pls. Mot. at 17-18.) Furthermore, Plaintiffs contend that documents should be disclosed based upon the undersigned's previous ruling that rejected Defendants' assertion of deliberative process privilege to protect the opinions, deliberations and recommendations of personnel in connection with the creation of the Armstrong Report. (Pls. Mot. at 16-18.)

As an initial matter, the Court finds that the materials are not protected by the work product doctrine because doing so would not vindicate any of the purposes of the work product doctrine. The doctrine "create[s] a 'zone of privacy' that allows an attorney to prepare for litigation 'free from unnecessary intrusion by his adversaries.'" *United States v. Adlman*, 134

11

F.3d 1194, 1196 (2d Cir. 1998) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). Here, the Court finds that the documents at issue were not created in anticipation of litigation or trial, but were rather generated in connection with a public report relating to a matter of public concern. Therefore, the Court finds that the materials are not protected by the work product doctrine.

The Court also finds that the documents are not protected by the attorney-client privilege. The attorney-client privilege applies to (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice. *United States v. Construction Projects Research, Inc.*, 73 F.3d 464, 373 (2d Cir. 1996). The attorney-client privilege attaches to corporations as well as individuals, and "[t]he burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *United States v. Int'l Brotherhood of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997). Defendants have established that, at the time the documents at issue were created, Marin-Jordan served as Special Counsel to the Deputy Commissioner of Legal Matters at NYPD, and was assigned to analyze the potential legal and policy issues presented by the Armstrong Report. (Daitz Decl., Ex. C, Marin-Jordan Decl. ¶¶ 1, 11.) Defendants state that the advice was provided in the form of both oral and written communications, and in the form of substantive edits and comments made on drafts of the Armstrong Report, ADA Nancy Ryan's Affirmation, and a draft response to Ryan's Affirmation. (*Id.* ¶¶ 12-15.) Defendants state that the legal advice provided by Marin-Jordan was undertaken with the "expectation of secrecy" and was kept confidential. (*Id.* ¶ 15.)

After reviewing the documents created by Marin-Jordan that were submitted for *in camera* review, the Court finds that the documents do not reflect any legal advice provided by Rubin-Jordan. Three of the submitted documents are drafts of the Armstrong Report, which contain Marin-Jordan's typographical edits, along with her handwritten notes recommending the inclusion of certain facts or the exclusion of others. (*See* NYC017488 - NYC017573, NYC018441 - NYC018483.) Another document contains a typed draft of a response to ADA Nancy's Ryan's December 5, 2002 affirmation, with handwritten notes by Rubin-Jordan. (*See* NYC018431 - NYC018432.) Finally, another document contains ADA Ryan's affirmation, with Rubin-Jordan's handwritten notes reflecting her thoughts on the various factual statements contained in the affirmation. (*See* NYC018484 - NYC018541.) The Court fails to see how any of the notes relate to legal advice, given the purpose of, and ultimate publication of, the Armstrong Report. Although Marin-Jordan may have provided legal advice in connection with the Armstrong Report, her legal advice is not reflected in the entries submitted for *in camera* review. Furthermore, the Court finds that the information is relevant to Plaintiffs' intentional infliction of emotional distress claims against Commissioner Kelly. Accordingly, the Plaintiffs' motion to compel the production of all documents created by Marin-Jordan in connection with her involvement in the Armstrong Commission is **GRANTED**.

## C. Documents Relating to Detective Arroyo

Defendants also assert that certain documents concerning Detective Humberto Arroyo are protected by the work product doctrine and the deliberative process privilege. (Defs. Mem. at 28-30.) The documents at issue concern an unrelated and unsubstantiated 1993 disciplinary proceeding against Arroyo. The documents reflect the recommendation of an Assistant Deputy

Police Commissioner Lupin to Police Commissioner Bratton concerning the disposition of those charges. Defendants contend that the documents have no relevance to any of Plaintiffs' claims, and have "no relevance to defendant Arroyo's credibility, motivation or bias separate and apart from all the information readily available to plaintiffs." (Defs. Mem. at 29.) Plaintiffs contend that Arroyo's credibility is relevant because he was officially designated the officer in charge of the Central Park jogger investigation. (Pls. Mot. at 18.)

The Court finds that the documents concerning Arroyo are not protected under the deliberative process privilege. The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue v. United States Department of Justice*, 312 F.3d 70, 76 (2d Cir. 2002). To be protected, a document must be both "predecisional" and "deliberative." *Grand Cent. P'ship, Inc. v Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). Courts have held, however, that the deliberative process privilege is inapplicable to personnel decisions by law enforcement agencies. *See, e.g., Mercado v. Division of New York State Police*, 989 F. Supp. 521, 523 n. 1 (S.D.N.Y. 1998); *Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 95 (S.D.N.Y. 2000). Because the documents relate to a personnel decision, the Court finds that the documents do not concern a governmental decision or policy within the ambit of the deliberative process privilege.

To the extent that Defendants are claiming that the documents are protected by the work product doctrine, they may submit by **December 2, 2011**, further explanation on the role of Deputy Commissioner Lupin and why the documents are protected.

14

### D. Hand Drawn Renderings of Precinct Rooms

Defendants have asserted that a number of hand drawn renderings of precinct rooms are protected by the law enforcement/official information privilege. Plaintiffs contend that the privilege does not apply because disclosure would not interfere with police investigations or cause any meaningful harm to Defendants. (Pls. Mot. at 15.)

The law enforcement privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't Investigation of the City of New York v. Myerson*, 856 F.2d 481, 484 (2d Cir. 1988). Here, the documents at issue appear to be drawings of rooms within a police precinct made at the time of the investigation of the Central Park jogger case. Defendants fail to show how disclosure of the documents will undermine law enforcement efforts or reveal law enforcement techniques. Moreover, the documents appear to be potentially relevant to the claims in this case, which relate, in part, to the initial interrogations of Plaintiffs by the police. Accordingly, the Plaintiffs' motion to compel production of these drawings is **GRANTED**.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs motion to compel is **GRANTED, in part,** and **DENIED, part.**

**SO ORDERED this 22nd day of November 2011**
New York, New York

*[signature]*

The Honorable Ronald L. Ellis
United States Magistrate Judge