UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

IN RE MCCRAY, RICHARDSON, SANTANA,           ORDER
WISE, AND SALAAM LITIGATION                  03 Civ. 9685 (DAB)


------------------------------------x
DEBORAH A. BATTS, District Judge

On March 5, 2013, United States Magistrate Judge Ronald L. Ellis filed a Report and Recommendation ("Report") recommending that Florentine Films's ("Florentine") Motion to Quash a Subpoena to Produce Certain Video and Audio Tapes ("Motion to Quash") be GRANTED. Defendants' amended subpoena, dated October 2, 2012, seeks the production of "outtakes" of any audio or video recorded interviews collected in the course of producing the documentary film <u>The Central Park Five</u> (the "Film"). The Court assumes general familiarity with the events that gave rise to this litigation. The facts relevant to the present Motion, which are detailed meticulously in Judge Ellis's Report, will not be restated here. For the reasons set forth below, the Court having conducted the appropriate level of review, Judge Ellis's Report is ADOPTED in part and MODIFIED in part, and the Motion to Quash is GRANTED.


I. OBJECTIONS TO THE REPORT

    A. Standard of Review

    "[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court," with the

exception of several dispositive motions enumerated in the statute. 28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(b). When the magistrate judge makes a recommendation for a dispositive matter, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b). For pretrial matters that are not dispositive of a claim, however, the District Court considers the parties' objections under clear error review and "set[s] aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A magistrate judge's ruling regarding non-dispositive matters is "afforded substantial deference." Pavlou v. Baxter Healthcare Corp., No. 98 Civ. 4526, 2004 WL 912585, at *1 (S.D.N.Y. Apr. 29, 2004). A party must make timely objections to a magistrate judge's recommendation by "serv[ing] and fil[ing] objections to an order within 14 days after being served with a copy [of the Report]." Fed. R. Civ. P. 72(a).

Discovery matters are generally non-dispositive, and it is atypical that "[a] motion to quash a subpoena in an action seeking relief other than production of the subpoenaed information" will dispose of the case. Arista Records, LLC v. Doe 3, 604 F.3d 110, 116 (2d Cir. 2010); see also Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). Therefore, the Court will normally review the magistrate judge's recommendation for such a

Motion for clear error. See id. After conducting the appropriate level of review, the Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate. 28 U.S.C. § 636(b)(1)(c).

Defendants filed timely Objections, and the Court has reviewed the Report and the submissions of the Parties for clear error.

## II. DISCUSSION

### A. Application of the Reporter's Privilege

Defendants contend that Judge Ellis's application of von Bulow v. von Bulow, 811 F.2d 136 (2d Cir. 1987) erroneously limits the Second Circuit's holding in the case and, consequently, that the Court should not deem the reporter's privilege to cover the subpoenaed information. (Defs.' Obj. at 16.) The Court in von Bulow explained that one who claims the reporter's privilege must demonstrate the intent to use the collected material to "disseminate information to the public," and that the intent must "exist[] at the inception of the newsgathering process." 811 F.2d at 144.

Defendants state that Sarah Burns, one of the directors of the Film, began gathering information about Plaintiffs' case while writing her college thesis and working as a paralegal for the firm that represents Plaintiffs, and Burns had no intention of publicly

distributing her research during those times. (Defs.' Obj. at 19-20.) As such, Defendants argue that, according to <u>von Bulow</u>, the relevant timeframe is when any fact gathering begins. (<u>See</u> Defs.' Obj. at 23-24.) Defendants argue that the outtakes for the Film do not fall under the reporter's privilege. (Defs.' Obj. at 24.) Judge Ellis, however, read the language in <u>von Bulow</u> to mean that the relevant timeframe is "not when <u>any</u> fact gathering [for the subject of the subpoena] began but when <u>the information sought by the subpoena at issue was gathered</u>." <u>In re McCray</u>, No. 03 Civ. 9685, 2013 WL 815620, at *6 (S.D.N.Y. Mar. 5, 2013). Here, the Court agrees with Judge Ellis.

