UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE MCCRAY, RICHARDSON, SANTANA, WISE, :     **ORDER & OPINION**
AND SALAAM LITIGATION                                    :     **03-CV-9685 (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

On September 5, 2014, the Parties in the above referenced matter reached a settlement. (Doc. No. 313.) That same day, the law firm of Stevens, Hinds, & White, PC ("SHW") moved for attorneys' fees and costs, related to the representation of Plaintiff Kharey Wise ("Wise"), pursuant to New York Judiciary Law § 475. (Doc. No. 314.) On October 16, 2014, the law firm of Fisher, Byrialsen & Kreizer, PLLC ("FBK") responded to SHW's motion. (Doc. No. 337.) On October 20, 2014, SHW replied and requested a hearing in this matter. (SHW Reply.) On October 21, 2014, FBK requested a conference to discuss this matter. (Doc. No. 339.) The Court held a conference on October 29, 2014.

For the reasons that follow, the Court **GRANTS** SHW's Motion for Attorneys' Fees and Costs in the amount of **$237,997.50**.

## II. BACKGROUND

On May 28, 2003, Wise and his mother, Deloris Wise, retained SHW to represent them in a civil rights lawsuit against the City of New York and others (collectively, "Defendants"), arising from Wise's wrongful conviction and imprisonment. (Doc. No. 314, ¶ 2.) The retainer agreement between SHW and Wise ("the retainer agreement") contained two options for compensation and read as follows:

## Payment of Attorneys Fees

GENERAL TERMS:
Client has been advised that (s)he may elect to secure legal representation by The Firm in choosing either the following Fee Payment plans:

**(PLAN A):** Direct payment by Client of the hourly fee for legal services rendered by Senior Partner at $350.00 per hour for the services of Senior Partner Lennox S. Hinds, Esq. and $150.00 per hour for the services of The Firm=s [sic] Associates,

- or -

**(PLAN B):** Retainer of The Firm on a contingency fee basis in accordance with the following Fee schedule:
    Attorneys fees due The Firm of 33 1/3% on the First $250,000.00 recovered;
    Attorneys Fees due The Firm of 25% on the next $250,000 recovered;
    Attorneys Fees due The Firm of 20% on the next $500,000 recovered.
In the event that attorneys fees awarded as a result of any judgment or court order constitute an amount lesser than that formula stated above, Client agrees to reimburse the difference to The Firm.

Client is responsible for the payment of all out of pocket expenses associated with this legal representation and/or litigation, including costs related to investigations, the hiring of experts, depositions, filing fees and administrative services. Client will be given credit for all disbursements made.

(Doc. No. 337, Ex. A.) After the listed plan options, the retainer agreement asks the client to circle A or B to indicate their chosen plan, and initial next to their selection. (*Id.*) Wise or his mother circled Plan A and both initialed their selection. (*Id.*) Lennox S. Hinds ("Hinds"), senior partner at SHW, along with Wise and his mother, all signed the retainer agreement. (*Id.*)

In December 2003, SHW commenced a lawsuit on behalf of Wise. (Doc. No. 314, ¶ 5.) According to the billing records, SHW represented Wise for approximately six years after the commencement of the lawsuit. (Doc. No. 337, Ex. C.) SHW's representation included drafting the pleadings, responding to a motion to dismiss, attending conferences, consulting with an

expert witness, meetings with Wise and his family members, and exchanging and reviewing discovery documents. (*Id.*)

On December 8, 2009, Wise replaced SHW with FBK. (Doc. No. 337, Ex. B.) SHW states that the substitution was without cause, and FBK does not dispute this fact. (Doc. No. 314, ¶ 7.) On February 3, 2010, SHW sent a letter to FBK, which said:

> Please be advised that Stevens, Hinds & White will be maintaining a "charging lien" against any Judgment or verdict in the client's favor. Furthermore, we reserve our right to petition the court for attorneys fees against defendants, reflecting the 6 ½ years that this office has devoted to this case. Enclosed herewith is the time billing records and disbursements incurred by our firm.

(Doc. No. 337, Ex. C.) SHW enclosed their billing records (totaling $231,212.50) and expenses (totaling $7,673.00) related to Wise's representation. (*Id.*) At the time of the substitution, the firms did not engage in any discussions regarding SHW's fees. (Doc. No. 337, ¶ 6.)

