```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                         Docket #03cv9685
MCCRAY, RICHARDSON, SANTANA,        :
WISE AND SALAAM LITIGATION
                                    :   New York, New York
                                        May 13, 2015
------------------------------------ :

                        PROCEEDINGS BEFORE
                MAGISTRATE JUDGE RONALD L. ELLIS,
             UNITED STATES DISTRICT COURT MAGISTRATE JUDGE



APPEARANCES:

For the Plaintiffs       BELDOCK LEVINE & HOFFMAN, LLC
  Salaam, McCray,        BY:  KAREN DIPPOLD, ESQ.
  Richardson & Santana:  99 Park Avenue, Suite 1600
                         New York, New York 10016
                         (212) 490-0400


For the Plaintiff        FISHER & BYRIALSEN, PLLC
  Wise:                  BY:  JANE FISHER-BYRIALSEN, ESQ.
                              ALISSA BOSHNACK, ESQ.
                         99 Park Avenue, PH/26th Floor
                         New York, New York 10016
                         (212) 962-0848
```

```
Transcription Service:   Carole Ludwig, Transcription Services
                         141 East Third Street #3E
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES CONTINUED:

For the Defendants:        NEW YORK CITY LAW DEPARTMENT
                            CORPORATION COUNSEL
                           BY:  PHILIP DEPAUL, ESQ.
                                GENEVIEVE NELSON, ESQ.
                           100 Church Street
                           New York, New York 10007
                           (212) 788-8714

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>E X H I B I T S</u>

| <u>Exhibit<br>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                                                    4
 2              THE CLERK:   This is a matter for a status
 3   conference In Re McRay, Richardson, Santana, Wise and Salaam
 4   Litigation, 03cv9685.   Counsel, please state your name for the
 5   record.
 6              MS. KAREN DIPPOLD:    Karen Dippold, Beldock, Levine
 7   & Hoffman for plaintiffs Salaam, McCray, Richardson and
 8   Santana.
 9              THE COURT:  Good afternoon.
10              MS. DIPPOLD:  Good afternoon, Your Honor.
11              MS. ALISSA BOSHNACK:   Good afternoon, Alissa
12   Boshnack from Fisher & Byrialsen on behalf of Kharey Wise and
13   also appearing from my office by phone is Jane Fisher-
14   Byrialsen.
15              MS. JANE FISHER-BYRIALSEN: (via speakerphone) Good
16   afternoon, Your Honor.
17              THE COURT:  Can everybody hear here?
18              MS. DIPPOLD:  Yes.
19              MS. FISHER-BYRIALSEN:   Thank you for the
20   accommodations.
21              MS. GENEVIEVE NELSON:   Genevieve Nelson, Assistant
22   Corporation Counsel, for defendants, good afternoon, Your
23   Honor.
24              MR. PHILIP DEPAUL:   Good afternoon, Your Honor,
25   Philip DePaul, also for defendants.
26
```

```
 1                                                          5
 2              THE COURT:  Okay, thank you, everyone.  As I
 3    understand it, this is a planning meeting as we determine the
 4    process of de-designating discovery materials. I assume the
 5    parties had some discussions already?
 6              MS. DIPPOLD:  We have had some discussions, Your
 7    Honor, yes.
 8              THE COURT:  So only one person can remain standing
 9    and talk to me, everyone else can sit down so I can focus.
10              MS. DIPPOLD:  Your Honor, first of all, I think that
11    one of the things that has to happen is that the
12    confidentiality orders that were entered provide that on the
13    termination of the litigation the documents will either be
14    returned to the party that produced them or they will be
15    destroyed. So obviously there is going to have to be an order
16    that modifies that because the parties have basically agreed
17    that many, if not most of the documents, will be de-
18    designated.
19              The City has now provided us with the 85 page chart
20    of documents which is not done document by document with Bates
21    numbers, but is done through categories, which presents a bit
22    of a problem for the plaintiffs and we have discussed with
23    defendants' counsel that, in fact, there will have to be some
24    sort of process by which we consult with one another to agree
25    upon the documents that are to be de-designated and the
```

```
 1                                                        6
 2  redactions that will be required to do that.  And that
 3  pertains not only to the documents that are mentioned in this
 4  chart, but we also have, the City says, 95, I haven't counted
 5  them, but they say we have 95 depositions.  And many of the
 6  documents are, of course, exhibits during the course of those
 7  depositions and so those depositions may also have to have
 8  redactions done to them as well. so this is an enormous
 9  project that involves hundreds of thousands of pages of
10  documents in all likelihood.
11          What we haven't discussed and what we feel we need
12  to discuss at this point is what will happen if, in fact, we
13  are unable to agree on how specific documents are to be
14  treated and what redactions are to be made to those particular
15  documents. The plaintiffs are hopeful that your will remain
16  available to us to help us resolve any disputes that might
17  arise during the process of de-designating documents.
18          THE COURT:  Does that suggest that the defendants
19  are not hopeful that I'll stay involved?
20          MS. DIPPOLD:  Well they'll have to speak for
21  themselves, Your Honor, but I think that they probably would
22  also like you to be available.  And the other problem is how
23  these documents are going to be maintained and the defendants
24  are also concerned about the amount of time that's involve in
25  this is going to be enormous and the question was raised just
```

