```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                        Docket #03cv9685
MCCRAY, RICHARDSON, SANTANA,        :   1:03-cv-09685-RLE
WISE AND SALAAM LITIGATION
                                    :   New York, New York
                                        August 24, 2017
------------------------------------ :  STATUS CONFERENCE


                    PROCEEDINGS BEFORE
              THE HONORABLE RONALD L. ELLIS,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs      BELDOCK LEVINE & HOFFMAN, LLC
  Salaam, McCray,       BY:  KAREN DIPPOLD, ESQ.
  Richardson & Santana:      JONATHAN C. MOORE, ESQ.
                        99 Park Avenue, Suite 1600
                        New York, New York 10016


                        ROGER WAREHAM, ESQ.
                        394 Putnam Avenue
                        Brooklyn, New York 11216


For the Plaintiff       FISHER & BYRIALSEN, PLLC
  Wise:                 BY:  JANE FISHER-BYRIALSEN, ESQ.
                        99 Park Avenue, PH/26ᵗʰ Floor
                        New York, New York 10016
                        (Appearing telephonically)


For the Defendants:     NEW YORK CITY LAW DEPARTMENT
                         CORPORATION COUNSEL
                        BY:  PHILIP DEPAUL, ESQ.
                            GENEVIEVE NELSON, ESQ.
                        100 Church Street
                        New York, New York 10007



Transcription Service:  Carole Ludwig, Transcription Services
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|

None

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|

None

```
 1                          PROCEEDINGS                    3

 2            THE CLERK:   We're in the matter for of a status

 3   conference, Anton McCray and parties, 03 Civil 9685.

 4   Attorneys, please state your name for the record.

 5            MS. KAREN DIPPOLD:   Good morning, Your Honor,

 6   Karen Dippold, Beldock, Levine & Hoffman, for the Salaam

 7   plaintiffs.

 8            THE HONORABLE RONALD L. ELLIS (THE COURT):   Good

 9   morning.

10            MR. JONATHAN C. MOORE:   Good morning, your

11   Honor, Jonathan Moore for Santana, McCray and Richardson.

12            THE COURT:   Good morning.

13            MR. ROGER WAREHAM:   Good morning, your Honor,

14   Roger Wareham for McCray, Richardson and Santana.

15            THE COURT:   Good morning.

16            MS. JANE FISHER-BYRIALSEN:   Good morning, Your

17   Honor, Jane Fisher-Byrialsen for the Wise plaintiffs.

18            THE COURT:   Good morning.

19            MS. GENEVIEVE NELSON:   Genevieve Nelson, senior

20   counsel for the City and defendants.   Good morning, your

21   Honor.

22            THE COURT:   Good morning.

23            MR. PHILIP DEPAUL:   Good morning, Your Honor,

24   Philip DePaul, senior counsel also for the City and

25   defendants.
```

PROCEEDINGS                    4

THE COURT:  Good morning.  Okay, who handed me up this summary?

MS. NELSON:  I did, your Honor.  It's a revised chart from the one that the parties submitted at the last conference on July 11.

THE COURT:  Okay.  And do you want to summarize what it's telling me here?

MS. NELSON:  Of course, your Honor.

As your Honor will recall, at the June conference your Honor asked the parties so submit a chart with a category of all the documents that needs to be reviewed in this process, as well as proposed deadlines not just for the City but for plaintiffs.

The first column in the chart indicates the category of documents.  The last two columns indicate the review by the parties.  Where it says Completed, it means that those categories of documents have been reviewed by whichever party is indicated here.  There are dates on the -- both columns indicate dates by which the parties believe they can complete the review of any particular category of documents.

As your Honor will know, the City has completed its review of all the documents on page 1 except for the first category, which is the deposition transcripts, where

1 | PROCEEDINGS                              5

2   we coded all of those, and plaintiff got the chance to

3   review those first.

4            As to the second page -- actually, your Honor,

5   if I may just point to No. 14 at the bottom, which is the

6   deduping of all of the documents, the City spent the bulk

7   of their time since the last conference in that process,

8   and we've completed that process and coded any extra

9   copies for dedupe, pursuant to the agreement amongst the

10  parties as to what types of documents could and could not

11  be deduped.

12           For the second page, the City's actually in the

13  process of reviewing and coding category No. 16, and we

14  expect to be done with that shortly.  Everything else has

15  a mid-September date, which we -- which the City expects

16  to meet those deadlines.  And then there are the deadlines

17  for the plaintiffs, which were agreed upon before the last

18  conference.  I know that Ms. Dippold and Ms. Fisher-

19  Byrialsen and their assistants have been working towards

20  completion of the documents assigned to them, which I

21  think is around 15,000 or 16,000 pages of documents each.

22  Mr. Wareham, I believe, started reviewing the production

23  documents this week.  It's my understanding that Mr. Moore

24  or his assistant has not started that process yet.  In

25  fact, if your Honor will take a look at category No. 2,

1                              PROCEEDINGS                       6

2   the last column, there are still outstanding deposition

3   exhibits to be completed.

4              THE COURT:  Okay.  I'm sorry, which one?

5              MS. NELSON:  No. 2, your Honor.

6              THE COURT:  Deposition exhibits?

7              MS. NELSON:  That's correct, your Honor.  There

8   was a deadline requested for June 30.  As of yesterday it

9   was reported that there were still deposition exhibits

10  that remain unreviewed and uncoded.

11             THE COURT:  Okay.  So the 6/30/17 was the --

12             MS. NELSON:  Was the date that was requested and

13  your Honor --

14             THE COURT:  So that's incomplete?

15             MS. NELSON:  That deadline has passed, and

16  they're still incomplete; that's correct.

17             THE COURT:  Okay.  Anything else before I talk

18  to --

19             MS. NELSON:  With respect to the chart, your

20  Honor?

21             THE COURT:  Yes.

22             MS. NELSON:  Or just with respect to the status

23  itself?

24             THE COURT:  Well, why don't you go ahead and

25  complete what --