The purpose of the reporter's privilege is to "protect the public's interest in being informed by a vigorous, aggressive and independent press." <u>Chevron Corp. v. Berlinger</u>, 629 F.3d 297, 306 (2d Cir. 2011)(emphasis omitted)(internal quotation marks omitted). Accordingly, the reporter's privilege is not extended to a person who gathers information for personal reasons unrelated to dissemination of that material to the public, because the person "will not be deterred from undertaking his search simply by rules which permit discovery of that information in a later proceeding." <u>von Bulow</u>, 811 F.2d at 143. As the Court noted in <u>Chevron Corp. v. Berlinger</u>, 629 F.3d 297 (2d. Cir. 2011), <u>von Bulow</u>'s discussion of a person's intent to disseminate information to the public should

4

be read in the context of the overarching goal: the public's interest in an independent press. See 629 F.3d at 307.

In von Bulow, the information-gatherer, Andrea Reynolds ("Reynolds"), had collected investigative reports and notes while observing the criminal trial of her "intimate friend." 811 F.2d at 139. Though Reynolds admitted to have collected the documents because she wanted to establish the credibility of her friend's children "for [her] own peace of mind," id., she claimed that her manuscript of an unpublished book, which was based on information collected, should be protected by the reporter's privilege. Id. at 145. The Court concluded that the "primary relationship between" Reynolds and von Bulow did not "have as its basis the intent to disseminate the information to the public garnered from that relationship," and, therefore, the reports and notes were not privileged. 811 F.2d at 145. Nor could Reynolds assert the privilege merely because she reconstructed them in the form of a manuscript. Id. at 145-46.

Defendants contest Burns' journalistic independence. (Defs.' Obj. at 19, 21.) Defendants state that because Burns "met the plaintiffs during this time [working as a paralegal], and gained their trust," Burns' relationship with the Plaintiffs was comparable to the relationship described in von Bulow. (Defs.' Obj. at 19-20.) In contrast to the relationship in von Bulow, which was

described to be an "intimate" friendship, Burns' had a professional relationship with the Plaintiffs' counsel, for whom she worked as a paralegal. In re McCray, 2013 WL 815620, at *8. During and after her employment with Plaintiffs' counsel, however, Burns "neither had contact with, nor access to, any attorney-client privileged material relating to Plaintiffs . . . ." Id. An interest in investigating and reporting on a matter, which stems from a previously established but attenuated professional relationship, is not comparable to a personal project motivated by the vindication of intimate friends, as described in von Bulow.

Defendants argue further that because Burns reached the same conclusions in her college thesis, book, and the Film concerning Plaintiffs' arrests and prosecutions, the reporter's privilege should not apply. (Defs.' Obj. at 20-24.) Defendants assert that arriving at the same conclusion demonstrates Burns' lack of intention to disseminate information to the public when she wrote the thesis. (Defs.' Obj. at 20-24.) This argument regarding the applicable timeframe of the privilege, however, is unworkable.

As Judge Ellis stated in the Report, "it seems likely that a filmmaker would have a point of view going into a project." In re McCray, 2013 WL 815620, at *5. Like Burns, many investigative journalists may have previous familiarity with a subject before beginning their work on a project. Courts would undermine the

6

purpose of the reporter's privilege and severely curtail its applicability if the standard hinged on whether the reporter had previously researched the subject of the subpoena for a high school or college paper, and whether she intended to disseminate information to the public at that early stage.

This also demonstrates that Defendants' understanding of the facts of the instant case is misplaced. <u>All of the information</u> in Reynolds's manuscript was based on materials she collected before she formed any intent to distribute information to the public. In contrast, the subpoenaed information in the instant case, namely the content of the interviews, was collected after Florentine decided to make a film that it would distribute to the public. Where one sets out to research a matter for one reason, then down the road decides to investigate the matter for purposes of dissemination to the public, the endeavors are considered separate and distinct, especially where the former primarily involves publicly accessible sources, and the latter, private sources.

For the reasons stated above, the reporter's privilege is applicable to the subpoenaed information, and the Court agrees with Judge Ellis's conclusions on this matter.