Subsequent to the substitution of counsel, FBK conducted interviews of approximately twenty potential witnesses; handled discovery exchange and disputes; participated in ninety-five deposition; appeared at over thirty Court conferences; drafted motions; reviewed over 200,000 pages of discovery documents; consulted with expert witnesses; attended co-counsel meetings; met and conferred with opposing counsel; and met with Wise. (Doc. No. 338, at 6-7.) Finally, FBK engaged in settlement negotiations and finalized the terms of the settlement agreement. (*Id.*)

The settlement agreement awarded $12.25 million to Wise, including attorneys' fees, and Wise assigned his rights to attorneys' fees to FBK. (Doc. No. 313, ¶ 6, ¶ 10.) Defendants have since distributed the settlement funds and placed the attorneys' fees in an escrow account held by FBK. (Doc. No. 351.)

## III. DISCUSSION

### A. The Charging Lien

When a client discharges an attorney in the course of litigation, the departing attorney may seek to secure his interests in the case. *See* N.Y. Jud. L. § 475. New York Law has created a statutory charging lien, which compensates the discharged attorney for services rendered should there be a recovery in the case. New York Judiciary Law § 475 provides, in pertinent part:

> From the commencement of an action . . . in any court . . . the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hand they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

The outgoing attorney loses this right only when the client terminates him for cause or the attorney withdraws without case. *See First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 633 (2d Cir. 1972). In this case, Wise terminated SHW's services without cause and thus, New York Judiciary Law § 475 entitles SHW to a charging lien for services rendered. (Doc. No. 314, ¶ 7.) In determining the charging lien amount, the attorney is entitled to *quantum meruit* for the reasonable value of his services from the commencement of the action through substitution. *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998) ("It is undisputed that it was proper to determine the amount of [an attorney's] § 475 charging lien on a *quantum meruit* basis, ascertaining the reasonable value of the legal services rendered up to the date of the . . . substitution of new counsel.")

4

### B. *Quantum Meruit* Analysis

FBK does not dispute that SHW "is entitled to a charging lien for services rendered to plaintiff Korey (Kharey) Wise from commencement of this action through substitution." (Doc. No. 338, at 1.) FBK, however, insists that "the amount of the charging lien, and any recovery by [SHW], is limited to the reasonable value of those services" and the Court should use the SHW billing and expense records as a guide in determining the reasonable value of services. (*Id.*)

FBK points out, "In evaluating the reasonable value of services provided, or *quantum meruit* award, the court may take into account the parties' agreed-upon rate of compensation." (*Id.* at 9.) FBK cites several cases in which New York courts have relied on a signed retainer agreements to determine the *quantum meruit* award for a discharged attorney. *See, e.g., King v. Fox*, No. 97-4134, 2005 U.S. Dist. LEXIS 28638 (S.D.N.Y Nov. 18, 2005); *Blumert v. Nanny Hagen Leasing, Ltd.*, 283 A.D.2d 642 (2nd Dept. 2001); *Glickson v. Eli Lilly & Co.*, 234 A.D.2d 416 (2nd Dept. 1996); *Tunick v. Shaw*, 45 A.D.3d 145 (1st Dept. 2007). FBK contends that the Court should base SHW's *quantum meruit* amount on a loadstar calculation because the signed retainer agreement between SHW and Wise called for hourly billable rates. (*Id.* at 10.)

SHW admits that a "retainer agreement may be consulted in determining a quantum meruit fee award." (SHW Reply, at 2.) *See, e.g., Nabi v. Sells*, 70 A.D.3d 252, 253 (1st Dept. 2009); *Stair v. Calhoun*, 722 F.Supp.2d 258 (E.D.N.Y. 2010). SHW, however, argues that upon substitution of attorneys, the retainer agreement no longer governs the fees owed and instead the discharged attorney may elect to receive a proportion of the attorneys' fees recovered. (Doc. No. 315, at 12.) SHW cites several cases in which a client discharged an attorney without cause, a fee dispute arose between the outgoing and incoming attorneys, and the court granted a percentage of the attorneys' fee award to the former attorney. (*Id.*)

5

FBK, however, rightly points out that the cases cited by SHW all involved outgoing attorneys who had contingency fee agreements in place before termination. (Doc. No. 338, at 16-17.) For example, SHW relies on *Lai Ling Cheng v. Modansky Leasing Co.* for the claim that an outgoing attorney may elect a contingent fee upon discharge.[1] 73 N.Y.2d 454, 541 (1989). In that case, however, the court also found that the client agreed to pay the attorney a percentage of the recovery. *Lai Ling Cheng*, 73 N.Y.2d at 459 (1989). All of the relevant cases cited by SHW have the same issue: There was an agreement that the discharged attorney would receive a percentage of the recovery. *See Young, Fenton, Kelsey v. Wein*, 111 A.D.3d 1194 (3rd Dept. 2013) (the attorney initially accepted the case on a contingent fee basis); *Wiggins v. Kopko*, 105 A.D.3d 1132, 1133 (3rd Dept. 2013) (a contingency fee agreement existed); *Nabi v. Sells*, 70 A.D.3d 252, 253 (1st Dept. 2009) (attorney had a contingency fee retainer agreement with client).