1
2  today whether the plaintiffs are looking to the defendants to
3  somehow compensate them for the amount of time that will be
4  involved in redacting and de-designating documents. So those
5  are the sorts of issues we've discussed.  Mr. McGraw has made
6  some proposals about having a website that The Times is
7  willing to participate in, and also that perhaps the City
8  Department of Records would maintain this on a government
9  publications portal. So these are issues that we haven't yet
10 discussed with the City although we had a brief conversation
11 beforehand.  So that's basically where we're at at this point.
12          THE COURT:  Okay, well I guess I could start with
13 the question perhaps to Ms. Nelson, what is your, I guess the
14 plaintiffs want to have some procedure in which if there are
15 disagreements you'll be able to bring it to me for hopefully
16 resolution without delay.
17          MS. NELSON:  We are also hopeful that the Court
18 retains jurisdiction so as to resolve any such issues that
19 might arise. I believe when we met and conferred with respect
20 to the chart, the plaintiffs indicated that they would need
21 additional time to review the chart in more detail, as Your
22 Honor notes and plaintiff acknowledged, it's an extensive
23 chart.  So they indicated that they would want more time to
24 review just the chart and then we would have an additional
25 meeting subsequent to that with respect to any issues that

1                                                              8

2   might arise.

3           We did have a discussion about whether there were

4   any documents that wholesale we could agree on, and I think as

5   a general proposition there might be, but I think that before

6   defendants commit themselves to a yes or no answer, we would

7   like plaintiffs' input as to whether there are any issues on

8   the chart that they would like to discuss in further detail.

9           THE COURT:  Okay.  Well --

10          MS. NELSON:  Just one other issue that Ms. Dippold

11  brought up which is the suggestion by the New York Times as to

12  them assisting the City in hosting a website or whether the

13  documents should be put on a Department of Records website or

14  someplace at the Department of Records where the documents

15  could be readily available. We're of the opinion that neither

16  one of those suggestions might be ideal for us, but we are

17  having discussions, not only with our office, but we intend

18  to, once we get this resolved in our office, to contact the

19  appropriate agency regarding whether there could be some kind

20  of website location on NYC.gov perhaps where we could have

21  these documents hosted. We're still, it requires vetting from

22  many levels and we haven't, we haven't gotten through the

23  initial stages, mostly because I think part of the information

24  that we need is how much will there be and will it be on a

25  rolling basis, will it be documents, you know, all documents

1   at once as a bundle or whether they'll be rolled out in

2   volumes, volume I, volume II or production 1, production 2.

3          So I think a little more discussion is required by

4   the parties before we can finalize exactly how we intend to

5   host these documents.

6          THE COURT:  Okay.  Well let me first state something

7   which I assume is not going to be relevant to our

8   considerations, but my current term as a magistrate judge ends

9   in November of 2017.  I assume we're not talking about

10  something that's going to take longer than that. I wouldn't

11  want to tell my wife that I have to sign a renewed term.