```
 1                          PROCEEDINGS                    7

 2              MS. NELSON:  Sure.

 3              THE COURT:  It seems you've indicated that all

 4    the things that are listed there you expect to be

 5    completed by mid-September, which is, you know, I guess

 6    about --

 7              MS. NELSON:  About a month.

 8              THE COURT:  And you're saying you're on track to

 9    do that?

10              MS. NELSON:  We believe we are, your Honor.

11              THE COURT:  Okay.  What else did you want to

12    say, then?

13              MS. NELSON:  Well, as I indicated, we're

14    currently reviewing the documents that were produced to

15    both sides by the District Attorney's Office.  I have been

16    in contact with the District Attorney's Office; they're

17    aware that we are in that process.  They've asked, and we

18    intend to comply as much as we can with the issues and

19    concerns that they raised in their response to the New

20    York Times' motion, which was not very different from what

21    the plaintiffs and defendants wanted.  But we wanted to

22    make sure that they knew that we were in that process and

23    that we were reviewing their documents.

24              That is all I have with respect to the status of

25    the review, your Honor.  There might be a few other issues
```

1                         PROCEEDINGS                    8

2   that the City might want to raise later in the conference.

3          THE COURT:  Ms. Dippold?

4          MS. DIPPOLD:  There is one change from the prior

5   chart that was presented to your Honor in that originally

6   I was only assigned 933 pages.  I've now, as I thought we

7   had originally intended, 15,798 pages to review.  I have

8   done almost 2,500 so far.  I have two assistants who are

9   working -- one is working on 1,500 pages; the other one I

10  haven't quite received her assignment from FTI yet, but I

11  expect it soon, and I will get her started.

12          So with respect --

13          THE COURT:  Are you talking specifically about

14  Category 6?

15          MS. DIPPOLD:  Yes.  Yes.  I'm doing the

16  Armstrong Panel documents.  And I know that yesterday I

17  discussed with Genevieve Nelson some of the issues that

18  we're encountering in reviewing these documents, and I'm

19  hopeful that we'll be able to resolve some of those

20  between counsel for the parties without the necessity to

21  involve the Court.  We're making efforts to try to make

22  sure that's how it happens so there's the least possible

23  burden on the Court that we can manage.

24          THE COURT:  Okay.  And what else is it on your

25  plate on this list as I see that?

1                          PROCEEDINGS                         9

2              MS. DIPPOLD:  Well, one thing I'm a little

3    concerned about because I looked at the prior chart.  I

4    don't think we expected to complete some of the other

5    things on here.  It says, "Complete by mid-September 2017"

6    on the second page and the third page.  I don't think it

7    was our expectation that we were going to be able to

8    finish all those tasks by mid-September.  But we did

9    expect to start on them by mid-September.  And it seems to

10   me kind of odd that some of the things are marked with

11   respect to the City's obligation, "Complete by mid-

12   September," and the plaintiff's, as well, and it hasn't

13   really worked that way before.  The way that it has worked

14   before is one side has finished a job, and then the other

15   side does the second-level review.

16              So I think it's more realistic to think that a

17   good part of September, after we get to mid-September,

18   will be devoted to those particular tasks that are listed

19   on the second and third page and perhaps even the first

20   part of October.  So I think that's a more realistic

21   expectation than what appears on this chart.  But I,

22   unfortunately, didn't bring the original chart with me,

23   and I don't know if it said that, as well.  It may have.

24              THE COURT:  Okay, and you're talking about the

25   things that have contemporaneous completion dates, like 19

1                          PROCEEDINGS                    10

2    through 24?

3            MS. DIPPOLD:  Well, 15 through 32, all of them

4    are marked "Complete by mid-September."

5            THE COURT:  But they're all not -- well, some of

6    them have both the City and the plaintiffs doing it at the

7    same time; others, the City --

8            MS. DIPPOLD:  That's right.

9            THE COURT:  -- has listed as completed.

10           MS. DIPPOLD:  Your Honor's right.  I'm talking

11   about with respect to both sides dealing with the same

12   documents at the same time.  It's Category 19 through 26.

13           MS. NELSON:  May I briefly address that, your

14   Honor?  And I am happy to provide Ms. Dippold with a copy

15   of the chart that we submitted to the Court on July 11.

16   But the parties met and conferred over every entry in this

17   chart.  Plaintiff indicated that they couldn't come up

18   with a realistic date, a date certain, to provide your

19   Honor with respect to those documents that Ms. Dippold is

20   referring to.  They chose mid-September.  We chose mid-

21   September for our own reasons.

22           But I want to point out another issue that your

23   Honor should take note of, which is the categories

24   starting at 17.  If your Honor look at all of those

25   categories, 17 to -- actually, 17 to 32, your Honor, those

1                          PROCEEDINGS                    11

2  are categories that the parties have either agreed should

3  remain confidential or your Honor has ruled that they

4  remain confidential.  There are actually -- with respect

5  to 29, 31 and 32, the parties have conferred on that.

6  We've decided to defer any further conversations about

7  those categories until we're done with all the material

8  documents, which is what's reflected in Footnote 8.  All

9  the other documents, the City will be coding those

10 documents.  We've already agreed that the majority of

11 these will remain confidential unless they will be

12 relevant to the original investigation and prosecution.

13        The reason plaintiffs is also at mid-September

14 is that they just want to QC the documents -- that's my

15 understanding -- to make sure that there are no other

16 documents in there that they also believe should be

17 disclosed.  So these are not going to require the same

18 kind of analysis and coding as what is taking place now

19 with respect to the production documents.  Hence the

20 reason we have the same dates.

21        THE COURT:  Satisfactory, Ms. Dippold?

22        MS. DIPPOLD:  I just wanted to address two

23 issues she raised.  One is the last categories, 29 through

24 32.  To save time, I suggested to corporation counsel, the

25 Law Department, that -- Ms. Nelson specifically -- that

1                          PROCEEDINGS                    12

2   there was a standard set earlier in our discussions and in

3   our status conferences with the Court that the documents

4   that would be included in the website would be documents

5   that would meet the standard of being admissible.  And the

6   training documents, I think there are just a few

7   training -- we're talking about training materials that

8   both the NYPD and the district attorney's office had

9   disclosed during the course of discovery in this case, and

10  I suggested that we focus on those that I think the

11  plaintiffs might actually have sought to use rather than

12  present the Court with -- we expect that there will be

13  need for Court intervention with respect to that issue.

14  So that --

15          THE COURT:  Which issue specifically are you

16  talking about?

17          MS. DIPPOLD:  Twenty-nine through 32, Training

18  Materials --

19          MS. NELSON:  Ms. Dippold, not 30.  Not 30.

20          MS. DIPPOLD:  Not 30.  Okay.  So 29, 31, and 32,

21  Training Materials from the NYPD and from the district

22  attorney's office.  So rather than have the Court address

23  the number of those training materials received, which

24  was, I would guess, somewhere in the vicinity of perhaps

25  30 or 40 different sets of training materials, that we

1                          PROCEEDINGS                    13

2   limit what we ask the Court to decide to those issues that

3   the plaintiffs would actually have sought to put into

4   evidence at trial.  So that will involve me personally, in

5   this particular instance, looking at those training

6   materials and deciding which ones will require court

7   intervention and which ones will not.  I hope to limit it

8   to just perhaps two or three or --

9            THE COURT:  But you don't disagree with the

10  general premise that these won't require the same level of

11  scrutiny and therefore the same investment of time?

12           MS. DIPPOLD:  Well, they'll involve an

13  investment of time because you have to either look at the

14  videos or you have to read the transcripts.  So I'm the

15  lucky person who gets to do that, and I've agreed to do

16  that and just to see if we can winnow it down to a

17  reasonable number of training programs to ask the Court to

18  determine whether or not they should be included on the

19  website.

20           MS. NELSON:  Your Honor, just a bit of

21  correction.  Categories 17 through 28 are the ones that

22  would require very little review from plaintiffs once

23  they're submitted to them for review.  There has been no

24  agreement as to 29, 30 and 31, which is what Ms. Dippold

25  just addressed.