2. Overcoming the Standard for Non-Confidential Materials

There is no dispute that the subpoenaed materials contain non-confidential information. <u>In re McCray</u>, 2013 WL 815620, at *5;

(Defs.' Mem. at 7; Florentine's Mot. at 19.)  Defendants argue that the Court misapplied the law by relying on the standard set by In re Petroleum Prod. Antitrust Litig., 680 F.2d 5 (2d Cir. 1982).[1] In re Petroleum addresses confidential materials setting a standard for overcoming the reporter's privilege: courts may order disclosure of confidential sources when there is a clear and specific showing that materials at issue are (1) "highly material and relevant"; (2) "necessary or critical to the maintenance of the claim"; and (3) "not obtainable from other available sources." In re Petroleum, 680 F.2d at 7.

Non-confidential materials, on the other hand, are protected under the reporter's privilege because there is a "broader concern for the potential harm to the paramount public interest in the maintenance of a vigorous, aggressive and independent press." Gonzales, 194 F.3d 29, 33 (2d Cir. 1999)(citing Baker, 470 F.2d at 782).  The Court in Gonzales held that the reporter's privilege exists for non-confidential materials, but the standard for

---

[1] Defendants note the Court's exclusive reliance on cases applying the In re Petroleum confidential standard to support its decision to quash the subpoena. In the Report, Magistrate Judge Ellis relies on the language or holdings of United States v. Burke, 700 F.2d 70 (2d Cir. 1983), Bradosky v. Volkswagon of Am., Inc., No. M8-85, 1988 WL 5433 (S.D.N.Y. Jan. 15, 1988), In re Nat'l Broad. Co., 79 F.3d 346 (2d Cir. 1996), and Application of Behar, 779 F. Supp. 273 (S.D.N.Y. 1991). See In re McCray, 2013 WL 815620, at *7-8.  Cases applying the Gonzales non-confidential standard are better suited for analysis of the issue at hand.  However, Judge Ellis did not err in citing cases applying the confidential standard, such as Baker v. F & F Inv., 470 F.2d 778 (2d Cir. 1972), when the purpose of the citation was to elucidate general principles and goals of the reporter's privilege. See In re McCray, 2013 WL 815620, at *9.

overcoming the privilege is "less demanding" than the one established in In re Petroleum. Gonzales, 194 F.3d at 36. Under Gonzales, the Court may compel disclosure of non-confidential materials when the requesting party shows the materials at issue are (1) "of likely relevance to a significant issue in the case" and (2) "are not reasonably obtainable from other available sources." Id. The Court considers the Defendant's burden pursuant to Gonzalez and its progeny.

Here, the appropriate test is the one set out in Gonzales. Still, that line of cases supports Judge Ellis's conclusion. Defendants neither show that Florentine's outtakes are likely of relevance to a significant issue in the case, nor do they persuade the Court that they are not reasonably obtainable from other available sources. As such, Defendants have failed meet the less stringent non-confidential privilege standard.

    a. Likelihood of Relevance to a Significant Issue

Defendants fail to satisfy the first prong of the Gonzales test, which requires the requesting party to show that the materials are "of likely relevance to a significant issue in the case." 194 F.3d at 36. The "standard for relevance to overcome the journalist privilege for non-confidential materials is low." Sokolow v. Palestine Liberation Org., No. 04 Civ. 397, 2012 WL 3871380, at *3 (S.D.N.Y. Sept. 6, 2012). However, a litigant will

9

not be granted "unfettered access" to the materials. Sikelianos v. City of N.Y., No. 05 Civ. 7673, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008). In Sikelianos, the Plaintiff requested unpublished photographs taken by the Associated Press at the time of his arrest. Id. Plaintiff suggested the photos may be used to refresh the recollection of witnesses on the scene, and the photos may be relevant to the issue of whether police had probable cause. Id. The Court found these arguments to be insufficient. The Plaintiff does not overcome the privilege by only showing a "particularized need" of photos "expos[ing] a face, shield number, aggressive police activity, or other item(s) of interest or value" which might refresh witness recollection of the event; the Plaintiff's "reasoning could apply to any photograph of the plaintiff's arrest." Id. The Court further held that there was no indication that any of the photographs being subpoenaed would provide evidence regarding the issues alleged. Id. But see Sokolow, 2012 WL 3871380 at *3 (granting the subpoena despite the Court's skepticism of Plaintiffs finding evidence in the outtakes, noting that the request was limited to outtakes of only two specific interviews).