Additionally, SHW relies on *Matter of Cohen v. Grainger, Tesoriero & Bell* for the proposition that if an attorney does not make an election at the time of discharge, the court should assume that a contingency fee has been chosen.[2] 81 N.Y.2d 655 (1993). In *Matter of Cohen*, however, the discharged attorney had a contingent fee agreement with his client prior to termination. 81 N.Y.2d at 655 (1993). Even still, at the time of substitution, SHW was not silent in making an election for either a percentage of the recovery or an hourly basis. (*See* Doc. No.

---

[1] SHW cites other cases for the same proposition, but the opinions in those cases lack a factual background to determine whether they apply to this case. *See Tutarashvili v. Barzilay*, 39 A.D.3d 851 (2d Dept. 2007); *Calabro v. Bd. of Educ.*, 39 A.D.3d 851 (2nd Dept. 2007); *Lewis v. City of New York*, 2012 WL 3064869 (N.Y.Sup.). For instance, the opinions do not state whether a contingency fee agreement existed prior to the attorneys' election for a percentage.

[2] SHW also relies on *Naguib v. Pub. Health Solutions* for the same proposition, but again, the opinion does not state a factual background to establish that the case is relevant. 2014 WL 20002824 (E.D.N.Y May 14, 2014).

6

337, Ex. C.) SHW submitted their billing records to FBK at the time of substitution; therefore, an inference can be made that SHW elected to take a loadstar calculation.

Thus, SHW's claim for a percentage of the recovery depends on the existence of a contingency fee agreement. SHW argues that even though Wise and his mother circled Plan A, indicating direct payment based on an hourly rate, "the parties' *sub silentio* understanding was that the suit against NYC be prosecuted on a contingent fee basis." (Doc. No. 315, at 2.) SHW characterizes the selection of Plan A as a mere oversight and the actual conduct of the parties involved suggest that there was a *sub silentio* agreement for a contingency fee basis. (*Id.*) SHW points out that at the time, Wise and his mother were unemployed and could not afford to pay legal fees; therefore, payment under Plan A would have been impossible. (*Id.*) SHW also submit that the firm never presented invoices or bills to Wise during their six and one-half year relationship. (*Id.* at 17.) Moreover, SHW never received payments from Wise during the term of representation. (*Id.*) SHW contends that these facts show a *sub silentio* agreement for a contingency fee basis. (*Id.*)

Nevertheless, a supposed *sub silentio* understanding cannot undo a signed written contract; to do so would go against basic contract law principles including the parole evidence rule and the statute of frauds. *See, e.g., Data-Stream AS/RS Techs., LLC v. China Int'l Marine Containers, Ltd.*, 2004 WL 830062, at *18 (S.D.N.Y. Apr. 13, 2004) (declining to consider an alleged oral modification to a written retainer agreement). Here, the retainer agreement clearly states that the client shall pay SHW at a specified hourly rate for services rendered. (Doc. No. 337, Ex. A.) Moreover, at the time of substitution, SHW made no mention of a contingency fee agreement and even submitted to FBK billing records based on hourly rates. (Doc. No. 337, Ex. C.) It is reasonable to infer that at the time of substitution, SHW expected that a loadstar

7

calculation would determine the charging lien amount. Otherwise, SHW would have mentioned the supposed *sub silentio* understanding in their letter to FBK and would not have submitted their billing records based on hourly rates.

For the reasons stated above, the Court finds that the retainer agreement, along with the hourly rates contained within, guides the *quantum meruit* analysis in determining the reasonable value of SHW's services.

## C. SHW Attorneys' Fees and Costs

SHW never submitted to the Court time billing records or expenses incurred in relation to the Wise litigation because their Memorandum in Support of Attorneys' Fees argues for a percentage of the recovered award. (Doc. No. 315.) Instead, FBK submitted the SHW attorneys' fees and expense records, which SHW submitted to FBK at the time of substitution. (Doc. No. 337, Ex. C.) Although the Court is in possession of the records, SHW has not put forth any arguments as to the reasonableness of their attorneys' fees and expenses or explained their records. Therefore, the Court will only award attorneys' fees and expenses that are clearly reasonable and require no explanation.