12         MS. NELSON:  You can't retire because you retained

13  jurisdiction over this case.  Your Honor, I think, all joking

14  aside, I think plaintiffs' estimation is about six months. The

15  defendants independently estimated the same amount of time.

16  Could it be a little more, of course, could it be a little

17  less, I doubt it, but we don't think that it should, as we sit

18  here, we do not believe that it should go until November,

19  2016, and I --

20         THE COURT:  2017.

21         MS. NELSON:  2017, excuse me, I make that caveat

22  because, as Your Honor knows, discovery in this case went on

23  for longer than either party anticipated.

24         THE COURT:  Yes, I think my children were, in fact,

1
2   toddlers at the time.  But that having been said, and in all

3   seriousness, obviously, because of the issues that are raised

4   by these documents and some of the issues that have been

5   decided by the Court during the course of discovery, I think

6   it's probably appropriate that I see it through to the end in

7   terms of making sure that the decisions that the parties make,

8   either you agree to them or that I weigh in on them. Because

9   aside from any issues between the plaintiffs and the

10  defendants, they're issues of the public in terms of the

11  importance of the documents that are at issue.  And as a final

12  arbiter I think I still have a responsibility to make sure

13  that any documents that are of value to the public and are not

14  -- and should not otherwise be privileged, that a mechanism be

15  provided such that access can be done in a way that is

16  efficient and timely. So, yes, I will be there to break the

17  ties.

18          Now, and I appreciate when you're dealing with this

19  many documents, in particular, as Ms. Dippold pointed out, you

20  know, they may not all be in Bates order, and so I think it's

21  essential that each side knows what documents they're talking

22  about so there won't be any disagreements or any confusion

23  because one side thinks they're agreeing to one thing and the

24  other side things they're agreeing to something else. But I

25  also, I assume that the City does not disagree with that

1                                                                11

2  notion.

3          MS. NELSON:  No, Your Honor, I just wanted to point

4  out that the chart was created in response to Your Honor's

5  order which was identifying for the Court what categories and

6  identify the documents that would fit into the categories in

7  defendant's response to the New York Times' motion. So we

8  started with that premise, we were over inclusive as Your

9  Honor will see, because we wanted the Court to get real sense

10  of the types of documents that we were talking about. We tried

11  to eliminate as many duplications as possible, but to the

12  extent that there were duplicate types of documents from

13  different sources we included them in the chart.

14          Plaintiffs and defendants have conferred and we've

15  talked about the possibility that there might be some

16  documents that are not on the chart.  We took a lot of time

17  and a lot of effort to include as many of the documents that

18  there are, but we will not foreclose the possibility that

19  there might be a few documents that did not make it onto the

20  chart. And if that's the case, if we locate documents that we

21  believe are not on the chart, and we'll bring it to

22  plaintiffs' attention and I believe they will do the same for

23  us.

24          THE COURT:  In that regard, one of the reasons for

25  having you do it by topic is the hope that what I think it was

1

2  Ms. Dippold who mentioned it, but that there might be

3  categories that you could deal with as categories, and

4  therefore, instead of looking at a 1,000 documents you look at

5  a category of documents and you might be able to have some

6  agreement on that, and might facilitate some decisions which

7  don't require as many person hours.  Now all of that having

8  been said, and since you are getting along so famously, what

9  is your plan for going forward in order to accomplish what

10  we've talked about today?

11          MS. NELSON:  When we met last, or actually first, I

12  don't think that was our last meeting, but we've met and

13  conferred and plaintiff proposed that, as Your Honor knows,

14  there is a Court of Claims Action that's currently pending, so

15  there is some sense of urgency with getting some documents out

16  as discovery in that matter. So when we last spoke with

17  plaintiff, plaintiff suggested that they wanted to take a look

18  at the documents, document by document, to see whether there

19  is anything further that was not on the chart, as well as

20  whether they agree with what is on the chart.  With that in

21  mind, defendants were more than willing to do a second, as it

22  were, second level review of the documents to make sure that

23  whatever redactions plaintiffs were making after Your Honor

24  rules on the confidentiality issues, we were all in agreement

25  with. And I think it's from that that we will then know

2   whether there are documents that we need to bring to Your

3   Honor's attention. I think for the most part we are not

4   anticipating too many of those types of dispute.  If there are

5   none, after plaintiff does their first level review, and we

6   review them second and there are no issues, I believe those

7   will then be not only produced in the Court of Claims matter,

8   but will be made public.