```
1                    PROCEEDINGS                 14

2              MS. DIPPOLD:  And it is --

3              MS. NELSON:  And that is going to take a

4   significant amount of time, not only to review the

5   documents but to prepare an application for your Honor,

6   which is why I thought the agreement was we wouldn't be

7   addressing this issue and we would wait to see how much

8   time is left after the review of all of the relevant

9   documents before we address that issue further.

10             THE COURT:  Okay.  All right, so the bottom

11  line, then, from you, Ms. Dippold, is mid-September, too

12  optimistic?

13             MS. DIPPOLD:  Yes, that is the bottom line,

14  although I have to agree with what Ms. Nelson just said

15  about categories 17 through 22, for example.  I mean, they

16  involve our clients' and other individuals' employment

17  records, medical records, education records, insurance

18  records, Social Security Administration, tax records.  We

19  have already agreed that those documents will not be

20  included.  And I believe that the Court has ruled with

21  respect to some of those documents that they will not be

22  included.  So it's simply a matter of us taking a look at

23  them, rather than coding them in the way we have done, and

24  making sure that the documents that are included within

25  those categories are appropriately categorized.
```

1                          PROCEEDINGS                    15

2              THE COURT:  Okay, well, do this for me, then.  I

3   want to know what on this chart specifically you would be

4   working on.  I know you mentioned the Armstrong documents.

5              MS. DIPPOLD:  Yes.  On the first page, that we

6   tried to divide things equally.  So that's one of the

7   largest assignments.  So that basically is all on the

8   first page that I personally will be working on.

9              THE COURT:  Okay.

10             MS. DIPPOLD:  ON the second page, certainly I

11  will be looking at all the documents that fit into these

12  categories from 15 down to, I think -- it may be a bit

13  further, but I think down through 24 I'm going to be

14  looking at them, at these documents, to the extent they

15  involve the Salaam plaintiffs because they are documents

16  that were -- there are documents in each of these

17  categories that were produced with respect to each of the

18  plaintiffs.  So I'm familiar with the Salaam productions,

19  and I'll be doing the Salaam productions.

20             THE COURT:  And with respect to those tasks,

21  you're asserting that, rather than mid-September, what

22  time frame?

23             MS. DIPPOLD:  I think it will probably be a week

24  or two -- realistically speaking, given how much time it

25  takes to do this, I would say realistically it probably

1                        PROCEEDINGS                    16

2    would take till the second week of October to finish all

3    the remaining review tasks that are listed on this

4    document -- with respect to the Salaam -- I'll limit it --

5    with respect in certain categories, I'll limit that to the

6    Salaam plaintiffs.  I know Ms. Fisher-Byrialsen will be

7    looking at the documents for the Wise plaintiffs, and I

8    think that perhaps it's simplest for each of us to do

9    those documents that were produced on behalf of our

10   clients.

11            THE COURT:  And what about page 3?

12            MS. DIPPOLD:  Page 3, some of these -- for

13   example, the disciplinary files, the NYPD disciplinary

14   files, we know those are going to be eliminated.  So

15   similarly to what we're talking about with respect to the

16   plaintiffs' document productions or the plaintiffs' tax

17   records, this is simply a matter of looking at these 2,711

18   documents to determine whether they are properly

19   categorized as disciplinary documents.  So we're not

20   probably going to be coding them; we're going to be

21   looking at them and saying, "Yes, we agree these are

22   disciplinary files that will not be included in the

23   website."

24            THE COURT:  I'm mainly interested in -- to the

25   extent that it's not going to be a simple process,

```
 1                          PROCEEDINGS              17

 2   completion date?  Similarly you're talking -- you're

 3   asserting the second week in October?

 4           MS. DIPPOLD:  For my -- for tasks that I think

 5   are on my list, that's what I would estimate.

 6           THE COURT:  All right.  Ms. Fisher-Byrialsen?

 7           MS. FISHER-BYRIALSEN:  I agree with what

 8   Ms. Dippold -- and you're right, Ms. Grant and I are all

 9   done with everything except for Category No. 9 that's on

10   the first page.  I would say we are about -- I would guess

11   we have about 9,000 left in Category 9 on page 1.

12   Otherwise, I'd agree with Ms. Dippold.

13           THE COURT:  Okay, Mr. Wareham?

14           MR. WAREHAM:  I don't think that the

15   September 15 deadline is going to be realistic for me.  I

16   just -- my timetable is thrown off because I have two very

17   close relatives that passed in the last three weeks.  And

18   (indiscernible) so I'm behind, and I've barely begun the

19   16,000 documents.