Defendants show a particularized need for the outtakes, but this alone is not enough to overcome the standard for relevance under Gonzales.[2] Similar to the Plaintiff in Sikelianos,

---

[2] Defendants give a laundry list of reasons why the outtakes may result in relevant evidence. (See Defs.' Obj. at 8-10.) For

Defendants point to no particular interview or outtake that would provide the evidence they seek. Instead, Defendants only make general claims that the outtakes are likely to contain relevant material, particularly because the interviews are taken in a "relaxed, comfortable, and trusting atmosphere." (Defs.' Obj. at 11.) This is insufficient; as Magistrate Judge Ellis stated in the Report, the "edited version of the Film suffices as potential impeachment material." In re McCray, 2013 WL 815620, at *8.

Even if the Court found that Defendants met the standard for relevance under Gonzales, in contrast to the Plaintiffs in Sokolow who requested outtakes from two specific interviews, Defendants are requesting all "audio and/or video materials documenting interviews . . . in connection with the book and/or film" that cover "main or familial plaintiffs," current and past counsel, all retained experts, and all witnesses to events concerning the case. (Report at 3.) While the Gonzales states that the "nature of the press interest protected by the [non-confidential] privilege is narrower"

---

example, in the edited portions of the Film, Plaintiffs recollect of the events in Central Park on April 19, 1989, and speak about the impact that the arrest and prosecution had on them. Defendants allege, accordingly, that the outtakes are relevant, as Plaintiffs may have spoken about issues relating to claims and damages in them. (Id. at 8.) Also, because the edited film contains contradictions in Plaintiffs' testimonies, Defendants allege Plaintiffs may have contradicted themselves in the outtakes as well. (Id. at 8-9.) Finally, Defendants argue that because the Film contains interviews with Plaintiffs' counsel, the outtakes may potentially include interviews with other counsel. (Id. at 9-10.)

11

than the interests for the confidential privilege, id. at 36, it also held that the Court has an interest in preventing the "wholesale exposure of press files to litigant scrutiny [which] would burden the press with heavy costs of subpoena compliance, and could otherwise impair its abilities to perform its duties." Id. at 35. Therefore, Courts should prevent litigants from "sift[ing] through press files in search of information supporting their claims." In reaching his conclusion, Judge Ellis did just that.

### b. Reasonable Obtainability from Other Sources

Nor do Defendants demonstrate that they would satisfy the second prong of the Gonzales test, which states that the requesting party must show that the materials are "not reasonably obtainable from other available sources." Gonzales, 194 F.3d at 36. Courts in the Second Circuit have quashed subpoenas when similar information could be obtained elsewhere. See Carter v. City of N.Y., No. 02 Civ. 8755, 2004 WL 193142, at *1 (S.D.N.Y. Feb. 2, 2004)(holding that Defendants' made a "particularly weak showing of need" when requesting for a reporter's testimony regarding conversations with participants at the demonstration; the Court explained "the journalist's videotape of the demonstration had already been produced and . . . there were scores of other witnesses to this large public demonstration.")