### 1. Billable Hours

The signed retainer agreement calls for hourly rates of $350 for the services of Senior Partner Hinds and $150 for the services of Associates. (Doc. No. 337, Ex. A.) The SHW billing records also list the same hourly rates. (Doc. No. 337, Ex. C.) SHW describes these billing rates as "palpably outdated" at the time of the retainer agreement. (Doc. No. 315, at 2.) SHW explains that the "retainer agreement was a many-year-old recycle, so the SH&W billing rates specified were palpably outdated." (*Id.*) Although SHW contends that the outdated rates were a

mere oversight, SHW submitted the same rates to FBK six and a half years later at the time of substitution. (Doc. No. 337, Ex. C.) SHW's letter states:

> Enclosed herewith is the time billing records and disbursements incurred by our firm. You will note that in circumstances where more than one lawyer worked on a particular matter on the same date and time i.e. attending meetings etc. we billed only for one lawyer's time to obviate any issue of potential double-billing.

(*Id.*) The letter indicates that SHW reviewed the billing records before submitting them to FBK because they checked to make sure that there was no double billing. It is reasonable to think that the attorney would also check to make sure that the correct hourly rate was applied. By submitting the same hourly rates to FBK, SHW confirms that the rates listed in the retainer agreement are the correct rates and not a mere oversight.[3]

Attorneys' rates should be calculated "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984); *see also Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998). The prevailing community a district court should consider to determine the lodestar figure is the district in which the court sits. *See Cruz v. Local Union No. 3 of the Intern. Broth. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987). In addition, a court may rely on its own knowledge of hourly rates charged in private firms. *Miele v. New York State Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407 (2d Cir. 1987).

This District has found hourly rates similar to those listed in the retainer agreement reasonable during the relevant time. *See, e.g., Martinez v. Port Auth.*, 2005 WL 2143333, at

---

[3] SHW submitted its request to FBK in 2010. While that was five years ago, and the current rates could have changed, SHW has submitted no evidence of a change in rates since then. Moreover, SHW has not argued or supported an adjustment to the rate.

9

\*22-26 (S.D.N.Y. Sept. 2, 2005) (finding a $400 rate reasonable for a partner in a civil rights action), *aff'd*, 445 F3d 158 (2d Cir. 2006); *M.L. v. Bd. of Educ.*, 2003 WL 1057476 (S.D.N.Y Mar. 10, 2003) (finding rates of $350-$375 reasonable for a lead attorney in a disability case); *Moon v. Gab Kwon*, 2002 WL 31512816 (S.D.N.Y. Nov. 8, 2002) (finding an hourly rate of $350 reasonable for a lead attorney with thirty years of experience in a Fair Labor Standards Act case). Therefore, the Court finds that the hourly rates listed in the retainer agreement are the correct rates and finds that they are reasonable.

According to the billing records, the loadstar billable calculation totals $231,212.50. Over the course of six and one-half years, Senior Partner Hinds recorded 598.1 hours; Associate Juliette Chinaud recorded 493.85 hours; Associate Aaron David Frishberg recorded 228.75 hours; and a paralegal recorded 36 hours. (Doc. No. 337, Ex. C.) The billing records describe the task performed, and SHW billed the time to the tenth of an hour. (*Id.*) The Court has reviewed the records, and the work described appears to reasonably relate to the Wise litigation. (*Id.*) Considering SHW litigated the case for over six years, the hours expended are also reasonable. The Court, therefore, grants SHW's Motion for Attorneys' Fees in the amount of **$231,212.50**.

### 2. Costs and Expenses

According to the SHW expense records, SHW claims to have paid $7,673 in costs associated with the Wise litigation. The Court has reviewed the expense records and finds that with the exception of one line item,[4] the listed costs are reasonable. The Court, therefore, grants **$6,785** in costs to SHW.

---

[4] The only questionable item is a loan made to Korey Wise for $888. In some instances, ABA Rules for Professional Responsibility prohibit loans made to clients. Therefore, without further explanation or information, the Court finds that this expense is not clearly reasonable.

10

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** SHW's Motion for Attorneys' Fees and Costs in the amount of **$237,997.50**.

**SO ORDERED this 31st day of March 2015**
**New York, New York**

_____
**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**