9         THE COURT:  Okay, so two issues.  One, since you are

10  going to be discussing these things, should we be having,

11  maybe something near the end of the summer where we have

12  another chat?

13        MS. DIPPOLD:  I think that would be helpful, Your

14  Honor. I think that at this point we really haven't focused

15  enough on how this is going to be done. From the plaintiffs'

16  perspective, we rather expect that we're going to have to look

17  at all the documents, see what needs to be redacted, and then

18  we're going to have to make sure that the defendant's counsel,

19  that they are on the same page. That they are thinking the

20  same way about which documents will be public and which

21  documents will be redacted, and which ones will not be

22  redacted. And until we get into the process of actually doing

23  that, I don't think we can really tell.  In looking at the

24  chart, there were some documents that we think are significant

25  that we couldn't fit into a category. So it's not going to be

1

2     an easy thing to do. I think we're going to have to discuss

3     the documents in considerable detail to arrive at what is

4     actually going to be on the website or be part of the public

5     record.

6             THE COURT:  Well I will say in shorthand I agree

7     with you, I think whenever you are dealing with large volumes

8     of information, whether it's in discovery or otherwise, when

9     you start to get into the mechanics of doing it, then the

10    issues start to arise. And I think getting you started is the

11    important thing because then the issues will arise, you will

12    agree or you'll have disagreements and you'll bring them to me

13    and we'll get it moving rather quickly.

14            MS. DIPPOLD:  While we were talking about documents

15    that should be redacted, there was some concern on our part

16    that the original motion made by The Times and the addenda

17    that they filed, have some names on them that we think would

18    probably be redacted if, in fact, we were preparing the

19    documents for public disclosure.

20            MS. NELSON:  If I may, Ms. Dippold?

21            MS. DIPPOLD:  Yes.

22            MS. NELSON:  I think part of the issue, Your Honor,

23    is that the list provided in The Times' latest application to

24    the Court, as well as in your letter, might include some

25    information that was deemed confidential. And so the parties

1
2    --

3            THE COURT:  How did that happen?

4            MS. NELSON:  How did they come by the information?

5            THE COURT:  Yes.

6            MS. NELSON:  I don't know, Your Honor.

7            MS. DIPPOLD:  I don't know, either.

8            MS. NELSON:  But I think the point Ms. Dippold is

9    trying to make is that that list might have to be withdrawn

10   and maybe either filed under seal or some redactions made to

11   it, as well as that portion of their application that includes

12   that information. We have no objection so, you know, we join

13   in plaintiffs' application, it's theirs, but we have no

14   objection.

15           THE COURT:  Okay.  Well, put in writing anything

16   that you believe ought to be done, even if it's a temporary

17   measure, to make sure that nothing runs afoul of any --

18           MS. NELSON:  Right, and considering it's plaintiffs'

19   application, I believe they will be conferring with The Times,

20   so The Times understands what our concern is.

21           MS. FISHER-BYRIALSEN:  If I may, this Jane Fisher-

22   Byrialsen, I think (inaudible) an understanding of an

23   agreement on how the timing is going to work because we've

24   been under quite a bit of pressure from the Judge in the Court

25   of Claims to begin (inaudible) discovery because, in fact, the

1

2   order that stayed the City required that we produce all

3   discovery within 60 days and broadly we're not able to do

4   that.  So perhaps if the Court would allow us to start

5   preparing the documents that we want to produce, they don't

6   want, the Attorney General's Office doesn't want everything,

7   there's certain categories that they find more productive in

8   their documents (inaudible) than others, and then allow us to

9   work with counsel, if there is agreement on both sides, as

10  this is something that should be de-designated and maybe we

11  can make some amendments or some sort of new order permitting

12  us to produce it at least preliminarily to the Attorney

13  General's Office so that we can get that case moving. I don't

14  know what the Court thinks about that.