20           THE COURT:  Which one is yours?

21           MR. WAREHAM:  I have Category 7, Category 11 and

22   Category 8.

23           THE COURT:  Okay.

24           MS. FISHER-BYRIALSEN:  I have 7, all of 8 and

25   all of 11.
```

1                          PROCEEDINGS                    18

2              MR. WAREHAM:  Right.  So I think realistically

3    I'm shooting for the first week in October to have that

4    completed.

5              THE COURT:  That's just the first page we're

6    talking about?

7              MR. WAREHAM:  That's the first page, yes.

8              And the second page, I think, is similar to what

9    Ms. Dippold had laid out, which shouldn't require as much

10   scrutiny.

11             MS. NELSON:  Your Honor?

12             THE COURT:  Yes.

13             MS. NELSON:  Categories 15 and 16 have not yet

14   been assigned with respect to individual

15   plaintiffs/defendants.  It's my understanding from

16   Ms. Dippold's representation that Ms. Dippold will take

17   care of those documents that are for her clients.  But

18   then it then remains that for the Richardson, McCray and

19   Santana documents, if that's the agreement amongst the

20   parties, then those have to be divided between Mr. Moore's

21   group and Mr. Wareham, and those are going to require

22   significant review and coding.

23             THE COURT:  Are we just talking about 15 and 16

24   now?

25             MS. NELSON:  Correct, your Honor, which is about

1                             PROCEEDINGS                    19

2   40,000 pages of documents.

3            THE COURT:  What say the plaintiffs on this?

4            MR. WAREHAM:  Forty thousand is the total for

5   all five plaintiffs.

6            THE COURT:  But it hasn't been assigned or

7   delegated?

8            MR. WAREHAM:  No, we have not assigned that.

9   We'll have to sit down and determine and break that out.

10           THE COURT:  Okay, well, what else is already

11  assigned to you, then?  I mean, the general things that

12  Ms. Dippold said that each plaintiff will be looking at

13  based on their representation?

14           MR. WAREHAM:  We have not spoken about that.  We

15  will resolve that between now and the next status

16  conference.

17           THE COURT:  Okay.

18           MR. WAREHAM:  We're just also handicapped since

19  Mr. Warren is no longer part of this group.

20           THE COURT:  All right, Mr. Moore?

21           MR. MOORE:  According to my records, we had, as

22  of last status conference, we had 21 deposition exhibit

23  list assignments to review.  I believe as of today we've

24  completed 14 of those 21, including all of the named

25  plaintiffs.  And that review is ongoing.  I expect that

1                           PROCEEDINGS                    20

2  that will be completed by the end of the month, based upon

3  the pace that we've been maintaining so far.

4            That leaves Category 7 and Category 10, which is

5  almost -- well, it's over 16,000 documents, which

6  according to this have to be reviewed by September 15.  We

7  will, as soon as we finish reviewing these deposition

8  exhibits, we'll turn to that; and, you know, hopefully

9  we'll make good progress on it.

10           With respect to Category 17 through 26, this is

11 the first time I've heard of this arrangement that these

12 categories of documents that Ms. Fisher-Byrialsen and

13 Ms. Dippold will be reviewing those documents only for

14 their client.  It seems like a very inefficient method of

15 review to have five people review the same set of

16 documents five times.  So I don't --

17           THE COURT:  Well, you all can talk about that.

18 I'm just getting a --

19           MR. MOORE:  So, anyway, I haven't even --

20 there's been no plans made by me to review those

21 categories of documents from 17 to 26.  And I will talk to

22 my co-counsel about a more efficient way of trying to

23 review those documents because it seems to me that

24 although it may not be your client, I mean, if you have a

25 view that a certain document should be, you know,

confidential, kept confidential, a medical record or

whatever, it's going to apply across the board to

everybody.  That doesn't seem -- particularly if the

review is being assigned out, not being done by

Ms. Dippold but assigned to paralegals in her office, it

seems to me that that all could be done -- that could be

done for everybody.  But we'll talk about that.  I wasn't

even aware that that was the intention before I came here

today, so --

THE COURT:  Okay, well, here's where we stand.

Obviously, ultimately, the Court has to make a decision on

this.  As of October 15, if anyone wants to de-designate

anything, they'll have to make that known to me.  As of

October 15, if the City has indicated that documents be --

has completed their review, then I will take that as a

proposal from the City that that's the appropriate de-

designation.  If any of the plaintiffs want to say

something different from what the City is saying, they

will let me know by October 15.  I will spend October 15

through the end of my term trying to reconcile that.  So

if you have any disagreements, I'll need to know about

them by October 15, however you want to work that out.

But -- and I recognize that each side has their

concerns, but ultimately, each side has to take

1                              PROCEEDINGS                    22

2  responsibility for its own concerns.  Hopefully you'll

3  have completed everything that's specifically related to

4  the clients that you represent; but, obviously, there are

5  concerns that go beyond that.  But as we discussed the

6  last time, we can't just keep letting things slip.  And so

7  wherever you are on October 15, that's when I take over.