On the other hand, when courts have granted subpoenas for non-confidential materials under the Gonzales standard, parties requesting the information have shown that the particular information they seek is not readily available elsewhere. Materials are reasonably unobtainable, for instance, when the only other party who knows the information cannot be deposed. United States v. Treacy, 639 F.3d 32, 43 (2d Cir. 2011)(finding that the reporter was the only potential witness because the criminal Defendant possessed an absolute Fifth Amendment right not to testify). Materials are reasonably unobtainable where a significant hardship prevents the party from gathering the information again. Schiller v. City of N.Y., 245 F.R.D. 112, 120 (S.D.N.Y. 2007) ("[E]quivalent information could be obtained only by subpoenaing and deposing hundreds of nonparty witnesses who filled out the questionnaires.") Courts have also granted subpoenas when depositions have not provided the information sought by the requesting party. See Mandal v. City of N.Y., No. 02 Civ. 1234, 2004 WL 2375817, at *6 (S.D.N.Y. Oct. 21, 2004); Lonegan v. Hasty, No. 04 Civ. 2743, 2008 WL 41445, at *4 (E.D.N.Y. Jan. 1, 2008).

As Judge Ellis stated in the Report, Defendants already have the information they seek, and "any statements contained in the outtakes would be cumulative." In re McCray, 2013 WL 815620, at *8.

Defendants stated that the edited portions of the Film already provide impeachment material, Plaintiffs' accounts of the events, and interviews with Plaintiffs' counsel. Moreover, there is no case law supporting Defendants' allegation that information is not "reasonably obtainable elsewhere" when Plaintiffs in the case are available for deposition. Therefore, the information sought is readily obtainable, as Defendants "have the opportunity to pose questions concerning contradictions in the edited Film and elsewhere." In re McCray, 2013 WL 815620, at *8.

Finally, Courts have also sustained subpoenas where materials provided "unimpeachably objective evidence." Berlinger, 629 F.3d at 305 (finding that the footage could provide "unimpeachably objective evidence" of Plaintiffs' improperly influencing expert witnesses and a foreign government); Gonzales, 194 F.3d at 36 (concluding that outtakes of a video taken when the Deputy stopped a vehicle was "unimpeachably objective evidence of Deputy Pierce's conduct," and a deposition was not an adequate substitute). Defendants argue that the outtakes will provide "candid statements made by plaintiffs on video" that cannot be duplicated in a deposition setting, and cite Duncan v. IBM, No. 95 Civ. 1785, 1996 WL 720106 (S.D.N.Y. Dec. 12, 1996) as legal authority. (Defs.' Obj. at 12.) However, this is not the unimpeachably objective evidence to which the Second Circuit courts have referred.

The Court in <u>Duncan</u> differentiates deposition transcripts from videos to explain that video testimony is an acceptable alternative to live witness testimony; video testimony allows the jury to "observe the witness's demeanor as well as listen for oral clues to the individual's credibility." <u>Duncan</u>, 1996 WL 720106, at *5 & n.3. Defendants point to no case law that supports their contention that, in the context of discovery proceedings, the existence of a video interview in a "relaxed" setting will overcome the <u>Gonzales</u> test for reporter's privilege when the same witnesses are available for a deposition in a less "relaxed" setting. As Judge Ellis noted, "the depositions . . . will provide full access to the main Plaintiffs" and, therefore, Defendants have unfettered access to examine witnesses. <u>In re McCray</u>, 2013 WL 815620, at *8. More still, interviews taken with Plaintiffs in a "relaxed" setting <u>are</u> available to Defendants: the edited Film is readily accessible. Defendants do not make a showing that passes even the low standard of the second prong of <u>Gonzales</u>.

Defendants, therefore, fail to show the subpoenaed materials are likely relevant to a significant issue in the case and that the materials are not reasonably obtainable from other available sources. Accordingly, Florentine's Motion to Quash Defendant's subpoena is GRANTED.

The Court reviews the rest of the Report for clear error.

Having found none, the court ADOPTS the Report with the modifications noted above.

III. CONCLUSION

    Having conducted the appropriate level of review, it is hereby ORDERED and ADJUDGED that the Report and Recommendation of United States Judge Ronald L. Ellis, dated March 5, 2013, is APPROVED, ADOPTED, and RATIFIED by the Court as modified herein. Florentine's Motion to quash Defendant's subpoena is GRANTED.

SO ORDERED.

*Deborah A. Batts*
Deborah A. Batts
United States District Judge

Dated: September 23, 2013
New York, New York