15          THE COURT:  If I understand you correctly, there is

16  information that you want to produce to the Attorney General's

17  Office and you think you may have to produce it before the de-

18  designation process could be completed.

19          MS. FISHER-BYRIALSEN:  Yes.

20          THE COURT:  Okay.

21          MS. FISHER-BYRIALSEN:  Because, (inaudible) but we

22  do have another conference, which will be the third one, I

23  think, in the Court of Claims on June 25, and we would, you

24  know, we have produced everything that we possibly could that

25  was not designated or confidential, but we've run out of

```
 1
 2  things to produce and I'm not sure that Judge Marin is going

 3  to sort of remain as patient with us as he has been.

 4          MS. NELSON:  Your Honor, we were actually going to

 5  address that.

 6          MR. DEPAUL:  Yeah, we were actually going to raise

 7  that. I think with respect to the discovery in the Court of

 8  Claims actions, even if there's areas of agreement between the

 9  plaintiffs and the City on documents that can be disclosed to

10  the AG's office, that we would still need an order from Your

11  Honor that lifts the confidentiality designations with respect

12  to those documents.  Because as we stand here today, those

13  documents are marked confidential under the orders and I don't

14  think, even if we agree, that the plaintiffs can start

15  producing.

16          MS. NELSON:  Certainly as to the categories that

17  we've listed, I don't believe that, I was not of the

18  understanding that plaintiff wanted to give them those

19  documents wholesale, but they're prevented from doing that by

20  the confidentiality stipulations.  So I was going to address

21  Ms. Dippold's suggestion that we leave this on until the end

22  of the summer, it might be that we have to tee up some of

23  these documents and I believe that the bulk of what the AG's

24  office needs, we can readily decide on, but we might have to

25  tee those up for earlier than the end of the summer for
```

1

2  another conversation with Your Honor.

3          THE COURT:  Well to the extent that any of these

4  productions, either to the AG's office or otherwise, require

5  an order, for lack of a better term, relieving you of the

6  confidentiality order, all the parties really need to do is to

7  agree and submit to me a form of order in the language that

8  carves out the matter appropriately.

9          MS. NELSON:  I'm not sure it is as simple as that,

10 Your Honor, I believe the documents that they're looking for

11 are some of the documents that are in this production, but the

12 AG's office will not enter into a confidentiality agreement.

13 So we can't produce it to them with the hopes that -- we can't

14 produce it to them now with the hopes that those documents

15 will remain confidential.

16          THE COURT:  Okay, there are two issues. One is

17 getting the plaintiffs to produce them, and the other is

18 whether or not they have to go through the process of being

19 de-designated first. As to the issue of whether or not the

20 plaintiffs can produce them, all that requires is for the

21 parties here to agree that I will relieve them of the

22 protective order.  If the City wants that agreement to wait

23 until you've either triaged or done that designation first,

24 that's a different issue, but as to my role in terms of

25 relieving anyone of the constrictures of the confidentiality,

1                                                                    19

2    as long as the two of you agree, I think it's a fair

3    assumption that the, to the extent that there's going to be a

4    party that's going to lean toward keeping it confidential, the

5    person who is going to be most in that direction will be the

6    City.

7              MS. NELSON:  I'm not sure it's the documents that we

8    are leaning towards confidentiality on, it's some of the

9    information contained in those documents. I believe we will

10   agree with plaintiffs that the documents, themselves, we can

11   lift the confidentiality, if we're just talking about a

12   document, but there's information in those documents that we

13   believe should remain confidential.

14             THE COURT:  I understand. And what is the AG's

15   policy?

16             MS. NELSON:  Our understanding and plaintiffs can

17   speak better to it because they've been to these conferences,

18   but it's my understanding that the AG's office has a practice

19   of not entering into confidentiality agreements, which is one

20   of the reasons why they haven't received much of the documents

21   that they require.

22             MS. FISHER-BYRIALSEN:  That's correct, Your Honor.

23   We have asked them to compel them to enter the confidentiality

24   but it is not willing to do that.