8           So if you want to work between now and then to

9  agree on anything, that's fine.  If you disagree on

10 anything, I want to know what the disagreements are as of

11 October 15, and I will rule on the disagreements.  So

12 whatever you think is fair in terms of the burden, in

13 terms of working this out, your responsibility is to

14 figure that out yourselves.

15          But my responsibility ultimately is to determine

16 whether or not these documents need to be put -- made

17 available to the public.  And as counsel are aware, we

18 could have done a more streamlined approach in which I

19 could have just asked you to tell me what your

20 disagreements were.  Giving you the opportunity to look at

21 the documents and to do the coding I think wasn't

22 absolutely necessary in terms of this, but wherever we

23 stand, that's where we're going to pick up.

24          Any questions?  Ms. Dippold?

25          MS. DIPPOLD:  One of the things that I'm seeing

1                                 PROCEEDINGS                        23

2   as I go through these 15,000 documents is how many of them

3   are copies.  I'm seeing the same statements over and over

4   again.  And especially with respect to the documents we

5   were just talking about, things like our clients' medical

6   records and things like their employment records, I'm

7   wondering if there isn't a way where the technical company

8   that we're working with couldn't arrange for us to

9   actually -- for example, if I'm looking at medical records

10  for one of the plaintiffs -- the Salaam plaintiffs, why

11  shouldn't I be able to simply delete that document from

12  the category of documents to that Mr. Moore does not have

13  to even see that document?  And I'm wondering if the City

14  couldn't investigate and see if there's a way for us to

15  resolve that problem?  It would eliminate an enormous

16  number of documents, page-by-page documents that we're

17  looking at.

18          THE COURT:  Okay.  Obviously, I'm going to allow

19  Ms. Nelson to respond, although let me tell you where we

20  are now is I have -- I've been open to any suggestions of

21  things that could streamline this.  So any suggestions

22  that the parties had once they started looking at this,

23  they could have presented to the City and to me at any

24  time over the course of this year.  And so you're still

25  free to do that, but it still remains -- you know, it's

1                          PROCEEDINGS                    24

2      maybe something that could have been brought up earlier.

3      At this point, there is -- we're not going to be able to

4      change the time/space continuum, but this is going to get

5      done.

6              Yes?

7              MS. NELSON:  Your Honor, the City has been open.

8      We've exchanged, particularly with Ms. Dippold and

9      Ms. Byrialsen, very creative ways to limit the amount of

10     documents that will be reviewed.  One of the processes

11     that was proposed was deduping the entire database, which

12     the City took on that endeavor and we completed it.  As I

13     reported earlier, we completed it in this last period

14     between the July 11 conference and today.

15             We informed plaintiff, even before we went on

16     this process, that because of the types of documents that

17     we're talking about, the age of the documents, the

18     different kind of medium -- some are typed, some are

19     handwritten -- it is difficult for an electronic database

20     to dedupe.  We had to do that manually by looking at each

21     document at a time.  We've completed that.  That being

22     said, plaintiffs still asked that those documents be

23     included in their set of documents that they will be

24     reviewing so that they can make sure that the proper

25     application was made.  So to the extent they're seeing

PROCEEDINGS                     25

documents over and over, it's by their request.

I will also say, your Honor, plaintiff, so as not to slow down this process, Ms. Dippold and Ms. Fisher-Byrialsen started reviewing documents even before the deduping process was completed.  So they might be seeing duplicates now that they wouldn't -- they would have been seeing duplicates in the last six weeks that they wouldn't see now.

THE COURT:  Okay.  Well, I'm here to resolve disputes, and anything that the parties want to work out given the constraints that you're going to have to work under now, feel free to talk about it.  If you disagree with something that you believe I need to weigh in on, I want to hear each of your positions, and I'll decide it -- decide it without delay, hopefully.  But procedure as to how you do the review, who does the review, that's not a legal dispute that I need to get involved in.  All I need to let you know is that what we have is we have things that have been designated, and the question is whether or not some of those things need to be de-designated.  If one party thinks they ought to be de-designated or insist that other documents ought to be kept confidential, then they make that known.  If there's a dispute, I decide it.

Given the volume that we're talking about,

1                           PROCEEDINGS                    26

2    certainly it's a task that requires some commitment, some

3    allocation of resources.  How you do that I did not weigh

4    in on.  So everybody has their jobs to do.  You know,

5    sometimes people tell me, "Well, you know, I don't have

6    time to learn Spanish," or whatever it is.  And I say,

7    "You know, you have time to do almost anything you want.

8    You just have to decide how you're going to prioritize

9    it."  And at this point you have to prioritize this