25             MS. DIPPOLD:  Right, initially we did ask the

                                                                    20

 1

 2   Attorney General's Office to simply ask the Court to modify

 3   this and allow them to be a party to these confidentiality

 4   agreements. They would not agree to that. My understanding is

 5   that their reason for not doing that is freedom of

 6   information, public records are supposed to be available to

 7   the public.

 8           THE COURT:  But isn't that kind of circular then?

 9           MS. DIPPOLD:  I can't, it was frustrating I have to

10   agree, but what we have found in dealing with them is that

11   doesn't mean that they disclose documents that are protected

12   by privileges and HIPAA, and things like that. I mean we've

13   given them documents that were not covered by the

14   confidentiality agreements that are protected by those

15   statutes, and there's been no public disclosure of those

16   documents, they're bound by law to abide by those particular

17   privileges and privacy requirements, and they do.  So what I'm

18   not sure should happen here is whether there should be some

19   modification of the confidentiality orders that permit us to

20   disclose the documents to them, in particular, as opposed to

21   anyone else, because Judge Marin has been waiting and has been

22   very patient, and the sooner we can produce documents and

23   proceed in that court, the better.

24           THE COURT:  Let me, we're talking about documents

25   that in a normal course would not be available except if there

1
2   was FOIA request, they don't publish them or anything?

3            MS. DIPPOLD:  No, they don't publish, no.

4            THE COURT:  So if they get a FOIA request, then they

5   would have to determine whether or not they're going to

6   disclose them, and if they got a request for a disclosure,

7   they have certain things that they will not disclose because

8   they're either privileged or subject to privacy.  So, for

9   example, if we had some documents here that you produced to

10  them, but I had ruled that they were attorney-client

11  privilege, they would not produce those, would they?

12           MS. DIPPOLD:  Their position, I have to say quite

13  honestly, is a bit of a mystery to me. But what we have, I

14  mean we have given them documents that are protected, that

15  would be sealed criminal files where charges were dismissed

16  and that sort of thing.  And it's my understanding that it's

17  not their practice to disclose those things, and I'm sure that

18  if they knew that a document was attorney-client privilege,

19  they would not be disclosing those documents. But their

20  position has not been to my mind stated as clearly as I would

21  like.  So it's a bit of a problem to know how to deal with

22  that situation.

23           THE COURT:  Okay, well we may have to cross that

24  bridge when we come to it, but I find it to be unlikely that

25  if there were documents, government documents, let's say the

22

Attorney General that were private or privileged, that they

would turn them over without checking with the agency who said

they were private or privileged.

MS. DIPPOLD:  Well one of the agencies they

represent is an agency that participated in the case here,

which is the DOCCS, Department of Corrections and Community

Service.  DOCCS has taken the position that in the Court of

Claims that certain documents should not be disclosed, and

it's certainly my understanding that the Attorney General's

Office is going to abide by the position that they've taken,

so.

THE COURT:  Well FOIA requests, in general, it seems

to me, have a saving provision that allows agencies not to

produce documents that are otherwise privileged or have some

other kind of governmental, let's say, safeguard, and that it

doesn't become an issue until somebody makes a FOIA request.

As long as that's the way they deal with it, I'm not sure this

is a problem yet or that it can't be resolved because to the

extent, I find it difficult to believe that any document that

has been designated by a federal court as privileged would be

disclosed by a state agency.  But, you know, maybe I don't

understand the supremacy clause.

MS. NELSON:  Your Honor, two issues.  What is

presently under review is not privileged documents, per se,

1

2  but documents that were produced in discovery. Now there are

3  documents that we turned over to plaintiff where we partially

4  waived privilege in order to provide them to plaintiff in this

5  matter subject to the confidentiality agreement.  Those

6  documents are very few. The majority of the documents that

7  we're talking about is not subject to a privilege. They would

8  be subject to any exception to FOIA, but I just want to point

9  out one additional issue which for us is significant. When we

10 look at a FOIA request in our office, we take the source of

11 the information into consideration.  So, for instance, the

12 documents that were produced by DOCCS, once we got The Times'

13 motion to intervene, we alerted them to the fact that the

14 documents they produced to us as confidential were going to be

15 subject to, were going to be part of The Times' motion and

16 they weighed in.