10   endeavor.  We've been sort of -- the deadlines have

11   slipped.  But as we said at the last conference, there's

12   only so much you can build in in terms of the leeway

13   that's available here.

14           It's certainly my intention that before I leave,

15   we're going to decide this issue of what's de-designated.

16   And anything that's in front of me on October 15, I will

17   consider fair game; otherwise, I'll leave it to my own

18   devices.  And that includes -- I mean, we did -- some

19   things we did by category, some of which you agreed to.

20   But the -- there was the main question that needs to be

21   decided, and that is, is this going to be a default for

22   disclosure or is the default going to be that it is going

23   to stay designated?  I actually haven't heard the parties'

24   positions on that.  If you have some thoughts on that now,

25   this would be a good time to make them known so that there

1                          PROCEEDINGS                    27

2  are no surprises.  We'll start again with Ms. Nelson.

3            MR. MOORE:  Judge, before you do that, I have

4  another appearance in the building before Judge Woods.

5            THE COURT:  What time?

6            MR. MOORE:  Well, it's at --

7            THE COURT:  That's Woods or Wood?

8            MR. MOORE:  -- after meeting with my client;

9  we're having a preliminary injunction hearing.  I mean,

10  I'm happy to stay if you want, but --

11            THE COURT:  Well, "happy," I think when you're

12  in front of a Court, "happy" is not the actual word.

13            MR. MOORE:  I would like to be excused since

14  I've reported what I have done, and I have -- you know --

15            THE COURT:  Okay.  Again, we're talking about

16  going forward in the future.  You are responsible for

17  anything that happens in your absence, of course.

18            MR. MOORE:  Well, most of it has been going on

19  in my absence, anyway, so I understand I'm responsible for

20  it.

21            THE COURT:  Okay.  So you're asking to be

22  excused.  All right, you understand the topic that we're

23  going to discuss now?

24            MR. MOORE:  I understand, your Honor.

25            THE COURT:  All right, you may be excused,

1                             PROCEEDINGS                    28

2    Mr. Moore.

3            Ms. Nelson, what do you think the default ought

4    to be?

5            MS. NELSON:  Well, your Honor, I will say this

6    much:  Since the start of this process, the City has been

7    advocating that the default should always be any documents

8    relevant to the original prosecution and investigation.

9    We've reviewed the documents with an eye towards that.

10   Any information, whether salacious, tangential, we've

11   looked at it all with that one theme in mind, whether it's

12   relevant to the original investigation and prosecution.

13   Anything else has been eliminated and will remain

14   confidential.  And to the extent there are documents that

15   are relevant to the original investigation and prosecution

16   and a privilege applies or there's some privacy concerns,

17   we've conferred with plaintiff, and for the most part,

18   we've come to some agreement.  There's clearly been some

19   litigation before your Honor with respect to that issue,

20   the employment records, personnel file, disciplinary

21   issue.  All of those, we've always had the same theme:

22   They are not relevant to the original investigation and

23   prosecution.  There are also statutes that apply; they

24   should remain confidential.  So for the City, your Honor,

25   for the entirety of this process, that, for the most part,

1

PROCEEDINGS                    29

2    has been our default.  And we've tried to stay true to

3    that.

4              THE COURT:  So in your review, you've tagged

5    things that needed to be -- I have to tell you that I'm

6    not exactly sure what the parties have been doing --

7    you've been tagging things for the purpose of saying that

8    they're free to be or tagging things to say they should be

9    reserved and not?

10             MS. NELSON:  So when it was decided that both

11   sides would engage in this process because we couldn't

12   agree on particular categories, we set up the database so

13   that you can code for both:  These documents will remain

14   confidential; these documents will be disclosed to the

15   public.  To the extent they're going to remain

16   confidential, there is a dropdown menu of things that must

17   be -- at least one must be checked in order for there to

18   be some justification as to why the documents should

19   remain confidential.  And we've taken this position

20   throughout.  All our letter applications to the Court has

21   mentioned this; all the category charts that we've

22   submitted to the Court, including the initial one, has

23   mentioned it.  It's certainly the thing that we bring up

24   in conversation to the plaintiff whenever we meet and

25   confer over any particular dispute.

1                           PROCEEDINGS                    30

2          THE COURT:  And so how will I know which things

3   are in dispute?

4          MS. NELSON:  Well, your Honor, that I'm going to

5   then assume, to the extent we haven't already brought it

6   to your Honor's attention, as we did with the employment

7   records, my understanding from your Honor's instruction is

8   that we have to inform the Court before October 15 as to

9   what else there's going to be.  I know Ms. Dippold,

10  Ms. Fisher-Byrialsen, Mr. DePaul and I meet very

11  regularly, certainly in advance of any court conference to

12  decide whether there are any issues that we must address

13  amongst ourselves or with the Court.  And I think that is