17         When we produce those documents to the Attorney

18 General's Office of plaintiffs produce them to the Attorney

19 General's Office, we are the source. So the kind of analysis

20 that you would undertake if it came directly from the agency,

21 might be very different. The documents came from the City, or

22 the New York City Law Department, so you might not understand

23 the impact of those particular documents, and how the source

24 agency might view them.  So I just want to mention that,

25 because to the extent we're going to give documents to the

1

2  AG's office without going through the process of deciding

3  whether they fall into one of these confidentiality categories

4  --

5          THE COURT:  I think I understand, they would look at

6  the source agency, not the source.

7          MS. NELSON:  Thank you.

8          THE COURT:  So if they got it from the plaintiffs,

9  it's not that they got it from the plaintiffs, but if it turns

10 out that the plaintiffs have DOCCS documents, they would look

11 to DOCCS for their --

12         MS. NELSON:  No, I'm actually saying the opposite.

13         THE COURT:  They would look to the plaintiffs?

14         MS. NELSON:  Right, because plaintiff is the source

15 that they got the document from. I'm not saying they're going

16 to do anything untoward, I'm saying that you look at the

17 source that you got the documents from and from that you make

18 your analysis as to whether it falls into an exception for

19 FOIA or not.  And some documents on their face are obvious,

20 that, for instance, employment records might be obvious, even

21 if you get it from the plaintiffs, it's obvious that they're

22 not the source, some documents are not.  So I just would like

23 the Court to keep that in mind in its consideration as to when

24 in this process the AG's office should get the documents. They

25 want it as soon as possible. In terms of the process that we

1                                                               25

2   have to go through I just want Your Honor to keep that in

3   mind.

4                THE COURT:  Well I have no control over what the

5   Court of Claims will want, all I have is control over perhaps

6   triaging how it's done here.

7                MS. NELSON:  Precisely.

8                THE COURT:  And that is to the extent that there are

9   categories of documents that the plaintiffs want to produce,

10  they may be the documents we need to focus on first as to

11  whether or not they should be de-designated.

12               MS. NELSON:  I am in agreement with that, as well.

13               THE COURT:  Okay, anything else, I think we're

14  raising, it's good that we're raising issues.

15               MS. NELSON:  Just one other matter, Your Honor,

16  which we raised just before this meeting and I think Ms.

17  Dippold brought it up, which is any possible compensation for

18  plaintiffs' work in review of the documents, to the extent

19  that there is going to be a request by plaintiffs for the City

20  to compensate them further with respect to any review they do

21  of those documents, the City would object.

22               THE COURT:  Well I have not had any application from

23  the plaintiff.

24               MS. NELSON:  I know.  But seeing as Ms. Dippold

25  brought it up I thought I'd mention it.

1                                                              26

2          THE COURT:  I can only tell you what I often do when

3   there is litigation, it is often in the context of class

4   litigation, particularly when there is a contingency fee

5   arrangement. That is that sometimes I get arguments from the

6   parties who are talking about the fee, and my statement to

7   them is generally when you have litigation it doesn't end when

8   the case is, when there's a judgment, and so I always assume

9   that there is going to be additional work that's going to be

10  done. So I don't know what's going to happen here but I think,

11  look, we'll wait and see if anybody makes any applications. I

12  do think that, as I said, I think that from my, my approach is

13  that I usually think that everybody anticipates that it's not

14  going to end on a date certain, and that there will be work

15  that will be done on both sides.

16          Anything else?  Okay, let's set a date.

17          MS. DIPPOLD:  I do have one question, Your Honor. At

18  what point, given the language of the stipulation that

19  requires a return or destruction of the documents, does the

20  Court think it would be appropriate to modify these

21  confidentiality agreements?

22          THE COURT:  I'm not sure what question you're

23  asking.

24          MS. DIPPOLD:  Well, for example, in paragraph 9 of

25  the confidentiality stipulation from October of 2008, it

1

2  provides that the producing party will either have the

3  documents returned to them or they will receive a letter from

4  the party that received the documents saying that the

5  documents have been destroyed, all copies of the documents

6  have been destroyed. And since we're going to start a process

7  where we're de-designating documents and it's not clear when

8  the documents are going to be disclosed, the question I have

9  is whether the order should be modified now to provide that in

10  fact we're going to enter upon this de-designation project so

11  that we don't' have an obligation to either return or destroy

12  their documents?