14  going to continue to happen with more frequency.  We

15  certainly invite Mr. Wareham and Mr. Moore, considering

16  one of his complaints is things happening without his

17  knowledge, we invite them to join in the meet-and-confers.

18  They've been very amicable.  As to anything we can't agree

19  on, we bring it to your Honor's attention.  And that's the

20  process that we've been engaging in.

21          However, the City's default has always been if

22  it's not relevant to the original investigation and

23  prosecution, it should remain confidential with certain

24  exceptions to privilege or applicable statutes.

25          THE COURT:  Okay, and before we go on, just

1                              PROCEEDINGS                    31

2  housekeeping, just looking at my calendar, I see that

3  actually mid-October, October 13 is a Friday and the 15th

4  is a Sunday.  So you can consider that date to be

5  October 13, oddly enough, Friday the 13th.  I hope that's

6  not ominous.

7              MS. NELSON:  Can we have the Monday, your Honor,

8  for superstitious reasons, as well as the parties will get

9  the extra two days to finalize anything to bring to your

10  Honor's attention.

11              THE COURT:  Well, we could take care of the

12  superstition by making it the 12th.

13              MS. NELSON:  Okay.  That's fine with us, your

14  Honor.

15              THE COURT:  I'd rather have -- I mean, look,

16  I'll give you the 12th.  If you're still working on stuff

17  and, you know, there's some cleanup --

18              MS. NELSON:  Of course.

19              THE COURT:  -- I'll let you clean up by Monday.

20  But I want the bulk of this by the 12th.

21              MS. NELSON:  Understood.

22              THE COURT:  Because I don't have the luxury of

23  just pushing it out --

24              MS. NELSON:  Understood, that, as well.

25              I'm not sure if I responded adequately to your

1                          PROCEEDINGS                    32

2  Honor's inquiry about a default position.

3              THE COURT:  I understand the City's position.

4              Ms. Dippold?

5              MS. DIPPOLD:  Well, it was my intention to have

6  this wrapped up, so I hadn't considered what will happen

7  if in fact there are documents that have not been the

8  subject of a review and dealt with by both sides.  I

9  think, given the nature of some of the documents I see,

10 though, we would have to lean toward the idea that they

11 would not be disclosed, because there certainly are things

12 in these documents that are very sensitive and that would

13 be embarrassing or even worse with respect to the parties,

14 some of the parties, some of the witnesses.  And I think

15 that would probably be the position we would take, that

16 they should not be included in the website and they should

17 not be disclosed.

18             MS. NELSON:  We've never disagreed with that,

19 your Honor.  In fact, many of the agreements amongst the

20 parties is about information that would tend to either

21 embarrass or harass either a party or a non-party.

22             THE COURT:  Indeed, it was my impression that

23 the City's idea that only things that were relevant to the

24 initial investigation was more restrictive than the

25 plaintiffs wanted or that the media wanted in terms of

1                           PROCEEDINGS                    33

2   disclosure.

3           MS. NELSON:  That's correct, your Honor.  We've

4   kept all of these other issues in mind, but if we're

5   talking about a strict default, if we have -- when we're

6   coding the documents, we have to weigh whether something

7   should remain confidential or not.  That's the default

8   position.  We start there, and then we see if anything

9   else should apply:  privacy, privilege, statute.  It's one

10  of the reasons why we wanted to start with the categories

11  of documents that are listed on the first page of the

12  chart because we believe that those are the most relevant.

13  That through, I think, Category 16 is the most -- for us

14  are the most relevant documents.  And so we wanted to

15  review those first, knowing that plaintiff would have to

16  review them after us, and we wanted them to get the bulk

17  of the relevant information for their review.

18          THE COURT:  Ms. Fisher-Byrialsen, do you want to

19  weigh in on this?  Are you still there?

20          MS. FISHER-BYRIALSEN:  Well, your Honor, I'm

21  just dealing with having -- I mean, I guess my position

22  would be that if it were not done by that date, that you

23  look at the things that actually are in dispute and then

24  you're ruling on those.  And if they're documents that

25  have not been reviewed at all, I mean, other than my

2   clients' medical records, my sort of opinion in this case

3   has always been that all of it should be public.  And, I

4   mean, I realize that that's not a possibility, but my

5   position would be that -- to err on the side of making

6   things public.

7           I can give you an example of things that have

8   been coded so far and are in dispute based on my having

9   done coding after the City is there is, for example, some

10  news articles dealing with some of the police officers', I

11  guess, allegations or criminal cases that have been

12  brought against some of the defendant police officers in

13  this case that the City has marked confidential that I

14  don't believe newspaper articles and things that have

15  already been in the public eye should be confidential.

16  I've gone through hundreds of letters to ADA Lederer where

17  the -- it seems that the City's position was that if the

18  letter was a letter of congratulations and praise back in