13       THE COURT:  Well, I mean we could, although as a

14  practical matter it seems to me that with all the discussions

15  we're having, whether or not there's an actual stay on the

16  implementation of that or an implied stay, clearly I don't

17  expect anybody to act on the confidentiality stipulation as it

18  exists, otherwise there would be no point in us having this

19  conversation.

20       MS. DIPPOLD:  All right.

21       THE COURT:  So let us consider this to be an oral

22  stay on the implementation of that provision and so that way

23  no one is going to claim that the plaintiffs aren't following

24  through with the stipulation. Although I would say that if

25  that were to happen, let's say we didn't have the

conversation, and say that the City said, well, you didn't

implement this and we were having these discussions, I would

tell the City well you had implied we consented that they

wouldn't have to do it anyway, so I would not enforce it.  I'm

sure Ms. Nelson is going to say they had no intention of

trying to say that you had violated that.

MS. NELSON:  Well there might be other terms in the

confidentiality stip that we we're trying to enforce, but not

that one.  I will say I think back in 2010 there was an

inadvertent production of some documents and we worked out an

agreement with plaintiffs because we understand everyone now

is electronic and plaintiff represented to us that the

documents were in a database and couldn't be returned or

destroyed. And so we worked out an agreement by which they

would isolate those documents and not use them.  I don't think

that we would enter into any different arrangement with

respect to the full database with the production.

THE COURT:  Okay.  Of course the bottom line is

this, is that while, if we were overly literal, there would be

an obligation on the plaintiffs to do one of two things. In

the Court's view, and as the Court orders, that particular

provision will not be enforced but will be stayed until we

have resolved the issue of de-designation.  Anything else?

MS. DIPPOLD:  Thank you, Your Honor.

1

2          THE COURT:  Ms. Nelson, you're standing up again.

3          MS. NELSON:  I'm sorry, Your Honor.  One last thing.

4  I just want to make sure that we understand before we leave

5  today is Your Honor's intention to rule with respect to the

6  categories that are listed in defendant's response or would

7  you like for the parties to work on how it would be applied to

8  the documents and then get back to the Court?

9          THE COURT:  Well it was my hope that the parties

10  could make decisions based on categories and just present them

11  to me, but if they cannot agree and they present categories to

12  me, then I would decide those categories.

13          MS. NELSON:  Thank you, Your Honor.

14          THE CLERK:  The next status conference will be July

15  30 at 10 a.m.

16          MS. NELSON:  Your Honor, my intention is to be out

17  of town. As Your Honor knows --

18          THE COURT:  Was that in favor of the 30th or against

19  it?

20          MS. NELSON:  Not in favor, as Ms. Daitz disclosed I

21  think at the first conference before Your Honor, my birthday

22  is around the 1st of August so I intend to be out of town this

23  year on the 30th. So the week before?

24          THE COURT:  What is my schedule?  July 23 at 11 a.m.

25          MS. DIPPOLD:  At 11 a.m.?

1                                                              30

2              THE CLERK:  11 a.m.

3              MS. NELSON:  Thank you, Your Honor.

4              THE COURT:  Okay, thank you very much, we'll be

5    adjourned, I hope to have only good news in the future.

6              MS. DIPPOLD:  Thank you.

7              (Whereupon the matter is adjourned to July 23,

8    2015, at 11:00 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                                                         31

 2                  C E R T I F I C A T E

 3

 4       I, Carole Ludwig, certify that the foregoing transcript

 5   of proceedings in the United States District Court,

 6   Southern District of New York, McCray, Richardson, et al.,

 7   Docket #03cv9685 was prepared using digital transcription

 8   software and is a true and accurate record of the

 9   proceedings.

10

11

12

13

14   Signature_____

15                       CAROLE LUDWIG

16   Date:    June 22, 2015

17

18

19

20

21

22

23

24

25
```