19  the '90s to Ms. Lederer, then that should remain public;

20  whereas, the bulk of the hate mail she --

21          MS. NELSON:  Your Honor --

22          MS. FISHER-BYRIALSEN:  -- received was to be

23  marked --

24          MS. NELSON:   -- may I stop Ms. Fisher-

25  Byrialsen?

1                          PROCEEDINGS                    35

2              THE COURT:  Ms. Fisher-Byrialsen?  Ms. Fisher-

3    Byrialsen?

4              MS. FISHER-BYRIALSEN:  -- to the point of your

5    Honor looking at that --

6              THE COURT:  Ms. Fisher-Byrialsen?  I guess we --

7              MS. FISHER-BYRIALSEN:  Yes?

8              THE COURT:  Okay.

9              MS. NELSON:  To the extent Ms. Fisher-Byrialsen

10   is going to be discussing confidential material, I would

11   suggest, your Honor, that we meet and confer first and

12   that we put in an application.  I understand Ms. Fisher-

13   Byrialsen is appearing by phone, but I wasn't quite sure

14   how far down this road she was going, and I thought I

15   should caution that any information about confidential

16   materials we probably should discuss amongst the parties

17   first before we bring it to your Honor's attention.

18             THE COURT:  Okay.  Well --

19             MS. DIPPOLD:  As a matter of fact, I would add

20   that Ms. Nelson and I just had a conversation about this

21   very issue yesterday, and it's unresolved, but it is an

22   issue that if in fact we're not able to resolve, we'll be

23   asking your Honor to weigh in on.

24             THE COURT:  Okay.  Well, tee it up timely, and

25   we'll get to it.

1                          PROCEEDINGS                    36

2              All right, I just want you to understand that

3    these are the kind of things that the Court will be

4    dealing with.  I had hopes and I gave you the leeway in

5    part because I had hoped that, as Ms. Nelson and I assume

6    other counsel did, that the process would be completed.

7    But while hope springs eternal, realism still has to be

8    taken into account.  And the pace here just has not kept

9    pace with the expectations.  So we'll deal with it as it

10   presents itself.  There really wasn't much of an

11   alternative to doing it the way we were doing it, but as I

12   said, we shall see.

13              I guess the best way to deal with this is to

14   have another conference scheduled.  Well, one obvious date

15   would be October 16.  The problem with that is it wouldn't

16   give me the opportunity to know if there were any

17   problems.  So if we could do --

18              MS. NELSON:  The end of September, your Honor?

19              THE COURT:  -- that last week in September?

20   Anybody going to be gone?

21              How about Thursday, September 28, 10:30?

22              MS. FISHER-BYRIALSEN:  That would be fine, your

23   Honor.  May I appear by phone?

24              THE COURT:  Yes.

25              I will see you then.

1                       PROCEEDINGS                    37

2            MS. NELSON:  Just one last issue, your Honor.

3            THE COURT:  Yes.

4            MS. NELSON:  Actually, not even an issue.  Just

5    a report.  As we're coming to the close of this process,

6    the City has refocused on the website and where the

7    documents will appear.  We still believe it will be

8    NYC.gov.  However, we're now told we have to retain a web

9    service at the City's cost to not only maintain the

10   website but for storage of the information that is going

11   to be put on this website.  We're also seeing copyright

12   concerns with respect to some of the media information

13   that we have, newspaper articles, news programs.  We're

14   exploring whether we can -- whether fair use might be a

15   way to get around that.  But we're still exploring all of

16   those issues.  But I wanted to present to your Honor that

17   that is part and parcel of what the City has been working

18   on since the last conference.

19           THE COURT:  Okay.  In that regard, if you're

20   planning to put anything from the media on the website, I

21   would assume that you're going to talk to somebody in the

22   media to determine whether or not they think that's a good

23   idea.

24           MS. NELSON:  We have our legal counsel who deal

25   with this issue -- Legal Counsel Division, who deal with

1 | PROCEEDINGS 38

2 this issue all the time; they are researching whether or

3 not that is required or whether what we need to do is

4 watermark those documents to show the original source or

5 whether, quite frankly, the fair use defense is applicable

6 here.  But it's something that we've started working on so

7 as not to delay this at the back end.

8          THE COURT:  Okay.  Who knows, maybe the media

9 likes to have their things in that, you know, more eyes,

10 more views.

11          MS. NELSON:  Yes, it's not something I'm

12 particularly familiar with, so I leave it to the experts.

13          THE COURT:  Okay.  All right.  We'll be

14 adjourned.

15          MS. NELSON:  Thank you, your Honor.

16          (Whereupon the matter is adjourned to

17 September 28, 2017, at 10:30 AM.)

18

19

20

21

22

23

24

25

1                                                                    39

2                    C E R T I F I C A T E

3

4              I, Carole Ludwig, certify that the foregoing

5    transcript of proceedings in the United States District

6    Court, Southern District of New York, McCray, Richardson,

7    et al., Docket #03cv9685 was prepared using digital

8    transcription software and is a true and accurate record

9    of the proceedings.

10

11

12

13   Signature_____

14              CAROLE LUDWIG

15   Date:    September 13, 2017

16

17

18

19

20

21

22

23

24

25